

FILED

APR 30 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812
Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

C 26 03809 VKD

| | |
|---|---|
| JANE DOE, an individual,<br><br>      Plaintiff,<br><br>    v.<br><br>THE BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, a California corporation;<br><br>STANFORD UNIVERSITY DEPARTMENT OF PUBLIC SAFETY, as a local government entity;<br><br>LAURA L. WILSON, *in her individual and official capacity as Chief of Police*;<br><br>JASON A. SMITH, *in his individual and official capacity as a police officer;*<br><br>JOHN/JANE DOES, *in their individual capacities as police deputies in Stanford University Department of Public Safety*;<br><br>RICHARD HARDING SHAW, JUNIOR, *in his individual and official capacity as the Dean of Undergraduate Admissions and Financial Aid;*<br><br>MICHAEL DEVLIN, *in his individual and official capacity as the Associate Dean of Undergraduate Admissions and Financial Aid;*<br><br>JEN CASEBEER-BLUM, *in her individual and official capacity as the Assistant Dean of Admission for Marketing, Events, and Yield;*<br><br>DEBRA L. ZUMWAHLT, *in her individual and official capacity as Vice President and General Counsel;*<br><br>PARINAZ ZARTOSHTY, *in her individual and official capacity as the Assistant Vice Provost & Executive Director of Bechtel International Center;*<br><br>SHIRLEY J. EVERETT, *in her individual and official capacity as Senior Associate Vice Provost, Residential and Dining Enterprises;*<br><br>JAMES R. JACOBS, *in his individual and official capacity as Executive Director, Vaden Health Center & Associate Vice Provost, Student Affairs;*<br><br>      Defendants.<br><hr> | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**1. 42 U.S.C. § 1983 VIOLATION** (Violation of the First Amendment of the United States Constitution—Right to Freely Petition the Government for Redress of Grievances without Retaliation)<br>**2. 42 U.S.C. § 1983 VIOLATION** (Violation of the First Amendment of the United States Constitution—Right to Speak Freely without Retaliation)<br>**3. 42 U.S.C. § 1983 VIOLATION** (Violation of the Fourteenth Amendment of the United States Constitution—Procedural Due Process)<br>**4. 42 U.S.C. § 1983 VIOLATION** (Violation of the Fourteenth Amendment of the United States Constitution—Substantive Due Process)<br>**5. 42 U.S.C. § 1985 VIOLATION** (Civil Conspiracy against Rights)<br>**6. VIOLATION OF TOM BANE CIVIL RIGHTS ACT (California Civil Code, section 52.1)**<br>**7. INTRUSION UPON SECLUSION**<br>**8. DEFAMATION**<br>**9. BREACH OF CONTRACT**<br>**10. BREACH OF IMPLIED-IN-FACT CONTRACT**<br>**11. BREACH OF IMPLIED-IN-LAW CONTRACT/QUANTUM MERUIT**<br>**12. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**13. INTENTIONAL AND TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**<br>**14. PROMISSORY ESTOPPEL**<br>**15. EQUITABLE ESTOPPEL**<br>**16. FRAUD**<br>**17. NEGLIGENCE**<br>**18. NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**COMES NOW BEFORE THIS HONORABLE COURT** the Plaintiff and hereby alleges and complains as follows:

## PARTIES

1. At all time relevant to this complaint, the Plaintiff was either an undergraduate student at Stanford, residing in the counties of Santa Clara and San Francisco, CA, or was expelled therefrom and trying to have that decision be set aside at various places in Europe. The Plaintiff intended to be a professor of law but that life plan seems to have been altered dramatically ever since.

2. At all time relevant to this complaint, the defendant, THE BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY ("Stanford"), is a statutory California corporation and the governing board of the university that expelled the Plaintiff—it is alleged—in retaliation of filing of a civil complaint, in this Court on April 21, 2025. It is located in County of Santa Clara, CA.

3. At all times relevant to this complaint, the defendant STANFORD UNIVERSITY DEPARTMENT OF PUBLIC SAFETY ("SDPS") was the police force of Stanford, who acquired its policing authority from a memorandum of understanding with the County of Santa Clara.

4. At all times relevant to this complaint, the defendant LAURA L. WILSON was the Chief of Police and the most senior officer of command at SDPS.

5. At all times relevant to this complaint, the defendant JASON A. SMITH was a police deputy at SDPS.

6. JOHN/JANE DOES are employees of SDPS whose names and particulars are unknown to the Plaintiff at this point.

7. At all time relevant to this complaint, defendant, RICHARD HARDING SHAW, JUNIOR, was the Dean of Undergraduate Admissions of the defendant Stanford, and administered and executed Stanford's retaliatory expulsion of the Plaintiff.

