JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual, | Case No.: 5:26-cv-03809-BLF |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES THEREOF** |
| v. | |
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*, | [PUBLIC COPY OF MOTION LODGED UNDER CONDITIONAL SEAL] |
| Defendants. | |

I
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

**PLEASE TAKE NOTICE THAT** on October 22, 2026, at 9:00 a.m, or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, in Courtroom 1 of the above-entitled court, located at 280 South First Street, San Jose, CA 95113, the Plaintiff Jane Doe will and hereby does move this Court to enter an Order entering a Preliminary Injunction, pursuant to Federal Rules of Civil Procedure 65, and requests that the Court issues a mandatory and prohibitory injunction against the Defendants to preserve the *status quo ante litem* in this action.

This Motion is based on this Motion, the Memorandum of Points and Authorities filed herein and attached hereto, and is based on any other moving papers filed in support of this Motion.

Respectfully submitted,

DATED: May 22, 2026

*/s/ Jane Doe*
_____

JANE DOE
In Propria Persona

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

# TABLE OF CONTENTS

**Page:**

I.  PREFACE……………………………………………………………… ...……1

II. THE NINTH CIRCUIT STANDARD FOR ISSUING A PRELIMINARY INJUNCTION………………………………………………………………….1

III.THE *STATUS QUO ANTE LITEM*.........................................................................2

IV.AS A THRESHOLD MATTER, DEFENDANTS ARE GOVERNMENT ACTORS……3

A. Defendants Should be Judicially Estopped from Arguing that SDPS is not a Government Actor...............................................................................................3

B. If SDPS is Not a Separate and Distinct Legal Entity from the University, then the University is a Government Actor *Par Excellence*………………..…4

C. If SDPS is not Part of the Sheriff's Office or the County, then It Is a Separate and Distinct Legal Entity that Can Be Sued Separately without Making a *Monell* Claim (Put Differently, If SDPS Is Separate and Distinct from the County, but not From the University, It Is a Local Instrumentality that Can be Sued In a Section 1983 Claim without Establishing Policy or Custom and Such a Status Transforms the University into a Government Actor)……………………………………………………………………….5

D. If SDPS is a Separate and Distinct Legal Entity from the University, the University and its Employees are Private Parties that Acted Under the Color of Law Pursuant to Government-Nexus, Joint Action, and Symbiotic Relationship Tests……………………………………………………..7

1. Nexus Test……………………………………………………..8

2. Joint Action Test…………………………………….. ………….8

3. Symbiotic Relationship Test…………………………………9

V. PLAINTIFF HAS MET THE BURDEN FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER THE *WINTER* STANDARD……………………..…………10

A. Plaintiff is Likely to Succeed on the Merits………………..…………10

i. Plaintiff is Likely to Succeed on the Merits of her Fourteenth Amendment Procedural Due Process Claim………………………..11

a. The Plaintiff has a Life, Liberty, or Property Interest in Her College Degree and Education, Implicating Procedural Due Process Safeguards……………………………………...…11

b. The Plaintiff has a Life, Liberty, or Property Interest in Her Continued Enrollment, Implicating Procedural Due Process Safeguards……………………………………..…………14

c. The Plaintiff has a Life, Liberty, or Property Interest in the Continuation of her SEVIS Record, Implicating Procedural Due Process Safeguards……………………………………16

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

d. Having Concluded that Fourteenth Amendment's Procedural Due Process Standards Apply, the Pertinent Question becomes the Process that was Due………………………..………….16

1. The Plaintiff did Not Receive the Most Basic Scintilla of Due Process…………………………………….16
2. Insufficient/Improper Notice…………………..……17
3. No Hearing………………………………………………...18
4. No Opportunity to Respond to or Challenge the Purported Evidence…………………………………….18
5. Explicit Refusal to Allow Calling Witnesses and Cross-Examine Them…………………………………….20
6. No Separation of Functions…………………………20
7. Decision on Disputed Record…………………………21

vi. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION FROM THIS COURT………………………………………………………..21

VII. BALANCE OF EQUITIES TIPS IN THE PLAINTIFF'S FAVOR……..………..….24

VIII. THE PROPOSED INJUNCTION IS IN THE PUBLIC INTEREST………………………………………………………………25

IX. ALTERNATIVELY, PLAINTIFF HAS MET HER BURDEN FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER THE *WILD ROCKIES* TEST… ..…….25

X. BOND SHOULD BE WAIVED OR SHOULD BE NOMINAL…………………..…25

XI. CONCLUSION……………………………………………..…………….25

## TABLE OF AUTHORITIES

**Caselaw:**

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011)……………………………………………1, 2, 28

*Am. Trucking Associations, Inc. v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009)…………………………………………….....1

*Anderson v. United States,*
612 F.2d 1112 (9th Cir. 1980)……………………………………………......3

*Ayala v. Noem,*
No. 3:25-cv-5185-JNW, 2025 U.S. Dist. LEXIS 79487 (W.D. Wash. Apr. 26, 2025)….……23

*Baird v. Bonta,*
81 F.4th 1036 (9th Cir. 2023)……………………………………… ..…27

*Bd. of Curators of the Univ. of Mo. v. Horowitz,*
435 U.S. 78 (1978) ……………………………………… …….13, 14, 15, 16

*Bd. of Regents of State Colls. v. Roth,*
408 U.S. 564 (1972)……………………………………………………….*passim*

*Bitar v. Bondi,*
No. 3:25-cv-05431-JNW, 2025 U.S. Dist. LEXIS 95299 (W.D. Wash. May 19, 2025)……..24

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

*Black Coal. v. Portland Sch. Dist. No. 1*,
    484 F.2d 1040 (9th Cir. 1973)……………………………………………………..21

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)……………………………………………..……………8

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016)…………………………………………………..2

*Boermeester v. Carry*,
    15 Cal. 5th 72 (2023). …………………………………………….……14

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*,
    531 U.S. 288 (2001) ………………………………………………5

*Brunette v. Humane Soc'y*,
    294 F.3d 1205 (9th Cir. 2002) …………………………………….7, 9,10

*Buckingham v. Sec'y of U.S. Dep't of Agric.*,
    603 F.3d 1073 (9th Cir. 2010)…………………………………………..20

*Burton v. Wilmington Parking Auth.*,
    365 U.S. 715 (1961)……………………………………………..…..9,10

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018)…………………………………..……27

*Candido-Bolanos v. Lyons*,
    No. 2:25-cv-01359-RFB-EJY, 2025 LX 429259 (D. Nev. Oct. 8, 2025)……………..…….24

*Carnation Co. v. Sec'y of Labor*,
    641 F.2d 801 (9th Cir. 1981)……………………………………………20

*Chalk v. United States Dist. Court*,
    840 F.2d 701 (9th Cir. 1988) ………………………………………..3, 26

*Chapman v. Ca. Dep't of Educ.*,
    229 F. Supp. 2d 981 (N.D. Cal. 2002)……………………………………….26

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985)…………………………………………………….20

*Colo. River Indian Tribes v. DOI*,
    2015 LX 46306 (C.D. Cal. June 11, 2015)…………………………………..11

*Crook v. Baker*,
    813 F.2d 88 (6th Cir. 1987) ……………………………………………12

*Ctr. For Food Safety v. Vilsack*,
    636 F.3d 1166 (9th Cir. 2011)……………………………………………..23

