JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual, | ) Case No.: 5:26-cv-03809-BLF |
| | ) |
| Plaintiff, | ) **DECLARATION OF JANE DOE IN** |
| | ) **SUPPORT OF HER OPPOSITION TO** |
| v. | ) **THE DEFENDANTS' ADMINISTRATIVE** |
| | ) **MOTION TO EXTEND TIME** |
| BOARD OF TRUSTEES OF LELAND | ) |
| STANFORD JUNIOR UNIVERSITY, *et al.*, | ) [PUBLIC COPY OF DECLARATION FILED |
| | ) CONDITIONALLY |
| Defendants. | ) UNDER SEAL] |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

I, JANE DOE, hereby declare as follows:

1. I am the Plaintiff in this action and am thus authorized to execute this declaration hereof. All the information contained herein is based on my personal knowledge of the recitation of events and facts in this case, and, if called to testify on those recitations before any court of law, I would and could competently do so.

2. I wish to start this declaration by alerting this Court of the kind of counsel she is dealing with in this case so that the Court might be more readily able to pierce through counsel's spin on the facts in this case.

3. In a previous case in this District Court, presided over by the Honorable P. Casey Pitts, the same counsel who has submitted this motion filed a "Motion for Disclosure of Plaintiff's True Name in Court Filings."

4. The motion was largely about the defendants' subjective dissatisfaction of the Plaintiff's litigation strategies in other courts and the fact that her petitioning the government for redress of grievances damaged the defendants' "own reputations [and] institutional standing[.]" Dkt. No. 29 in *Doe v. Smith, et al.*, 5:25-cv-03490-PCP (N.D. Cal, filed on April 21, 2025), at p. 13 (hereinafter "Doe I"). These filings include, but are not limited to, a petition for writ of traditional mandamus the Plaintiff filed, alleging violation of Title IX, 20 U.S.C. §§ 1681–1688 in the form of harassment based on gender identity in an administrative decision made by the defendants herein.

5. Although the motion is quite heavy and includes 900 pages of documents "in support," the Plaintiff provides a cropped copy of the relevant part of that motion to this Court, in the hopes that the Court better understands the opposing counsel's fraud and misrepresentation before this District Court before.

6. As the Court can observe for herself, the opposing counsel herein made a statement, which under Rule 11 a party certifies to be true and correct, that the Plaintiff's verified petition for a writ of mandate to be issued on an order denying the Plaintiff's Challenge for Cause under California Code of Civil Procedure, section 170.1 "was also rejected" (Exh. A, at inner page no. 5: 9-10 [underlined portion]).

7. A true and correct copy of the writ of mandate issued by the Court of Appeal on that petition is hereby included as Exhibit B (signed by Grover, Acting P.J.).

8. It is unclear to me why Ms. McGarry decided to attempt to con that court or why she lied to that court in support of her motion. Indeed, if I was as vexatious and horrible of a person as she claims to be, then she did not need to lie to that court to convince him of such alleged vexatiousness.

2

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS'
ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

9. Having elucidated Ms. McGarry's previous disbarrable offenses before this Court (intentional misrepresentation of factual matters in violation of a duly admitted member of the Bar's **duty of candor to any court**), for which the Plaintiff intends to file a motion to disqualify counsel for ethical misconduct, because our District Courts are not *playgrounds of deception* by overly-zealous counsels, the Plaintiff proceeds to elucidate more of Ms. McGarry's gamesmanship when it came to service of complaints and summonses in other actions.

10. In another case where Ms. McGarry was representing the defendants herein, the Complaint and Summons was served on a defendant by my friend, who was, at the time, employed as a research assistant at Stanford.

11. Two or so weeks after my friend effectuated service on the there-defendant, I got an electronic mail from someone named Renée Sombilon, PHR, who indentified herself to be a "Sr. Human Resources Business Partner for the Schools of Humanities and the Sciences." She sent me an email entitled "confidential investigation." A true and correct copy of this email is appended herein as Exhibit C.

