PILLSBURY WINTHROP SHAW PITTMAN LLP
JACOB R. SORENSEN (Cal. Bar No. 209134)
jake.sorensen@pillsburylaw.com
STACIE O. KINSER (Cal. Bar No. 300529)
stacie.kinser@pillsburylaw.com
KHYRSTYN ("NAN") MCGARRY (Cal. Bar No. 318677)
nan.mcgarry@pillsburylaw.com
EMILY YOUNG (Cal. Bar No. 357173)
emily.young@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    (415) 983.1000
Facsimile:    (415) 983.1200

Attorneys for Defendants
THE BOARD OF TRUSTEES OF THE LELAND
STANFORD JUNIOR UNIVERSITY, STANFORD
UNIVERSITY DEPARTMENT OF PUBLIC SAFETY,
LAURA L. WILSON, JASON A. SMITH, JASON BARNES,
JON HERNANDEZ, RICHARD HARDING SHAW, JR.,
MICHAEL DEVLIN, JEN CASEBEER-BLUM, DEBRA L.
ZUMWALT, PARINAZ ZARTOSHTY, SHIRLEY J.
EVERETT, and JAMES R. JACOBS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, et al.,<br><br>Defendants. | Case No. 26-cv-03809-BLF<br><br>**STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date: October 29, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1<br><br>Second Amended Complaint Filed:  May 11, 2026<br><br>Judge:  Hon. Beth Freeman |

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ............................................................................1

CONCISE STATEMENT OF RELIEF REQUESTED.................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.   INTRODUCTION ................................................................................................1

II.  FACTS ALLEGED IN SAC................................................................................3

III. PROCEDURAL BACKGROUND......................................................................5

IV.  LEGAL STANDARD UNDER 12(B)(6),..........................................................5

V.   ARGUMENT .......................................................................................................6

A.   Doe fails to state a claim under federal law..........................................6

1.   Section 1983 (First, Second, Third, and Fourth Causes of Action)...................6

2.   Section 1985(3) (Fifth Cause of Action) ...........................................................11

B.   Doe fails to state a claim under California law....................................11

1.   Civil rights claims ................................................................................11

a.   Bane Act (Cal. Civ. Code § 52.1) (Sixth Cause of Action)................11

b.   Unruh Act (Cal. Civ. Code § 51) (Seventh Cause of Action)..............13

2.   Tort claims .......................................................................................14

a.   Intrusion Upon Seclusion (Eighth Cause of Action) ...........................14

b.   Defamation (Ninth Cause of Action)....................................................16

c.   Fraud (Sixteenth Cause of Action) .......................................................16

d.   Negligence (Seventeenth Cause of Action) ..........................................17

e.   Negligent and Intentional Infliction of Emotional Distress (Eighteenth Cause of Action)................................................................19

f.   Respondeat Superior (Nineteenth Cause of Action)............................20

3.   Contract and contract-related claims ...............................................20

a.   Breach of Contract (Tenth Cause of Action) .......................................20

b.   Breach of Implied Contract (Eleventh Cause of Action).....................21

c.   Quantum Meruit (Twelfth Cause of Action) ........................................22

d.   Implied Covenant of Good Faith (Thirteenth Cause of Action)..........23

e.   Interference with Contract (Fourteenth Cause of Action) ...................24

f.   Promissory Estoppel (Fifteenth Cause of Action) ...............................25

VI.  CONCLUSION...................................................................................................25

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Albert's Organics, Inc. v. Holzman*,
445 F. Supp. 3d 463 (N.D. Cal. 2020) ...............................................................................20

*Allen v. City of Sacramento*,
234 Cal. App. 4th 41 (2015) ...............................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................24

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
No. 07-cv-02864-JSW, 2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ............................25

*Barker v. Fox & Assocs.*,
240 Cal. App. 4th 333 (2015) .............................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................5

*Berlanga v. Univ. of San Francisco*,
100 Cal. App. 5th 75 (2024) ...............................................................................................21

*Boyle v. Torres*,
756 F. Supp. 2d 983 (N.D. Ill. 2010) .................................................................................10

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993).............................................................................................................11

*Butler v. Elle*,
281 F.3d 1014 (9th Cir. 2002) ............................................................................................11

*Cabesuela v. Browning-Ferris Indus.*,
68 Cal. App. 4th 101 (1998) ...............................................................................................16

*Campbell v. Feld Entertainment Inc.*,
No. 12–CV–4233–LHK, 2014 WL 1366581 (N.D. Cal. Apr. 7, 2014) ............................13

*Clifford v. Regents of Univ. of Cal.*,
No. 2:11–CV–02935–JAM, 2012 WL 1565702 (E.D. Cal. Apr. 30, 2012)......................12

*Cochran v. Cochran*,
65 Cal. App. 4th 488 (1998) ...............................................................................................19

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ..............................................................................................19

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*,
112 F. Supp. 3d 1048 (C.D. Cal. 2015) ...................................................................13

*DeSantis v. Pacific Tel. & Tel. Co.*,
608 F.2d 327 (9th Cir. 1979) ..................................................................................11

*Doe v. Smith*,
No. 25-cv-03490-PCP (filed April 21, 2025) ................................................... *passim*

*Duronslet v. Cnty. of Los Angeles*,
266 F. Supp. 3d 1213 (C.D. Cal. 2017) ...................................................................14

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) .............................................................................................17

*Faiaz v. Colgate Univ.*,
64 F. Supp. 3d 336 (N.D.N.Y. 2014) .......................................................................10

*Fayver v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ...................................................................................5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ...................................................................................15

*Gayer v. Polk Gulch, Inc.*,
231 Cal. App. 3d 515 (1991) ...................................................................................13

*Guapo-Villegas v. City of Soledad*,
2024 WL 4093919 (N.D. Cal. Sept. 4, 2024) .............................................................5

*Harris v. Capital Growth Investors XIV*,
52 Cal. 3d 1142 (1991) ............................................................................................14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .............................................................................................14

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) .................................................................................17

*In re De Laurentiis Ent. Grp. Inc.*,
963 F.2d 1269 (9th Cir. 1992) .................................................................................22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................14

*Int'l Metaphysical Ministry, Inc. v. Wisdom of Heart Church*,
No. 21-CV-08066-KAW, 2022 WL 19691043 (N.D. Cal. Dec. 19, 2022).................6

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App.4th 809 (2007) ..............................................................................21, 22

-iii-

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................................................................16

*Koire v. Metro Car Wash*,
   40 Cal. 3d 24 (1985) ...............................................................................................................13

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
   60 Cal. App. 3d 885 (1976) .....................................................................................................25

*Langan v. United Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014) ......................................................................................20

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .....................................................................................................6

*Luxul Tech. Inc. v. NectarLux, LLC*,
   No. 14–CV–03656-LHK, 2015 WL 4692571 (N.D. Cal. Aug. 6, 2015) .....................................25

*Malloy v. Fong*,
   37 Cal. 2d 356 (1951) .............................................................................................................20

*Mapsong PC v. Blue Shield of California Life & Health Ins. Co.*,
   780 F. Supp. 3d 939 (C.D. Cal. 2024) ...............................................................................22, 23

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .....................................................................................................6

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .....................................................................................................6

*Muhammad v. Garrett*,
   66 F. Supp. 3d 1287 (E.D. Cal. 2014), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F.
   App'x 982 (9th Cir. 2016) ........................................................................................................12

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................................................10

*Nichols v. Azteca Rest. Enters., Inc.*,
   256 F.3d 864 (9th Cir. 2001) ...................................................................................................11

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) ....................................................................................................9

*Oasis West Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ............................................................................................................20

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ...................................................................................24

