JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

JANE DOE, an individual,

                Plaintiff,

    *v.*

BOARD OF TRUSTEES OF LELAND
STANFORD JUNIOR UNIVERSITY, *et al.*,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 5:26-cv-03809-BLF

**APPENDIX A TO THE OPPOSITION TO THE DEFENDANTS' PURPORTED MOTION FOR A SUPPOSED "VEXATIOUSNESS" CLASSIFICATION**

Before the Honorable Beth Labson Freeman

[PUBLIC COPY OF CONDITIONALLY FILED UNDER SEAL]

This Court permitted the defendants to file an "appendix" with pages and pages and pages of legal argument about how the unpalatability of the Plaintiff's speech would apparently caution against her proceeding pseudonymously. Thus-fore, the Plaintiff assumes that this Court sees such appendices procedurally proper. Since defense counsel appears to argue that the Plaintiff is "vexatious" because she called out the defense counsels' anti-Semitic vitriol against her, the foregoing must be noted so that a record is made of how defense counsel attacked the Plaintiff in the Public Record with anti-Semitic stereotypes and vitriol.

1

APPENDIX A TO THE OPPOSITION TO THE DEFENDANTS' PURPORTED MOTION FOR A SUPPOSED "VEXATIOUSNESS" CLASSIFICATION
5:26-cv-03809-BLF

**I. A REASONABLE JEWISH PERSON WOULD HAVE LIKELY CONCLUDED THAT DEFENSE COUNSEL'S CONDUCT IS ANTI-SEMITIC AND DEFENSE COUNSEL'S ANTI-SEMITIC *AD HOMINEM* ATTACKS ON THE PLAINTIFF DIRECTLY BEAR UPON HER MOTION FOR DISQUALIFICATION AS IT IS OF PINNACLE IMPORTANCE TO DISQUALIFY MCGARRY TO PREVENT HER FROM ABUSING DISTRICT COURTS TO TRANSFORM THEM INTO HER CIRCUS OF INQUISITION**

**a. Obviously that McGarry Perceived the Plaintiff to be Jewish but that Plaintiff Did Not *Tell Her* That She Was One Does Not Devalue the Plaintiff's Point**

Defendants' extended argument that they cannot attack the Plaintiff with anti-Semitic vitriol because the Plaintiff noted that she did not *know* if defense counsel *knew* that the Plaintiff is Jewish is a red herring. Obviously, defense counsel *perceived* the Plaintiff to be Jewish even though the Plaintiff did not tell her that. *See, e.g.*, *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1130-34 (9th Cir. 2003) (discrimination based on *perceived* sexual orientation is enough to establish an equal protection claim). Indeed, every time the defendants tried to turn the secular institutions of this Nation—this Court—into their inquisitorial circus and attempted to *corrupt* Article III judges to serve as their purported priests, the Plaintiff reminded this Court that the purpose of this Court is not to be Plaintiff's "rabbi" "passing moral judgment" on her. *See* Dkt. No. 180 in *Doe v. Smith, et al.*, no. 5:25-cv-03490-PCP (N.D. Cal) (*Doe I*), at 2, n. 2. And, obviously, the Plaintiff had multiple virtual meetings with defense counsels (and a hearing before this Court) where she was openly wearing a visible necklace with a Star of David on it and was visibly wearing a *kippah* (before her medical transition) during most of these meetings. And, as explained to this Court, defendants' vitriol is based on *solely* on Judaic principles of hermeneutical interpretation, so the vitriol precisely targets the Plaintiff "for traits [and] actions [defendants] would not have questioned in members of a different" ethno-religious group. *Bostock v. Clayton Cty.*, 590 U.S. 644, 652, 140 S. Ct. 1731, 1737 (2020). And most of defendants' vitriol subscribes to anti-Semitic stereotypes, as explained *infra*.

**b. The Standard Here is A Reasonable Jewish Person**

The standard a court will use in this Circuit to determine if something is discriminatory toward a non-majority group with some immutable and shared characteristics is one that is "from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff."

2

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004). The question herein is whether a reasonable Jewish person would consider it offensive to be reduced to a stereotype where they are a purported "greedy" "shyster." The answer is unequivocally yes.

