JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*,<br><br>                    Defendants. | Case No.: 5:26-cv-03809-BLF<br><br>**OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS**<br><br>Before the Honorable Beth Labson Freeman<br><br>(Filed Concurrently with Request for Judicial Notice and Exhibit A Thereon) |

# TABLE OF CONTENTS

**Page:**

I. INTRODUCTION…………………………………………………………………………..…..1

II. PRELIMINARY ISSUES

    a. Defendants Seem to be Confusing Judicial Estoppel with Equitable Estoppel………..1

    b. Defendants Grossly Mischaracterize the *Twombly* and *Iqbal* Plausibility and Pleading Standard as Courts Continue to Review Complaints as a Whole and Drawing Reasonable Inferences Thereto and Therefrom………..……………………………2

    c. The *Twombly* and *Iqbal* Plausibility and Pleading Standard Does Not Allow Complete Portions of a Complaint to Be Wholly Ignored, Like Defense Counsel Does….. ……4

    d. To the Extent that Defendants Attempted to Bring a *Res Judicata* Argument, the Argument Is Waived Because It was Simply Asserted and At Any Event, There is No Claim or Issue Preclusion Applicable Herein and the Events that Were Subject to *Doe I* Could be Plead and Brought Herein………..………………………………….…4

    e. To the Extent that Defendants Merely and Selectively Quoted *Ipse Dixit* this Court's Screening Order, All of Those Portions of the Motion are Improper and Arguments in Them Are Thus Waived since the Court Can Only Review the Four Corners of a Complaint At This Stage and this Court Cannot Become the Defendants' Advocate……………..……………………………………….………5

    f. Mere Assertions and Quarrels and Bare Moral Meanderings that Do Not Address the Plaintiff's Actual Legal Arguments in the Complaint Are Also Waived ……………..5

    g. The Record Univocally Shows that Defendants Shaw, Devlin, and Casebeer-Blum Were Aware of the Plaintiff's Transgender Status, Although Merely Perceiving Her As Such Would Have Been Enough At Any Event………..……………………………..6

    h. To the Extent that Defendants' Meanderings Are To Be Considered An Attack on the But-For Test for First Amendment Retaliation, Defendants Are Mistaken……………6

III. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S FEDERAL LAW CLAIMS

    a. SDPS and the University Are Government Entities and their Supposed 'Private' Label Is Not Dispositive or Even Instructive in this Analysis………..……………….……..8

        1. SDPS is an Entity Amenable to a 42 U.S.C. § 1983 Claim as a Separate and Distinct Legal Entity and It Is a Government Instrumentality and Defendants Are Judicially Estopped from Claiming Otherwise………..……………………….. 8

        2. That SDPS is a Legally Distinct and Separate Entity for the Purposes of a 42 U.S.C. § 1983 Claim Does Not Mean that It Is A Separate Corporation and As Defendants Concede that It Is Not, the University is Thereby a Government Actor As Well (Similar to the Company Town Context the Supreme Court Addressed)………..……………………………………………………11

        3. Accordingly, All SDPS and University Actions Are Government Actions and Defendants Are Mistaken in Their Belief that an Entity Can Be Parted into Pieces by its *Functions*………..………………………………………….12

    b. Even If Assuming, *Arguendo*, That Was Not the Case, All SDPS and University Officials Are Government Actors or Private Parties that Acted under the Color of Law

1. The Outside-Circuit Cases Are Not Helpful or Instructive At All and They Have, Of Course, Been Cherrypicked………..……………………………………………12

2. That the Memorandum of Understanding Calls Something 'Private' Does Not Make It So for 42 U.S.C. § 1983 Purposes………………………………………..14

3. Any Record-Keeping Action Is Delegated to Governmental Actors as Set in the Memorandum of Understanding and, As Such, Defendants' Arguments are Meritless………..……………………………………………………………………14

4. Even Assuming, *Arguendo*, That Was Not the Case, Those Administrative Functions Taken by SDPS Officers Are Government Actions per *Lindke v. Freed* as *United States v. Lankford* Also Found for Similar Facts………………….15

5. Admissions Officers Satisfy At the Very Least Government-Nexus, Joint Action, Symbiotic Relationship Tests………………………………………………………

   A. Information-Sharing Exemption Is Only Applicable to the Joint Action Test………..………………………………………………………………16

   B. Information-Sharing Exemption Only Applies to Legally Shared Information and *Mere* Information Sharing and There is More in This Case………..……………………………………………………….. 17

   C. At Any Event, Admissions Officers Satisfy the Government-Nexus Test………..…………………………………………………………17

   D. At Any Event, Admissions Officers Satisfy the Symbiotic Relationship Test………..…………………………………………………………18

c. Defendants' Arguments on the 42 U.S.C. § 1985 Cause of Action is the Most Frivolous And Meritless Argument the Plaintiff Has Ever Seen

   1. Defendants Seem To Confuse a Conspiracy Claim under 42 U.S.C. § 1983 With One Under 42 U.S.C. § 1985(3) and the Latter Does Not Require a State Actor after *Griffin*………..…………………………………………………..18

   2. Despite Defense Counsel's Bigotry and Inability to Understand this Despite Being Explained Repeatedly in *Doe I*, Doe is Not "a Homosexual"…………..19

   3. *Del Nero* Actually Supports the Argument that the Ninth Circuit (Like the Sixth) Has Adopted a Fourteenth Amendment Suspect or Quasi-Suspect Class Analysis for the Section 1985(3) Class-Based Animus Requirement……………………19

   4. Defendants' Remaining Reliance on *Del Nero* Is Astonishingly Meritless and Is an Offensive Relic From a Bygone Era……………………………………….. 21

   5. Since Sex and Transgender Status (Or, For that Reason, Sexual Orientation) Are Suspect Classes in the Ninth Circuit, They Satisfy the Class-Based Animus Test………..……………………………………………………………21

   6. Doe Could Survive on this Claim as a Protected Class of One under *Village of Willowbrook* and Defense Counsel Intentionally Omitted that Part of the Screening Order………..…………………………………………………23

   7. Defendants' Remaining Arguments Are Meritless as Defendant Smith's Obsession with the Plaintiff's Genitalia (Which is About the Plaintiff's Sex) is the But-For Cause for the Admissions Investigation………..……………………24

IV. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S CONTRACT CLAIMS

   a. Doe Has Adequately Plead a Written Contract Cognizable within California Law and

iii

its Breach Thereof…………………………………………………………………….24

b. Doe Has Adequately Plead a Breach of an Implied-in-Fact Contract and Defendants Misconstrue *Kashmiri*…………………………………………………………26

c. Doe Has Adequately Plead a *Quantum Meruit* Claim…………………………27

d. Doe Has Adequately Plead a Breach of Implied Covenant of Good Faith and Fair Dealing……………………………………………………………………….. 27

e. Doe Has Adequately Plead an Interference with Contract Claim because *Shoemaker* Is Less Instructive Herein Than *Woods* as Individual Defendants Herein Were Not Corporate Agents………………………………………………….. 27

f. Doe Has Adequately Plead a Promissory Estoppel Claim……………………….28

V. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S TORT CLAIMS

a. Doe Has Adequately Plead an Intrusion Upon Seclusion Claim…………………28

b. Doe Has Adequately Plead a Defamation Claim………………………………….. 29

c. Doe Has Adequately Plead a Fraud Claim………………………………………. 30

d. Doe Has Adequately Plead a Negligence Claim…………………………………31

e. Doe Has Adequately Plead a Negligent and Intentional Infliction of Emotional Distress Claim…………………………………………………………………31

f. Doe Has Adequately Plead a *Respondeat Superior* Claim……………………….31

VI. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S STATE LAW CIVIL RIGHTS CLAIMS

a. Doe Has Adequately Plead a Bane Act Claim…………………………………….31

b. Doe Has Adequately Plead an Unruh Act Claim………………………………….32

VII. CONCLUSION……………………………………………………………………….32

**TABLE OF AUTHORITIES**

**Caselaw:**

*Adams v. Johnson*,
     355 F.3d 1179 (9th Cir. 2004)…………………………………………………………..2

*American Federal Savings & Loan Association v. Novotny*,
     442 U.S. 366 (1979)……………………………………………………………………..20

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ……………………………………………………………*passim*

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)…………………………………………………………*passim*

*Blum v. Yaretsky*,
     457 U.S. 991 (1982)……………………………………………………………………17

*Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.*,
     688 F. Supp. 2d 940 (N.D. Cal. 2010)…………………………………………………28

*Bostock v. Clayton County*,
     590 U.S. 644 (2020)………………………………………………………………19, 22

*Broadcom Corp. v. Netflix Inc.*,
     677 F. Supp. 3d 1010 (N.D. Cal. 2023)…………………………………………………5

iv

*Browder v. Tipton*,
　　630 F.2d 1149 (6th Cir. 1980)…………..……….…….……….……………20

*Brunette v. Humane Soc'y*,
　　294 F.3d 1205 (9th. Cir. 2002)…………..……………………………11, 12, 18

*Children's Health Def. v. Meta Platforms, Inc.*,
　　112 F.4th 742 (9th Cir. 2024)……………………….…….………………8

*Cochran v. Cochran*,
　　65 Cal. App. 4th 488 (1998)…………..…………….…….……………..31

*Collins v. Womancare*,
　　878 F.2d 1145 (9th Cir. 1989)………..………………….……………16

*Concha v. London*,
　　62 F.3d 1493 (9th Cir. 1995) …………………………………………………..3

*D.A.R.E. Am. v. Rolling Stone Magazine*,
　　270 F.3d 793 (9th Cir. 2001)…………..………………….…………………...5

*De Santis v. Pac. Tel. & Tel. Co.*,
　　608 F.2d 327 (9th Cir. 1979) …………..……………………………….19,21