8. At all time relevant to this complaint, defendant, MICHAEL DEVLIN, was the Associate Dean of Undergraduate Admissions of Defendant Stanford, who aided and abetted Defendant Shaw in his retaliation campaign.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

9. At all time relevant to this complaint, defendant, JEN CASEBEER-BLUM, was the Assistant Dean of Undergraduate Admissions of Defendant Stanford, who aided and abetted Defendant Shaw in his retaliation campaign.

10. At all time relevant to this complaint, defendant, DEBRA L. ZUMWAHLT, was the the Vice President and General Counsel of defendant Stanford, who aided and abetted Defendant Shaw in his retaliation campaign and likely instructed him to start his purported investigation into Plaintiff's admissions application when the initial complaint was served on her.

11. At all time relevant to this complaint, defendant, PARINAZ ZARTOSHTY, was Assistant Vice Provost & Executive Director of Bechtel International Center, who revoked the Plaintiff's Student and Exchange Visitor Program (SEVIS) enrollment, thereby effectively annulling her student visa, at Defendant Shaw's instruction.

12. At all time relevant to this complaint, defendant, SHIRLEY J. EVERETT, was the Senior Associate Vice Provost for Residential and Dining Enterprises, who evicted the Plaintiff from her dormitory, annulled her rental contract with no notice, at Defendant Shaw's instruction;

13. Non-party William Marsh Rice University ("Rice") an educational institution and private university that defendants herein allege, with no material evidence, the Plaintiff attended.

14. Non-party JUSTIN SCHILKE ("Schilke") is the Deputy Registrar at Rice and is responsible for overseeing daily Office of the Registrar operations such as handling Federal Education Rights and Privacy Act (FERPA) Requests.

## JURISDICTION AND VENUE

15. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction). For any state law claims, this court retains jurisdiction over this action under 28 U.S.C. § 1367 (supplemental jurisdiction) because the state law violation allegations involve the same nuclei of events as the federal law claims.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

16. Venue is proper in the United States District Court for the Northern District of California, San Jose Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS

12. On April 20, 2025, I got a cryptic call in the morning by Defendant Smith indicating that I had to make myself present in the Stanford University Department of Public Safety precinct, for what he termed to be "questioning" on his "investigation into a possible crime."

13. Defendant Smith mandated me to come to the police station by 4 PM of that Sunday.

14. When I went in for questioning, Defendant Smith placed me into what I cognized at the time to be a locked room, where he walked toward me, stood incredibly close to me, made various hand gestures, moved his body to and fro, and at some point, marched his body toward me and then pulled his body back.

15. At no point during this interaction did I know that I was free to leave.

16. And after his phone conversation, I was not aware that I had the choice to *not* go to the police station. He had told me that he had been to my dorm room, and I was scared that he would come again and enter without my permission (because it was a Sunday when he called me, I was staying with my then-boyfriend in San Francisco).

17. I was particularly apprehensive to talk to Defendant Smith in person because when I interacted with him a year or so ago, he had made me very uncomfortable.

18. Defendant Smith was also one of the few people at Stanford who would consistently misgender me despite repeated request from me that he calls me a 'she' and not a 'he,' so I always felt like he was intentionally mistreating me because I was transgender.

19. Defendant Smith's purported investigation into a purported crime was due to an email I sent and a call I made to the Clerk of the Court in a state action where I was the Plaintiff, asking that the Clerk cancels the filing of the pleading because it was intentionally revealing my personal information in a case where I was granted pseudonymous status.

20. At no point during my interactions with the Clerk, however, did I indicate that I was the actual party that filed the pleading but indicated to the Clerk that I was *a* litigant in the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

proceeding and, specifically, the Plaintiff in that proceeding (the pleading was filed by the defendant).

21. The Clerk cancelled the pleading at my instruction.

22. After this interaction with Defendant Smith, on April 21, 2025, I filed a Section 1983 action in this district court (supplemented with state-law claims), alleging multiple constitutional violations.

23. During a Federal Rules of Civil Procedure, Rule 60(b) motion in this district court on that action, I learned that an ID card I provided to Defendant Stanford University Department of Public Safety (hereinafter "SDPS") was provided to Defendant Shaw, with instructions that he starts investigating my admissions application submitted to defendant Stanford almost 3 years ago.

24. Although the particulars of the meeting of minds are still unclear to me, it is my understanding that some Doe Defendants (maybe Defendant Wilson or maybe Defendant Smith himself) specifically asked Defendant Shaw to investigate my admissions application into the university because of me suing them in this Court.

25. It appears that Defendant Zumwahlt was also involved, in some part, in that process for reasons that I will elucidate below.