*Cupolo v. Bay Area Rapid Transit*,
    5 F. Supp. 2d 1078 (N.D. Cal 1997)………………………………………26

*DeGrassi v. City of Glendora*,
    207 F.3d 636 (9th Cir. 2000)……………………………………….……7

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017)……………………………………………11

*Dixon v. Alabama State Board of Education*
    294 F.2d 150, *cert. denied* 368 U.S. 930 (1961)………………………………13, 15, 18

*Doe v. Allee*,

30 Cal. App. 5th 1036 (2019)…………………………………………..……....14

*Doe v. Trump*,
784 F. Supp. 3d 1297 (N.D. Cal. 2025) …………………………………………24

*Doe v. United States Dep't of Homeland Sec.*,
No. 2:20-cv-09654-VAP-AGRx, 2020 WL 6826200,(C.D. Cal. Nov. 20, 2020)…………....17

*Doe v. White*,
440 F. Supp. 3d 1074 (N.D. Cal. 2020) …………………………………….…13, 16

*Dudley v. Boise State Univ.*,
152 F.4th 981 (9th Cir. 2025)………………………………………………….… *passim*

*Edwards v. Miracosta Coll.*,
No. 3:16-cv-01024-BEN-JMA, 2017 WL 2670845 (S.D. Cal. June 20, 2017)……….…...16

*Elrod v. Burns*,
427 U.S. 347 (1976)……………………………………………………………..25

*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) …………………………………………….……...10

*Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*,
630 F.3d 1153 (9th Cir. 2011)……………………………………………….…….26

*Fonda v. Gray*,
707 F.2d 435 (9th Cir. 1983)…………………………………………………....8

*Ford v. Wainwright*,
477 U.S. 399, 411 (1986) ……………………………………………………25

*Filarsky v. Delia,*
566 U.S. 377 (2012) ……………………………….. ...……………………….5

*Franklin v. Fox*,
312 F.3d 423, 445 (9th Cir. 2002)………………………………………………8

*Friends of the Wild Swan v. Weber*,
767 F.3d 936 (9th Cir. 2014). …………………………………………………28

*Gamage v. Nev. ex rel. Bd. of Regents of Higher Educ.*
647 F. App'x 787, 2014 WL 250245 (9th Cir. 2016)………………….…………16

*Garcia v. Google, Inc.*,
743 F.3d 1258 (9th Cir. 2014)………………………………………… ..……25

*Garcia v. Noem*,
No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025)……………………………17

*Goldberg v. Kelley*,
397 U.S. 254 (1970)………………………………………………………….12

*Goldberg v. Regents of the University of California,*
248 Cal. App. 2d 871 (1967)……………………………………………….13, 18

*Goss v. Lopez*,
419 U.S. 565 (1975)……………………………………………….*passim*

*GoTo.com, Inc. v. Walt Disney Company*,
202 F.3d 1199 (9th Cir. 2000)……………………………………………….2

*Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*,
684 F. Supp. 1042 (N.D. Cal. 1988) …………………………………………29

VI

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

*Granny Goose Foods, Inc. v. Teamsters*,
　　415 U.S. 423, 441 (1974)……………………………………………………………….22

*Greene v. McElroy*,
　　360 U.S. 474 (1959)……………………………………………………….…………19, 20

*Hamilton v. State Farm Fire & Cas. Co.*,
　　270 F.3d 778 (9th Cir. 2001) …………………………………………………………….3

*Hernandez v. Sessions*,
　　872 F.3d 976 (9th Cir. 2017) ………………………………………………………….4

*Hervey v. Estes*,
　　65 F.3d 784 (9th Cir. 1995)………………………………………….…………………..6

*Heyne v. Metro. Nashville Pub. Sch.*,
　　655 F.3d 556 (6th Cir. 2011)………………………………………………………….21

*Hunger v. Lassner*,
　　No. CIVIL 12-00549 LEK-RLP, 2014 WL 12599630 (D. Haw. Apr. 30, 2014) ……………16

*Immigrant Assistant Project of Los Angeles County Fed'n of Labor v. INS*,
　　306 F.3d 842 (9th Cir. 2002). …………………………………………………………..2

*Imperial Sovereign Court v. Knudsen*,
　　170 F.4th 820 (9th Cir. 2026)…………………………………………………………3

*J.R. v. Bostock*,
　　796 F. Supp. 3d 684 (W.D. Wash. 2025)………………………………...…………………23

*Jaiyeola v. Apple, Inc.*,
　　No. 5:23-cv-03462-EJD, 2023 WL 5418770 (N.D. Cal. Aug. 22, 2023)…………………….26

*Johnson v. Ryan*,
　　55 F.4th 1167 (9th Cir. 2022)…………………………………………………….....12

*Junior Sports Mags. Inc. v. Bonta*,
　　80 F.4th 1109 (9th Cir. 2023)……………………………………………………..28

*K.W. ex rel. D.W. v. Armstrong*,
　　789 F.3d 962 (9th Cir. 2015)……………………………………………………12

*Kirtley v. Rainey*,
　　326 F.3d 1088, 1094-5 (9th Cir. 2003)…………………………………………… ..8

*Knight v. State Board of Education*,
　　200 F. Supp. 174 (1961)………………………………………………………….13

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
　　634 F.2d 1197 (9th Cir. 1980)…………………………………………………….27

*Lindke v. Freed*,
　　601 U.S. 187 (2024)……………………………………………………………….6

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,
　　634 F.2d 1197 (9th Cir. 1980)……………………………………….…………..25

*Los Angeles v. Lyons*,
　　461 U.S. 95 (1983) ……………………………………………………………….22

*Lugar v. Edmondson Oil Co.*,
　　457 U.S. 922 (1982)……………………………………………………………. 4, 5

*Malik v. Noem*,

No. 5:26-CV-00727-JAK (AYPx), 2026 LX 190480 (C.D. Cal. Mar. 2, 2026)………………24
*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019)……………………………………………………………………..5
*Marsh v. Alabama*,
    326 U.S. 501 (1946) …………………………………………………………………..….5
*Mathews v. Eldridge*,
    424 U.S. 319 (1976)……………………………………………………………….….…17
*Meghrig v. KFC Western.*,
    516 U.S. 479 (1996)……………………………………………………………………….3
*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012)…………………………………………………………….25
*Morrissey v. Brewer*,
    408 U.S. 471 (1972)…………………………………………………………………….17
*Nat'l Collegiate Ath. Ass'n v. Tarkanian*,
    488 U.S. 179 (1988)…………………………………………………………………….5
*New Hampshire v. Maine*,
    532 U.S. 742 (2001)………………………………………………………………..…...3
*Nken v. Holder*,
    556 U.S. 418 (2009)…………………………………………………………………….23
*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023)……………………………………………………….…..8
*O'Shea v. Littleton*,
    414 U.S. 488 (1974)…………………………………………………………………….22
*Palafox v. Semaia*,
    No. 5:26-cv-1124-AB, 2026 LX 143531 (C.D. Cal. Mar. 19, 2026)…………….………..24
*People of California v. Tahoe Regional Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985)…………………………………………………………….29
*Perry v. Sindermann*,
    408 U.S. 593 (1972)…………………………………………………………………11,12
*Phetsadakone v. Scott*,
    No. 2:25-cv-01678-JNW, 2025 U.S. Dist. LEXIS 173785 W.D. Wash. Sep. 5, 2025)………23
*Portman v. County of Santa Clara*,
    995 F.2d 898 (9th Cir. 1993)………………………………………………….... ….11
*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) …………………………………………………………….28
*Price v. Hawaii*,
    939 F.2d 702 (9th Cir. 1991)……………………………………………………………...7
*Rawson v. Recovery Innovations, Inc.*,
    975 F.3d 742 (9th Cir. 2020)……………………………………………………………..9
*Redd v. Guerrero*,
    84 F.4th 874 (9th Cir. 2023) …………………………………………………………….12
*Regents of Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) …………………………………………………………….15, 16