12. At the time I was not aware of what the "investigation" was about, and Ms. Sombilon refused to clarify the content of the investigation, but because she told me that I was mandated to appear before her or that I would violate "The Fundamental Standard" (a code of conduct for undergraduate students at Stanford) if I did not appear before her, I agreed to a Zoom meeting with her.

13. During the Zoom meeting, Ms. Sombilon asked me if I had "sex" with my friend who had effectuated service on the there-defendant, which Ms. Sombilon alleged would be barred under the Fundamental Standard because I was undergraduate student and my friend was a member of Stanford's staff.

14. I told her that I and the said friend dated briefly in high school as we attended the same high school, but I did not have "sex" with them.

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS'
ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

15. I understand that that "investigation" did not bear fruit, *see* Exhibit D, but my friend was deeply harmed in the process, psychologically, and the "investigation" prevented them from timely renewing their employment contract with Stanford.

16. I bring these facts up because I think this is defendants' way of ensuring that service cannot be effectuated on them, as I cannot afford professional service processors and the only people I know that can serve the defendants court papers are other Stanford affiliates, against which the Defendants retaliate when they serve papers on them.

17. In that action where service was effectuated by my friend, Ms. McGarry moved that court to quash proof of service, but, then, she filed a demurrer two weeks after, effectively rendering her motion to quash service moot. I can only assume that this was Ms. McGarry's smart attempt to extend her time to answer that complaint.

18. I am a little bit unclear why Ms. McGarry chose to take these steps, as if she had just told me that she needed more time to answer the complaint, I would have stipulated to an extension of her deadline to answer or otherwise respond gladly.

19. In *Doe I*, Ms. McGarry indicated to me that she was intending to file a motion to quash proof of service because the U.S. Marshal's office "did not check the boxes" on the return form. I understand that the U.S. Marshal's service corrected this error on its own motion.

20. But to not waste scarce judicial resources, I agreed to sign a stipulation extending Ms. McGarry's time to answer or otherwise respond to the complaint.

21. To sign the stipulation, I agreed to a meeting with Ms. McGarry and her colleague, whom, if memory recalls correctly, was called Mr. Wexler.

22. During the meeting, I asked Ms. McGarry if she was contesting the legal sufficiency of the proof of service on file or whether she was maintaining that defendants did not receive actual notice of the action.

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS' ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

23. Ms. McGarry told me that the case was the latter and that the defendants did not receive actual notice of the complaint.

24. I see that Defendant Smith, *see* Exhibit C to the Compl. at 15: 6-7, confirms actual notice of the complaint and summons on "5/26/2025, at approximately 09:11 hours" (*Ibid*).

25. Again, it is unclear to me why Ms. McGarry chose to deceive me, as if she had told me that she needed more time to answer or otherwise respond to the complaint, I would have gladly agreed to stipulate to extending her time to answer or otherwise respond.

26. In *Doe I*, the court therein indicated intent to deny the Plaintiff's Motion to Set Aside Stipulated Dismissal on April 28, 2026.

27. After the hearing, I sent an email to Ms. McGarry's co-counsel herein, Jacob R. Sorenson, writing, in part, "I'll file a new complaint tomorrow and will serve the TRO on you. I presume email should be fine for notifying of the TRO?" A true and correct copy of this email is attached as Exhibit D.

28. I did not receive a response to that email.

29. The motion for temporary restraining order filed in this action was substantially the same motion filed in *Doe I* and filed again in this case in the form of a motion for preliminary injunction.

30. On May 2, 2026, I again emailed all the counsels herein, providing them with an unredacted copy of the motion for temporary restraining order filed in this Court. A true and correct copy of this email is attached as Exhibit E.