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ......................................................................................................5

*Rasmusson v. Chisago Cnty.*,
  991 F. Supp. 2d 1065 (D. Minn. 2014)........................................................................................15

*Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*,
  52 Cal. 4th 1171 (2011) ..............................................................................................................22

*Richards v. Centripetal Networks, Inc.*,
  709 F. Supp. 3d 914 (N.D. Cal. 2024) ........................................................................................24

*Robinson v. Davis*,
  447 F.2d 753 (4th Cir. 1971) .......................................................................................................10

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ........................................................................................23

*Sanchez v. City of Fresno*,
  914 F. Supp. 2d 1079 (E.D. Cal. 2012)........................................................................................12

*Sanders v. Am. Broad. Companies, Inc.*,
  20 Cal. 4th 907, 914–15 (1999) ..................................................................................................14

*Siganporia v. Shreyas*,
  No. 5:25-CV-03145-BLF, 2025 WL 2243643 (N.D. Cal. Aug. 6, 2025).....................................19

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .......................................................................................................6

*Sunrise Country Club Ass'n v. Proud*,
  190 Cal. App. 3d 377 (1987) .......................................................................................................13

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ................................................................................................................16

*Tekle v. United States*,
  511 F.3d 839 (9th Cir. 2007) .......................................................................................................19

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) .....................................................................................................11

*Univ. of S. California v. Superior Ct.*
  30 Cal. App. 5th 429 (2018) ........................................................................................................18

*Wallin v. Vienna Sausage Mfg. Co.*,
  156 Cal. App. 3d 1051 (1984) .....................................................................................................16

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .........................................................................................................6

110043631.v1

<u>Constitutions</u>

California Constitution
    Article I ..................................................................................................................12
    Article I, Section 2 ................................................................................................12

United States Constitution
    First Amendment ....................................................................................................6

<u>Statutes and Codes</u>

United States Code
    Title 28, Section 1915 ............................................................................................5
    Title 42, Section 1983 .................................................................................. *passim*
    Title 42, Section 1985 ..........................................................................................11
    Title 42, Section 1985(3) .................................................................................6, 11

California Civil Code
    Section 47(b) ........................................................................................................16
    Section 51..............................................................................................................13
    Section 52.1(k) ......................................................................................................12
    Section 1084, *et seq*. ...........................................................................................16

California Penal Code
    Section 529(a)(3) ..................................................................................................10
    Section 830.6.........................................................................................................7

<u>Rules and Regulations</u>

Code of Federal Regulations
    Title 34, Section 99.31(a)(2) .........................................................................15, 17

Federal Rules of Civil Procedure
    Rule 12(b)(6).............................................................................................1, 5, 6, 13
    Rule 60(b) ...............................................................................................2, 5, 9, 12

<u>Other Authorities</u>

1 Witkin, Summary of California Law, Contracts, Section 97 .........................................23

Restatement (Second) of Torts, Section 652B cmt. c. ....................................................14

Restatement (Third) of Torts, Section 42 ......................................................................18

110043631.v1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 29, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard, before The Honorable Beth Freeman in Courtroom 1 of the above-entitled court, located at 280 South First Street, San Jose, CA 95113, Defendants The Board of Trustees of the Leland Stanford Junior University ("Stanford"), Stanford University Department of Public Safety ("SDPS"), Laura L. Wilson, Jason A. Smith, Jason Barnes, Jon Hernandez, Richard Harding Shaw, Jr., Michael Devlin, Jen Casebeer-Blum, Debra L. Zumwalt, Parinaz Zartoshty, Shirley J. Everett, and James R. Jacobs (collectively, the "Stanford Defendants") will and hereby do move to dismiss all claims asserted against them in the Second Amended Complaint (the "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the SAC and all other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing.

**CONCISE STATEMENT OF RELIEF REQUESTED**

By this motion, the Stanford Defendants respectfully request an order dismissing all causes of action in the SAC asserted against them (Causes of Action Nos. 1-19) with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has already been afforded leave to amend following the Court's screening order (Dkt. 31), yet the SAC continues to fail to allege facts establishing state action, any constitutional deprivation, or the essential elements of her state-law claims. Because the defects are legal and cannot be cured through further amendment, dismissal should be without leave to amend.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case concerns a straightforward and lawful decision by Stanford to rescind Plaintiff's admission after discovering that her admissions application omitted a material fact: before matriculating at Stanford, Plaintiff had already enrolled as a student at William Marsh Rice University ("Rice"). This is Plaintiff's second federal lawsuit filed against Stanford and SDPS in the

-1-

110043631.v1

last year; she dismissed the first one with prejudice and Judge Pitts denied her Rule 60(b) motion to set aside the dismissal.  This is also Plaintiff's second attempt to seek court review of the admissions rescission; she has filed a petition for administrative mandamus in state court, which remains pending.  The present action seeks an emergency injunction ordering Stanford to reinstate Plaintiff's student visa and other student benefits.  To achieve this goal, she attempts to cast a private university admissions determination into a sprawling conspiracy spanning nearly 300 paragraphs, 19 causes of action, hundreds of pages of incorporated documents, and dozens of paragraphs concerning interactions with SDPS officers that Plaintiff herself admits are "largely irrelevant" to her claims.  This Court—having screened Plaintiff's prior complaint, dismissed every cause of action, and explained in detail why Plaintiff had failed to state any viable federal or state-law claim—is familiar with Plaintiff's allegations and their deficiencies.  The SAC does not cure those deficiencies.

According to the SAC, Stanford administrators, SDPS personnel, and numerous individual employees allegedly conspired to retaliate against Plaintiff for filing the earlier lawsuit against Stanford and two SDPS officers.  But the documents Plaintiff incorporates into the SAC by reference—including the declaration of Stanford's Dean of Undergraduate Admissions and Financial Aid, Richard Shaw—demonstrate that Stanford independently investigated Plaintiff's admissions history after reviewing information contained in a police report and thereafter concluded that Plaintiff had failed to disclose her enrollment at Rice.  Those same incorporated documents directly contradict Plaintiff's central allegation that Stanford acted at the direction of SDPS or any governmental actor.

In its May 8 screening order, the Court held that Plaintiff failed to allege facts plausibly establishing state action, an essential element of her constitutional claims under 42 U.S.C. § 1983.  The SAC does not cure that defect. Although Plaintiff adds new allegations concerning SDPS and its officers, she still does not allege facts showing that any governmental actor possessed any authority over Stanford's admissions decisions or participated in the admissions investigation into Plaintiff.  At most, the SAC alleges information sharing between university personnel and campus police— conduct that falls far short of the joint-action or conspiracy theories required to transform private conduct into state action.

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

The SAC fares no better with respect to Plaintiff's numerous state law claims under civil rights statutes, tort, and contract law.  These causes of action merely recite elements in place of well-pled facts, rely on allegations contradicted by the documents Plaintiff incorporates into the SAC, fail to allege essential elements, or advance legal theories that are foreclosed as a matter of law.

The Bane Act claim (Sixth Cause of Action) again fails because Plaintiff alleges no threats of violence or state action.  The Unruh Act claim (Seventh Cause of Action) fails because Plaintiff pleads no facts suggesting that any action was taken because of her sex or transgender status.  The tort claims (Eighth, Ninth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Causes of Action) fail because the alleged conduct does not constitute an actionable invasion of privacy, defamation, fraud, negligence, or intentional infliction of emotional distress as a matter of law.  And Plaintiff's contract-based claims (Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action) rest primarily on the legally unsupported premise that Stanford promised Plaintiff unconditional enrollment through graduation, notwithstanding express statements reserving Stanford's right to rescind admission in a variety of circumstances.