### c. Defense Counsel Already Seems to *Sub Silentio* Admit her anti-Semitism by Including Everything Else in her Motion before Judge Pitts *Except* the Portions Where She Attempted to Pass Moral Judgement on the Plaintiff for Following the Secular Law of this Nation Instead of Her Asinine Beliefs

For some reason, although defense counsel filed the almost-identical "motion for disclosure" she submitted to the Court in *Doe I*, she intentionally removed the part—and only those parts— where plaintiff alleged them to be anti-Semitic. It is unclear why counsel would remove these portions—and *only* these portions—if she did not *sub silentio* concede that they are, indeed, anti-Semitic.

### d. *Just* in this Pleading, Defense Counsel Attacked the Plaintiff with Anti-Semitic Vitriol and Stereotypes

Just in this pleading, opposing counsel once again targeted the Plaintiff with well-known[1], ugly, and almost-universal stereotypes against Jewish people—that those Jews who are in some sense attached to the legal profession are "shysters" and they are "greedy"; they sue people for "$25[.]" Mot. at 2: 6. But, as argued in the Opposition, opposing counsel merely *ipse dixit* tells this Court what the Plaintiff did, not why that decision was *legally* erroneous. It is unclear to the Plaintiff why a suit for the Plaintiff's hard-earned $25 would not be properly addressed in the Small Claims court (or why she should forego her hard-earned money), as it seems that the Legislature

---

[1] Although the Plaintiff would rather cite plethora of academic resources to support this position because that could imply that opposing counsel has to have studied Jewish history to know that what she is doing is anti-Semitic, a simple Google search reveals the well-known nature of these stereotypes. *See, e.g.,* https://en.wikipedia.org/wiki/Stereotypes_of_Jews#Behavioral ("Jewish lawyer", "shyster", "greed") (last accessed on June 16, 2026). "The concept of the 'Jewish lawyer' is a stereotype of Jews, which portrays Jews and Jewish lawyers as being clever, **greedy**, **exploitative**, dishonest, and depicts them as engaging in moral turpitude and **excessive legalism**." *Ibid.* (emphasis added).

APPENDIX A TO THE OPPOSITION TO THE DEFENDANTS' PURPORTED MOTION FOR A SUPPOSED "VEXATIOUSNESS" CLASSIFICATION

5:26-cv-03809-BLF

precisely enacted small claims courts for that very purpose and there is no monetary *de minimis* for bringing a small claims action. Rather, opposing counsel merely *implies* that there is something amoral about these things and because the Plaintiff does not subscribe to the same moral code, she should be banished from this Court.

**e. To the Extent that the Disqualification Motion Seeks Disqualification of McGarry Because She Abused this District Court's Authority to Harass the Plaintiff Because She Did Not Subscribe to Her Asinine Christian Moral Code, and Attempted to Turn this Court into an Inquisition, McGarry's Undeniable Anti-Semitism was Very Relevant to that Motion, Unlike the Plaintiff's Genitalia that for Some Reason is Brought Up *Ad Nauseam* with Every Motion**

As a preliminary point, "If one is attacked as a Jew, one must defend oneself as a Jew. Not as a German, not as a world-citizen, not as an upholder of the Rights of Man [*sic*]."[2] To the extent that defense counsel thinks this defense is "vexatious," it underlines her apparently fundamental misunderstanding about life: **Defending oneself against her and her clients' abuse and discrimination of the Plaintiff is not "vexatious."** As defense counsel apparently believes, this is not a "personal attack," *see* Mot. at 5:17-18, like hers, but is, quite literally, the entire point of the motion for disqualification: That maintaining defense counsel in this case would offend the public's trust in the Judiciary by turning our district courts into places of inquisitorial circuses.