*Doe v. Smith*,
　　No. 25-cv-03490-PCP (filed April 21, 2025)…………..………………………….*passim*

*Duronslet v. Cty. of L.A.*,
　　266 F. Supp. 3d 1213 (C.D. Cal. 2017) …………………………….………….32

*Faiaz v. Colgate Univ.*,
　　64 F. Supp. 3d 336 (N.D.N.Y. 2014) …………..…………………………..13

*Fayer v. Vaughn*,
　　649 F.3d 1061 (9th Cir. 2011) …………..……………………………….2

*Flores v. Morgan Hill Unified Sch. Dist.*,
　　324 F.3d 1130 (9th Cir. 2003) …………..……………………………22

*Food Mktg. Inst. v. Argus Leader Media*,
　　588 U.S. 427 (2019)…………..………………………..……………..19

*Frontiero v. Richardson*,
　　411 U.S. 677 (1973)…………..………………………………………23

*Golinski v. United States Office of Pers. Mgmt.*,
　　824 F. Supp. 2d 968 (N.D. Cal. 2012)…………..…………………………21

*Grabowski v. Ariz. Bd. of Regents*,
　　69 F.4th 1110 (9th Cir. 2023)…………..…………………………….23

*Greenwood v. Fed. Aviation Admin.*,
　　28 F.3d 971 (9th Cir. 1994). …………..…………………………………5

*Griffin v. Breckenridge*,
　　403 U.S. 88 (1971)…………..………………………….……18, 19, 20

*Gutierrez v. Wells Fargo Bank, N.A.*,
　　No. CV 11-6617-GHK (VBKx), 2012 U.S. Dist. LEXIS 199899 (C.D. Cal. Feb. 9, 2012).28

*Hall v. Am. Nat'l Red Cross*,
　　86 F.3d 919 (9th Cir. 1996) …………..……………………………11

*Hamilton v. State Farm Fire & Cas. Co.*,
　　270 F.3d 778 (2001)…………..………………………………………1, 2

v

*Healy v. DJO, LLC*,
No. 11-cv-673-IEG-JMA, 2012 U.S. Dist. LEXIS 17940, 2012 WL 474482
(S.D. Cal. Feb. 14, 2012)…………………………………………………………………..7

*Hervey v. Estes*,
65 F.3d 784 (9th Cir. 1995)…………………………………………………………9, 11

*High Tech Gays v. Def. Indus. Sec. Clearance Office*,
895 F.2d 563 (9th Cir. 1990)…………………………………………………………..21

*Hisun Motors Corp., U.S.A. v. Auto. Testing & Dev. Servs.*,
No. CV11-1918- PHX-DGC, 2012 U.S. Dist. LEXIS 27560 (D. Ariz. Mar. 2, 2012)……27

*Holloway v. Arthur Andersen & Co.*,
566 F.2d 659 (9th Cir. 1977)………………..………………………….……………19, 22

*Int'l Metaphysical Ministry, Inc. v. Church*,
No. 21-cv-08066-KAW, 2022 U.S. Dist. LEXIS 241742, 2022 WL 19691043 (N.D. Cal.
Dec. 19, 2022) …………………………………………………….…..……………3, 27

*Jones v. Drayton*,
No. 2:21-cv-06020-ODW-JC, 2025 LX 162436 (C.D. Cal. June 4, 2025)………………..5

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019)………………………………………………….………22

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App. 4th 809 (2007)…………………………………….……………25, 26, 28

*Khoja v. Orexigen Therapeutics, Inc.,*.
899 F.3d 988 (9th Cir. 2018)……………………………………………………..30

*Kirtley v. Rainey*,
326 F.3d 1088 (9th Cir. 2003)…………..…………………………………………18

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995)……………..………………………………………………10, 11

*Leon v. Bondi*,
No. 24-4131, 2026 U.S. App. LEXIS 3630 (9th Cir. Feb. 5, 2026)………….………....…..24

*Lindke v. Freed*,
601 U.S. 187 (2024)………………………………………………………………15

*Lugar v. Edmondson Oil Co., Inc.*,
457 U.S. 922 (1982)………………..……………………………..………9, 10, 11, 12

*Luxul Tech. Inc. v. NectarLux, LLC*,
No. 14-CV-03656-LHK, 2015 U.S. Dist. LEXIS 104097 (N.D. Cal. Aug. 6, 2015)..…27, 28

*Maglica v. Maglica*,
66 Cal. App. 4th 442 (1998)………………..…………………………………….. 26

*Malloy v. Fong*,
37 Cal. 2d 356 (1951)……………………………………………………………….31

*Mancini v. City of Cloverdale Police Dep't*,
No. 15-cv-02804-JSC, 2015 WL 3993216 (N.D. Cal. June 30, 2025)…………..…………23

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ……………..……………………………………….2

*Mapsong PC v. Blue Shield of Cal. Life & Health Ins. Co.*,
780 F. Supp. 3d 939 (C.D. Cal. 2024) ………………………………………………26

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

*Marsh v. Alabama*,
  326 U.S. 501 (1946)……………………………………………………………………….12

*Mathis v. Pacific Gas & Electric Co.*,
  75 F.3d 498 (9th Cir. 1996) …………………………………………...…………16, 17

*Miles v. Deutsche Bank National Trust Co.*,
  236 Cal.App.4th 394 (2015)…………………………………………………………..25

*Mora v. Zeta Interactive Corp.*,
  No. 1:16-cv-00198-DAD-SAB, 2016 U.S. Dist. LEXIS 83275 (E.D. Cal. June 24, 2016)…7

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)………………………………………...…………………….1

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*,
  205 Cal. App. 3d 1415 (1988)……………………………………………………27

*Nichols v. Azteca Rest. Enters.*,
  256 F.3d 864 (9th Cir. 2001)………….……………………………………………..23

*Nielsen Constr. Co. v. Int'l Iron Prods.*,
  18 Cal. App. 4th 863 (1993)………………………………………………………..25

*Novotny v. Great Am. Fed. Sav. & Loan Assn.*, 584 F.2d 1235, 1243-44 (3d Cir. 1978), *ovrl'd as*
  stated in 442 U.S. 366 (1979)………………………………………..………….20, 23

*Ouzts v. Maryland Nat'l Ins. Co.*,
  505 F.2d 547 (9th Cir. 1974) ……………………………………………13, 14

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 2846 (2025)……………..……8, 16, 17

*Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017)………………………………………….……………3, 18

*Pruitt v. Cheney*,
  963 F.2d 1160 (9th Cir. 1991)…………..……………………………….……………31

*Raedeke v. Gibraltar Sav. & Loan Assn.*,
  10 Cal. 3d 665 (1974)……………………………………………………….28

*Regents of the University of California v. Superior Court of Los Angeles County*,
  4 Cal. 5th 607 (2018)…………..……………………………………………...31

*Reitman v. Mulkey*,
  387 U.S. 369 (1967)…………………………………………………………13

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982)…………………………………………………………10

*Robinson v. Davis*,
  447 F.2d 753 (4th Cir. 1971)………………………………………………..12

*Russell v. Rolfs*,
  893 F.2d 1033 (9th Cir. 1990) …………………………………………………1

*Schwenk v. Hartford*,
  204 F.3d 1187 (9th Cir. 2000) ………………………………………………22

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)…………..……………………………………3, 24, 27

*Stevens v. Roman Catholic Bishop of Fresno*,
  49 Cal. App. 3d 877 (1975)…………..…………………………………31

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018). ………………………………………………………………5

*Ulane v. Eastern Airlines*,
    742 F.2d 1081 (7th Cir. 1984)………………………………………………………………19

*United Brotherhood of Carpenters & Joiners v. Scott*,
    463 U.S. 825 (1983)………………………………………………………………20

*United States v. Castillo*,
    496 F.3d 947 (9th Cir. 2007)………………………………………………………………6

*United States v. Diaz-Castaneda*,
    494 F.3d 1146 (9th Cir. 2007)…………..………………………………………………………28

*United States v. Lankford*,
    No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897 (C.D. Cal. Nov. 21, 2025).15, 16

*United States v. Mangi*,
    No. 18-cr-00260-EJD-1, 2022 U.S. Dist. LEXIS 96813 (N.D. Cal. May 31, 2022)……….14

*United States v. Olano*,
    507 U.S. 725 (1993) …………………………………………………………………6

*United States v. Price*,
    383 U.S. 787 (1966) …………………………………………………………………10

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) …………………………………………………………………23

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981)………………………………………………………………2

*Wallin v. Vienna Sausage Mfg. Co.*,
    156 Cal. App. 3d 1051 (1984)………………………………………………………………30

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ………………………………………..…………..22

*Yuan v. Tops Markets*,
    No. 5:10-CV-1251, 2012 U.S. Dist. LEXIS 141280, 2012 WL 4491106
    (N.D.N.Y. Sept. 28, 2012)…………………………………………………………..13

## Statutes and Codes:

United States Code
    Title 42, Section 1983 ………………………………………..………………………… *passim*
    Title 42, Section 1985 ………………………………………………………………*passim*
California Penal Code
    Section 830.6……………………………………………………… 9, 11, 13, 15

## Regulations

Code of Federal Regulations
    Title 34, Section 99.31(a)(2) ……………………………………………………..29

## Other Authorities

1 Witkin, Summary of Cal. Law, Contracts, Section 97……………………………………..…..26

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

Plaintiff hereby opposes the motion to dismiss ("Mot.") docketed at ECF No. 113.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Ever since the Supreme Court made the mistake of overruling *Conley v. Gibson*, 355 U.S. 41 (1957) and thereby shutting the doors of the Judiciary to those who have been wronged but cannot *know* how *precisely* they have been wronged because invidious conduct often carries itself under a clandestine banner, it has become the easiest ever to write a quasi-meritorious motion to dismiss in a whim and with minimal effort. Yet defendants still managed to do what the Plaintiff thought was *quite* impossible: Write a completely frivolous motion to dismiss. For reasons set forth *infra*, the motion should be denied *in toto*.