26. Defendant Shaw willful participated in receiving my ID card from Defendant SDPS and, at SDPS' instruction, investigate my admissions application.

27. Defendant Shaw was also substantially collaborating with SDPS in getting my ID card from them (and SDPS giving it to him) to launch his admissions investigation and was in a meeting of minds to get my ID card from SDPS to begin his admissions investigation.

28. Defendant Shaw also seems to have collaborated with SDPS to a point of insinuating himself into a position interdependent association.

29. The said ID card had a Houston, TX address on it that was a Rice dormitory.

30. I had provided this ID card to SDPS on February 25, 2024, to retrieve a police report where I was the victim of a criminal threat.

31. I could only assume that SDPS sent this ID card to Defendant Shaw to ensure that I would be expelled and get rid of as soon as possible, given the liability the Section 1983 claim had brought to them.

5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

32. At an unknown time to me, Defendant Zumwahlt got into contact with non-party Rice to learn more about whether I was enrolled at Rice and what my relationship to the university was.

33. On July 7, 2025, Defendant Shaw emailed the non-party Schilke, with an email entitled "confidential," seeking further information about me.

34. On the same day, non-party Schilke returned an unofficial transcript obtained from a third-party provider known as the National Clearinghouse, citing 34 CFR § 99.31(a)(2) as the basis for release without consent under Family Educational Rights and Privacy Act.

35. On the same day, Defendant Shaw emailed non-party Schilke again to seek clarification.

36. A day after, non-party Schilke responded to Defendant Shaw's inquiry.

37. On July 21, 2025, defendant Shaw emailed me, serving me with what appears to me to be a notice of charges.

38. The email, in pertinent part, read, "I am reviewing certain matters that have come to Stanford's attention in connection with your application for admission to the University for the Class of 2027. Concerns have been raised that you may have misrepresented information in your application to Stanford. I was recently made aware that prior to entering Stanford in Fall 2023 you may have been enrolled at Rice University. Nowhere in your application, did you indicate enrollment at another degree granting institution when you applied in December of 2022."

39. On the same notice, a Permission to Release Education Record Information form was attached.

40. During my conversations with Defendant Shaw, Defendant Shaw represented that he needed the consent form so that he could acquire the Plaintiff's alleged and purported transcript, even though he had already obtained the said alleged transcript three weeks before contacting me.

41. During Defendant Shaw's purported investigation, Defendant Shaw purposefully attempted to have me sign his purported release form, suggesting that I do so without consulting with an attorney for legal advice and getting angry when I told him that I

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

wanted to an attorney specializing in education law before signing it so that I understand the particulars of his request and want that would mean.

42. During this time, I repeatedly communicated to Defendant Shaw that his communication and conduct was causing intense anxiety to me, to the point where I was experiencing asphyxiation and was considering committing suicide, given that without Stanford, I wold be left in a very vulnerable position.

43. During this time, I also informed Defendant Shaw that none of the purportedly available mental health resources identified in Defendant Shaw's communication identified that I reach out to if I experienced mental anguish were available to me.

44. I also communicated with Defendant Jacobs during this time, indicating that I was experiencing intense symptoms of anxiety, including asphyxiation, and that I was suicidially ideated.

45. Defendant Shaw, and Defendant Jacobs, ignored most of these communications, and Defendant Shaw continued to coerce me into signing his consent form.

46. When I did not do so, Defendant Shaw ordered me to appear for a Zoom meeting.

47. During this Zoom meeting, Defendant Shaw repeatedly yelled at me and threatened that unless I signed the FERPA release form, he would expel me.

48. When the I inquired how Defendant Shaw started his investigation, I was never told where he received the information that started his investigation into my then 3-year-old admissions application but he implied that it was through General Counsel or something to that effect.

49. When I asked asked Defendant Shaw if he will provide me with an opportunity to challenge any derogatory information before Defendant Shaw, whether he would provide me with a hearing to contest the allegations, and whether he would make the operative record before him available to me for me to be able to respond and contest the allegations, Defendant Shaw responded in the negative, indicating that he was not required to hold an adversarial hearing and that he did not need to provide me the opportunity to contest the authenticity and validity of the operative record before him.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

50. When I asked Defendant Shaw if this supposed derogatory information was brought by Defendant Zumwahlt because the Plaintiff had filed a Section 1983 action in a federal court, Defendant Shaw nodded but did not say anything.

51. During this time, I contacted Rice to inquire what information they might have had on me.

52. I sent Rice a Request to Inspect and Amend under 34 CFR §99.20 and 20 U.S.C. 1232g(a)(2).

53. I asked Rice to ensure that they update their records to ensure that I show as a student that only attended the university's orientation week.

54. That request for amendment is still waiting disposition and was awaiting disposition when Mr. Shaw made his decision to expel me.