VIII
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

*Rendell-Baker v. Kohn*,
   457 U.S. 830, 842-43 (1982)……………………………………………………………10

*Rent-A-Center, Inc. v. Canyon Television & Appliance, Inc.*,
   944 F.2d 597 (9th Cir. 1991)……………………………………………………………25

*Riley's Am. Heritage Farms v. Elsasser*,
   32 F.4th 707 (9th Cir. 2022)……………………………………………………………27

*Roe v. Noem*,
   No. CV 25-40-BU-DLC, 2025 LX 55122 (D. Mont. May 13, 2025)………………………25

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir. 1990)……………………………………………………………5

*Shanks v. Dressel*,
   540 F.3d 1082 (9th Cir. 2008) …………………………………………………………11

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*,
   788 F.2d 600 (9th Cir. 1986)……………………………………………………………6

*Shaw v. Specialized Loan Servicing LLC*,
   2014 U.S. Dist. LEXIS 95625, 2014 WL 3362359 (C.D. Cal. July 9, 2014)………………25

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013)……………………………………………….. ……28

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) …………………………………………………………28

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180(9th Cir. 2011)……………………………………………....…..24, 24

*Smith v. Reiskin*,
   No. C 18-01239 JSW, 2018 WL 7820727 (N.D. Cal. Oct. 10, 2018)………………………..25

*Streit v. County of Los Angeles*,
   236 F.3d 552 (9th Cir. 2001)……………………………………………………………..6

*Sutton v. Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) ……………………………………………………….……7

*Sw. Sunsites, Inc. v. FTC*,
   785 F.2d 1431 (9th Cir. 1986)…………………………………………………………..20

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007)…………………………………………………29

*Tinker v. Des Moines Independent Community School District*,
   393 U.S. 503 (1969). ……………………………………………………………………..1

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012). …………………………………………………………5,8

*United States v. Harrington*,
   749 F.3d 825 (9th Cir. 2014)………………………………………………………..20, 22

*United States v. Kama*,
   394 F.3d 1236 (9th Cir. 2005)……………………………………………………………6

*Vance v. Cty. of Santa Clara*,
   928 F. Supp. 993 (N.D. Cal. 1996)………………………………………………..…..5, 6

*Vincent v. Trend W. Tech. Corp.*,

IX

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

828 F.2d 563 (9th Cir. 1987) ………………………………………………... …10
*W.B. v. Noem*,
    No. 25-cv-03407-EMC, 2025 WL 1180296 (N.D. Cal. Apr. 23, 2025)………….…………17
*Walters v. Nat'l Ass'n of Radiation Survivors*,
    473 U.S. 305(1985)……………………………………………………………20, 22
*Watkins v. Sowders*,
    449 U.S. 341 (1981) ……………………………………………………………21
*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008)……………………………………………………………..*passim*
*Wisconsin v. Constantineau*,
    400 U. S. 433 (1971) …………………………………….…………………13, 14
*Withrow v. Larkin*,
    421 U.S. 35 (1975) …………………………………………………………..21
*Wolff v. McDonnell*,
    418 U.S. 539, 564 (1974)……………………………………………………….18
*Wood v. Strickland*,
    420 U.S. 308, 326 (1975) ……………………………………………………….22
*United States v. Lankford*,
     No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897 (C.D. Cal. Nov. 21, 2025)…….6
*Yang v. Scott*,
    No. 2:26-cv-00469-JNW, 2026 LX 84355 (W.D. Wash. Feb. 25, 2026)………………….24
*Zepeda v. U.S. Immigr. & Nat. Serv.*,
    753 F.2d 719 (9th Cir. 1983)………………………………………………….27
*Zhou v. Lyons*,
    No. 2:25-cv-01186-TLN-JDP, 2025 WL 1207546 (E.D. Cal. Apr. 24, 2025)…………….24, 27
*Zwick v. Regents of the Univ. of Mich.*,
    No. 06-12639, 2008 WL 1902031 (E.D. Mich. Apr. 28, 2008) ……………………………15

**Rules of Civil Procedure**

Fed R Civ P 65……………………………………………………………….. *passim*

**Constitutions:**

U.S. CONST, amend. XIV……………………………………………………….*passim*

**Code:**

42 U.S.C. § 1983……………………………………………………………*passim*

California Penal Code, section 830.6……………………………………...…………6,7

California Corporations Code, Section 158……………………………………………4

X
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PREFACE

Writing for the majority of the Supreme Court, more than fifty years ago, JUSTICE FORTAS proclaimed, "It can hardly be argued that […] students […] shed their constitutional rights […] at the schoolhouse gate[.]" *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969). He continued, "schools may not be **enclaves of totalitarianism**. School officials do not possess absolute authority over their students. Students in school, as well as out of school, are 'persons' under our Constitution." *Id.*, at p. 511 (emphasis added). That was true then; it is true now; it will be true after the next five decades.

### II. THE NINTH CIRCUIT STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

Granted, a party has no right to a preliminary injunction and a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (*Winter*). "A plaintiff seeking a preliminary injunction must establish that he [*sic*] is likely to succeed on the merits, that he [*sic*] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [*sic*] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, a plaintiff can make a showing that there are "'serious questions going to the merits' and a hardship balance that tips *sharply* toward the plaintiff can support the issuance of an injunction," provided that the plaintiff also shows irreparable harm and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (*Wild Rockies*) (italics added). These two alternatives represent *extremes of a single continuum* rather

than two separate tests. *Immigrant Assistant Project of Los Angeles County Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002).  The elements of this test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies*, 622 F.3d 1045, 1049–50 (9th Cir. 2010), *rev'd on other grounds*, 632 F.3d 1127 (9th Cir. 2011).

### III. THE *STATUS QUO ANTE LITEM*

"The purpose of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits. *Status quo ante litem* refers to the last uncontested status which preceded the pending controversy." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016); *see also Imperial Sovereign Court v. Knudsen,* 170 F.4th 820 (9th Cir. 2026). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, **but instead to the last, uncontested status which preceded the pending controversy**.'" *GoTo.com, Inc. v. Walt Disney Company*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation and citation omitted) (emphasis added). The *lis* herein is Plaintiff's expulsion from defendant's university by Defendant Shaw on August 21, 2025. And to preserve the state of affairs before *that quarrel* would require the following: The reinstatement of the Plaintiff's earned credits from her two years of schooling, the reinstatement of the Plaintiff as an active student with her financial aid package that was renewed in May 2025 for the 2025-2026 academic year, the activation of her Student and Exchange Visitor Information System (SEVIS) record, the reinstatement of the on-campus housing unit the defendants were contracted to provide to the Plaintiff in April 2025 for the 2025-2026 academic year, the reinstatement of the flight ticket that was purchased for her as part of her financial aid package in August 2025, and the reinstatement of the Plaintiff's Stanford student account so that she could be ready to sign up for classes. A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a

2

determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC Western.*, 516 U.S. 479, 484 (1996). "Mandatory injunctions are most likely to be appropriate **when the status quo . . . is exactly what will inflict the irreparable injury upon complainant**." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (cleaned up) (emphasis added). This is such a case.