31. I again did not receive a response to that email.

32. On May 13, 2026, a day after this Court ordered the U.S. Marshal's service to effectuate service of the complaint and the summons, I again emailed opposing counsels and wrote, in part, "Since you have indicated in the past that you will be representing the defendants in the above-captioned litigation (please correct me if that's not true), I wanted to inquire

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS' ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

if you will be willing to waive personal service on them and have service be effectuated on you by providing you with a copy of the operative complaint, summons, and two copies of the appropriate waiver form. **This would likely preserve scarce judicial resources and the scarce resources of the U.S. Marshal's service**." Exh. F (emphasis added).

33. I checked up on that email again a day later.

34. I did not receive any response to that email.

35. On May 21, 2026, Ms. McGarry emailed me, writing "We understand that copies of the redacted second amended complaint were served on certain defendants yesterday by the U.S. Marshals service.  Please provide an unredacted copy of the complaint immediately[.]" Exh. G at 2.

36. After confirming that Ms. McGarry would be representing all the defendants herein except Defendant Morgan-Herman, I immediately a provided a copy of the unredacted complaint, an hour or so after her initial email. Exh. G at 3.

37. Ms. McGarry asked me, two or so hours later, copies of exhibits lodged with this Court in support of the Complaint.

38. I sent Ms. McGarry a box.com link that contained what I thought was all of the exhibits.

39. Ms. McGarry identified two exhibits that were not in that box.com link. These exhibits were a declaration that defendants submitted to the Court in *Doe I* and another declaration submitted to the Court in *Doe I* that defendants of which the defendants were provided a copy thereof.

40. I immediately uploaded the purportedly missing exhibits to the same box.com link and notified Ms. McGarry.

41. I also supplied her with a copy of the Notice of Pendency of Other Action that was filed in this Court before they sent me an email.

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS'
ADMINISTRATIVE MOTION TO EXTEND TIME
5:26-cv-03809-BLF

42. I sent four emails to Ms. McGarry thereafter, asking her to confirm the proper email addresses to effectuate service, but I did not receive any response to those inquiries. *See* Exh G.

43. Indeed, just two days ago, I sent Ms. McGarry an email checking up on my previous emails so that she can inform me of the correct email address where she will accept service of the other materials filed under seal. *See* Exh G.

44. At the time of writing this declaration, I still have not heard back from Ms. McGarry, clarifying the proper way to transmit sealed documents in this case and am awaiting response to my four unanswered emails to be able to effectuate service of the other sealed pleadings in this matter, when she confirms the proper way to effectuate service of them on her.

45. In the meantime, to ensure that defendants were aware of the Motoin for Preliminary Injunction filed in this case, I had my fiancé serve on the defendants both the redacted and the unredacted motion for preliminary injunction. *See* ECF No. 66. My fiancé executed this service from an email address belonging to a "John Doe" because he was affliated with Stanford's Department of Economics and Law School until a week ago (when his research trip concluded), researching the economical impacts of environmental regulation, and I was worried that Ms. McGarry would subject him to the same treatment that she subject my friend to who previously served on her clients various court documents.

46. On May 27, 2026, I sent an email to Ms. McGarry and her co-counsels herein. The email was entitled, "Time-Sensitive: Meet and Confer, Re: Expedited Briefing." A true and correct copy of this emailing chain is appended herein as Exh. H.

47. The email was part of my duty to obtain a stipulation under Civil L.R. 6-3(a)(2) before moving this court for a change of time.

7

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS'
ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

48. Unlike Ms. McGarry, I take the demands this Court's standing order and local rules place on me very seriously and if a violation of them occurs in this case, it is due to oversight and not done with an intent to violate them.

49. Ms. McGarry responded to my email and asked me to respond to her "by noon PST tomorrow whether you are amenable to stipulating to the above schedule[.]" *See* Exh. H.

50. I scheduled an email to her to be sent on May 28, 2026, by noon her time zone, which corresponded with 10:00 PM my time zone as I am located in Northern Europe. A true and correct copy of this scheduled email is provided to this Court at Exh. I (noting "Send scheduled for 10:00 PM").

51. When an email chain is printed for review on Gmail, any scheduled emailings thereto, any scheduled emailings become part of that record, and the time stamp on them become affixed to the time in which the scheduled time appears.