After multiple opportunities to plead viable claims and after receiving detailed guidance from this Court regarding the deficiencies in her allegations, Plaintiff still has not stated a cognizable cause of action against any Stanford Defendant.  Because the SAC fails to state any claim upon which relief can be granted and because further amendment would be futile, the Stanford Defendants respectfully request that the Court dismiss the SAC in its entirety and without leave to amend.

## II.    FACTS ALLEGED IN SAC

Plaintiff is a former undergraduate student at Stanford, who alleges that she was expelled in retaliation for filing a complaint in this judicial district.  SAC ¶ 184, *see also Doe v. Smith*, No. 25-cv-03490-PCP (filed April 21, 2025) ("*Doe I*").  In fact, Plaintiff's admission to Stanford was rescinded because her application did not disclose that she was already enrolled at Rice when she applied to Stanford.  SAC ¶¶ 103, 158, Ex. E to SAC at RSHAW_000161-65.

The SAC asserts claims against (1) Stanford; (2) SDPS; (3) individual SDPS officers and employees; and (4) individual Stanford administrators, including Stanford's General Counsel, Dean of Admissions & Financial Aid, and the individuals who oversee Stanford's international student

-3-

110043631.v1

office, housing office, and student health center.  SAC ¶¶ 2–12.  In an attempt to supply the state action element for Plaintiff's federal civil rights claims, the SAC contains at least 65 paragraphs about Plaintiff's interactions with SDPS officers Smith, Barnes, and Hernandez in various matters, including the 3-minute interview with Officer Smith that formed the basis of Plaintiff's dismissed claims in *Doe I*.  Plaintiff admits, however, that those allegations are "largely irrelevant" to her claims in the SAC.  SAC ¶ 20 and ¶ 34 n.9.  The crux of the SAC is Plaintiff's claim that, after and in retaliation for her filing the complaint in *Doe I*, Stanford administrators began to investigate her application for admission to Stanford and thereafter "expelled" her.  SAC ¶¶ 89-96.

Plaintiff alleges that she provided her ID card to SDPS in 2024 and that, after she filed the *Doe I* lawsuit, SDPS provided Plaintiff's ID to Stanford's Dean of Admissions, Richard Shaw, with the "clear instruction" to start investigating Plaintiff's admissions application to Stanford.  SAC ¶ 89.  The significance of the ID was that it showed a Houston street address which turned out to be a dorm at Rice.  As Shaw explained in his declaration, which Plaintiff "incorporates … by reference herein as if fully set forth herein because the Complaint necessarily relies on [it]" (SAC ¶ 86 n.18), ██████████████████████████████████████████████████████████████ ██████████████████████████████████.  Dkt. 12-2, ¶¶ 8-9.  Shaw's investigation revealed that Plaintiff, who was admitted to Stanford as a first-year student, failed to disclose that she had previously matriculated at Rice.  *Id.* ¶ 103, 158, Ex. E to SAC at RSHAW_000161-65.

Plaintiff alleges that during the investigation Shaw and Debra Zumwalt, Stanford's General Counsel, sought certain educational records from Rice and that Shaw asked Plaintiff to sign a consent form so that Rice could release additional records, but *Plaintiff refused to sign the consent form*.  SAC ¶¶ 107–109; Ex. E to SAC at RSHAW_000132-35.  Plaintiff further alleges that during the investigation, which occurred over the summer while she was traveling internationally, she began experiencing health issues but could not access the mental health resources shared with her by Shaw and Dr. James Jacobs (the Director of Stanford's student health center), and that she "attempted to commit suicide."  SAC ¶¶ 123–129.

On August 21, 2025, Shaw issued his decision to rescind Plaintiff's admission, which

-4-

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

Plaintiff alleges occurred without giving her a hearing or an opportunity to respond to the evidence. SAC ¶¶ 122, 139. Plaintiff alleges Parinaz Zartosthy (director of Stanford's international student center) "effectively annul[ed]" her student visa and Shirley Everett (head of Stanford's student housing unit) cancelled her rental contract for on-campus housing. *Id.* ¶¶ 158–162.

## III. PROCEDURAL BACKGROUND

In April 2025, Plaintiff filed the original complaint in *Doe I* against Smith, SDPS, and Stanford alleging that Smith violated her constitutional rights while investigating her alleged impersonation of another party in state court. SAC ¶ 74; *see also Doe I*, at ECF No. 1 ¶¶ 9–55. In August 2025, Plaintiff dismissed *Doe I* with prejudice via stipulation. In April 2026, Plaintiff moved under Fed. R. Civ. P. 60(b) to set aside the dismissal, re-open *Doe I*, and file an amended complaint alleging substantially the same causes of action now included in the SAC. *Doe I,* ECF No. 101. Judge Pitts denied Plaintiff's Rule 60(b) motion. *Doe I,* ECF No. 155. Shortly thereafter, Plaintiff filed the original complaint herein, and an application to proceed *in forma pauperis*. Dkt. 2. Pursuant to 28 U.S.C. § 1915, this Court screened Plaintiff's complaint. On May 8, 2026, this Court issued an Order Screening Complaint and Dismissing Complaint with Leave to Amend ("First Screening Order"), dismissing all eighteen causes of action, and allowing amendment as to seventeen, with specific instructions regarding the deficiencies in Plaintiff's complaint. Dkt. 31.

## IV. LEGAL STANDARD UNDER 12(B)(6),

To avoid dismissal under Rule 12(b)(6), Plaintiff must "set forth a set of facts that, if true, would entitle the complainant to relief." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)." *Guapo-Villegas v. City of Soledad*, 2024 WL 4093919, at *2 (N.D. Cal. Sept. 4, 2024). Accordingly, the Court "do[es] not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayver v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Allegations that merely recite the elements of a claim, even if framed as factual allegations,

do not suffice. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). A plaintiff cannot plead a cause of action by simply incorporating all preceding paragraphs of the complaint. *See, e.g.*, *Int'l Metaphysical Ministry, Inc. v. Wisdom of Heart Church*, No. 21-CV-08066-KAW, 2022 WL 19691043, at *8 (N.D. Cal. Dec. 19, 2022) (explaining the Ninth Circuit has "flatly rejected this type of pleading" where it "fails to give adequate notice of the factual premise of a claim").

Under the incorporation-by-reference doctrine, documents incorporated into the complaint are treated as part of the pleading and may be considered on a Rule 12(b)(6) motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (explaining that a court may treat a document on which the complaint necessarily relies as "part of the complaint" and may assume its contents are true for purposes of a Rule 12(b)(6) motion). Courts, however, "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296–97 (9th Cir. 1998).

A motion to dismiss is properly sustained without leave to amend where amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Dismissal without further leave to amend is proper where a plaintiff has repeatedly failed to cure pleading deficiencies after prior amendments. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## V.    ARGUMENT

### A.    Doe fails to state a claim under federal law

Five of nineteen claims in the SAC arise under federal law. Two of those claims allege violations of the First Amendment actionable under 42 U.S.C. § 1983 ("Section 1983") (SAC ¶¶ 181-190); two others, also under Section 1983, allege due process violations (¶¶ 191-201); and the fifth alleges a civil conspiracy under 42 U.S.C. § 1985(3) ("Section 1985(3)") (¶¶ 202-212).

#### 1.    Section 1983 (First, Second, Third, and Fourth Causes of Action)

In dismissing the corresponding Section 1983 claims in the FAC, the court stated the basic requirement of state action (*i.e.*, that Defendants acted under color of state law) as follows:

"To state a section 1983 claim, a plaintiff must allege that (1) a person violated a right secured by the Constitution or laws of the United States and (2) said person

-6-
110043631.v1

acted under the color of state law when they committed the alleged violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.,* 811 F.2d 1243, 1245 (9th Cir. 1987). … Private conduct, no matter how wrongful, is not covered under § 1983. *See Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996); *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974)."