## II. CONCLUSION

As one historical document concluded,

> "[W]e procured and gave orders that inquisition should be made […] and accordingly we are informed by the inquisitors and by other devout persons, ecclesiastical and secular, that great injury has resulted and still results, since the Christians have engaged in and continue to engage in social interaction and communication they have had means and ways they can to subvert and to steal faithful Christians from our holy Catholic faith and to separate them from it, and to draw them to themselves and subvert them to their **own wicked belief and conviction**, instructing them in the ceremonies and observances **of their law**, holding meetings at which they read and teach that which people must hold and believe **according to their law**, […] and giving them books from which they may read their prayers and declaring to them the fasts that they must keep, and joining with them to read and teach

---

[2] HANNAH ARENDT, ESSAYS IN UNDERSTANDING, 1930-1954: FORMATION, EXILE, AND TOTALITARIANISM (Knopf Doubleday Publishing Group, 2005 ed.).

APPENDIX A TO THE OPPOSITION TO THE DEFENDANTS' PURPORTED MOTION FOR A SUPPOSED "VEXATIOUSNESS" CLASSIFICATION

5:26-cv-03809-BLF

them the history of their law, […] advising them of what in them they are to hold and observe, […] instructing them about the things from which they must refrain, as much in eating as in other things in order to observe their law, and persuading them as much as they can to hold and observe the law of Moses, **convincing them that there is no other law or truth except for that one**.

[…]

And since we are informed that neither that step nor the passing of sentence [of condemnation] against the said **Jews who have been most guilty of the said crimes and delicts against our holy Catholic faith have been sufficient** as a complete remedy to obviate and correct so great an opprobrium and offense to the faith and the Christian religion, because every day it is found and appears that the said Jews increase in **continuing their evil and wicked purpose** wherever they live and congregate, and so that there will not be any place where they further offend our holy faith, and corrupt those whom God has until now most desired to preserve, as well as those who had fallen but amended and returned to Holy Mother Church, the which according to the weakness of our humanity and by diabolical astuteness and suggestion that continually wages war against us may easily occur unless the principal cause of it be removed, which is to **banish the said Jews from our kingdoms**."

KING FERDINAND AND QUEEN ISABELLA, THE ALHAMBRA DECREE—EDICT OF EXPULSION OF THE JEWS OF SPAIN.[3] (emphases added).

Like the undersigned's ancestors who were banished with the above-quoted legal instrument, the defendants, after having banished the plaintiff from this country because her speech was not palatable to them and that she did not follow the law how their *beliefs* dictated, are asking the issuance against the Plaintiff of yet another legal instrument *solely* because the Plaintiff is not following the law according to their own "wicked belief[s] and conviction[s]"—and following the secular law of this country secularly—and wish this Court to impose upon an edict of banishment from this Court against the Plaintiff and preventing the "resolution of legal disputes on the merits and in ensuing **access to the courts for all members of the community**[.]" Dkt. No. 115 at 4 (emphasis added).

Nothing—*nothing*—changed since 1492 and a world war *raged* because of the whims and

---

[3] Retrieved from https://www.fau.edu/artsandletters/pjhr/chhre/pdf/hh-alhambra-1492-english.pdf, last accessed on June 16, 2026.

APPENDIX A TO THE OPPOSITION TO THE DEFENDANTS' PURPORTED MOTION FOR A SUPPOSED "VEXATIOUSNESS" CLASSIFICATION

5:26-cv-03809-BLF

quips of *the exact same thinking* espoused herein by defense counsel.[4] She simply does not *get it*— get the offensiveness of what she is arguing. But she will not be able to convert the plaintiff into her own faith despite how many times she banishes the plaintiff and attempts to have edicts of expulsion issued against her. And she does not get why arguing *this* before a U.S. District Court "demeans this Court[.]" *Olympus*, 169 F.4th 845 (McKeown, J., statement respecting the denial of rehearing en banc). She does not get it. To give her her own *ad hominem* medicine: This Court is *not* her Catholic or Evangelical Church in Nixa, Missouri that has a sign in front of it that reads, "No blacks, no Jews, no gays in this town!" She cannot move to have the Plaintiff be excluded from the judicial machinery because her petitions and *being* are unpalatable and *amoral* to her.

Respectfully submitted,
DATED: June 17, 2026.

*/s/ Jane Doe*
———————————————————
JANE DOE
*In Propria Persona*

---

[4] *See* Dkt. No. 180 at 2, n. 2 in *Doe I* (drawing parallels between defense counsels' arguments and Carl Schmitt, the Nazi juror influential in the legislative denaturalization of German Jews).

6