### II. PRELIMINARY ISSUES

#### a. Defendants Seem to be Confusing Judicial Estoppel with Equitable Estoppel

Defendants proffer, "Judicial estoppel would require, at minimum, that the Stanford Defendants affirmatively took the position they were state actors and obtained some benefit from doing so." Mot. at 10: 18-19. It cites *New Hampshire v. Maine,* 532 U.S. 742, 749–51 (2001) "in support." Defendants are mistaken and insofar as defendants imply that there has to be some detrimental reliance on the Plaintiff's part (and benefit on their part) for judicial estoppel to apply, they seem to confuse it with equitable estoppel. (And it is unclear where this "affirmative" position standard is delineated—certainly not in *New Hampshire*—and why defendants claim they did not take an "affirmative" position). "The United States Supreme Court recently listed [in *New Hampsire*] three factors that courts *may* consider in determining whether to apply the doctrine of judicial estoppel." *Hamilton v. State Farm Fire & Cas*. Co., 270 F.3d 778, 782 (2001) (italics in the original). Judicial estoppel is an equitable doctrine that is invoked out of "**regard for the dignity of judicial proceedings**,' and to 'protect against a litigant **playing fast and loose with the courts**.'" *Hamilton*, 270 F.3d 782, quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (emphasis

added). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the **same litigation**, but is also appropriate to bar litigants from **making incompatible statements in two different cases**." *Hamilton*, 270 F.3d at 782 (emphasis added). [E]stoppel **is even more appropriate where the incompatible statements are made in two different cases**." *Hamilton*, 270 F.3d at 783 (emphasis added).

### b. Defendants Grossly Mischaracterize the *Twombly* and *Iqbal* Plausibility and Pleading Standard as Courts Continue to Review Complaints as a Whole and Drawing Reasonable Inferences Thereto and Therefrom

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the **light most favorable to the non-moving party**." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (emphasis added). Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); accord *lqbal*, 556 U.S. at 663-4. Put yet in another way, the allegations of a complaint must cross "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. A plaintiff can allege facts "suggestive" of an

agreement to engage in "illegal conduct." *Twombly*, 550 U.S. at 564 n.8. The Plaintiff can also "nudge [her] claim[.]" *Iqbal,* 556 U.S. at 680.  "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief **where the facts are peculiarly within the possession and control of the defendant** or where the belief is based on factual information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910, 942 (9th Cir. 2017). "**[W]e relax pleading requirements where the relevant facts are known only to the defendant."** *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995[1]) (emphasis added). "If there are two alternative explanations, **one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).**" *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added). Despite defendants' insistence, courts continue to review complaints where "the entire factual context [of a complaint] is considered[.]" *Park*, 851 F.3d at 928. Defendants cite *Int'l Metaphysical Ministry, Inc. v. Church*, No. 21-cv-08066-KAW, 2022 U.S. Dist. LEXIS 241742, **2022 WL 19691043[2]** (N.D. Cal. Dec. 19, 2022) against this proposition, but that Opinion is about a motion *in limine* and does not address this issue *at all*. *See* Exhibit A to the Request for Judicial Notice ("RJN") (opn. of Westmore, J.). As such, of course, a complaint can incorporate previous paragraphs in support of its causes of actions. Although the standard is demanding, it is not as demanding as defendants make it to be, and by hiding out every fact from the Plaintiff, they cannot prevent the Plaintiff from seeking a redress against their illegal, unconstitutional, unacceptable-in-civil-society, must-be-enjoined conduct.

---

[1] *Park* affirmed that this is still good precedent after *Twombly* and *Iqbal* by citing it *ipse dixit*.

[2] The Plaintiff does not have a Westlaw subscription. But the opinion for the Westlaw citation that appears on LexisNexis has been provided to this Court as Exhibit A to RJN.

3

**c. The *Twombly* and *Iqbal* Plausibility and Pleading Standard Does Not Allow Complete Portions of a Complaint to Be Wholly Ignored, Like Defense Counsel Does**

Defense counsel is of the apparent belief that the *Twombly* and *Iqbal* pleading standard allows her to ignore complete portions of a complaint. It does not. And she *corrupts* the Plaintiff's actual verbiage. The Plaintiff merely noted, "**These** allegations were not included in *Doe I* because they were generally unrelated to the allegedly unconstitutional conduct therein. And they are **largely** irrelevant herein, too." Op. Compl. at note 9 (emphasis added). "These allegations" referred therein to were meant to be relation to the restraining order matter, not defendants' abuse of the Plaintiff because of her transgender status. Nor does "largely" irrelevant mean completely irrelevant. And "conduct therein" means that the Plaintiff did not include those allegations because that complaint did not include a cause of action that required discriminatory animus—a Fourth Amendment seizure claim. Perhaps defendants attempted to argue that the initial interaction with SDPS does not satisfy the "integral participant/event" test in this Circuit but because they decided to corrupt the Plaintiff's verbiage instead of actually addressing the law, the argument, as is, is waived.

**d. To the Extent that Defendants Attempted to Bring a *Res Judicata* Argument, the Argument Is Waived Because It was Simply Asserted and At Any Event, There is No Claim or Issue Preclusion Applicable Herein and the Events that Were Subject to *Doe I* Could be Plead and Brought Herein**

Defendants continuously *hint* some *res judicata* argument. *See, e.g.,* Mot. at 8: 27-29 and 9: 1. Defendants have not properly addressed why issue preclusion (or claim preclusion—although this complaint has different causes of action) would prevent allegations included in *Doe v. Smith*, No. 25-cv-03490-PCP (filed April 21, 2025) (*Doe I*) to be included herein as well. And defendants have not established why a collateral attack on that dismissal herein would not be proper, especially if the stipulation is void as unconscionable. That Plaintiff's direct attack failed does not bar a collateral attack—nor are those attacks reviewed under the same evidentiary standards. Because hinting an

argument is not making that argument, these points are waived.

**e. To the Extent that Defendants Merely and Selectively Quoted *Ipse Dixit* this Court's Screening Order, All of Those Portions of the Motion are Improper and Arguments in Them Are Thus Waived since the Court Can Only Review the Four Corners of a Complaint At This Stage and this Court Cannot Become the Defendants' Advocate**

"Rule 12(b)(6) and Rule 12(c) motions generally are confined to the four corners of the complaint, and any materials it incorporates." *Broadcom Corp. v. Netflix Inc.*, 677 F. Supp. 3d 1010, 1018 (N.D. Cal. 2023). This court's screening order is not part of those four corners. Indeed, the Plaintiff has been unable to find any caselaw where a defendant's motion to dismiss relied this heavily on a previous screening order. To the extent that defendants merely *ipse dixit* quoted this Court's order and not developed any arguments themselves therefor, those points are improper and are thus waived.  "Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself." *Jones v. Drayton*, No. 2:21-cv-06020-ODW-JC, 2025 LX 162436, at *22 n.11 (C.D. Cal. June 4, 2025).

**f. Mere Assertions and Quarrels and Bare Moral Meanderings that Do Not Address the Plaintiff's Actual Legal Arguments in the Complaint Are Also Waived**

Defense counsel has gotten it wrong: In a legal pleading, one has to assert an argument, followed by caselaw supporting that argument, establishing how precedent supports the particularized argument herein. To the extent that she failed to do so, those quarrels and mere assertions are either waived or forfeited. "We will not manufacture arguments for [a litigant], and a bare assertion does not preserve a claim[.]" *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). "The Court's [and this Plaintiff's] role is not to make or develop arguments on behalf of [other] parties[.]" *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018). "A bare assertion of an issue does not preserve a claim." *D.A.R.E. Am. v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001). Waiver is "the intentional relinquishment or

abandonment of a known right," whereas forfeiture is "the failure to make the timely assertion of [that] right." *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (internal quotation marks omitted); *see United States v. Castillo*, 496 F.3d 947, 952 n. 1 (9th Cir. 2007) (en banc).

### g. The Record Univocally Shows that Defendants Shaw, Devlin, and Casebeer-Blum Were Aware of the Plaintiff's Transgender Status, Although Merely Perceiving Her As Such Would Have Been Enough At Any Event

Defendants proffer, "Plaintiff further fails to allege that any of the Stanford Defendants who participated in the decision to expel her **knew of her transgender identity** and intended to discriminate against her on that basis." Mot. at 13: 26-27 (emphasis added). This is an astonishing point to make. Defendant Shaw expelled the Plaintiff because he alleged that the Plaintiff was dishonest in her admissions application. *See* Exh. G. to Op. Compl. at at 176-180. This establishes that he reviewed the Plaintiff's admissions application. The Admissions application—which was incorporated into the complaint—on its face identifies the Plaintiff as a transgender woman. *See, e.g.,* Exh. G to Op. Compl. at 192-210. Plainitff's **direct** communication with defendant Shaw also consistently identified her as a transgender woman. *See, e.g.,* Exh. G to the Op. Compl. 83-87. *See also* Exh. E at 9-10 (asking defendant Shaw to not deadname the Plaintiff by calling her by her former male name where her female name was also provided on the application). And Defendant Shaw's intent to discriminate has been pleaded. *See* Op. Compl. at ¶ 133.