55. As explained therein and to Defendant Shaw, at I only attended an orientation week at Rice, and thereafter informed the university that I wished to withdraw my acceptance of their offer of admission.

56. This was due, in part, because I wanted to spend a gap year focused on my gender transition and began college presenting as female. This was also after I learned that I would not be able to receive adequate medical care in Houston, TX, because there was no medical provider within the city that provided gender-affirming medical care without waiting periods or one that provided such medical care on an informed-consent basis.

57. And, indeed, during that year, I was mostly located in Cambridge, MA.

58. I told Defendant Shaw that I asked Rice to amend and correct their records and that he awaits that disposition of that request, after which point I will sign his FERPA release form.

59. Defendant Shaw did not respond to my email.

60. Apparently Defendant Shaw continued to receive information from Rice while my request to amend records were awaiting disposition.

61. I was not allowed to respond to any of this purported evidence that was received from Rice, under 34 CFR § 99.31(a)(2), nor did Defendant Shaw informed of the existence of such derogatory information, nor did he offer me an opportunity to contest the authenticity and validity of the collection of such extra-record evidence.

8

62. When I applied to Defendant Stanford as an undergraduate education, I used the application system known as Common App.

63. On the Common App, I was never asked if I was enrolled, ever, in "enrollment in another degree granting institutio."

64. I was only asked to list courses the most recent courses I took in high school.

65. And on the "colleges/universities" section of the Common App, I was only asked to identify if I had attended a "Summer program" and whether I was enrolled in a program that required "Dual enrollment with high school" or college credits I received as a high school student,.

66. And despite being asked, repeatedly, what information provided in my application was considered misrepresentation or false to Defendant Shaw during his purported investigation, I never received an answer from him, until after the issuance of his decision expelling me.

67. When I submitted my application for enrollment to Defendant Stanford, I signed a contract that said "By submitting this application, I affirm my understanding of and agreement to the statements found here: https://www.commonapp.org/application-affirmations."

68. The pertinent affirmation herein includes the phrase, "I understand that I may be subject to a range of possible disciplinary actions, including admission revocation, expulsion, or revocation of course credit, grades, and degree should the information I have certified be **false.**"[1] (emphasis added).

69. Despite repeatedly asking Defendant Shaw what information I provided on my application that was "false," he never responded to my inquiries.

70. In late July, unable to cope with the stress Defendant Shaw's conduct brought me, and unable to reach out to any mental health crisis resources, I attempted to commit suicide by taking at around 250 pills of various medication.

71. Although I was not conscious after that, my understanding is that a gastric lavage was performed on me, and I was resuscitated.

---

[1] *See* https://perma.cc/6N33-62DA .

9

72. Defendant Shaw was aware of this situation, as I set out an automatic response for my school email, in case my friends emailed me to check what happened to me.

73. This happened despite me telling Defendants Shaw, Devlin, and Casebeer-Blum the intense anxiety and turmoil their conduct was causing, and Defendant Jacobs' confirmation to the forenamed defendants I would not be able to access any mental health resources offered by Defendant Stanford during my summer break and while I was abroad.

74. On August 21, 2025, Defendant Shaw expelled me while never providing me a hearing to contest the allegations, nor providing me the opportunity to respond to the evidence before him, nor follow up on his promise to wait until Rice issued its decision on my request to amend my educational records.

75. With the same letter, he revoked all of the course credit I earned during 2 years of schooling at Stanford.

76. When I entered into a contract with Stanford that my admission would not be revoked unless I provided 'false' information, and when I deposited a security deposit and became an enrolled student therein, it was my understanding that there constituted an implied contract that I would be provided with a bachelor's degree and education.

77. It was also my understanding that I would be provided with on-campus housing during that time and that I would have an active SEVIS record during that time unless I took a leave of absence.

78. Apparently Defendant Shaw had acquired additional allegedly derogatory information on August 18, 2025 but never allowed me to respond to such allegedly derogatory information.

79. Defendant Shaw communicated with multiple other departments in Defendant Stanford's organization, stating as a fact that I was an enrolled student at Rice for a year, despite me only being there for merely two weeks for orientation.

80. Based on Defendant Shaw's letter, Defendant Zartoshty cancelled my SEVIS record, effectively annulling my student visa.

81. Based on Defendant Shaw's letter, Defendant Everret cancelled my 2025-2026 rental contract with Defendant Stanford for on-campus housing.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

82. In November 2025, to satisfy the doctrine of exhaustion of administrative remedies, I filed, through counsel, in the Superior Court of California, Santa Clara a petition for writ of administrative mandate under California Code of Civil Procedure 1094.5.