## IV. AS A THRESHOLD MATTER, DEFENDANTS ARE GOVERNMENT ACTORS
### A. Defendants Should be Judicially Estopped from Arguing that SDPS is not a Government Actor

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). It is an equitable doctrine invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and **regard for the dignity of judicial proceedings**,' and to 'protect against a litigant playing fast and loose with the courts**.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)) (alteration omitted) (emphasis added).

The Plaintiff requested judicial notice of certain pleadings, *see* ECF No. 33, p. 4, n. 5, from the docket of the case *Doe v. Smith, et al.*, No. 25-cv-03490-PCP (N.D. Cal. 2025) (*Doe I*), primarily ECF No.s. 24, 43, 57 in *Doe I* in her complaint. As can be seen therein, the defendants herein did not dispute that SDPS and its officers are government actors. **Indeed, it appears that defendants claimed that they are *government actors*, properly understood, not even private parties that acted the color of law.** This is because the defendants rejected the relevance of *Lugar*

3

*v. Edmondson Oil Co.,* 457 U.S. 922, 942 n.23 (1982) in not extending qualified immunity to private parties that acted under the color of law. *See generally* ECF No. 57 (expressing disagreement with the relevance of *Lugar*). If *Lugar*'s footnote is irrelevant to their qualified immunity claim, then that is because they are *government actors*, not private parties that acted under the color of law. Defendants should, thus, be judicially estopped from being able to argue that SDPS and its officers are *not* government actors during this litigation.

**B. If SDPS is Not a Separate and Distinct Legal Entity from the University, then the University is a Government Actor As a Whole *Par Excellence***

Defendants, in the past, briefly and summarily argued that SDPS is not a separate and distinct legal entity and is, thus, a *department* whose administration is also managed by the Board of Trustees of Leland Stanford Junior University. *See, e.g.,* Dkt. No. 45-2 at 7.

The irony of the defendants' position is this: If SDPS is not a separate and distinct entity from the Board of Trustees and the University, and if SDPS is a government actor (and not a private party that acted under the color of law)[1], as defendants seem to have conceded, then the University is, by the *virtue of being the same corporation as SDPS,* plainly a *government entity.* **Since this position directly results in *all* defendants being government actors, it appears that the defendants'**

---

[1] Not much changes in this analysis if they are a private corporation that acted under the color of law pursuant to *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-37, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) (private corporation acts under color of law when its actions are fairly attributable to the government). *See also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001); *see pertinently Marsh v. Alabama,* 326 U.S. 501 (1946) ("company town"), *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179 (1988). If SDPS is the same entity as the university, and if SDPS is a government actor because its actions of policing are attributable to the government, then the *same*—entire— corporation becomes a private party that acted under the color of law. *See infra* note 2.

4

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No. 5:26-cv-03809-BLF

**previous conduct in *Doe I* makes the case for the application of the doctrine of judicial estoppel wherein the defendants cannot argue that all defendants are *not* government actors, as they are employed <u>by a corporation who they have conceded is a government actor.</u>[2]**

### C. If SDPS is not Part of the Sheriff's Office or the County, then It Is a Separate and Distinct Legal Entity that Can Be Sued Separately without Making a *Monell* Claim (Put Differently, If SDPS Is Separate and Distinct from the County, but not From the University, It Is a Local Instrumentality that Can be Sued In a Section 1983 Claim without Establishing Policy or Custom and Such a Status Transforms the University into a Government Actor)

In *Doe I*, the there-Plaintiff brought a *Monell* claim against the County of Santa Clara and a proper 42 U.S.C § 1983 claim against SDPS. The defendants therein did not argue that SDPS is not a separate and distinct legal entity from the County of Santa Clara (or its Sheriff's Office). Of course, "[t]he term 'persons' [within the meaning of 42 U.S.C. § 1983] encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and **local governmental entities**." *Vance v. Cty. of Santa Clara,* 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (*Vance*) (emphasis added). Herein, deputization under California Penal Code, section 830.6, creates the inference that SDPS is a separate and distinct legal entity from the

---

[2] Pertinently herein, the permutational functions of *an entity* for the purposes of establishing it as governmental actor is completely irrelevant. For instance, the Board of Trustees could be performing private functions as a *private university* and *public functions* a *police department*, but the **entity, itself,** cannot be 'parted' in such ways. A government actor as an *entity* cannot, in a Section 1983 analysis, perform permutational functions. Of course, the "functions" of a *person* would have been relevant if such a person was a private person acting under the color of law**.** *See, e.g., Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012). *See, c.f., Filarsky v. Delia,* 566 U.S. 377 (2012) (addressing the question of a *natural person* that acted partly privately and partly under the color of law).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

County of Santa Clara and its Sheriff's Office. The memorandum of understanding signed between the two, one that was incorporated by reference in the Complaint, make this point intuitively:

> "In order to provide for the assignment of certain specific police functions to qualified members of the Stanford University Department of Public Safety, and in compliance with the request of the University, the Sheriff of the County of Santa Clara will deputize Reserve Deputy Sheriffs (under Section 830.6 of the Penal Code) under conditions herewith set forth[.]" (*Id*., at p. 2).[3]

This intuitively creates the point that the "Sheriff of the County of Santa Clara" is a separate and distinct legal entity than "Stanford University Department of Public Safety[,]" as if SDPS was the Sheriff's Office, it would not need deputization under the forenamed Penal Code with which to begin. As such, while "[n]aming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality[,]" *see Vance*, at p. 996, and "municipal police departments and bureaus are generally not considered 'persons' within the meaning of section 1983[,]" *see United States v. Kama,* 394 F.3d 1236, 1239 (9th Cir. 2005), because SDPS is not a *municipal* police department, the question is complicated. The defendants have not disputed in *Doe I* that a Section 1983 claim be brought against SDPS as a plain Section 1983 claim, not a *Monell* or *Canton* claim. The Plaintiff considers *Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995) instructive here: To be an "entity amenable to suit under section 1983[,]" there has to be some "inten[tion] to create a separate legal entity subject to suit[.]" *Harvey, ibid.* Here, the memorandum of understanding signed between the Sheriff's Office and SDPS create the inference that SDPS was

---

[3] *See*, pertinently, "Here, Defendant Lankford's actual authority—granted to him via the California Penal Code [section 830.6]—to address public offenses occurring outside of Los Angeles County for which there is probable cause can reasonably be read to have given him sufficient authority in Orange County **for his alleged deprivation of rights to be 'fairly attributable' to the state**." *United States v. Lankford*, No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897, at *4-5 (C.D. Cal. Nov. 21, 2025) (emphasis added), citing, *inter alia, Lindke v. Freed,* 601 U.S. 187, 198 (2024).