52. This scheduled time, for instance, appeared on the exhibit I provided to this Court at ECF No. 63-8.

53. There was a reason why my email was scheduled to be sent at noon at Ms. McGarry's time, although I suspect that Ms. McGarry will not understand the importance of this, given that it appears that she subscribes to a very different ethical code than I do, but, for the avoidance of doubt, I will elucidate it to this Court because Ms. McGarry implies that I did something *morally wrong*.

54. Most of my formative years of ethical training were completed and done during Hebrew School in my youth, under the tutelage of an Orthodox rabbi belonging to one of the last remaining Synagogues in my hometown, located in a part of the city that is often dubbed as a "Jewish ghetto."

55. During those formative training experiences, I was taught Hebrew and was made to read canonical Jewish texts. I was taught, for instance, the concept of לשון הרע (Lashon hara) and how what the tongue utters can be as hurtful as—or even more hurtful than—

8

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS' ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

physical violence. I was taught that the tongue can exert immense damage on others and that my tongue should not be used in such ways.

56. I understand that this concept, for instance, is completely *incomprehensible* to Ms. McGarry.

57. But, in a pluralistic society like ours, where laws depend on secular reasoning and not some hermeneutical analysis of sacred texts, I cannot force Ms. McGarry to follow *my* ethical and religious code, just as she cannot force me to follow *hers* (which seems to be based on some rather poor and rudimentary understanding of the New Testament and its circulation as purportedly secular morality in American society).

58. Another important concept that my rabbi taught me was חֶסֶד (*chesed*), the idea of showing kindness and courtesy to people that extends well beyond what is required of one by the law and customs because not doing so eviscerates the God's mercy toward humans and humankind.

59. I was taught that subscribing to the concept of חֶסֶד required me to be courteous to people.

60. As such, I thought sending Ms. McGarry an email that would have been sent to her at 4AM her time would have been uncourteous and unprofessional.

61. And because she told me to email her at "noon," I scheduled my email to be sent to her at noon her time, rather than having her get an email notification at the middle of the night from me (I understand that Ms. McGarry recently returned from maternity leave and I thought she would already be tired from taking care of her newborn).

62. I understand now, however, that showing Ms. McGarry courtesy was *wrong*.

63. But my ethical code requires me to continue to abide by the concept of חֶסֶד even when dealing with people that do not deserve courtesy. As such, although she is undeserving of my grace and understanding, I am, unfortunately, compelled to continue to show her courtesy and respect because of my ethical beliefs.

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS'
ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF

64. I find this situation quite difficult to be in, and I hope I did not take canonical Jewish texts as seriously as I do—nonetheless, I do.

65. Because defendants had notice of the contents of the motion for preliminary injunction for two months now, and **because departing from regular procedure** is not warranted herein, and because no good cause exists other than Ms. McGarry's general meanderings about how horrible of a person I am for suing them, and because defendants should not be granted 3 months to oppose a 25-page motion, I respectfully—**yet in the most emphatic way possible**—pray that this Court will deny the defendants' administrative motion—based, also, in part of how much they delayed proper service to be effectuated on them in this case and in other cases—and will not **depart from the provisions of Civil L.R. 7-3(a) because of Ms. McGarry's arbitrary whims and quips and desires** and her desire to be cruel to people simply because they are their litigation opponent.

I hereby declare under the penalty of perjury under the laws of the United States that the foregoing is, to the best of my knowledge and ability, true and correct. Executed on this 29th day of May in this year of 2026.

*/s/ Jane Doe*
_____

JANE DOE
In Propria Persona

[Exhibits appended in Support of this Declaration is filed under seal, pending this Court's disposition of the motion for leave to proceed pseudonymously.]

DECLARATION OF JANE DOE IN SUPPORT OF HER OPPOSITION TO THE DEFENDANTS' ADMINISTRATIVE MOTION TO EXTEND TIME

5:26-cv-03809-BLF