First Screening Order at 4.

The FAC acknowledged that Stanford is a private university and therefore could not "usually" be sued under Section 1983. FAC ¶ 87. Plaintiff further alleged, however, that SDPS was "an extension of [the] Santa Clara Sheriff's Office" and also "was a willful participant in my expulsion by providing Defendant Shaw [Stanford's Dean of Undergraduate Admissions and Financial Aid] with my ID Card in the hopes of getting me expelled;" it supposedly followed that the Stanford Defendants "were in a joint action with the government." FAC ¶¶ 86-87. The Court noted these allegations but concluded:

"The complaint is utterly devoid of any factual allegations plausibly suggesting that any Defendant purported to act under authority of state law with respect to the underlying alleged constitutional violations, which are based on the termination of [Plaintiff's] status as an undergraduate student of Stanford. Plaintiff does not suggest that SDPS possesses any authority to make admission decisions (or even discipline students in any capacity), nor does the complaint allege any coordination between Defendants beyond its conclusory assertion that [there] has been a 'meeting-of-the-minds to expel her as soon as possible.'"

First Screening Order at 5.

Nothing in the SAC points toward any different conclusion. As she did in the FAC (¶ 3), Plaintiff describes SDPS as "the police force of Stanford, who acquired its policing authority from a memorandum of understanding with the County of Santa Clara .…" SAC ¶ 3. That memorandum of understanding (the "MOU") deputized SDPS officers as Reserve Deputy Sheriffs under California Penal Code § 830.6 and assigned "certain specific police functions" to them. Request for Judicial Notice and Incorporation by Reference, Dkt. 43 ("Plaintiff's RJN"), first document at 2. The "Specific Assignments" of these "Stanford Reserves" are:

-7-

110043631.v1

"General law enforcement duties [on the Stanford campus] for the primary purposes of deterring and preventing violations of, and enforcing the laws of, the United States of America, the State of California and the ordinances of the County of Santa Clara."

*Id.* at 3, § II.A.1.  The MOU further provides:

"The Stanford Reserves shall have the authority of Santa Clara County Reserve Deputy Sheriffs and shall act as Reserve Deputy Sheriffs **only when they are on duty with the Stanford University Department of Public Safety performing the Specific Assignments as herein authorized**."

*Id.* at 4, § II.B (emphasis added).  The MOU also provides that "[t]he Stanford Reserves … may be called to work as employees of [SDPS] as private citizens and not in their capacity as Reserve Deputy Sheriffs."  *Id.* at 6, § III.A.

Thus, it is only for purposes of "general law enforcement" that SDPS officers act as Reserve Deputy Sheriffs.  Plaintiff's claims here are not based on any law enforcement activities of SDPS or its officers.  Rather, as the Court pointed out in the First Screening Order, Plaintiff's claims "are based on the termination of her status as an undergraduate student of Stanford," on grounds that her application for admission had been incomplete and misleading.  First Screening Order at 5.

Although the SAC is replete with allegations about SDPS and officers, it fails to draw any connection between Plaintiff's expulsion and any law enforcement activity.

First, Plaintiff devotes 42 paragraphs to her "first interaction" with SDPS in 2024, which concerned ███████████████████████████████████████ ███████████.  SAC ¶¶ 20-62.  As Plaintiff all but admits, these allegations have nothing to do with her claims in the present action.  SAC ¶¶ 20, 34 n. 9.

Next Plaintiff recounts in detail her April 2025 interview with SDPS Officer Smith, which was the subject of *Doe I*.  SAC ¶¶ 63-85.  That interview likewise had nothing to do with Plaintiff's application to Stanford; it concerned her suspected impersonation of an adverse party (the other student) in a call to a clerk of the Santa Clara County Superior Court.  *See* SAC ¶¶ 71-73; *see also* Ex. C to SAC (the resulting police report).  And whatever grievances Plaintiff had regarding the interview with Officer Smith were resolved when she dismissed *Doe I* with prejudice (SAC ¶ 146)

110043631.v1

and Judge Pitts denied her Rule 60(b) motion to set aside the dismissal.

Finally, Plaintiff alleges, on information and belief, that SDPS provided her Texas ID card to Shaw "with the clear instruction that he starts investigating the Plaintiff's then-three-year-old admissions application" to Stanford.  SAC ¶ 89.  As she did in the FAC, Plaintiff contends that this "meeting of the minds" supplies the state action element of her Section 1983 claims.  *See* SAC ¶¶ 92, 179.  It does not.

Plaintiff incorporates and seeks judicial notice of Shaw's declaration in opposition to the Rule 60(b) motion in *Doe I*, which, according to her, "concede[d]" that SDPS gave him the alleged "instruction.  SAC ¶ 89 n.20; Plaintiff's RJN, fifth document.  In fact, the declaration states that Shaw ███████████████████████████████████████████

███████████████████████████████████████████

██████.  Dkt. 12-2, ¶¶ 8-9.

Mere "consultation and information sharing" between SDPS and the Stanford Admissions Office would not support a joint action or "meeting of the minds" theory of state action, even if SDPS is assumed to be a state actor.  *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023).  Rather, Plaintiff would have to show that SDPS "interjected itself into [Stanford's] internal decision" to expel her.  *Id.*  The SAC still does not "suggest that SDPS possesses any authority to make admission decisions (or even discipline students in any capacity)" (First Screening Order at 5).  And the notion that Stanford police officers would have "instructed" the Dean of Admissions to take any action within the scope of his authority, besides being refuted by Shaw's declaration as incorporated in the SAC, is simply implausible.

Moreover, even if Plaintiff's allegations are assumed to be true, state action still would not be pleaded because the alleged conduct of SDPS personnel, in supposedly urging Shaw to investigate Plaintiff's application for admission, would not be law enforcement activity within the scope of the MOU.  When law enforcement authority is delegated to police forces of private colleges or universities, either under state law or by agreement with local officials, they become state actors only to the extent they act within the scope of those delegations—and not where, as here, they take part in internal investigations.  *E.g.*, *Robinson v. Davis*, 447 F.2d 753, 755-59 (4th Cir. 1971)

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

(although they wore uniforms and carried guns issued by town, College Security Officers "act[ed] within the ambit of their private employment and duties" when they "participat[ed] in a normal and necessary administrative function of the College"); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 347-53 (N.D.N.Y. 2014) (where Colgate campus security officers took part in sexual assault investigation that led to plaintiff's expulsion, they were not state actors despite an MOU with the local police; "this was a purely internal [Colgate] investigation" and the security officers' authority "was derived solely from [their] private employment with [Colgate] and not because of any relationship with the police department"). As noted above, Stanford's MOU with the Santa Clara County Sheriff incorporates precisely this limitation. Conversely, if the full powers of municipal peace officers are delegated to a college police force, which then exercises those powers by (for example) arresting the plaintiff, state action may be found. *E.g., Boyle v. Torres*, 756 F. Supp. 2d 983, 993-96 (N.D. Ill. 2010). That is not the situation here, however.