### h. To the Extent that Defendants' Meanderings Are To Be Considered An Attack on the But-For Test for First Amendment Retaliation, Defendants Are Mistaken

Defendants' attempt to hint that the Plainitff's transgender status is not the motivating factor for her expulsion and/or that the but-for cause test for First Amendment retaliation is not satisfied *if* she claims as such. *See, e.g.* Mot. at 11: 21-22 ["such a claim would be directly at odds with her primary contention that she was expelled in retaliation for filing *Doe I"*]. Defendants have not

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

properly developed this argument, so it is forfeited. It is unclear why a Fourteenth Amendment equal protection of the law claim cannot be incorporated into a First Amendment retaliation claim and why that incorporated claim would not be satisfy 'but-for' cause causation requirement for First Amendment retaliation claim. And it is utterly unclear why a mixed motive claim is precluded herein, as defendants seem to make it. *See infra* at p. 23-25. At any event, due to the vagueness of the assertions, plaintiff cannot respond to them.

### i. Defendants Selectively Misquote Defendant Shaw's Declaration and, At Any Rate, Mr. Shaw's Bare Assertions Cannot Be Used in Aid of Dismissal

Defendants selectively rely on a declaration submitted by Defendant Shaw in *Doe I*. *See, e.g.,* Mot. at pp. 2: 15-16, 4: 13-19, 9: 7-12. Defendant Shaw declared that he "was provided with a copy of Ms. Doe's identification card that I am informed and believe **came**[3] from **the criminal file**." *Id*. at ¶ 8. He further declared, he "personally determined that **there were significant concerns about dishonesty in Ms. Doe's application to Stanford that should be investigated**." *Id*. at ¶ 9. He further noted that he "made the decision to investigate" *Ibid*. Despite Defendant Shaw's declaration being facially perjurious, that he made the decision *to start the investigate* does not mean that there were no meeting of minds before, during, after that purported 'decision' in support of that purported 'decision.' Although the Plaintiff did incorporate this declaration into the complaint, defendants cannot simply succeed on a dismissal motion by filing a declaration simply denying the allegations of the complaint—and this does not change simply because the Plaintiff incorporated their declaration into the complaint. *See, e.g., Healy v. DJO, LLC,* No. 11-cv-673-IEG-JMA, 2012 U.S. Dist. LEXIS 17940, 2012 WL 474482, at *2 (S.D. Cal. Feb. 14, 2012); *Mora v. Zeta Interactive Corp*., No. 1:16-cv-00198-DAD-SAB, 2016 U.S. Dist. LEXIS 83275, at *6 n.3 (E.D. Cal. June 24,

---

[3] This statement is perjurious, as established in Dkt. No. 129 in *Doe I* at 5-7.

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

2016).

### III. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S FEDERAL LAW CLAIMS

#### a. SDPS and the University Are Government Entities and their Supposed 'Private' Label Is Not Dispositive or Even Instructive in this Analysis

As a preliminary point, of course, the university defendant calls itself "private." That fact alone "does not quite end [the] inquiry because, in certain 'exceptional cases,' a private party 'will be treated as a [government] actor for constitutional purposes.'" *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) (quoting *O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023)), *cert. denied*, 145 S. Ct. 2846 (2025).

#### 1. SDPS is an Entity Amenable to a 42 U.S.C. § 1983 ("Section 1983") Claim as a Separate and Distinct Legal Entity and It Is a Government Instrumentality and Defendants Are Judicially Estopped from Claiming Otherwise

Defendants proffer, "Plaintiff's claims in *Doe I* were based on **law enforcement activity by SDPS**: an investigation into whether Plaintiff had [allegedly] impersonated the student she was suing in communicating with the superior court clerk (a[n] [alleged] crime under California Penal Code § 529(a)(3))." Mot. at 10: 21-23; emphasis added. Although this is quite a common mistake that the Plaintiff also subscribed to earlier in her legal knowledge, the problem with this proposition is this: The test for determining whether a purportedly *private corporation* was a *state actor or agency* (or, for that matter, a local instrumentality) is **wholly different** than the test for determining whether a private *natural person* is a government *actor* who acted on behalf of a state actor. This is a subtle point that will take some parsing out to do, but, nonetheless, it is an intellectually pleasing one—so the Plaintiff hopes the Court will bear with the Plaintiff for some pages.

But before that, there is a threshold question: Whether SDPS could bear suit in a Section 1983 (and 1985) claim as a separate party. The answer to that question is yes. Because defendants

8

do not seem to dispute this, the Plaintiff's legal arguments on this will be brief. The appropriate test herein is found in *Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995). To be an "entity amenable to suit under section 1983[,]" there has to be some "inten[tion] to create a separate legal entity subject to suit[.]" *Harvey*, *ibid.* Here, the memorandum of understanding ("MOU") (which was incorporated into the Complaint) signed between the Sheriff's Office and the University create the inference that SDPS was intended to be a separate and distinct legal entity from the Sheriff's Office and the University. "In order to provide for the assignment of certain specific police functions to qualified members of the **Stanford University Department of Public Safety**, and in compliance with the request of the **University**, the **Sheriff of the County of Santa Clara** will deputize Reserve Deputy Sheriffs (under Section 830.6 of the Penal Code) under conditions herewith set forth…" MOU at 2 (emphases added).

As defendants concede, SDPS is a government actor and a local instrumentality—and they are barred by judicial estoppel in claiming otherwise because they previously conceded that SDPS is a local instrumentality and a government actor—and, again, SDPS' *functions* is irrelevant to this inquiry. The test for determining whether a purportedly private corporation is a governmental instrumentality is found in, historically, *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982). The Supreme Court intuitively signaled this differentiation between an actor and an entity analysis in *Lugar*, 457 U.S. at 937 ("although related…"). That two-part test is this (although one part of it can be enough for a Section 1983 claim as argued *infra*): "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. […] Second, the party charged with the deprivation must be a **person** who may fairly be said to be a state actor." *Id.* at 937 (emphasis added). Indeed, "[a]lthough the state-action and under-color-of-state-law requirements are 'separate

9

areas of inquiry,' *Flagg Brothers* did not hold nor suggest **that state action, if present, might not satisfy the § 1983 requirement of conduct under color of state law**." *Id.* at 922 (emphasis added). Put differently, in *Lugar*, the Supreme Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also **action under color of state law and will support a suit under § 1983**." *Id*. at 935 (emphasis added). *See, accord, Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). *See also United States v. Price*, 383 U.S. 787, 794, n. 7 (1966) ["In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.[4]"].

The question for SDPS is whether the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S. Ct. 961 (1995) is a good case herein. "[A]s here, [when] the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of  the directors of that corporation, the corporation is part of the Government." *Lebron*, 513 U.S. at 400. Put differently, "we have held once, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 6 L. Ed. 2d 45, 81 S. Ct. 856 (1961), and said many times, that actions of private entities can sometimes be regarded as governmental action for constitutional purposes." *Id.* at 378 (collecting cases). And, again, if SDPS is a government actor, one can halt one's analysis herein and do not reach to the acting-under-the-color-of-law theory.  Let one perform the *Lebron* test herein then, even though

---

[4] The Plaintiff proceeds in amalgamating Fourteenth Amendment and First Amendment cases herein in an eclectic manner because the Complaint invoked a violation of both of those Amendments, and it is too cumbersome to create a differentiation in the finite space herein.

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

defendants are estopped from claiming that SDPS is not a state actor. "Under a 'structural' analysis, or 'government entity' test, a corporation created by special law is part of the government for the purposes of the First Amendment (1) when the corporation is created for the furtherance of governmental objectives and (2) when government retains for itself permanent authority to appoint the majority of directors of the corporation." *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996) (citing *Lebron*). Here, SDPS easily satisfies the first-prong. As a police precinct, it is a corporation "created for the furtherance of governmental objectives." It also satisfies the second prong, because the MOU is clear that the Santa Clara Sheriff is the officer who has plenary power to appoint officers to it. *See*, *e.g.*, MOU at 3-8. And, indeed, the government employed a "special law" to create SDPS—California Penal Code, section 830.6. This is similar to "Va. Code § 8.01-533 (1977)." *Lugar* at 924.

SDPS is a state actor. The Court need not reach further for an acting-under-the-color-of-law theory to find that the Plaintiff can prevail on her 42 U.S.C. § 1983 claims. But the Plaintiff will perform that analysis, too.

**2. That SDPS is a Legally Distinct and Separate Entity for the Purposes of a 42 U.S.C. § 1983 Claim Does Not Mean that It Is A Separate Corporation and As Defendants Concede that It Is Not, the University is Thereby a Government Actor As Well (Similar to the Company Town Context the Supreme Court Addressed)**

Of course, that SDPS is a separate entity amenable to suit under the *Hervey* test does not mean that it is a **separate entity by corporate structure**. Defendants maintain that SDPS is only a "department" of the University. *See* Mot. at 25: 1. If that is the case, then the University is a state actor as well. This is a classic *Burton* situation. "*Burton* teaches that substantial coordination and integration between the private entity and the government are the essence of a symbiotic relationship. Often significant financial integration indicates a symbiotic relationship." *Brunette v.*

11

*Humane Soc'y,* 294 F.3d 1205, 1213 (9th. Cir. 2002). SDPS and Stanford admissions office, by the virtue of being controlled by the same Board of Trustees, are "financially integrated[.]" *Brunette,* 294 F.3d at 1214. Indeed, crediting Defendants' assertions, if they are just different *departments* of the same institution, they are, by **their virtue of existence** in a "position of interdependence" (*Brunette,* at p. 1210), and they are "inextricably intertwined" *Id.*, 1211. Indeed, "the peculiar facts or circumstances," herein are exactly as the ones that *Burton* recognized. *Id.* at 725-26. Put differently, if the Plaintiff had provided that ID card to, *say*, Palo Alto Police Department, but not the SDPS, then Defendant Shaw would have never been able to acquire that ID card because Palo Alto Police Department is not 'interdependent' and 'inextricably intertwined' with Defendant Shaw.

This is also similar to the context addressed by the Supreme Court in *Marsh v. Alabama*, 326 U.S. 501 (1946). Indeed, precisely, Stanford is a private company town. "People living in company-owned towns are free citizens of their State and country[.]" *Marsh* at 502.