83. That writ petition is pending disposition.

84. But because that writ petition only focused on common-law due-process claims, it is my belief and understanding of the law that it does not bear upon this action as I will not be able to vindicate my constitutional claims in that writ petition.

85. I also cannot wait for the resolution of that writ petition, given statute of limitation concerns.

86. Although I am not perfectly privy to Defendant Stanford's organizational structure and intend to rely on discovery to allege facts with more detail, it is my understanding that SDPS is an extension of Santa Clara Sheriff's Office while still being a department of Defendant Stanford.

87. Although Defendant Stanford is a private university and usually should be given the presumption of being a private party that cannot be held liable under 42 U.S.C § 1983, because defendants SDPS, Shaw, and Zumwahlt's meeting-of-the-minds to expel me as soon as possible was "inextricably intertwined" and because SDPS was a willful participant in my expulsion by providing Defendant Shaw with my ID card in the hopes of getting me expelled, that Defendants Stanford, Shaw, Zumhwalt, and other come under a Section 1983 claim as those that were in a joint action with the government. *See, e.g., Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996); *Dennis v. Sparks*, 449 US 24, 27 (1980).

88. Even if no joint action existed, private party defendants were in a symbiotic relationship with the government actors insofar as they "insinuated [themselves] into a position of interdependence" "that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority* 365 U.S. 715, 725 (1961).

89. If not for my petitioning this Court, SDPS would have never started to look for derogatory information on me and have a meeting of minds with, *inter alios*, Defendant Shaw to expel me from Stanford as soon as possible.

11
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

90. Defendant's Shaw adverse action was both materially severe and one that would alarm a student with ordinary firmness.

91. All defendants opposed the speech—the previous complaint to this Court—by calling it both vexatious and indicating that the petition damaged "their own reputations [and] institutional standing[.]"

## I. FIRST CLAIM TO RELIEF

### 42 U.S.C. § 1983 VIOLATION
(Violation of the First Amendment of the United States Constitution—Right to Freely Petition the Government for Redress of Grievances without Retaliation)
(Against All Defendants Except Defendant Jacobs)

61. Plaintiff incorporates all paragraphs, as though fully set forth herein.

62. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to her by the First Amendment to the United States Constitution

63. The First Amendment protects the Plaintiff's right to, *inter alia*, petition the government for redress of grievances.

64. All of the acts complained of herein were retaliatory and directed toward the Plaintiff because of her initial complaint to this Court.

65. Acting with malice and oppression, defendants acted deliberately to intimidate and silence Ms. Doe in her constitutionally protected petitioning activity.

## II. SECOND CLAIM TO RELIEF

### 42 U.S.C. § 1983 VIOLATION
(Violation of the First Amendment of the United States Constitution—Right to Freely Speak without Retaliation)
(Against All Defendants Except Defendant Jacobs)

66. Plaintiff incorporates all paragraphs, as though fully set forth herein.

67. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to her by the First Amendment to the United States Constitution

68. The First Amendment protects the Plaintiff's right to, *inter alia*, to speak freely without government interference and retaliation.

69. All of the acts complained of herein were retaliatory and directed toward the Plaintiff because of the words "contained within [the Plaintiff's] [...] lawsuit" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387-389 (2011).

70. Acting with malice and oppression, defendants acted deliberately to intimidate and silence Ms. Doe in her constitutionally protected speech.

### III. THIRD CLAIM TO RELIEF

### 42 U.S.C. § 1983 VIOLATION

(Violation of the Fourteenth Amendment of the United States Constitution—Procedural Due Process
(Against All Defendants Except Defendant Jacobs)

71. Plaintiff incorporates all paragraphs, as though fully set forth herein.

72. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to her by the Fourteenth Amendment to the United States Constitution.

73. Procedural due process requires government officials to follow fair procedures before depriving a person of life, liberty, or property. When the government seeks to deprive a person of one of those interests, procedural due process requires the government to afford the person, at minimum, notice, an opportunity to be heard, and a decision made by a neutral decision-maker.

74. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied. *Wisconsin v. Constantineau*, 400 U. S. 433, 400 U. S. 437 (1971); *Board of Regents v. Roth* 408 U. S. 564, 573 (1972).

75. Acting with malice and oppression, defendants acted deliberately to deprive the Plaintiff of her reputation, good name, honor, integrity, property, and liberty without providing the Plaintiff with the process that was due to her.

### IV. FOURTH CLAIM TO RELIEF

### 42 U.S.C. § 1983 VIOLATION

13
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

(Violation of the Fourteenth Amendment of the United States Constitution—Substantive Due Process)
(Against All Defendants Except Defendant Jacobs)

76. Plaintiff incorporates all paragraphs, as though fully set forth herein.

77. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to her by the Fourteenth Amendment to the United States Constitution.