6

intended to be a separate and distinct legal entity from the Sheriff's Office. Indeed, if it was *just* a *municipal* or *city* police department, then it would have not needed a memorandum of understanding to receive "deputization" from the Sheriff's Office under California Penal Code, section 830.6, as Section 830.6's entire purpose is to allow for deputization of policing functions to *separate and distinct* legal entities. Accordingly, a plain claim of Section 1983 could be brought to SDPS and such a claim need not be a *Monell* or *Canton* claim. Argued *analogously*, if SDPS is just a *department* of the university and the trustees that oversee it, then **<u>such a singular entity</u>** will obviously be one where its individual departments are positioned "into a position of interdependence" with one another. *Brunette v. Humane Soc'y*, 294 F.3d 1205, 1210 (9th Cir. 2002) (*Brunette*).

### D. If SDPS is a Separate and Distinct Legal Entity from the University, the University and its Employees are Private Parties that Act Under the Color of Law Pursuant to Government-Nexus, Joint Action, and Symbiotic Relationship Tests

If, however, SDPS is *not* a part of the University and is a separate and distinct legal entity, then, *yes*, the Plaintiff has to establish that the non-SDPS officers (and the University) herein have acted in some way with SDPS officers (and SDPS). The pertinent test herein is likely government-nexus, joint action, or symbiotic relationship tests. "Generally, private parties do not act under color of state law." *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). To overcome the presumption, plaintiffs "must allege facts tending to show that [defendants] acted under color of state law or authority." *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000). The Supreme Court has, at least, articulated four tests for determining whether a private party's conduct constitutes state action: (1)

the state compulsion test, (2) the public function test, (3) the joint action test, and (4) the governmental nexus test. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

### 1. Nexus Test:

"There are two different versions of the nexus test." *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023). The second version of this test is more relevant here. The test is whether the government actors "exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982). Put differently, the government-nexus test asks "whether there is such a close nexus between the state and the challenged action that the seemingly private behavior may be fairly treated as that of the state itself." *Kirtley v. Rainey,* 326 F.3d 1088, 1094-5 (9th Cir. 2003) (citation and internal quotations omitted). Taking the well-plead allegations of the complaint together, it appears that SDPS and its officers "provided […] significant encouragement" to, *inter alios*, Defendant Shaw for him to investigate the Plaintiff's four-year-old admissions application a month or so after they were sued in federal court based on an ID card provided to them 1.5 years ago. Here, the well-plead allegations of the Complaint show a "close nexus" between Defendant Shaw and SDPS and its officers to the extent that Defendant Shaw's conduct may fairly be attributed to the government actor of SDPS.

### 2. Joint Action Test:

A plaintiff can show joint action either "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012) (citation and internal quotation marks omitted). The conspiracy approach to joint action requires the plaintiff to show a "meeting of the minds" between the government and the private party to "violate constitutional rights." (*Fonda*

*v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) through a "complex and deeply intertwined process." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir. 2020).

*First*, the Plaintiff already sufficiently and cognizantly plead a 42 U.S.C. § 1985 violation in the complaint between SDPS officers and Defendant Shaw. There, indeed, was a conspiracy herein. *Second,* by starting to investigate the Plaintiff's admissions application based on what was provided to Defendant Shaw by SDPS and its officers, Defendant Shaw was a "willful participant" in this conspiracy. *Third*, the well-plead allegations of the Complaint show that the ID sharing with Defendant was done through an elaborate meeting-of-minds to find the Plaintiff's ID card from the record from 1.5 years ago, crop it, send it to Defendant Shaw with instructions to start investigating the Plaintiff's admissions application, and then have Defendant Shaw *perjure* himself to the Court in *Doe I* by *implying* that the ID card was not provided 1.5 years ago but was provided to Defendant Smith during the Plaintiff's 2025 encounter, instead of 2023. Defendant Shaw was not only a willful participant, he was a *joyful* participant whose willful participation occurred with much gusto.

### 3. <u>Symbiotic Relationship Test:</u>
"Where a private party and the government exist via what amounts under the law to a 'symbiotic relationship' (like oxpeckers and rhinoceros), we have held the private party responsible as a state actor under § 1983. In a symbiotic relationship the government has 'so far insinuated itself into a position of interdependence (with a private entity) that it must be recognized as a joint participant in the challenged activity.' *Brunette,* 294 F.3d 1213, citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961). In *Burton*, for instance, the Supreme Court found state action on the part of a privately owned restaurant which refused to serve African-American customers. *Id.* at 716. The restaurant was located in a public parking garage, benefitted from the Parking Authority's tax exemption and maintenance of the premises, and in turn, provided the Parking Authority with

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

the income it needed to maintain fiscal viability. *Id*. at 719-20. Although the Parking Authority had no part in the restaurant's discriminatory policies, the Court found that its relationship was one of interdependence; the Parking Authority had placed its power, property, and prestige behind the restaurant's discrimination, and thereby had become a joint participant in that discrimination. *Id*. at 725. "*Burton* teaches that **substantial coordination and integration** between the private entity and the government are the essence of a symbiotic relationship. Often **significant financial integration** indicates a symbiotic relationship." *Brunette*, 294 F.3d 1213, citing *Rendell-Baker v. Kohn,* 457 U.S. 830*,* 842-43 (1982); *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 569 (9th Cir. 1987) (emphasis added). SDPS and Stanford admissions office, by the virtue of being controlled by the same Board of Trustees, are "financially integrated[.]" *Brunette*, at p. 1214. Indeed, as the Defendants have previously claimed, **if they are just different *departments* of the same institution**, they are, **by their virtue of existence** in a "position of interdependence" (*Brunette,* at p. 1210), and they are "inextricably intertwined" *Id*., 1211. Indeed, "the peculiar facts or circumstances," herein are exactly as the ones that *Burton* recognized. *Burton*, 365 U.S. at 725-26. **<u>Put differently, if the Plaintiff had provided that ID card to, *say*, Palo Alto Police Department, but not the SDPS, then Defendant Shaw would have never been able to acquire that ID card because Palo Alto Police Department is not 'interdependent' and 'inextricably intertwined' with Defendant Shaw.</u>**

### V. PLAINTIFF HAS MET THE BURDEN FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER THE *WINTER* STANDARD
#### A. Plaintiff is Likely to Succeed on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor[]" in motions for preliminary injunctive relief. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020) (citation omitted). Thus, a "court need not consider the other factors" if a movant fails to

10

show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Whether a claim on the merits is strong enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief. *Colo. River Indian Tribes v. DOI*, 2015 LX 46306, at *99 (C.D. Cal. June 11, 2015).

### i. Plaintiff is Likely to Succeed on the Merits of her Fourteenth Amendment Procedural Due Process Claim

#### a. The Plaintiff has a Life, Liberty, or Property Interest in Her College Degree and Education, Implicating Procedural Due Process Safeguards

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (alteration in original) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "When [the Fourteenth Amendment's protection of life, liberty, or property is] implicated, the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972) (*Roth*).

Although the Due Process Clause imposes process requirements, it does not supply the meaning of 'property.' Property interests are instead "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. After the Supreme Court's seminal decisions in *Roth* and *Perry v. Sindermann*, 408 U.S. 593 (1972), the term "property" in the Due Process Clause is no longer to be "limited by a few rigid, technical forms.