Insofar as the SAC advances any legal theory of state action, it is that "SDPS seems to have not previously disputed that it is a government action [citing the Stanford Defendants' motion to dismiss in *Doe I*] and, as such, if it claims otherwise in this action, it should be judicially estopped from doing so." SAC ¶ 3. It is true that the Stanford Defendants did not make a state action argument in moving to dismiss *Doe I,* but that would not "estop" them from making such an argument here. Judicial estoppel would require, at minimum, that the Stanford Defendants affirmatively took the position they were state actors and obtained some benefit from doing so. *See, e.g., New Hampshire v. Maine,* 532 U.S. 742, 749–51 (2001). Neither of those things occurred. Beyond that, however, Plaintiff's claims in *Doe I* **were** based on law enforcement activity by SDPS: an investigation into whether Plaintiff had impersonated the student she was suing in communicating with the superior court clerk (a crime under California Penal Code § 529(a)(3)). *See* SAC ¶¶ 63, 71; Ex. C. In contrast, Plaintiff's claims in the present case are **not** based on any law enforcement activity; they are based on Stanford's rescission of her admission after it discovered that she had falsified her application. So even if SDPS acted under color of state law in *Doe I,* and even if Plaintiff's allegations here are assumed to be true, the SAC alleges only private conduct outside the reach of Section 1983.

-10-

110043631.v1

**2.      Section 1985(3) (Fifth Cause of Action)**

Plaintiff's claim under Section 1985(3) asserts the same alleged constitutional violations as her four claims under Section 1983.  *Compare* SAC ¶ 204 (alleging retaliation for protected petitioning activity and speech and denial of procedural and substantive due process) *with* SAC ¶¶ 183-184 (retaliation for petitioning), 188-189 (retaliation for speech), 193-196 (procedural due process), and 200 (substantive due process).  Because "'the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations'" (First Screening Order at 5-6, quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005)), the Section 1985(3) claim in the SAC also fails.

In addition, Section 1985 requires "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'"  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-69 (1993) (citation omitted); *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002).  Plaintiff's only allegation along those lines is that she was part of a "class of transgender women (*i.e.* 'biological men' who 'sound female')." SAC ¶ 211.  The Ninth Circuit has held that "homosexuals are not a 'class' within the meaning of § 1985(3)." *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir. 1979).  While *De Santis* has been overruled with respect to Title VII employment discrimination claims (*Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 875 (9th Cir. 2001), it remains the law of this Circuit as to Section 1985(3) claims, and indeed we have found no decision anywhere that gay or transgender persons are a class protected by Section 1985(3).  In any event, Plaintiff alleges no facts to suggest she was expelled **because** of her transgender status, and such a claim would be directly at odds with her primary contention that she was expelled in retaliation for filing *Doe I*.

**B.      Doe fails to state a claim under California law**

**1.      Civil rights claims**

**a.      Bane Act (Cal. Civ. Code § 52.1) (Sixth Cause of Action)**

Plaintiff's sixth cause of action for violation of California's Bane Act is largely duplicative of her federal civil rights claims, but additionally alleges that the predicate acts underlying those claims

-11-

110043631.v1

violated her rights under Article I of the California Constitution.  SAC ¶ 214.  As noted in the First Screening Order (at 6), a plaintiff suing under the Bane Act must allege "(1) intentional interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion."  *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).  Plaintiff must allege facts constituting threatening or coercive conduct, sufficient to show that a "reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence.'"  *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1296 (E.D. Cal. 2014), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F. App'x 982 (9th Cir. 2016).  Speech alone cannot support a Bane Act violation "except upon a showing that the speech itself threatens violence against a specific person or group of persons…"  *See* Cal. Civ. Code § 52.1(k); *Clifford v. Regents of Univ. of Cal.,* No. 2:11–CV–02935–JAM, 2012 WL 1565702, at *10 (E.D. Cal. Apr. 30, 2012) (a "contention that he was 'systematically harassed' is not the equivalent of a violent act or threat of the same.").

This Court dismissed Plaintiff's Bane Act claim in the FAC "because it does not plead threats, intimidation, or coercion."  First Screening Order at 7 (citing *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1118 (E.D. Cal. 2012)).  The threadbare allegations of "threats, intimidation, and/or coercion" in the FAC (second paragraph numbered 85) are repeated verbatim in the SAC (¶ 208).  The SAC contains no allegations of conduct or speech that would cause a reasonable person to perceive a threat of violence.  Indeed, Plaintiff does not allege any in-person interactions with any of the individual Stanford Defendants other than Officers Smith, Barnes, and Hernandez.  She alleges no threats of violence by Barnes or Hernandez; and even if, by her account, her April 2025 interview with Officer Smith (SAC ¶¶ 63-68) could be viewed as threatening, that was the central issue in *Doe I,* which Plaintiff has dismissed with prejudice.  (In denying Plaintiff's Rule 60(b) motion, Judge Pitts observed that "video footage of the interview appears to support Smith's recollection of the encounter."  [ *Doe I,* ECF No. 155 at 2 n.1.])

Plaintiff asserts in a footnote that it is "not settled law if the California Constitution's free speech and petition clauses require a state actor."  SAC ¶ 214, n.26.  But many courts in this district have found that a state action limitation is required for a Bane Act claim under Article I, Section

-12-

110043631.v1

2. *See Campbell v. Feld Entertainment Inc.*, No. 12–CV–4233–LHK, 2014 WL 1366581, at *7-8 (N.D. Cal. Apr. 7, 2014) (collecting cases).  And as Plaintiff herself admits, "it is unlikely that any party herein falls within the scope of California Government Code, sections 811.2 and 811.4" (defining "Public entity" and "Public employee.").  SAC ¶ 209.  Plaintiff's Bane Act claim thus fails for the additional reason that there is no state actor.

### b.    Unruh Act (Cal. Civ. Code § 51) (Seventh Cause of Action)

The Unruh Act creates a civil cause of action for a plaintiff who is "denied the right" to "full and equal accommodations, advantages, facilities, privileges, or services" by a "business establishment" because of plaintiff's protected characteristic.  Cal. Civ. Code § 51.  For purposes of this Rule 12(b)(6) motion, Stanford does not challenge the allegation that it constitutes a business establishment under the Unruh Act.  Regardless, Plaintiff's Unruh Act claim otherwise fails because it does not plausibly allege any discriminatory denial of access based on her sex.

The Unruh Act prohibits "unreasonable, arbitrary, or invidious discrimination." *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1062 (C.D. Cal. 2015) (citing *Sunrise Country Club Ass'n v. Proud*, 190 Cal. App. 3d 377, 380 (1987)). "Unreasonable, arbitrary, or invidious discrimination is present where the defendant's policy or action 'emphasizes irrelevant differences' or 'perpetuates [irrational] stereotypes.'" *Id.* (citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)).  The Unruh Act does not prohibit a business establishment from excluding an individual patron due to their conduct or otherwise promulgating reasonable deportment regulations that are rationally related to the services performed and the facilities provided. *Gayer v. Polk Gulch, Inc.*, 231 Cal. App. 3d 515 (1991).

The seventh cause of action asserts that "Plaintiff's sex was the only motivating factor for the discrepancy in enjoying equality and liberty" (SAC ¶ 215) without ever specifying how any such "discrepancy" could have been based on her sex.  To the contrary, Plaintiff expressly alleges that Shaw's decision to investigate her application was because she had sued Stanford.  SAC ¶ 208.  Plaintiff further fails to allege that any of the Stanford Defendants who participated in the decision to expel her knew of her transgender identity and intended to discriminate against her on that basis. "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional

-13-

110043631.v1

discrimination." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991).  In federal court, an Unruh Act plaintiff "cannot plead discriminatory intent merely by making a conclusory allegation to that effect.  Rather, the complaint must include some factual context that gives rise to a plausible inference of discriminatory intent." *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. 2017).  There is simply no allegation anywhere in the SAC that the recission of Plaintiff's admission had anything to do with her transgender identity, or that the Stanford Defendants' actions in investigating Plaintiff somehow perpetuated irrational stereotypes of transgender persons.  Rather, the admissions investigation was based on Plaintiff's omission in her application of her prior matriculation at Rice.  SAC ¶ 103.  Stanford's policy to rescind the admission of students who lie on their application has nothing to do with sex (or any other protected characteristic); and it is a reasonable policy that is rationally related to the services Stanford provides as a private university.  SAC ¶¶ 169, 214, 249.