### 3. Accordingly, All SDPS and University Actions Are Government Actions and Defendants Are Mistaken in Their Belief that an Entity Can Be Parted into Pieces by its *Functions*

As such, because our inquiry could simply end in finding a state actor without reaching to the acting-under-the-color-of-law part of the *Lugar* test, and because SDPS and Stanford University are state actors in a symbiotic relationship operating a company town, all of the actions alleged in the complaint are state actions.

### b. Even If Assuming, *Arguendo*, That Was Not the Case, All SDPS and University Officials Are Government Actors or Private Parties that Acted under the Color of Law

### 1. The Outside-Circuit Cases Are Not Helpful or Instructive or Even Suggestive At All and They Have, Of Course, Been Cherrypicked

To err on the side of caution, let us continue with the acting-under-the-color-of-law test, even though we need not reach there. Preliminarily, the motion's reliance on *Robinson v. Davis*, 447

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

F.2d 753, 755-59 (4th Cir. 1971) and *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 347-53 (N.D.N.Y. 2014) are misplaced. Those cases are, of course, not binding on this Court—but neither are their instructive or even remotely helpful. And, perhaps needless to note, they have been cherry-picked. The Plaintiff could also provide a list of cases where 'private' university  have been held to be a government actor because of their police force but that would defeat the point: This inquiry is incredibly fact-bound. "It is ... a truism by now that there is no rigid formula for measuring [government] action for purposes of [constitutional] liability. Rather, it is a process of 'sifting facts and weighing circumstances' which must lead [the Court] to a correct determination." *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974) (quoting *Reitman v. Mulkey*, 387 U.S. 369, 378 (1967)). As such, those cases do not aid in any way. Put differently, another student who had been targeted by Defendant Shaw—without SDPS' involvement—might get a different result from this Court. Indeed, as *Colgate* recognized, for instance, in *Yuan v. Tops Markets*, No. 5:10-CV-1251, 2012 U.S. Dist. LEXIS 141280, 2012 WL 4491106, at *3 (N.D.N.Y. Sept. 28, 2012), "the court found … that the Cornell University Police act under color of state law because Cornell University police officers are 'special deputy sheriffs' under New York State law. *Id*. (citing N.Y. Educ. Law § 5709(1))." *Colgate*, 64 F.Supp. 3d at 350. As such, because the *underlying* state law is also relevant to this inquiry—*i.e.* California Penal Code granting deputization—relying on those outside-California cases are erroneous. And like Cornell, it is the Plaintiff's understanding that Stanford is one of the very few universities who have been granted such a status by the State of California, so *Colgate*'s verbiage differentiating Cornell police from Colgate police is also important to note. Also: "The defendants were not investigating a [crime] and there were no criminal charges brought against plaintiff based upon defendant Brogan's purely internal

investigation." *Id*. at 350. Here, defendants concede that they were investigating a purported crime and they have maintained in *Doe I* that the Plaintiff has been charged by the State of California based on that investigation.

### 2. That the Memorandum of Understanding Calls Something 'Private' Does Not Make It So for 42 U.S.C. § 1983 Purposes

Defendants' extended argument that because the Memorandum of Understanding calls something or some function or someone 'private,' that must mean that such a person or such an action is 'private' within the meaning of 42 U.S.C. § 1983 once again depends on the already-rejected argument that they can avail themselves of Section 1983 claims by simply calling themselves private. *See* Mot. At 8-9. Again, this "does not quite end [the] inquiry." *Ouzts,* 505 F.2d at 550. Beyond this, defendants have to show how under the applicable legal standard would they not fall under the ambit of a state actor or someone acting-under-the-color-law. But before that is explicated, defendants' selective quoting of the MOU is also mistaken.

### 3. Any Record-Keeping Action Is Delegated to Governmental Actors as Set in the Memorandum of Understanding and, As Such, Defendants' Arguments are Meritless

Defendants have not in any viable way explained why sharing the Plaintiff's ID card they obtained **during a police investigation** and one that was provided to them 2 years ago to obtain a **police report** would not be for "general law enforcement" purposes. And the Plaintiff cannot think of any viable theory to argue this. As such, because this point is waived in defendants' pages long explanation, defendants' argument collapses. One might have hoped that defendants explained this most core issue in 6 pages of their verbiage, but they chose not to for some reason—perhaps because any explanation would fall given the all-encompassing phrase in question: *general* law enforcement. Indeed, this is in line with the *only* case that addresses this question: *United States v. Mangi*, No. 18-cr-00260-EJD-1, 2022 U.S. Dist. LEXIS 96813, at *16 (N.D. Cal. May 31, 2022).

14

**4. Even Assuming, *Arguendo*, That Was Not the Case, Those Administrative Functions Taken by SDPS Officers Are Acts under the Color of Law per *Lindke v. Freed* as *United States v. Lankford* Also Found for Similar Facts**

The Defendants have also, in their selective quoting of the MOU, omit one very important aspect of the MOU:

> Primary responsibility for managing criminal records generated by Stanford Reserves will rest with a Santa Clara County Sheriff's Office Records Clerk ("Stanford Records Clerk.") The Chief, or his/her designee, will participate in the interview process with the Sheriffs Office for the selection of the Stanford Records Clerk. The Stanford Records Clerk will be posted at the Stanford University Department of Public Safety. The Stanford Records Clerk will oversee Stanford Department of Public Safety criminal records management, will participate in Clery Act submissions, will run reports for the Chief or his/her designees and will assist with other front office and records related tasks at the Department of Public Safety, such as answering phones and responding to walk-in guests. The Captain from the Sheriff's Office will be the direct supervisor of the Stanford Records Clerk to address any performance-related mailers.

MOU at 8-9.

The pertinent function here—if assuming *arguendo* does not fall under the gambit of 'general law enforcement'—the keeping and sharing of the ID card falls under the ambit of a *plain government actor*, employed by Santa Clara County Sheriff's Office Records Clerk. Indeed, that is the reason why Defendant Morgan-Herman is represented by county counsel.

Assuming, *arguendo*, however, that was not the case, the proposition that the SDPS actors who have been granted deputization under the Penal Code simply *halt* being—*in toto*—actors acting under the color of law simply by—wearing the same uniform, being employed by the corporation, doing everything *but* thinking that they are not government actors—declaring themselves to be performing administrative functions…that reasoning has been eviscerated by the reasoning of *Lindke v. Freed*, 601 U.S. 187, 204, 144 S. Ct. 756, 218 L. Ed. 2d 121 (2024). Although *Lindke*'s context was, of course, different, a colleague of this Court applied it to the specific Penal Code deputization context. Simply put, assuming that this argument holds, those SDPS officers' "actual authority—granted to [them] via the California Penal Code—to address public offenses occurring [on Stanford's campus] for which there is probable cause can reasonably be read to have given him

15

sufficient authority in [other contexts] for his alleged deprivation of rights to be 'fairly attributable' to the state." *United States v. Lankford,* No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897, at *4-5 (C.D. Cal. Nov. 21, 2025).

### 5. Admissions Officers Satisfy At the Very Least Government-Nexus, Joint Action, Symbiotic Relationship Tests
#### A. Information-Sharing Exemption Is Only Applicable to the Joint Action Test

Defendants' remaining arguments cite *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023) for the proposition that information sharing would not constitute joint action. The Plaintiff expected this argument to be brought. *See* ECF No. 46-1 at 11. "Defendants may, erroneously, argue that the joint action between Defendant Shaw and SDPS officers were simply 'consultation and information sharing' that the Ninth Circuit in *Mathis v. Pacific Gas & Electric Co.,* 75 F.3d 498, 504 (9th Cir. 1996) rejected." *Ibid*. But *Mathis* would support the Plaintiff's claim herein. The Ninth Circuit rejected Mathis' claim because, even though the task force engaged in consultation and information sharing during the investigation, the task force "wasn't involved in the decision to exclude Mathis from the plant," and the plaintiff "brought no evidence PG&E relied on direct or indirect support of state officials in making and carrying out its decision to exclude him." *Id*. at 504. But in the instant case, Defendant Shaw *directly relied on* SDPS' support in making his decision to exclude the Plaintiff. Indeed, if not for the SDPS' conspiracy to provide that 1.5-year-old ID card to Defendant Shaw, and his reliance thereof, Defendant Shaw *could not* have started his investigation. Put differently, Defendant Shaw and SDPS were "inextricably intertwined" *Mathis*, at p. 1211; *see also Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (terming it as "cooperation").

At any event, this information-sharing bar **only applies to the joint action test, not government nexus or symbiotic relationship tests.** *O'Handley* merely cites *Mathis* for this

proposition *ipse dixit* so it need not be addressed separately. *Mathis* also carved out an important distinction at footnote 4. That is what one might call the 'alter ego' exception to the information-sharing exception. Since SDPS and the University are the same corporation as defendants concede, then SDPS is another *name* for University's actions. Indeed, *Mathis'* information sharing was between PG&E and NRC—not as intricately intertwined corporations, let alone just *one* department of a corporation acting with another. As such, *Mathis* would find that admissions officers acted under the color of law herein.

### B. Information-Sharing Exemption Only Applies to Legally Shared Information and to *Mere* Information Sharing and There is More in This Case

The Plaintiff is skeptical if the information shared with Defendant Shaw was lawfully shared. Indeed, MOU seems to explicitly prohibit this kind of information sharing. "Except as lawfully permitted by the Sheriff or his/her designee, the Chief will not **permit non-sworn Stanford employees** to have access to confidential law enforcement information." MOU at 9. Because Defendant Shaw was not "sworn in" as a deputy, he likely should not have been granted the plaintiff's ID-card information. *Mathis* addressed only legal information sharing, however, and a different analysis would likely call forth if the information was shared in direct violation of the law.