78. Substantive due process protects fundamental rights from government interference.

79. Acting with malice and oppression, defendants acted deliberately to deprive the Plaintiff of her reputation, good name, honor, integrity, property, and liberty while deliberately violating her fundamental rights.

## V. FIFTH CLAIM TO RELIEF

### 42 U.S.C. § 1985 VIOLATION
(Civil Conspiracy against Rights)
(Against All Defendants)

79. Plaintiff incorporates all paragraphs, as though fully set forth herein.

80. This cause of action arises under 42 U.S.C. § 1985, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured to them by the United States Constitution.

81. Defendants and each of them, acted as described herein above, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate Ms. Doe's civil rights afforded under the United States Constitution. Among other things.

82. The Defendants acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) retaliate against the Plaintiff for invoking her constitutional right to petition the government for redress of grievances, (2) retaliate against the Plaintiff for invoking her constitutional right to speak freely, (3) to enjoy procedural due process, (4) to enjoy substantive due process.

83. Plaintiff was singled out as a 'class of one' and targeted because of her status as a member of that class.

## VI. SIXTH CLAIM TO RELIEF

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

## VIOLATION OF TOM BANE CIVIL RIGHTS ACT
(California Civil Code, section 52.1)
(Against All Defendants)

83. Plaintiff incorporates all paragraphs, as though fully set forth herein.

84. Defendants violated Plaintiff's clearly established rights under the United States and California Constitutions, as well as state and federal law, which include, but are not limited to, the following:

    1. First Amendment to the United States Constitution

    2. Fourteenth Amendment to the United States Constitution

    3. California Constitution, Article 1

        1. Right to Happiness

        2. Right to Free Speech

        3. Right to Due Process

85. Defendants violated the Plaintiff's clearly established rights under United States, and California law by threats, intimidation, and/or coercion. Further, each act and/or violation of rights done by each Defendant to Plaintiff was done by way of threats, intimidation, and/or coercion beyond that inherent in each act and/or violation of rights itself.

### VII. SEVENTH CLAIM TO RELIEF

INTRUSION UPON SECLUSION[2]

(Against Defendants Shaw, Devlin, Casebeer-Blum, Zumwahlt, SDPS, DOES, WILSON, SMITH)

86. Plaintiff incorporates all paragraphs, as though fully set forth herein.

87. The defendant intentionally intruded upon the plaintiff's seclusion or private concerns, including abusing and fraudulently invoking federal statute of 34 CFR § 99.31(a)(2) when it was not appropriate to do so and invoking it through fraud and by sharing Plaintiff's personal identification card.

---

[2] Although *Gonzaga University v. Doe*, 536 U.S. 273 (2002) found that no cognizable claim for damages was available to a plaintiff under a 42 U.S.C. § 1983 analysis, the plaintiff therein prevailed on his common law state claims. See generally *Doe v. Gonzaga Univ.*, 24 P.3d 390 (Wash. 2001) (reversing the Court of Appeal and affirming the trial court's judgement of $1.1M in damages for, *inter alia*, defamation and intrusion upon seclusion for wrongful release and obtainment of student-record information)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

88. The intrusion would be highly offensive to a reasonable person.

89. The intrusion caused the plaintiff anguish and suffering.

## VIII. EIGHT CLAIM TO RELIEF

### DEFAMATION—LIBEL PER SE and PER QUOD

#### (California Common Law and Civil Code § 45)

#### (Against Defendant Shaw)

90. Plaintiff incorporates all paragraphs, as though fully set forth herein.

91. Defendant Shaw asserted as a matter of fact that the Plaintiff lied in her application to Defendant Stanford.

92. The unprivileged statement was to someone other than the plaintiff, including Defendants Everett and Zartoshty.

93. The statement was a false statement of fact.

94. The statement was made about or was understood to be about the plaintiff.

95. The statement was negligently made.

96. The statement, on its face, injured the Plaintiff.

97. The false statement also injured the Plaintiff by way of losing her rental contract and her student visa.

## IX. NINTH CLAIM TO RELIEF

### BREACH OF CONTRACT

#### (Against Defendants Stanford and Everett)

98. Plaintiff incorporates all paragraphs, as though fully set forth herein.

99. The Plaintiff and Defendant Stanford entered into a contract wherein the Plaintiff's admission will not be revoked unless she provided 'false' information on the application.

100. The Plaintiff and Defendant Everett entered into a contract whereby Defendant Everett was going to provide the Plaintiff with housing for the academic year of 2025-2026.