11
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

Rather, 'property' denotes a broad range of interests." *Perry*, 408 U.S. at 601 (citing *Roth*, 408 U.S. at 577). Further, "[d]ue process protects property interests 'well beyond actual ownership of real estate, chattels, or money.'" *Redd v. Guerrero*, 84 F.4th 874, 893 (9th Cir. 2023) (quoting *Roth*, 408 U.S. at 571–72). Following *Roth*, *Sindermann*, and the Ninth Circuit's recognition of the "new property," courts in the Ninth Circuit have identified property interests in "utility service, public education, welfare benefits, driver's licenses, nursing care, a cause of action, and a type of immigration petition." *Redd*, 84 F.4th at 893 (citations omitted); *see Goldberg v. Kelley*, 397 U.S. 254, 262 n.8 (1970); *see also Johnson v. Ryan*, 55 F.4th 1167, 1191–92 (9th Cir. 2022) (describing the "'new property' revolution" that "began with *Goldberg*" and was "developed" in *Roth* and *Sindermann*).

Although the Plaintiff concedes that there has been considerable debate as to whether, in addition to property interests driven from (implied) contractual protections, one had a property interest in college education and whether *Goss v. Lopez*, 419 U.S. 565 (1975) (*Goss*) would be applicable to college students, this debate ended in the Ninth Circuit very recently: **Dudley v. Boise State Univ., 152 F.4th 981 (9th Cir. 2025)**. As the Ninth Circuit noted—

"[I]t is not difficult to see how, for a recipient, a college degree 'resembles more traditional conceptions of property,' because it has an 'ascertainable monetary value,' one that can be measured in tuition payments. *See Redd*, 84 F.4th at 893-94 (citation omitted); *see also, e.g., Crook v. Baker*, 813 F.2d 88, 94 (6th Cir. 1987) (assuming that a university 'degree constituted an important property interest'). But a college degree opens additional opportunities to its recipient that cannot be reduced to the bursar's account. College and university degrees are frequently prerequisites for employment opportunities and admission to graduate school, professional programs, or, as relevant here, professional licensing. *See Goss v. Lopez*, 419 U.S. 565, 575, 95 S. Ct. 729, 42 L. Ed. 2d 725 & n.7 (1975) (observing that school discipline may 'interfere with later opportunities for higher education and employment'); *see also Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 n.1, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) [*Horowitz*] (noting that a medical student's dismissal would make it difficult for her to get into another medical school).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

*Dudley v. Boise State Univ*., 152 F.4th 981, 992 (9th Cir. 2025) (inner citations retained) (annotation added in brackets) (*Dudley*)[4]                .

Following *Dudley* [5], then, there is no question that a college education is a property interest within the meaning of the Due Process Clause of the Fourteenth Amendment. But the Plaintiff likely also has a liberty interest herein in her college education and degree. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [*sic*]" the minimal requirements of the Clause must be satisfied. *Wisconsin v. Constantineau*, 400 U. S. 433, 437 (1971) (*Constantineau*); *see also Roth,* 408 U. S. at 573. In *Constantineau*, the Supreme Court found that a Wisconsin statute allowing police to "post" a person's name in retail liquor outlets— forbidding alcohol sales to them without notice or a hearing—violated procedural due process, finding that acts that will damage a person's reputation implicate a liberty interest that cannot be taken away without procedural due process. Similarly, branding the Plaintiff *for life* as an 'academic fraud' and an 'expelled Stanford student' harms the Plaintiff's "good name, reputation, honor, [and] integrity" (*Constantineau, ibid*.). Further, as *Horowitz* recognized, the defendants' conduct hereto virtually make it impossible for the Plaintiff to be able to get a college education *anywhere* as the stain of being an expelled student will carry onward. As such, such a stain would make it impossible for the Plaintiff "to transfer to a different university to continue [her] education." *Doe v. Allee*, 30 Cal. App. 5th 1036, 1059 (2019), *overruled on other grounds* as stated in *Boermeester v. Carry*, 15

---

[4] Because *Dudley* finds a property interest *independently* of any state statute (*Dudley*, at p. 992), the Plaintiff finds it unnecessary to discuss the part of *Dudley* where it *also* found property interest driven from the Idaho Constitution (*Dudley*, at p. 991).

[5] Accordingly, cases like *Doe v. White*, 440 F. Supp. 3d 1074 (N.D. Cal. 2020) have been effectively overruled (collecting cases and finding that there is no definitive Ninth Circuit precedent holding that a student has a property interest in their college education, refusing to follow other circuits' opinions.).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

Cal. 5th 72 (2023). Put differently, "[I]f [the academic fraud charge is] sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Goss*, 419 U.S. at 574-5. As such, the Plaintiff has *both* a property and a liberty interest in her college education and the ultimate degree.

### b. The Plaintiff has a Life, Liberty, or Property Interest in Her Continued Enrollment, Implicating Procedural Due Process Safeguards

Because of the procedural posture in which the appeal arrived before the Ninth Circuit—and *only* because of the appellate posture—*Dudley* found it unnecessary to reach the question of a property interest in re-enrollment, as the Circuit Court "concluded that [because] [Dudley] has a property interest in her degree, it is both premature and unnecessary for us to consider her interest in re-enrollment[.]" *Dudley,* at p. 994. But, given the different facts of this instant case, a property analysis in continued enrollment is necessary. But preliminarily, as the Plaintiff alluded *supra* and as she shall establish *infra*, it is likely that an injunction to preserve the *status quo ante litem* is needed in this instant case, *regardless* of whether the Plaintiff has a property interest in re-enrollment. This follows logically from the preposition that because the Plaintiff has a property interest in her education, its continued deprivation because of the current *lis* is not a permissible outcome.

This is also in line with *Dudley*'s reasoning: Because Dudley had a property interest in her education, bachelor's degree, and diploma, and because she was deprived of those properties without due process of the law, she need not re-enroll and re-take her revoked credit for SOCWRK 481—without which she would not have obtained her bachelor's degree—*if* the revocation of her Bachelor's degree and education were improper. In the instant case, if the Plaintiff is right that she was expelled without the necessary process that was due to her, the expulsion would be annulled,

14

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No. 5:26-cv-03809-BLF

automatically conferring upon the Plaintiff the right to continue her education, as without the purported expulsion, and its nullification thereof by this Court, there is nothing *barring* her from re-enrollment. As such, in the instant case, the Plaintiff's liberty and property interest in her education and bachelor's degree its ***conjoined*** with her interest in continued education.  "After careful analysis, the Court finds the arguments in favor of a property interest to be persuasive on this point. **While admission into a college or university is not at all a guaranteed right, the value of continuing one's education <u>after one has been admitted</u> is plain**." *Zwick v. Regents of the Univ. of Mich.*, No. 06-12639, 2008 WL 1902031 , at \*15 (E.D. Mich. Apr. 28, 2008) (*Zwick*) (emphasis added). "The court found that the 'implied contractual right' amounted to 'the right to continued enrollment free from arbitrary dismissal,' which is the Due Process protection laid out in *Horowitz* and *Ewing*." *Zwick*, 2008 WL 1902031, at \*14 (cleared up). "**Surely no one can question that the right to remain at the college in which the plaintiffs were students in good standing is an interest of extremely great value.**" *Dixon v. Alabama State Board of Education* 294 F.2d 150, 157, *cert. denied* 368 U.S. 930 (1961) (*Dixon*) (emphasis added).