### 2. Tort claims

#### a. Intrusion Upon Seclusion (Eighth Cause of Action)

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) the intrusion 'occurred in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (alterations omitted)).  California adopts the elements articulated in the Restatement (Second) of Torts for this cause of action (the "Restatement"). *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal. 4th 907, 914–15 (1999).

Plaintiff's eighth cause of action is based on two claims: (1) that the SDPS officers shared Plaintiff's ID card on file with Shaw; and (2) that Zumwalt and Shaw obtained "Plaintiff's student-record information from another educational institution by invoking the statutory exemption for consent … as codified in 34 CFR § 99.31(a)(2) by fraudulent conduct." SAC ¶¶ 218-219.

For a common law claim of intrusion upon seclusion, "there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

to keep and make available for public inspection." Restatement (Second) of Torts § 652B cmt. c., at 379–380 (Am. L. Inst. 1977); *see also Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011) ("The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."). Obviously, ID cards exist for the purpose of identifying the holder to others, foreclosing any reasonable expectation of privacy. *See, e.g., Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1079 (D. Minn. 2014) (finding a "low expectation of privacy" in a driver's license because "individuals show their driver's licenses to strangers on a daily basis.").

As to the educational records from Rice, Plaintiff alleges it was "fraudulent" for Zumwalt and Shaw to invoke 34 C.F.R. § 99.31(a)(2) to obtain records from Rice because that provision of the Family Educational Rights and Privacy Act ("FERPA") "was intended for use for a transfer applicant," not for currently enrolled students (SAC ¶¶ 224-225), and Plaintiff did not apply to Stanford as a transfer student. Essentially, Plaintiff's position is that so long as someone lies about not being a transfer applicant, Stanford cannot seek information under FERPA from their prior institution after they enroll at Stanford. Beyond its absurdity, Plaintiff's reading of § 99.31(a)(2) is simply wrong. That section provides that an institution may disclose a student's education records to another institution of postsecondary education "where the student seeks or intends to enroll, **or where the student is already enrolled** so long as the disclosure is for purposes related to the student's enrollment or transfer." 34 C.F.R. § 99.31(a)(2) (emphasis added). On its face, therefore, this FERPA exception allows an institution (Rice) to disclose information about a previously enrolled student to that student's new institution (Stanford), either before or after the student's transfer. Indeed, Plaintiff acknowledged in her Common App affirmations (SAC ¶ 149 n.22) that "every school that I have attended may release all requested records and recommendations to colleges to which I am applying for admission" and "employees at these colleges may confidentially contact my current and former schools should they have questions about the information submitted on my behalf." Stanford's seeking information from Rice as expressly authorized by FERPA and Plaintiff's prior consent is neither "fraudulent" nor a "highly offensive" intrusion into any matter over which Plaintiff had a reasonable expectation of privacy.

-15-

110043631.v1

**b.      Defamation (Ninth Cause of Action)**

Plaintiff's ninth cause of action for defamation is brought only against Shaw.  To state a claim for defamation, a plaintiff must allege facts sufficient to show "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007).  A statement to the defamed person alone is not "published," and therefore is not actionable. *Cabesuela v. Browning-Ferris Indus.*, 68 Cal. App. 4th 101, 112 (1998).  Moreover, where an absolute privilege is apparent on the face of the complaint, a defamation claim is subject to dismissal. *Id.*

Plaintiff alleges that Shaw defamed her by asserting "as fact," in his August 21, 2025 letter conveying his decision to her, that "Plaintiff was not honest in her admissions application to Stanford." SAC ¶ 229.   Her only allegation of publication is based on the letter itself (SAC ¶¶ 158-160), which she says was "communicated, as [Shaw] concedes, to [a] high number of third-party individuals." SAC ¶ 228.  But the letter was addressed to Plaintiff alone, and it said only that ██████████████████████████████████████████████████ of Shaw's investigation—*i.e.*, the rescission of Plaintiff's admission. Ex. E to SAC at RSHAW_0000165.   It did not say that anyone else would be informed of the reasons for the recission decision (Shaw's belief that Plaintiff's admissions materials were not honestly presented) or the information learned in the investigation (that Plaintiff enrolled in two semesters at Rice).  Thus, the SAC fails to allege a publication of defamatory material.

Moreover, even if Shaw did send the letter to others within Stanford, such a communication would be subject to absolute privilege under California Civil Code section 47(b), as a publication made in the course of a proceeding reviewable by mandamus under Civil Code section 1084, *et seq*. *Wallin v. Vienna Sausage Mfg. Co.*, 156 Cal. App. 3d 1051, 1054–55 (1984).  Plaintiff has filed a petition for writ of mandamus challenging Shaw's August 21 decision. *See* SAC ¶¶ 176-78. Shaw's statements communicating that decision to others within Stanford are absolutely privileged and cannot form the basis of a defamation claim.

**c.      Fraud (Sixteenth Cause of Action)**

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false

-16-

110043631.v1

representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)).

Plaintiff's sixteenth cause of action alleges three theories of fraud against Shaw and Zumwalt only. The first theory is that Shaw "attempted to fraud [*sic*] the Plaintiff into signing a [FERPA] release form for him" allegedly in order to receive Plaintiff's transcript from Rice, even though "he already had the said transcripts." SAC ¶¶ 272-274. But there is no tort of "attempted fraud." Plaintiff does not claim she signed the release or otherwise relied on any allegedly false statement by Shaw regarding the FERPA release. To the contrary, the incorporated documents show ███████ ███████████████████████████. *See* Ex. E to SAC at RSHAW_0000125.

Plaintiff's second theory of fraud is that Shaw and Zumwalt wrongly invoked a FERPA exception (34 C.F.R. § 99.31(a)(2)) to obtain information from Rice "related to the student's enrollment or transfer." SAC ¶¶ 277-278. As explained in section V(B)(2)(a), above, there was nothing fraudulent about the request to Rice for a release of records pursuant to this regulation. And in any event, this theory does not involve any representations made **to Plaintiff.**

Plaintiff's third theory is that Shaw concealed from Plaintiff the fact that he had obtained information from Rice. SAC ¶¶ 279-284. Plaintiff purports to incorporate ¶¶ 167-170 as factual support for this theory. Those paragraphs relate to an alleged implied-in-fact housing contract and Plaintiff's course credits. Assuming Plaintiff intended to incorporate ¶¶ 171-173, Plaintiff alleges therein that she sent her own records release request to Stanford's "designated email address for requests for inspection of records" asking for any records held by Shaw, and that she received a response indicating there were no such records available. This theory again fails because it does not allege any misrepresentation by Shaw or Zumwalt to Plaintiff. It also fails because Plaintiff's only alleged reliance is that she was unable to "seek timely judicial relief" from Shaw's decision, yet she is presently seeking such relief in her mandamus petition in superior court.

### d.    Negligence (Seventeenth Cause of Action)

To state a claim for negligence, a plaintiff "must establish four required elements: (1) duty;

-17-

110043631.v1

(2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

In the FAC, Plaintiff simply recited the elements of a claim for negligence: "Defendants had a legal duty to use due care. Defendants breached such a legal duty. The breach was the proximate or legal cause of the resulting injury."  FAC ¶¶ 153-155.  The Court dismissed this cause of action for failure to adduce any supporting factual allegations.  First Screening Order at 9.