### C. At Any Event, Admissions Officers Satisfy the Government-Nexus Test

At any event, even if the joint action test is not satisfied, the government-nexus test is satisfied based on the allegations of the complaint. "There are two different versions of the nexus test." *O'Handley*, 62 F.4th at 1157 (9th Cir. 2023). The second version of this test is more relevant here. The test is whether the government actors "exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Put differently, the government-nexus

test asks "whether there is such a close nexus between the state and the challenged action that the seemingly private behavior may be fairly treated as that of the state itself." *Kirtley v. Rainey,* 326 F.3d 1088, 1094-5 (9th Cir. 2003) (citation and internal quotations omitted). Here, SDPS provided significant encouragement to Defendant Shaw to expel the Plaintiff by digging and finding out the Plaintiff's ID card from 2 years and sharing it with Defendant Shaw (why else would they share it with an unrelated party in the admissions office?).

### D. At Any Event, Admissions Officers Satisfy the Symbiotic Relationship Test

Because there was "substantial coordination and integration" herein between admissions officer defendants and SDPS officers, a symbiotic relationship exists. *Brunette*, 294 F.3d 1213.

### c. Defendants' Arguments on the 42 U.S.C. § 1985 ("Section 1985") Cause of Action is the Most Frivolous And Meritless Argument the Plaintiff Has Ever Seen

#### 1. Defendants Seem To Confuse a Conspiracy Claim under 42 U.S.C. § 1983 With One Under 42 U.S.C. § 1985(3) and the Latter Does Not Require a State Actor after *Griffin*

The Motion proffers, "[b]ecause the absence of a section 1983 deprivation of rights [claim] precludes a section 1985 conspiracy claim predicated on the same allegations[,]" Plaintiff's 42 U.S.C. § 1985(3) claim fails. Defendants are mistaken. In the motion, defendants erroneously argue that the alleged absence of a state action is the ***sole*** reason why the Plaintiff will not be able to succeed on the Section 1983 claims. This seems to confuse a Section 1983 conspiracy claim with that of a Section 1985. *See Park*, 851 F.3d at 918 n. 7 (collecting authority differentiating a Section 1983 conspiracy claim as opposed to Section 1985 conspiracy claim). Although this point is waived because the defendants merely *ipse dixit* and improperly cited this Court's screening order **(*see ante at )***, to the extent that assuming *arguendo* the Plaintiff failed to plead a state action (she did not), the Plaintiff will still prevail on her Section 1985(3) claim. In *Griffin v. Breckenridge,* 403 U.S. 88, 96-101 (1971), the Supreme Court made it abundantly clear that a Section 1985(3) claim **does not**

18

**require a state actor at all and can be plead as a conspiracy among private parties.** Indeed, that is exactly *what* the Congress intended to prohibit in Ku Klux Klan Act of 1871 (a private 'clan').

### 2. Despite Defense Counsel's Bigotry and Inability to Understand this Despite Being Explained Repeatedly in *Doe I*, Doe is Not "a Homosexual"

The Plaintiff explained, at least three times in *Doe I*, that the Plaintiff is not—what defense counsel calls—"a homosexual." Doe is a heterosexual woman. Although defense counsel's inability to understand modes of phenomenological life experiences unlike hers is astonishing, truly—beyond counsel's astonishing bigotry, this differentiation is important as a matter of law. Although the Supreme Court, for instance, sometimes couples cases regarding discrimination based on sexual orientation and gender identity together, even those cases offer separate analyses for those two different groups. *See, e.g., Bostock v. Clayton County,* 590 U.S. 644 (2020) (issuing a consolidated opinion for *Bostock* and *R.G. & G.R. Harris Funeral Homes*). And even the "old relic[s] from [that] bygone era[,]" *see Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 437, 139 S. Ct. 2356, 204 L. Ed. 2d 742 (2019), defendants **proudly** rely on do entertain this differentiation. *De Santis v. Pac. Tel. & Tel. Co.*, 608 F.2d 327, 329 (9th Cir. 1979) cites, itself, for instance *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (9th Cir. 1977), where the Ninth Circuit was of the apparent belief that because discrimination against the transgender plaintiff was—as the Ninth Circuit's then-beliefs dictated—because she had "undergone sex transformation [*sic*][,]" it would not be discrimination based on sex, and differentiates it from gay people. "While we **recognize distinctions** among homosexuals, transvestites [*sic*], and transsexuals…" *Ulane v. Eastern Airlines*, 742 F.2d 1081, 1085 (7th Cir. 1984); emphasis added. The Plaintiff shall explicate this differentiation *infra* at subsection 4 as it relates to the question of (quasi-)suspect class.

### 3. *Del Nero* Actually Supports the Argument that the Ninth Circuit (Like the Sixth) Has Adopted a Fourteenth Amendment Suspect or Quasi-Suspect

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

**Class Analysis for the Section 1985(3) Class-Based Animus Requirement**

*Del Nero* actually supports the opposite of what defendants claim it supports. This is a complex scholarly[5] question, but to briefly explicate: After *Griffin*, suits brought under section 1985(3) proliferated. The Supreme Court had the opportunity to address this "class-based animus" question in *American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979) and *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825 (1983). In *Griffin*, the Supreme Court had left this question open and it never explicitly answered it ever since. *See Griffin*, 403 U.S. at 102 n.9. After *Griffin*, circuit courts adopted three different approaches to this question: (1) "clearly defined groups", (2) "Immutable Characteristics/Historically Pervasive Discrimination", (3) "Equal Protection and Political Association Analysis." *Scott* weakened the "political association" analysis severely. The Ninth Circuit, like the Sixth, adopted the "equal protection" analysis. Indeed, this reasoning is provided in *Del Nero*, itself. *Del Nero* **first concluded, post-*Griffin***, **that a suspect or quasi-suspect class under equal protection of the law analysis for a Section 1985(3) claim is proper**. *See Del Nero*, 608 F.2d at 333. It, **then**, a page later, turned to the question as to whether gay people would be part of a quasi-suspect and suspect class. It concluded that "homosexuals" would not form a quasi-suspect or suspect class and **for that reason only** would they not be protected under Section 1985(3). Indeed, that *Del Nero* addressed whether "homosexuals" would form a suspect or quasi-suspect class **proves the point** that, in the Ninth Circuit, the "class" analysis, like in the Sixth Circuit, is traditional equal protection analysis. "The distinction between classes protected by section 1985(3) and those that are unprotected must be rooted somewhere in **traditional equal protection analysis**." *Browder v. Tipton*, 630 F.2d 1149 (6th

_____

[5] If Doe was not proceeding pseudonymously, she would cite herein a law journal article she wrote herself setting this point more at length including the Congressional intent therein—but alas.

20

Cir. 1980) (emphasis added). Because *Del Nero*'s other holding—that "homosexuals" are not a suspect class—has been overturned (and not narrowly on employment discrimination grounds as defendants believe) and because transgender status is a suspect class in Ninth Circuit, the Plaintiff will prevail on this question as a matter of law. Put differently, because "homosexuality" is a suspect class in the Ninth Circuit now, *Del Nero* now holds that gay people would be a protected class under Section 1985(3).

#### 4. Defendants' Remaining Reliance on *Del Nero* Is Astonishingly Meritless and Is an Offensive Relic From a Bygone Era

As alluded *supra*, defendants seem to cling to the astonishing position that "homosexuals" or "transsexuals" are not suspect classes in this Circuit. In these old relics from that bygone era, the wise men of the Ninth Circuit were apparently of the apparent belief that gay people would not form a suspect or quasi-suspect class because "homosexuality"—as "sexual *preference*[,]" *De Santis* at 330 (emphasis added)— "is behavioral[,]" *see High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990), (*i.e.*—one 'is' not homosexual but commits homosexual *acts*), and because, following *Bowers v. Hardwick*, 478 US 186 (1986), "homosexual conduct [was] not a fundamental right[,]" *Id* at 574, and "can thus be criminalized[,]" *Id.* at 571, it cannot form a quasi-suspect or suspect class. As argued *infra*, this apparent belief of the wise men of the Ninth Circuit from the 70s and 80s have been eviscerated to shreds by at least the last two decades of caselaw.

#### 5. Since Sex and Transgender Status (Or, For that Reason, Sexual Orientation) Are Suspect Classes in the Ninth Circuit, They Satisfy the Class-Based Animus Test

The Ninth Circuit is no longer of the apparent belief that "homosexuality" "is behavioral." "Therefore, the reasoning in *High Tech Gays* [and *Del Nero*], that laws discriminating against gay men and lesbians are not entitled to heightened scrutiny because homosexual conduct may be legitimately criminalized, cannot stand post-*Lawrence*." *Golinski v. United States Office of Pers.*

*Mgmt.*, 824 F. Supp. 2d 968, 984 (N.D. Cal. 2012). And transgender status is a suspect class in this Circuit. *See Karnoski v. Trump*, 926 F.3d 1180, 1193 (9th Cir. 2019). And the motion seems to be of the apparent belief that a transgender person cannot be discriminated based on her sex and sex stereotypes; indeed, that the transgender status therein ***ipso facto* bars** any claim based on sex and sex-stereotyping[6]. This is both a logical absurdity as a general matter and given the facts of this case. "The initial judicial approach taken in cases such as *Holloway* has been overruled by the logic and language of *Price Waterhouse*." *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000) (meaning that it is impossible to discriminate against a trans person without that discrimination being on the basis of sex-stereotyping). As the Supreme Court reasoned, "[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660. Although, of course, *Bostock* was primarily about the statutory construction of Title VII, that verbiage and **reasoning** is not *obiter dicta—* indeed, it is the most core holding of that ruling. The facts of the complaint also support this conclusion: Defendants singled out the plaintiff because they perceived[7] her to have a "thing[,]" *see* Operative Complaint at ¶ 33, which is about the Plaintiff's *sex*. And defendants singled out the plaintiff because of sex-based characteristics and stereotypes that they would not have questioned if those "traits [having a female voice] […] [were exhibited] in members of a different sex." *Bostock*,

---

[6] *See, e.g.*, *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048 (7th Cir. 2017) ("By definition a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth.")