101. The Plaintiff did all, or substantially all, of the significant things that the contract required her to do.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

102. When Stanford enrolled the Plaintiff as a student and changed her status from and admitted student to an enrolled one, it waived any defect that might have been caused in the admission application, thereby excusing Plaintiff's of any (if any) requirement to do anything further.

103. To the extent that Defendant Shaw's expulsion caused the Plaintiff to not perform something required of the Plaintiff by the contract, Defendant Shaw prevented the Plaintiff from being able to do so, thereby excusing the Plaintiff.

104. Defendant Everett breached the contract by not providing the contracted housing.

105. The plaintiff suffered measurable financial losses or damage because of the defendant's breach.

## X. TENTH CLAIM TO RELIEF

### BREACH OF IMPLIED-IN-FACT CONTRACT

### (Against Defendants Stanford and Zartoshty)

106. Plaintiff incorporates all paragraphs, as though fully set forth herein.

107. The Plaintiff and the defendant Stanford entered into a contract implied-in-fact whereby the Defendant Stanford was agreed to provide the Plaintiff with a college education and a bachelor's degree.

108. The Plaintiff and the defendant Zartoshty entered into a contract implied-in-fact whereby the Defendant Zartoshty was agreed to not terminate the Plaintiff's SEVIS status until after the Plaintiff obtained her bachelor's degree.

109. The Plaintiff did all, or substantially all, of the significant things that the contract required her to do.

110. When the Plaintiff accepted Defendant Stanford's offer of admission and when Defendant Stanford enrolled the Plaintiff as a student, defendant Stanford waived any defect that occurred before its enrollment offer, thereby excusing the Plaintiff of any alleged breach of her duties owed to the defendants.

111. The defendant breached the contract by expelling the Plaintiff and by cancelling her SEVIS record.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

112. The plaintiff suffered measurable financial losses or damage because of the defendants' breach.

## XI. ELEVENTH CLAIM TO RELIEF

BREACH OF IMPLIED-IN-LAW CONTRACT/ QUANTUM MERUIT

(Against Stanford)

111. Plaintiff incorporates all paragraphs, as though fully set forth herein.

112. The Plaintiff and Defendant Stanford also entered into an implied-in-law contract—that is, a quasi-contract.

113. Defendant Stanford requested, by its offer of admission and enrolling the Plaintiff, that she takes courses within its institution for Defendant Stanford's benefit of maintaining itself as an institution of higher learning.

114. The Plaintiff performed that duty.

115. By rescinding the Plaintiff's earned credits from two years of schooling, the defendant Stanford is now refusing pay for the service of being a student the Plaintiff rendered.

116. As such, the Plaintiff is entitled to the restoration of what she has earned—*quantum meruit*.

## XII. TWELTH CLAIM TO RELIEF

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Stanford, Everett, Zartoshty)

117. Plaintiff incorporates all paragraphs, as though fully set forth herein.

118. The Plaintiff and the defendant Stanford entered into an implied covenant whereby the Defendant Stanford was agreed to provide the Plaintiff with a college education and a bachelor's degree.

119. The Plaintiff and the defendant Zartoshty entered into an implied covenant whereby the Defendant Zartoshty was agreed to not terminate the Plaintiff's SEVIS status until after the Plaintiff obtained her bachelor's degree.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

120. The Plaintiff did all, or substantially all, of the significant things that the contract required her to do.

121. When the Plaintiff accepted Defendant Stanford's offer of admission and when Defendant Stanford enrolled the Plaintiff as a student, defendant Stanford waived any defect that occurred before its enrollment offer, thereby excusing the Plaintiff of any alleged breach of her duties owed to the defendants.

122. The defendants breached the covenant by expelling the Plaintiff and by cancelling her SEVIS record in retaliation of suit.

123. That by doing so, defendant Stanford and Zartoshty did not act fairly and in good faith.

124. The Plaintiff was harmed by the defendants' conduct.

## XIII. THIRTEENTH CLAIM TO RELIEF

### INTENTIONAL AND TORTIOUS INTERFERENCE WITH EXISTING CONTRACT AND INDUCING BREACH OF CONTRACT

(Against Defendants Shaw, Devlin, Casebeer-Blum, Zumwahlt, SDPS, Wilson, Smith, DOES)

125. Plaintiff incorporates all paragraphs, as though fully set forth herein.

126. A contract existed between the plaintiff and Defendant Stanford to be a student and to not have her admission be revoked unless she provided false information on her application.