"Some district courts within the Ninth Circuit have held that there is a property interest in continued enrollment[.]" *Doe v. White*, 440 F. Supp. 3d 1074, 1086 (N.D. Cal. 2020) (*White*), citing *Hunger v. Lassner*, No. CIVIL 12-00549 LEK-RLP, 2014 WL 12599630 at \*13 (D. Haw. Apr. 30, 2014) and *Gamage v. Nev. ex rel. Bd. of Regents of Higher Educ.*, 647 F. App'x 787, 2014 WL 250245, at \*8 (9th Cir. 2016). To the extent that *White* cites some caselaw against this preposition in the same paragraph, those decisions were reached because "there is no entitlement to post-secondary education" *White*, at p. 1086, and, as explained *ante* at note 6, that reasoning has been eviscerated by *Dudley*. And as *Dudley* found that there was *indeed* a property right in college

education and degree, it appears to the Plaintiff that the main reason for the purported inapplicability of *Goss* on college students having been eviscerated, *Goss* remains applicable herein:

"[T]he total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary."
*Goss*, 419 U.S. at 576.

### c. The Plaintiff has a Life, Liberty, or Property Interest in the Continuation of her SEVIS Record, Implicating Procedural Due Process Safeguards

"[T]he Court finds a colorable claim for a violation of Plaintiff's **liberty interest** in her SEVIS registration." *W.B. v. Noem,* No. 25-cv-03407-EMC, 2025 WL 1180296, at *12 (N.D. Cal. Apr. 23, 2025). (emphasis added).[6] The Plaintiff also, thus, has a liberty interest in her SEVIS record and registration, implicating due process protections. However, once again, this claim does not need a separate analysis, as the Plaintiff's property interest in college education would *automatically* entitle her to the activation of her SEVIS status, as the Plaintiff cannot *study* without the SEVIS status.

### d. Having Concluded that Fourteenth Amendment's Procedural Due Process Standards Apply, the Pertinent Question becomes the Process that was Due

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

### 1. The Plaintiff did Not Receive the Most Basic Scintilla of Due Process

---

[6] But, *see, conferatur; Doe v. United States Dep't of Homeland Sec.*, No. 2:20-cv-09654-VAP-AGRx, 2020 WL 6826200, at *14 n.3 (C.D. Cal. Nov. 20, 2020) (emphasis added) ("Plaintiffs do not allege in the Complaint or Motion a **property interest** in their SEVIS status, it is equally unlikely that one exists."). Because the Plaintiff has a liberty interest, it would be unnecessary to argue for the existence of a property interest, as liberty interests alone call on Fourteenth Amendment protections.

16

The lack of *any*—the slightest scintilla of—due process protections is **_so_** extreme in the instant case that "[t]his [case] should be shocking not only to judges, but to the intuitive sense of liberty that Americans **far removed from courthouses** still hold dear." *Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *2 (4th Cir. Apr. 17, 2025) (emphasis added).

### 2. Insufficient/Improper Notice

Due process requires that the defendants provide notice that "give[s] the charged party a chance to marshal the facts in his defense and . . . clarif[ies] what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). "We hold only that, in being given an opportunity to explain his [*sic*] version of the facts at this discussion, the **student first be told what he [*sic*] is accused of doing and what the basis of the accusation is."** *Goss*, 419 U.S. at 582. As such, notice requirements in the instant case were two-fold: (1) Being told what one is accused of doing and (2) being told the basis of the accusation. Defendant Shaw's notice herein read, as alleged in the Supplemental Complaint and as included in Exhibit A to the Compl., was as follows: "I am reviewing certain matters that have come to Stanford's attention in connection with your application for admission to the University for the Class of 2027. Concerns have been raised that you may have misrepresented information in your application to Stanford [*sic*]. I was recently made aware that prior to entering Stanford in Fall 2023 you may have been enrolled at Rice University. [*sic*]" Exhibit E to the Compl., at p. 5. *See also* Compl., at ¶ 102-122. Indeed, as contained in Exhibit F Compl., despite repeated emailed requests by the Plaintiff to identify "the basis of the accusation," defendant Shaw explicitly refused to identify the basis of his accusation. *See* Exhibit F to the Compl., at pp. 79, 116. Further, a proper notice would be "a notice containing a statement of the specific charges and grounds which, if proven, would justify expulsion under the applicable regulations of the University" *Goldberg v. Regents of the University of California* 248 Cal. App. 2d 871, 881 (1967),

citing *Dixon*, in part. And, indeed, despite the Plaintiff repeatedly asking what information is alleged to *false* on the application—*i.e.*, what "would justify expulsion under the applicable regulations of the University"—Defendant Shaw refused to provide notice as to *what* regulation the Plaintiff violated, i.e. refused to explain *what* portion of the admissions application contract was alleged to be breached. *See, e.g.,* Exhibit F to the Compl., at p. 133. As such, the notice herein was improper and defective. Defendants were provided swaths of opportunity to cure the defective notice, but they elected not to.

### 3.  No Hearing

"When [the Fourteenth Amendment's protection of life, liberty, or property is] implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569-70. As is here, "[i]t is clear from the record that no hearing was ever held." *Goss*, 419 U.S. at 571. Indeed, defendants do not dispute that they have not provided *any* hearing and maintained in other forums that the Plaintiff was not entitled to a hearing. "At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing." *Goss*, 419 U.S. at 579. Indeed, because *no form* of hearing ocurred, this Court should halt its inquiry therein and not reach to anything further. The Plaintiff notes, however, the Supreme Court's caution: "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss,* 419 U.S. at 584. Since the instant case is a total exclusion from the educational system, as explained *supra*, it should be clear that more formal procedures would have needed to be followed.

### 4.  No Opportunity to Respond to or Challenge the Purported Evidence

18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

The opportunity to refute unfavorable evidence is an "immutable" principle of procedural due process: "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the **evidence** used to prove the Government's **case must be disclosed to the individual so that he has an opportunity to show that it is untrue**." *Greene v. McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959) (emphasis added). And "fundamental fairness"—the "touchstone" to determining whether a plaintiff received due process, *United States v. Harrington,* 749 F.3d 825, 828 (9th Cir. 2014) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320-21 (1985))—"requires that a party against whom an agency has proceeded be allowed to rebut evidence offered by the agency if that evidence is relevant," *Carnation Co. v. Sec'y of Labor*, 641 F.2d 801, 803 (9th Cir. 1981). *See Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1436-37 (9th Cir. 1986) (noting that a relevant consideration in a due process analysis is whether the parties "had an opportunity to rebut" evidence against them and finding no due process violation, in part, because the petitioners did have an "opportunity to respond to the documents" brought against them); see also *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Greene v. McElroy*, 360 U.S. 474, 496 (1959); *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082-83 (9th Cir. 2010) ("The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation and citation omitted)).

In the instant case, because Defendant Shaw *explicitly refused* to release any *evidence* or the *evidentiary record* to the Plaintiff for the Plaintiff to be able to question the validity of such purported evidence, procedural due process protections were violated. *See* Exhibit F to the Compl., at pp. 114, 116.

### 5.  Explicit Refusal to Allow Calling Witnesses and Cross-Examine Them

"Cross-examination is an important procedural safeguard. 'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.' *Goldberg*, 397 U.S. at 269. In American adversarial proceedings, '[c]ross-examination has always been considered a most effective way to ascertain truth.' *Watkins v. Sowders*, 449 U.S. 341, 349, 101 S. Ct. 654, 66 L. Ed. 2d 549 (1981) (footnote omitted); *see also Black Coal. v. Portland Sch. Dist*. No. 1, 484 F.2d 1040, 1045 (9th Cir. 1973) (suggesting that a school district could not expel high school students without allowing them to 'cross[-]examine adverse witnesses')." *Dudley*, 152 F.4th, at p. 997 (in-text citations retained). In the instant case, defendant Shaw *explicitly refused*, as delineated in Exhibit A to the Complaint, to allow the Plaintiff to call on witnesses that would have testified that Plaintiff was a resident in the state of Massachusetts during the time in which the defendants allege the Plaintiff physically attended a college in the state of Texas. Based on this fact alone, this Court should find that defendants violated procedural due process.

### 6.  No Separation of Functions

Granted, in an administrative proceeding, "the combination of investigative and adjudicative functions does not, **without more**, constitute a due process violation'" *Withrow v. Larkin*, 421 U.S. 35, 58, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (emphasis added). And, indeed, "due process is not necessarily violated when the school official who initiates, investigates, or prosecutes charges against a student plays **a role** in the decision to suspend the student." *Dudley*, 152 F.4th 981, 998-99, quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 567 (6th Cir. 2011) (emphasis added) (citations omitted). But herein, Defendant Shaw did not play just *a* role; he played *the only* role. He was the prosecutor, the judge, and the executioner. Compare this, for instance, with

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

*Dudley*'s assertion that "BSU violated the separation of functions when [Defendant] Law was in the room with the Student Conduct Board deciding Dudley's case." *Dudley*, at p. 996. While merely *being* in the decision-room would not be, without more, amount to a due-process violation, Defendant Shaw orchestrated a one-person executioner's table. Given that the Defendants also have not allowed any appeal to take on Defendant Shaw's unilateral decision, such *extreme* conjoining of all functions violates due process.

### 7.  Decision on Disputed Record

Again, "fundamental fairness" is the "touchstone" to determining whether a plaintiff received due process, *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320-21 (1985).  In the instant case, the defendants' entire decision rested on information *that was under FERPA dispute. See* Exh. F to the Compl. Fundamental fairness would require that the defendants waited until such dispute resolved itself. Indeed, Defendant Shaw promised that he would but later he did not. As such, by extension, the defendants herein also violated the Plaintiff's right to demand correction of education records under 20 U.S.C. 1232 g (a)(2). Although "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion[,]" *Wood v. Strickland*, 420 U.S. 308, 326 (1975), the absence of *any* tangible evidence—other than those that were under FERPA dispute—violate both the provisions of substantive and procedural due process.

### vi. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION FROM THIS COURT

"After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"*Ctr. For Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011). "Of course, while 'likely' is a higher threshold than 'possible,' the [movant] need not

21

prove that irreparable harm is certain or even nearly certain." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011).

**A.** ███████ s Irreparable Harm and It Is Imminent and Immediate

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████

**B. The Plaintiff Will be Harmed** ████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[7] Because the Plaintiff is not praying this Court ████████████████████

████████████████████████████████████ As such, the appropriate standard herein is *Winter*, not ████████

22

████████████████████████████████████████████████████

███████████████████

**C.** ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

**D. Continued Education**

"Monetary damages, no matter how substantial, are generally not considered irreparable harm as adequate compensatory relief will be available at a later date." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). However, "intangible injuries such as damage to reputation, advertising efforts, or goodwill may constitute irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance, Inc*., 944 F.2d 597, 603 (9th Cir. 1991). Further, if, in the absence of injunctive relief, Petitioner would not be able to vindicate their actual and potential due process rights, this alone is sufficient to satisfy the irreparable injury requirement. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). In the instant case, absent an injunction from this Court, the violation of constitutional rights would continue, particularly those relating to due process. Further, the loss of education, loss of prime years, and damage to reputation are likely intangible injuries herein that will constitute irreparable harm warranting relief from this

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.  5:26-cv-03809-BLF

Court. For instance, if this case was an employment termination case, preliminary injunction would likely not be in order because "loss of employment and corresponding benefits are harms that may be remedied by money damages and, therefore, are not irreparable." *Jaiyeola v. Apple, Inc.*, No. 5:23-cv-03462-EJD, 2023 WL 5418770 , at *5 (N.D. Cal. Aug. 22, 2023). This is because, in those cases, *retroactive* lost wages could be paid. But herein, in the case the Plaintiff prevails, what *retroactive* damages could the Plaintiff seek—school credit she could have earned had she not been expelled? Indeed, intangible benefits like 'course credit' and being able to finish undergraduate education timely (without loss of years) is *precisely* the intangible irreparable damage the Plaintiff has been experiencing. Indeed, the intangible injury herein "implicate[s] a dignity interest in full participation in the educational process. **Harm to a student's dignity and educational prospects constitutes irreparable injury**. *See Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (stating that 'injuries to individual dignity and deprivations of civil rights constitute irreparable injury' with regard to the ADA); *see also Chalk v. United States Dist. Court*, 840 F.2d 701, 710 (9th Cir. 1988) (finding that reassignment to different job constitutes irreparable injury, even though pay was equivalent, due to psychological harm)." *Chapman v. Ca. Dep't of Educ.*, 229 F. Supp. 2d 981, 989-90 (N.D. Cal. 2002) (emphasis added).

### VII. BALANCE OF EQUITIES TIPS IN THE PLAINTIFF'S FAVOR

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors <u>**decisively**</u> in his [*sic*] favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (emphasis added) (*Bonta*); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). The balance of equities factor focuses on "the effect of each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Having established, however, the utter disregard and violation of the Plaintiff's constitutional rights, defendants "cannot reasonably assert that **it is**

**harmed in any legally cognizable sense by being enjoined from constitutional violations**."

*Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (emphasis added).

### VIII. THE PROPOSED INJUNCTION IS IN THE PUBLIC INTEREST

It is "always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022). Indeed, "public interest concerns are implicated when a constitutional right has been violated, **because all citizens have a stake in upholding the Constitution**." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added); *see also Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023).

### IX. ALTERNATIVELY, PLAINTIFF HAS MET HER BURDEN FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION UNDER THE *WILD ROCKIES* TEST

"[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013), quoting *Wild Rockies*, 632 F.3d at 1135. *See also Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014). The Plaintiff satisfies this test.

### X. BOND SHOULD BE WAIVED OR SHOULD BE NOMINAL

Lastly, the Court should waive the discretionary bond requirement set forth in Fed R Civ P 65 because there will not be any harm to the defendants and likelihood of success on the merits is strong. *See Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success.").

### XI. CONCLUSION

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF

For the foregoing reasons, to preserve the *status quo ante litem*, the Plaintiff prays for this Court to issue mandatory and prohibitory preliminary injunction as previously identified at ECF No. 11-12.

Respectfully submitted,

DATED: May 24, 2026

/s/ *Jane Doe*
_____

JANE DOE
In Propria Persona

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No.  5:26-cv-03809-BLF