In the SAC, Plaintiff takes the position that she need not allege a duty of care because Shaw's and Jacob's communications regarding available mental health resources allegedly "constituted negligent undertaking."  SAC ¶ 286.  Defendants allegedly breached the duty they "undertook" by "only 'providing' mental health resources that would not be available to the Plaintiff if she was not located inside California," with the result that "the Plaintiff committed suicide."  SAC ¶¶ 287-288.

Putting aside the fact that Plaintiff obviously did not "commit suicide," a negligent undertaking claim fails as a matter of law.  Under that theory, a "person who has no affirmative duty to act but voluntarily acts to protect another has a duty to exercise due care if certain conditions are satisfied." *Univ. of S. California v. Superior Ct.,* 30 Cal. App. 5th 429, 448 (2018).  The conditions are that the defendant must have volunteered to provide protection and "either (a) the defendant's failure to exercise reasonable care increased the risk of harm to the plaintiff, or (b) the plaintiff reasonably relied on the undertaking and suffered injury as a result." *Id*. at 448-449; *see also* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 42 (Am. L. Inst. 2012).  The SAC does not allege that Stanford "volunteered protection" by undertaking to provide mental health resources outside of the United States; in fact, it alleges the opposite.  SAC ¶ 125 ("Jacobs conceded that none of the allegedly available resources would be available to the Plaintiff as the Plaintiff was outside the United States.").[1]  In any event, neither of the two additional requirements is satisfied: Stanford's provision of mental health services to students within the United States could not have **increased** any risk to Plaintiff nor could Plaintiff have reasonably relied on Stanford to provide any

---

[1] Nevertheless, the documents incorporated into the SAC show that Dr. Jacobs and others at Stanford ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████.  *See* Ex. E to SAC at RSHAW_000137–40.

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1

services outside the United States.

e.   **Negligent and Intentional Infliction of Emotional Distress (Eighteenth Cause of Action)**

Although Plaintiff purports to assert a claim for both negligent and intentional infliction of emotional distress, she alleges only a theory of intentional infliction ("IIED"). *See* SAC ¶ 291. To state such a claim, a plaintiff must allege facts sufficient to show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007)).

Causes of action for IIED are subject to dismissal where the facts alleged do not amount to outrageous conduct as a matter of law. *See Siganporia v. Shreyas*, No. 5:25-CV-03145-BLF, 2025 WL 2243643 at *5 (N.D. Cal. Aug. 6, 2025); *Barker v. Fox & Assocs.,* 240 Cal. App. 4th 333, 356 (2015); *Cochran v. Cochran,* 65 Cal. App. 4th 488, 496 (1998).

"[I]t is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran*, 65 Cal. App. 4th at 496 (cleaned up.)

In the FAC, Plaintiff alleged "Defendants' conduct was beyond the bounds of what is tolerated in civil society. Defendants acted with reckless disregard of the probability that the Plaintiff would suffer emotional distress. The Plaintiff suffered suffered [*sic*] severe emotional distress." FAC ¶¶ 157–59. The Court dismissed this cause of action because it did "not contain any factual allegations." Dkt. 31 at 9. This cause of action in the SAC is subject to dismissal for the same reason. It again alleges only that "[t]aken cumulatively, the defendants' cumulative

-19-

110043631.v1

conduct was so extreme and outrageous; it was taken either with the intention of causing, or reckless disregard of the probability of causing, emotional distress," that Plaintiff's "suffering severe and extreme emotional distress are clear from the well-plead [*sic*] facts", and "the well-plead [*sic*] facts show the clearest actual and proximate causation of the emotional distress caused by the defendants' outrageous conduct." SAC ¶¶ 291-93. These allegations still lack any factual support. To the extent Plaintiff purports to incorporate ¶¶ 123-129 regarding the availability of mental health resources outside of California into this cause of action, Shaw and Jacobs ███████████████████████████████████████████████████████ ███████████████████. *See* n.1, above. Stanford's conduct in responding to Plaintiff's expressions of self-harm and suicidal ideation by ████████████████████████████ is not extreme or outrageous by any measure.

**f.    Respondeat Superior (Nineteenth Cause of Action)**

Plaintiff's nineteenth cause of action is styled "respondeat superior on common law claims" and stated against Wilson (for the conduct of SDPS officers and administrative staff), Zumwalt (for the conduct of ROES 1-10), and Shaw (for the conduct of Devlin and Casebeer-Blum). SAC ¶¶ 295-298. Wilson is alleged to be the "most senior officer of command at SDPS" and Zumwalt and Shaw are alleged to be the "supervisory officers" of other named and unnamed individual Stanford administrators. SAC ¶ 4, 9, 12. This cause of action fails as a matter of law because "[t]he doctrine of respondeat superior is not applicable to the relationship between a supervisor and his subordinate employees." *Malloy v. Fong*, 37 Cal. 2d 356, 378-79 (explaining "Section 2351 of the Civil Code codifies this principle and has been uniformly interpreted to exempt superior employees from vicarious liability to third persons for the tortious conduct of subordinates.")

**3.    Contract and contract-related claims**

**a.    Breach of Contract (Tenth Cause of Action)**

Under California law, to plead a claim for breach of contract, a plaintiff must allege facts establishing (1) the existence of a contract; (2) the plaintiff's performance of her duties under that contract or an excuse for nonperformance; (3) the defendant's breach of their contractual duties; and (4) resulting damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "[I]t is

-20-

110043631.v1

absolutely essential to plead the terms of the contract either in haec verba or according to legal effect," (*Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014)), and "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached" (*Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 476 (N.D. Cal. 2020)).

Plaintiff's tenth cause of action alleges breach of both an "Admissions contract" and a "housing contract."  SAC ¶ 235.  Plaintiff "finds that [SAC ¶¶ 144-166] plead a breach of written contract sufficiently and cognizantly …."  SAC ¶ 236.  They do not.

As described in the SAC, the "Admissions contract" is simply Plaintiff's **application** to Stanford on the Common App portal.  SAC ¶ 148.  Plaintiff's application is included in Exhibit E to the SAC at 51–70, and the "Affirmation Statements" of the Common App are incorporated by reference.  SAC ¶ 148, n.22, Plaintiff's RJN, ninth document.  The application imposes no obligations whatsoever on Stanford, which is free to accept or reject it.  A contract between a student and a university is created not by the application, but by the student's enrollment and payment of required fees upon accepting an offer of admission, and the terms of that contract may be contained either in a formal agreement or based on express statements in written university materials. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 823-24, 827-29 (2007); *Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 82–83 (2024).  Presumably Plaintiff is attempting to allege a formal contract here, since the next cause of action is for breach of an implied contract.  But Plaintiff has not alleged such a contract between her and Stanford or the terms thereof.

As to the alleged housing contract (SAC ¶¶ 163-164), Plaintiff submits a document (Ex. H to SAC) that clearly is not a formal contract.  Moreover, Plaintiff acknowledges that her right to housing was conditioned on her remaining an active student, but alleges that she was "excused from that part of the contract" by the breach of the admissions contract.  SAC ¶ 165.  However, since no enforceable "admissions contract" has been alleged, Plaintiff's dependent housing contract theory also fails because she admittedly failed to perform the condition of remaining an active student.

### b.    Breach of Implied Contract (Eleventh Cause of Action)

Plaintiff's eleventh cause of action alleges that Stanford and Zartoshty breached two

-21-

110043631.v1

implied contracts: (1) for "Plaintiff's continued enrollment in a university in which she was admitted and matriculated until her graduation with a bachelor's degree"; and (2) for "Plaintiff's continuation of her SEVIS record until her graduation." SAC ¶ 238.

A "contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citation omitted). An implied contract between a university and a student can be created by a student's enrollment, but the terms of such a contract still must be established through express, unqualified statements in written materials by which the university agrees to be bound and the reasonable expectations of the parties regarding those statements. *Kashmiri*, 156 Cal. App. 4th at 827-48. Moreover, "[c]ourts have applied contract law flexibly to actions involving academic and disciplinary decisions by educational institutions" and "have been reluctant to apply contract law to general promises or expectations." *Id*. at 826.

Here, Plaintiff's application materials expressly stated several grounds on which Stanford could rescind Plaintiff's admission. *See* Ex. E to SAC at RSHAW_0000004; Ex. G to SAC at AR0000265; Plaintiff's RJN, ninth document. An implied, unconditional promise to Plaintiff that she would continue to be enrolled until her graduation is both inconsistent with Stanford's express, written statements alleged throughout the SAC and unreasonable on its face.

As to the implied contract for continuation of Plaintiff's SEVIS record until her graduation, the SAC alleges no facts from which such a contract can be inferred. In addition, Zartoshy was not a party to any contract Plaintiff might allege, and therefore cannot be sued for breach.

### c.    Quantum Meruit (Twelfth Cause of Action)

"Quantum meruit permits the recovery of the reasonable value of services rendered. To state a quantum meruit claim, a plaintiff must plausibly allege both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Mapsong PC v. Blue Shield of California Life & Health Ins. Co.*, 780 F. Supp. 3d 939, 946 (C.D. Cal. 2024) (internal quotation marks and citation omitted). Quantum meruit allows a plaintiff who has conferred a benefit on the defendant to "recover

-22-

110043631.v1

the reasonable value of that benefit when necessary to prevent unjust enrichment." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992).

Plaintiff's twelfth cause of action alleges that Stanford created an implied-in-law contract when it "requested [Plaintiff] to be a student at Stanford" and take courses, that Plaintiff "perform[ed] the duty of being a student" by taking classes, and that Plaintiff was "paid in terms of course credit." SAC ¶ 246-251. In the FAC, Plaintiff similarly alleged that, by enrolling Plaintiff, Stanford requested that Plaintiff take courses "for Stanford's benefit of maintaining itself as an institution of higher learning," that Plaintiff performed that duty, and that her credits were rescinded. FAC ¶ 112-114. In the First Screening Order, the Court dismissed this claim for "failure to nonfrivolously allege that Plaintiff rendered services to Stanford or that Stanford benefited from such services." First Screening Order at 11. The allegations in the SAC—while providing additional verbiage and legal argument to Plaintiff's claim that her taking courses benefitted Stanford—fare no better. When a person incidentally benefits another person while performing his own duty or furthering his own aims, the incidentally-conferred benefit is not unjust enrichment. *Mapsong*, 780 F. Supp. 3d at 945; *see also* 1 Witkin, Summary of Cal. Law, Contracts, § 97 at 126. To the extent Stanford received any "benefit" from Plaintiff attending classes in performance of her own duty to remain a student in good standing, such incidental benefit cannot form the basis of a claim for quantum meruit.

### d.    Implied Covenant of Good Faith (Thirteenth Cause of Action)

In California, the factual elements necessary to establish a breach of the implied covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

In the First Screening Order, the Court dismissed this cause of action because it did not "identify any contract from which the covenant of good faith and fair dealing could be implied." First Screening Order at 11. In the SAC, this cause of action is, if anything, even more perfunctory

-23-

110043631.v1

than it was in the FAC. *Compare* FAC ¶¶ 117-24 *with* SAC ¶¶ 255-57. It alleges only that "[t]here is an implied covenant of good faith and fair dealing in every contract," and that "the Defendants herein breached the written and implied-in-fact contracts by bad faith, fraud, and unfair dealing by breaching their duty under these contracts by way of, *inter alia*, retaliation against protected speech and petitioning activity." SAC ¶¶ 256-57. Such "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, to the extent Plaintiff purports to allege breach of the implied covenant as to all of the contracts alleged in the SAC (without specifying what those are), Plaintiff does not explain how the alleged breach by "retaliation against protected speech and petitioning activity" differs from her claim of express breach—*i.e.*, that Stanford would not rescind her admission for any reason other than a discovery of false information in the application. *See Richards v. Centripetal Networks, Inc.*, 709 F. Supp. 3d 914, 922 (N.D. Cal. 2024) (holding the implied covenant may not duplicate an express breach of contract claim).

                    e.    **Interference with Contract (Fourteenth Cause of Action)**

"To state a viable claim for tortious interference with existing contracts, a plaintiff must plead: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts to induce a breach of the contractual relationship; (4) actual breach of the contractual relationship; and (5) resulting damage." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013).

Plaintiff's fourteenth cause of action is asserted against the individual defendants Shaw, Devlin, Casebeer-Blum, Zumwalt, Wilson, Smith, Barnes, Hernandez, and Morgan-Hermann, and against SDPS. Plaintiff alleges these defendants "were aware of the written contracts between Stanford and the Plaintiff" because Plaintiff was a student living on campus, and that all of these defendants "played an individual role" in breaching Plaintiff's contracts with Stanford. SAC ¶¶ 259-61. Plaintiff again fails to specify the contracts allegedly interfered with, and in turn that these defendants had knowledge of such contracts. And the SAC contains no allegations—plausible or otherwise—that these defendants **induced** Stanford to breach its alleged contracts with Plaintiff. Moreover, the SAC alleges that each of the defendants is an employee (or in the case of SDPS, a

-24-

110043631.v1

department) of Stanford[2] acting within those roles with respect to the conduct alleged in the SAC. SAC ¶¶ 3-12. "[A]gents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." *Luxul Tech.y Inc. v. NectarLux, LLC*, No. 14–CV–03656-LHK, 2015 WL 4692571, at *8 (N.D. Cal. Aug. 6, 2015).

**f.      Promissory Estoppel (Fifteenth Cause of Action)**

Under California law, the elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. 07-cv-02864-JSW, 2007 WL 3232276, at *6 (N.D. Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976)).

Plaintiff's fifteenth cause of action alleges that "Stanford made a clear and unambiguous promise to not revoke the Plaintiff's admission unless she provided false information on her application," and that she relied on this promise to her detriment. SAC ¶ 264. This claim is subject to dismissal because, as explained in section V(B)(3)(a) above, the SAC does not contain any factual allegations showing that Stanford made such a promise to Plaintiff. To the contrary, Plaintiff acknowledged in her application several bases on which Stanford could revoke her admission. *See* Ex. E to SAC at RSHAW_0000004; Ex. G to SAC at AR0000265; Plaintiff's RJN, ninth document.

## VI.   CONCLUSION

For the foregoing reasons, the Stanford Defendants respectfully submit that the Complaint should be dismissed with prejudice as to all causes of action asserted against them.

[*Signature on following page*]

---

[2] Defendant Lydia Brice Morgan-Hermann is not a Stanford employee. She is a Santa Clara County employee and is represented separately by County counsel. Dkt. 86.

-25-

**STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**
26-CV-03809-BLF

Dated:  June 12, 2026                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                              By:    */s/ Stacie Kinser*
                                     _____
                                     JACOB R. SORENSEN
                                     STACIE KINSER
                                     KHYRSTYN ("NAN") MCGARRY
                                     EMILY YOUNG

                                     *Attorneys for the Stanford Defendants*

STANFORD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
26-CV-03809-BLF

110043631.v1