[7] This Court need not resolve the question as to whether Doe is actually a "biological male" (whatever that means and however this Court will *verify* the purported biological maleness). *See, e.g., Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1130-34 (9th Cir. 2003).

22

590 U.S. at 652 (annotation added in the brackets). Sex-based discrimination unquestioningly satisfies this "protected class" analysis. *Frontiero v. Richardson*, 411 U.S. 677, 688, 93 S. Ct. 1764, 1771 (1973). Indeed, "sex discrimination [is] within the categories of animus condemned by section 1985(3)." *Novotny v. Great Am. Fed. Sav. & Loan Assn.*, 584 F.2d 1235, 1243-44 (3d Cir. 1978). The Supreme Court left **this holding** of the Third Circuit undisturbed in *Novonty*, 442 U.S. 366 (1979) as it addressed Third Circuit's statutory construction of Title VII. Sex stereotypes also form a suspect class in this Circuit, independent of transgender status. *See Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864 (9th Cir. 2001).

**6. Doe Could Survive on this Claim as a Protected Class of One under *Village of Willowbrook* and Defense Counsel Intentionally Omitted that Part of the Screening Order**

There has been considerable dispute about this question in *Doe I*. Defendants are of the belief that *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) is inapplicable to a Section 1985(3) claim. *See, e.g.,* Dkt. No. 43 in *Doe I* at 21; *see also* Dkt. No. 57. Defendants seem to have dropped this position, perhaps because this Court's screening order of the FAC appears to have entertained the applicability of *Village of Willowbrook* to a Section 1985(3) claim. *See* Dkt. No. 31 at 6. At any event, because in this Circuit, a protected class within the meaning of Section 1985(3) involves an equal protection of the law class analysis, and because a 'class of one' meets that burden, the Plaintiff may very well succeed on the Section 1985(3) claim as a class of one. *Mancini v. City of Cloverdale Police Dep't*, No. 15-cv-02804-JSC, 2015 WL 3993216, at * 4 (N.D. Cal. June 30, 2025). Indeed, defendants do not address **at all** Defendant Shaw's concession that he did not even investigate (let alone expel) another student who had been **expelled** (a far more serious offense) from her previous college and did not disclose that in their application. *See* Operative Complaint at ¶ 207.

23
OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS
5:26-cv-03809-BLF

**7. Defendants' Remaining Arguments Are Meritless as Defendant Smith's Obsession with the Plaintiff's Genitalia (Which is About the Plaintiff's Sex) is the But-For Cause for the Admissions Investigation**

To conclude their Section 1985(3) arguments, defendants argue that the "Plaintiff alleges no facts to suggest she was expelled **because** of her transgender status, and such a claim would be directly at odds with her primary contention that she was expelled in retaliation for filing *Doe I*." Mot. at 11: 20-23. This conclusion seems to hinge on the already-rejected attack on the but-for causation test established for First Amendment retaliation. It is unclear how defendants have concluded that "Plaintiff alleges no facts to suggest she was expelled **because** of her transgender status[.]" Because the claim is a bare assertion that the Plaintiff genuinely cannot respond to given its vagueness, it is waived/forfeited. At any event, as explained *supra*, Plaintiff's sex (and transgender status) was the but-for causation of the admissions investigation. Even if it was not, the plaintiff will still prevail on a mixed-motive claim. "In other words, a motive may qualify as 'a central reason' so long as it was 'sufficient to cause the harm'—even if it was (1) not the only primary reason, (2) not the dominant primary reason, and (3) not a 'but-for cause'" *Leon v. Bondi*, No. 24-4131, 2026 U.S. App. LEXIS 3630, at *3-4 (9th Cir. Feb. 5, 2026). Defendants have not engaged in any viable matter the Plaintiff's argument that *if not* for the Plaintiff "sounding female" as a "biological male," defendant Smith would have never shared the Plaintiff's ID card that the defendants concede have been shared with Defendant Shaw *precisely* because of Defendant Smith's purported allegation/belief and is the but-for cause *starting* the chain of events of Defendant Shaw's admission investigation. To the extent that the defendants' arguments are to be construed as providing an alternative legal theory, the complaint will survive dismissal. *See Starr*, 652 F.3d at 1216.

**IV. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S CONTRACT**

**CLAIMS**

### a. Doe Has Adequately Plead Two Written Contracts Cognizable within California Common Law and their Breach Thereof

Given page limitations, the Plaintiff needs to proceed more quickly.

*Housing Contract*—Defendants admit that this is a proper written contract. Defendants proffer that the Plaintiff did not attach the actual written contract. The contract was sent to the email address defendants shut down thereafter, and the Plaintiff does not have access to it. At any event, attaching a contract to a complaint is not required. Plainitff alleged the legal effects of the contract, and this is sufficient. *Miles v. Deutsche Bank National Trust Co*. 236 Cal.App.4th 394. (2015). Any condition of being an active student that was not able to be fulfilled because of the defendants' own conduct and the Plaintiff thereby was excused.

*Admissions Contract*—Defendants have not engaged with the four-prong written contract test in California common law at all; they merely argue (1) that because the contract was called "affirmations," it would not be a contract, (2) that they were free to "reject or accept it" and (3) and erroneously cite *Kashmiri* for a proposition that that case does not support. One could write "elephant" on top of a written contract, and if the four-prong test is satisfied (as here), that is a binding written contract in California common law. On the second point, the question is not whether the defendants admitted the Plaintiff or not; it is that they accepted *her application,* automatically downloaded her application from the CommonApp portal and thereby signed the terms of the affirmations statement.  They did. Even if they had not signed it, the contract would still be binding. *Nielsen Constr. Co. v. Int'l Iron Prods*., 18 Cal. App. 4th 863, 868, 22 Cal. Rptr. 2d 497, 500 (1993). Finally, *Kashmiri* did not say that. *See* Mot. at 21: 13-16. "**Once a university has admitted a student**, the terms of this **implied-in-fact contract** are [to be] analyzed[.]" *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 811 (2007) (emphasis added). *Kashmiri* found that an **implied-**

**in-facts contract** is *created* at the moment of matriculation; it did not bar any **written contract (or any other kind of contract) prior to enrollment**, like the admissions contract herein, nor did it indicate that any other kind of contract cannot be formed after enrollment but that an implied-in-facts was simply formed.

### b. Doe Has Adequately Plead a Breach of an Implied-in-Fact Contract and Defendants Misconstrue *Kashmiri*

*"*Universities frequently publish numerous catalogues and bulletins, **but not all statements in these publications amount to contractual obligations**. 'Whether a given section of the bulletin [or catalogue] becomes part of the contractual obligations between the students and the university … must depend upon general principles of contract construction.'" *Kashmiri,* 156 Cal. App. 4th at 829 (emphasis added). Defendants' points are waived because they only provided mere conclusions and have not explained why these materials they allegedly published (in 2025—two years after the plaintiff was admitted) would necessarily form an implied-in-facts contract. At any event, this kind of contract cannot override a written contract.

### c. Doe Has Adequately Plead a *Quantum Meruit* Claim

In the context of a *quantum meruit* claim, "[r]esulting benefit is an open-ended standard[.]" *Maglica v. Maglica*, 66 Cal. App. 4th 442, 450, 78 Cal. Rptr. 2d 101, 105 (1998). Defendants' only non-waived point against the *quantum meruit* claim is that they were only "incidentally benefitted" from the Plaintiff's rendering of services as a student. *Mapsong PC v. Blue Shield of Cal. Life & Health Ins. Co.*, 780 F. Supp. 3d 939, 946 (C.D. Cal. 2024) does not support this. At its quoted page, the Court was addressing the situation of healthcare insurance coverage; it is distinguishable in facts herein; indeed, *contra Mapsong*, the Plaintiff provided and was able to provide services only because the defendants asked her to do so (indeed, she could not have, have they not admitted her to render the services of being a student). 1 Witkin, Summary of Cal. Law, Contracts, § 97 at 126

provides, "It must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422, 253 Cal. Rptr. 289, 293 (1988). Again, plaintiff only rendered these services because the defendants asked her to do so. At any event, defendants' theories cannot overcome the plaintiff's legal theories at this dismissal stage. *Starr*, 652 F.3d at 1216.

   d.  **Doe Has Adequately Plead a Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

Since Doe alleged multiple written, implied-in-fact, and implied-in-law contracts and how defendants breached their duty of fair dealing and good faith, taken the allegations of the complaint as a whole together, this count survives. This seems to be the defendants' only basis for dismissal for this count of action—the absence of an actual contract—and, as such, no additional legal argument is necessary. The remaining citation to *Iqbal* seems to premise on the already-rejected 'argument' regarding defendants' citation of *Int'l Metaphysical Ministry, Inc.* And defendants do not explain at all why the *Iqbal* or *Twombly* plausibility and pleading standard applies on a California common law claim brought in federal court, so their pleading-standard arguments are waived. *See, e.g., Hisun Motors Corp., U.S.A. v. Auto. Testing & Dev. Servs.*, No. CV11-1918- PHX-DGC, 2012 U.S. Dist. LEXIS 27560, at *17 (D. Ariz. Mar. 2, 2012).

   e.  **Doe Has Adequately Plead an Interference with Contract Claim because *Shoemaker* Is Less Instructive Herein Than *Woods* as Individual Defendants Herein Were Not Corporate Agents**

Defendants' arguments that there was no contract herein has been rejected *supra*. Defendants cite *Luxul Tech.y Inc. v. NectarLux, LLC*, No. 14–CV–03656-LHK, 2015 WL 4692571, at *8 (N.D. Cal. Aug. 6, 2015) for their remaining arguments. It is unclear to the Plaintiff if the defendants are citing the summary judgement or dismissal order herein for *Luxul*. *See ante* note 2. At any event, for

27

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

both motions, *Luxul* seems to have relied on *Shoemaker v. Myers*, 52 Cal. 3d 1, 276 Cal. Rptr. 303, 801 P.2d 1054, 1068 (1990). *Woods v. Fox Broadcasting Sub., Inc*., 129 Cal. App. 4th 344, 28 Cal. Rptr. 3d 463 (2005) is more instructive herein because admissions officer and SDPS defendants were "not a contracting party or agent[.]" *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2015 U.S. Dist. LEXIS 104097, at *24 (N.D. Cal. Aug. 6, 2015). At any event, this only applies to actually **inducing breach**, not tortiously interfering with it.

### f.  Doe Has Adequately Plead a Promissory Estoppel Claim

This claim is premised on the already-rejected claim about defendants' misplaced reliance on *Kashmiri* that they can publish anything they want and that would form some form of contractual understanding. As a matter of law, defendants' argument likening promissory estoppel to any contract claim is legally erroneous. *See, e.g., Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal. 3d 665, 111 Cal. Rptr. 693, 517 P.2d 1157, 1161 (1974); *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc*., 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010). Defendants seem to be arguing that they can change their initial promise by publishing, later on, different materials on their website and not giving the plaintiff any notice of them or their changes. Defendants have not identified any caselaw suggesting the permissibility of a clear promise being able to be vacated *ex post facto*, and there is none. Indeed, this kind of 'change-of-position' is precisely what the equitable remedy of promissory estoppel seeks to avoid. *See, e.g., Gutierrez v. Wells Fargo Bank*, N.A., No. CV 11-6617-GHK (VBKx), 2012 U.S. Dist. LEXIS 199899, at *9 (C.D. Cal. Feb. 9, 2012).

## V.  THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S TORT CLAIMS

### a.  Doe Has Adequately Plead an Intrusion Upon Seclusion Claim

**ID card**—Rather than the outside-circuit case cited by defendants, *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007) is a better precedent here. As alleged in the

28

complaint and explained *supra*, the ID card was "*improperly*" shared. *Id*. at 1153, n.1 (italics in the original). Thus-fore, the Plaintiff had a reasonable expectation of privacy over it.

**Educational Records**—Defendants argue, in a conclusory fashion, that the plaintiff's reading of the federal statute at 34 CFR § 99.31(a)(2) is "absurd." Again, bare assertions do not preserve claims. And defendants purposefully avoided engaging with the plaintiff's point that the information-sharing has to be "for the purposes" of "enrollment" or "transfer" (they bold the other verbiage in the statute to avoid addressing the plaintiff's legal argument, perhaps conceding its merits). Legislative history of support the plaintiff's reading of the statute. At any rate, a dismissal motion is not the place to advance alternative theories. Defendants also argue, "Plaintiff's position is that so long as someone [allegedly] lies [*sic*] about not being a transfer applicant, Stanford cannot seek information under FERPA from their prior institution after they enroll at Stanford[.]" Mot. 15: 13:16. Defendants have not identified any caselaw establishing the moral wrong of another would give them all-commandeering license to violate federal law however they please. Defendants' remaining points are mistaken and, to barrow their phrase, absurd. If the CommonApp statement actually provided consent for this information sharing, then defendant Shaw would not coerced the Plaintiff every day to sign his purported release form, nor would he have ordered the Plainitff to appear to a Zoom meeting so he could yell at her for 35 minutes to sign the release form. *See* Op. Comp., at ¶ 130. "[E]very **school**" therein means high **school**, not other colleges. Mot. at 15: 23-26.

### b. Doe Has Adequately Plead a Defamation Claim

The first part of defendants' argument is plainly factual rebuttals improper for this motion. The Complaint alleges that Defendant Shaw transmitted that exact letter to third parties, which includes the statement that the Plainitff's admissions application was not honest and that she was enrolled in two semesters at another university when she was not. *See* Op. Compl. At ¶¶ 158-170.

29

Defendants' privilege arguments are meritless. As defendants' caselaw explains, "statements […] made **in the initiation or course of a proceeding** authorized by law" are privileged. *Wallin v. Vienna Sausage Mfg. Co.,* 156 Cal. App. 3d 1051, 1055, 203 Cal. Rptr. 375, 377 (1984) (emphasis added). Defendant Shaw's statement was made **after** the proceeding concluded. At any event, defendants have to establish how this proceeding would be "reviewable by mandate[,]" *see Wallin, ibid*, that is, a "quasi-judicial proceeding" that would be reviewed as an administrative mandate, as opposed to traditional mandate. *Wallin, ibid*. Indeed, defendants are making the **opposite** argument in California state law—*i.e.* that administrative mandate does not apply because they were not required to hold a hearing. *See, e.g.,* ECF No. 101. Indeed, legislature added this "mandate" provision after *Hackethal* to immunize statements made by witnesses in an administrative license-revocation **hearing.**

### c.  Doe Has Adequately Plead a Fraud Claim

Defendants' "arguments" against fraud is contained in a line: "It […] fails because Plaintiff's only alleged reliance is that she was unable to 'seek timely judicial relief' from Shaw's decision, yet she is presently seeking such relief in her mandamus petition in superior court." Mot at 17:26. This goes beyond the four corners of the complaint and because defendants did not move the court to take judicial notice of the writ proceeding for the purposes of their motion to dismiss, it is improper verbiage. *See Khoja v. Orexigen Therapeutics*, *Inc*., 899 F.3d 988, 999 (9th Cir. 2018). It is also a simple dispute of the factual allegations of the complaint. The complaint alleged that the Plaintiff was not able to seek *this* judicial relief because the operative record before Defendant Shaw was never released to her, preventing her from knowing his meeting of the minds with SDPS. *See* Op. Compl. at ¶¶ 179-180. Defendants have not cited any authority for the position that "representations made to Plaintiff" is a requirement for a fraud claim and, thus, this point is forfeited. Mot at 17:16.

30

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF

### d. Doe Has Adequately Plead a Negligence Claim

A plaintiff "does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991). Doe simply noted in the complaint that under a negligent undertaking theory, the Court may not need to look for a duty of care. Doe did not plead, however, a negligent undertaking **cause of action**. At any event, defendants have not addressed the provisions of *Regents of the University of California v. Superior Court of Los Angeles County*, 4 Cal. 5th 607 (2018) for their duty of care, nor have they addressed why the Plaintiff relying on their negligent undertaking would not have elevated the risk of injury as the Plaintiff could have found other support measures had the defendants not told her that she could rely on them for support.

### e. Doe Has Adequately Plead a Negligent and Intentional Infliction of Emotional Distress Claim

This is simply advancing an alternative legal theory and is improper for a dismissal motion. At any event, defendants' conduct went "[well] beyond all possible **bounds of decency**, and to be regarded as **atrocious**, and **utterly intolerable** in a **civilized** community." *Cochran v. Cochran,* 65 Cal. App. 4th 488, 496 (1998) (emphases added).

### f. Doe Has Adequately Plead a *Respondeat Superior* Claim

California courts have recently started distinguishing *Malloy* from other factual contexts and have been reading it as closely related to the facts of that case. *See, e.g., Stevens v. Roman Catholic Bishop of Fresno*, 49 Cal. App. 3d 877, 888, 123 Cal. Rptr. 171, 178 (1975). At any event, because the defendants have not claimed that Defendants Zumwahlt, Shaw, and Wilson are not *also* the employers of their subordinates in addition to being their supervisor, the 'argument', as is, fails. *See Malloy v. Fong*, 37 Cal. 2d 356, 379, 232 P.2d 241, 254 (1951).

### VI. THE COMPLAINT IS PERFECTLY SUFFICIENT AS TO DOE'S STATE LAW CIVIL RIGHTS CLAIMS

31

### a. Doe Has Adequately Plead a Bane Act Claim

Defendants' arguments for dismissal for the Bane Act claim seem to rely on the already-rejected *res judciata* argument and the defendants' belief that they can ignore complete swaths of a complaint by mere word-play. It is unclear why " in-person interactions" are needed for a Bane Act claim to survive, and the motion cites no such caselaw. *See* Mot. at 12: 19. Because defendants chose to ignore the parts of the complaint that they did not like—like Op. Compl. at ¶ 102-122—and did not establish why those allegations would not suffice for a Bane Act claim, their dismissal arguments are waived and forfeited.

### b. Doe Has Adequately Plead an Unruh Act Claim

Defendants' only point in support of dismissal on this cause of action is due to the already-rejected but-for cause action meandering the defendants provided to this court as bare assertions. Defendants have not explained why a 'central motivation' (if but-for cause action does not exist herein) would not suffice to allege a claim under the Unruh Act. Defendants have also not established why pleading discriminatory intent needs to comply with the *Iqbal* pleading standard for an **Unruh Act cause of action**. Defendants' citation of *Duronslet v. Cty. of L.A.*, 266 F. Supp. 3d 1213 (C.D. Cal. 2017) did not establish that as it merely *ipse dixit* quotes *Iqbal*'s verbiage about pleading discriminatory intent for a Section 1983 cause of action.

## VII. CONCLUSION

For the foregoing reasons, the motion should be denied *in toto*.

Respectfully submitted,
DATED: June 25, 2026.

*/s/ Jane Doe*
_____
JANE DOE
*In Propria Persona*

32

OPPOSITION TO THE STANFORD DEFENDANTS' MOTION TO DISMISS

5:26-cv-03809-BLF