127. Defendants Shaw, Devlin, Casebeer-Blum, Zumwahlt, SDPS, Wilson, Smith, and DOES knew about the contract.

128. Defendants engaged in conduct that prevented and hindered performance of the contract.

129. The defendants intended this result and knew it was likely.

130. This conduct harmed the Plaintiff.

131. The defendants' conduct substantially caused this harm.

## XIV. FOURTEENTH CLAIM TO RELIEF

### PROMISSORY ESTOPPEL

19

(Against Shaw, Devlin, Casebeer-Blum, Stanford, Everett, Zartoshty)

132. Plaintiff incorporates all paragraphs, as though fully set forth herein.

133. The Defendant Stanford made a clear and unambiguous promise to offer the Plaintiff an undergraduate education to completion.

134. Defendants Shaw, Devlin, Casebeer-Blum, and Stanford made a clear and unambiguous promise to not revoke the Plaintiff's admission unless she provided false information on her application.

135. The Defendant Zartoshty made a clear and unambiguous promise to offer the Plaintiff an active SEVIS record until the Plaintiff's undergraduate education was completed.

136. The Defendant Everett made a clear and unambiguous promise to offer the Plaintiff housing for the academic year of 2025-2026.

137. The Plaintiff's reliance on these clear and unambiguous promises was reasonable and foreseeable.

138. The Plaintiff suffered substantial detriment due to her reliance.

139. The Plaintiff was damaged because of her reliance.

//

//

## XV. FIFTEENTH THIRD CLAIM TO RELIEF

### EQUITABLE ESTOPPEL

#### (Against all Defendants Except Defendant Jacobs)

139. Plaintiff incorporates all paragraphs, as though fully set forth herein.

140. The Defendant Stanford made a clear and unambiguous promise to offer the Plaintiff an undergraduate education to completion.

141. Defendants Shaw, Devlin, Casebeer-Blum, and Stanford made a clear and unambiguous promise to not revoke the Plaintiff's admission unless she provided false information on her application.

142. The Defendant Zartoshty made a clear and unambiguous promise to offer the Plaintiff an active SEVIS record until the Plaintiff's undergraduate education was completed.

143. The Defendant Everett made a clear and unambiguous promise to offer the Plaintiff housing for the academic year of 2025-2026.

144. The defendants knew that they made the Plaintiff believe these promises to be true.

145. The defendants acted in ways where the Plaintiff had the right to believe that the Defendants intended that their promise to be perceived as true.

146. The Plaintiff was ignorant of the true state of the facts and the defendants' fraudulent conduct.

147. The Plaintiff relied on upon the conduct to the detriment of her injury.

## XVI. SIXTEENTH FOURTH CLAIM TO RELIEF

### FRAUD

### (Against All Defendants Except Defendant Jacobs)

147. Plaintiff incorporates all paragraphs, as though fully set forth herein.

148. Defendants, at every turn, made knowingly false representation of facts.

149. Defendants intended to induce reliance.

150. The Plaintiff's reliance thereto was justifiable.

151. The Plaintiff's damage was directly related to the justifiable reliance.

## XVII. SEVENTEENTH FIFTH CLAIM TO RELIEF

### NEGLIGENCE

### (Against All Defendants)

152. Plaintiff incorporates all paragraphs, as though fully set forth herein.

153. Defendants had a legal duty to use due care.

154. Defendants breached such a legal duty.

155. The breach was the proximate or legal cause of the resulting injury.

## XVIII. EIGHTEENTH CLAIM TO RELIEF

### NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendants Shaw, Devlin, Casebeer-Blum, Stanford, Jacobs)

156. Plaintiff incorporates all paragraphs, as though fully set forth herein.

157. Defendants' conduct was beyond the bounds of what is tolerated in civil society.

158. Defendants acted with reckless disregard of the probability that the Plaintiff would suffer emotional distress.

159. The Plaintiff suffered  suffered severe emotional distress.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

160. The defendants' conduct was a substantial factor in causing the Plaintiff substantial emotional distress.

//

//

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff prays for follows:

1. For declaratory relief holding that the Defendants' conduct alleged herein violated the United States and California constitutions, California civil code, common law;
2. For injunctive relief, enjoining the Defendants from continuing to violate the the Plaintiff's rights secured in United States and California constitutions, California civil code, common law
3. For compensatory damages, including general and special damages, according to proof;
4. For punitive damages pursuant to 42 U.S.C. § 1983 and California Civil Code §§ 3294 and 52.1 (b), and any other applicable laws or statutes, in an amount sufficient to deter and make an example;
5. For statutory damages, according to proof
6. For prejudgment interest according to proof;
7. For reasonable attorney fees, should the Plaintiff later retain an attorney;
8. For costs of suit; and
9. For such further relief which is just and proper.

Respectfully submitted,

DATED: April 29, 2026.

/s/ Jane Doe
_____

JANE DOE

*In Propria Persona*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury in all of these actions as well.

DATED: April 29, 2026.

/s/ Jane Doe
_____

JANE DOE

*In Propria Persona*

23
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES