JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual, | Case No.: 5:26-cv-03809-BLF |
| Plaintiff, | **REPLY TO THE DEFENDANTS' OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*, | Before the Honorable Beth Labson Freeman |
| Defendants. | |

**TABLE OF CONTENTS**

**Page:**

I.  STATEMENT OF FACTS AND DEFENDANTS' MISREPRESENTATION OF FACTUAL HISTORY AND PLAINTIFF'S TIMING SUPPORTS A THEORY OF INCREDIBLE FEAR OF IMMINENT DANGER AND IRREPARABLE INJURY AND THE MOTION IS NOT UNTIMELY……………………………………………………1

II. ARGUMENT

A. Even Assuming *Arguendo* that the Plaintiff Is Seeking Mandatory Injunction, It Is Precisely in Situations Like This That a Mandatory Injunction is Proper and *Wild Rockies* Standard Also Applies to Mandatory Injunctions……………………………….2

B. Plaintiff Has Met Her Burden of Proof and Her Reasonable Fears of Persecution by Opposing Counsel because She Is Likely Defendant Shaw's Co-Conspirator and that She Has Been Prevented From Providing Proof to This Court Is Defendants' Doing (As Defense Counsel Admits, They Likely Transmitted the Fraudulent Criminal Complaint to the DA's Office to Render the Plaintiff Inadmissible) and At Any Event, Plaintiff Now Provides Proof, Even Though She Is Sure It Will Be Used For Dilatory and Harassing Motive by Defense Counsels…………………………………………..3

C. Plaintiff Will Succeed on the Merits

1. SDPS and Stanford Are State Actors and the Inquiry Need Not Reach the Acting-under-the-Color-of-Law Prong for the Plaintiff to Succeed on her 42 U.S.C. § 1983 Claims…………………………………………………………4

2. Judicial Estoppel Applies……………………………………………………..6

3. SDPS and University Officials Also Acted under the Color of Law and Outside-Circuit Cases Are Neither Helpful or Instructive………………………………..7

4. Because Record-Keeping Actions Are Actions Under the Color of Law, as the MOU Admits, Defendants' Remaining Points Factually Do Not Find Support in the Record before this Court and Even If Assuming *Arguendo* It Did, the Defendants Fail as a Matter of Law…………………………………………..8

5. Although the Plaintiff Need Not Satisfy These Tests, She Satisfies the Government Nexus, Joint Action, or Symbiotic Relationship Tests with Respect to Admissions Officers……………………………………………………..8

6. Defendants Misconstrue the Information-Sharing Exception in *O'Handley* (and *Mathis*) And *Mathis'* Fourth Footnote Is Instructive and Maybe Even Dispositive…………………………………………………………….9

7. Defendants Erroneously Assume that the Plaintiff Cannot Vindicate Her Constitutional Claims Through the Vehicle of Section 1985(3), Which Does Not Require State Action or Those that Acted under the Color of Law…………….10

8. Plaintiff Succeeds on Her Due Process Claims and Because Defendants Concede that the Plaintiff Has a Liberty Interest in Her Continued Education, It Is Not Necessary to Address the Defendants' Misreading of *Dudley*…………………11

9. Fair Procedure Standards Do Not Apply Here Because this is Not a Common Law Due Process Claim Like that of a Writ of Administrative Mandate and Lack

ii

of Hearing Is a Structural Defect Not Subject to Harmless Error Analysis………………………………………………………………11

10. It Is Not Necessary To Solve the Issue of Continued Enrollment as Issuing an Injunction Will Make that Point Moot……………………………………12

D. Plaintiff Has Adequately Shown Irreparable Injury

1. "Sufficient Connection" Is Not What Defendants Make It Out To Be Although There Is A Sufficient Connection as Defendants Themselves Expelled the Plaintiff from the United States………………………………………….. 12

2. There Is No Contradicting Evidence and There Is Sufficient Evidence in the Record to Find Irreparable Injury and because Judge Pitts Disposed of this Factual Issue, Crediting the Plaintiff's Version of the Events, Issue Preclusion Prevents the Defendants From Arguing Issues Already Disposed of by Judge Pitts……………………………………………………………………..13

3. Defense Counsel's Utter Inability to Understand Immigration Law (Foreign and U.S.) Even When She Was Explained In Detail Why She Is Utterly Mistaken, or the Mere *Concept* of Transgender People, Are Simply Not Enough To Deny the Plaintiff this Life-Saving Relief, of Which Judge Pitts Also Made Factual Findings in addition to Judge Moody…………………………………………..13

4. Defendants Conceded that Homelessness Is Irreparable Injury Warranting Relief…………………………………………………………………..14

5. Defendants Conceded that Discontinued Education is Irreparable Injury Warranting Relief……………………………………………………………14

E. Balance of Equities and Public Interest Favor Granting Injunction because the Doctrine of Judicial Non-Intervention into Academic Matters Does Not Apply When Bad Faith Is Involved and the Opposition Creates the Inference that Defendant Shaw Might Have Expelled the Plaintiff because of His Displeasure Against Transgender People Who Are Asylum Seekers………………………………………….14

F. Seeking Life-Saving Asylum Is Not "Unclean" As Defense Counsel Astonishingly Believes……………………………………………………………………15

G. That Defendants Submitted Fake Evidence to this District Court Before, Altered the Plaintiff's IP Address, and Clandestinely Made a Stanford Alumnus Contact the Plaintiff and Lie to Her, Delay the Filing of this Action And Service Thereof By Violating their Ethical Duties, All Put the Defendants' Credibility, Dilatory Motive, and Harassing Nature of their Supposed Factual Verification into Question, And Defendants Should be Denied from Taking Advantage of this Court with the Same Unclean Hands………………………………………………………………15

III. CONCLUSION……………………………………………………………… ..16

## **TABLE OF AUTHORITIES**

### **Caselaw:**

*Alliance for Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) …………………………………………………….2, 3

*Anderson v. United States,*

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

612 F.2d 1112 (9th Cir.1980)……………………………………………………….. 3

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972)……………………………………………………….. 11

*Brunette v. Humane Soc'y*,
294 F.3d 1205 (9th. Cir. 2002)……………………………………………….. 6

*Collins v. Womancare*,
878 F.2d 1145 (9th Cir. 1989)…………………………………………………….10

*Cruz Uitz v. Noem*,
No. CV 25-06420-MWF (AJRx), 2025 U.S. Dist. LEXIS 211772 (C.D. Cal. Sep. 23, 2025)……………………………………………..…………………………….12

*Doe v. Smith, et al.*,
No. 5:25-cv-03490-PCP (N.D. Cal)………………………………………….. *passim*

*Dudley v. Boise State Univ.*,
152 F.4th 981 (9th Cir. 2025)………………………………………………..11

*Faiaz v. Colgate Univ.*,
64 F. Supp. 3d 336 (N.D.N.Y. 2014)……………………………………………... 7

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015)………………………………………………….1, 2

*Gilder v. PGA Tour, Inc.*,
936 F.2d 417 (9th Cir. 1991)……………………………………………………….1

*Griffin v. Breckenridge*,
403 U.S. 88 (1971)……………………………………………………………….10

*Gurdit Singh v. Chestnut*,
No. 1:26-cv-00273-WBS-DMC, 2026 U.S. Dist. LEXIS 8453 (E.D. Cal. Jan. 15, 2026)……………………………………………………………………………..2

*Hall v. Am. Nat'l Red Cross*,
86 F.3d 919 (9th Cir. 1996)……………………………………………………….5

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778……………………………………………………………………6, 7

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) …………………………………………………….3

*Immigrant Assistant Project of Los Angeles County Fed'n of Labor v. INS*,
306 F.3d 842 (9th Cir. 2002)……………………………………………………3

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*,
725 F.3d 940 (9th Cir. 2013)……………………………………………………..15

*Kroeger v. Vertex Aero. LLC*,
2020 U.S. Dist. LEXIS 117323, 2020 WL 3546086 (C.D. Cal. June 30, 2020)…………….4

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995) ……………………………………………………………….5

*Lee v. Haj*,
No. 16-CV-00008-DAD-SAB, 2016 WL 8738428 (E.D. Cal. Feb. 22, 2016)……………1, 2

*Lindke v. Freed*,
601 U.S. 187 (2024)……………………………………………………………….8

iv

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

*Loughran v. Loughran*
    292 U.S. 216 (1934)…………………………………………………………………………15
*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982)…………………………………………………………………………5
*Marsh v. Alabama*,
    326 U.S. 501 (1946)…………………………………………………………………………6
*Mathis v. Pacific Gas & Electric Co.*,
    75 F.3d 498 (9th Cir. 1996)……………………………………………………………9, 10
*N.D. ex rel. Parents v. Haw. Dep't of Educ.*,
    600 F.3d 1104 (9th Cir. 2010) ……………………………………………….……………2
*Neitzke v. Williams*,
    490 U.S. 319 (1989) ………………………………………………………………………9
*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
    762 F.2d 1374 (9th Cir. 1985)…………………………………………………………...1
*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023)……………………………………………………………9
*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017)……………………………………………………………10
*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011)……………………………………………………………12
*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945)……………………………………………………………………..15
*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)………………………………………………………………………5
*Robinson v. Davis*,
    447 F.2d 735 (4th Cir. 1971)……………………………………………………………7
*Salinas v. Palo Alto Univ.*,
    No. 5:15-cv-06336-HRL, 2017 U.S. Dist. LEXIS 156715 (N.D. Cal. Sep. 25, 2017)…….15
*Sifuentes v. Nautilus, Inc.*,
    No. C21-5613JLR, 2022 U.S. Dist. LEXIS 80140 (W.D. Wash. May 3, 2022)…………….2
*Stanley v. Univ. of So. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ……………………………………………………………. 2
*United States v. Lankford*,
    No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897 (C.D. Cal. Nov. 21, 2025)……8
*United States v. Mangi*,
    No. 18-cr-00260-EJD-1, 2022 U.S. Dist. LEXIS 96813 (N.D. Cal. May 31, 2022)……….. 8
*United States v. Price*,
    383 U.S. 787 (1966). ……………………………………………………………………5
*Wisconsin v. Constantineau*,
    400 U. S. 433 (1971)…………………………………………………………….. 11
*Yuan v. Tops Markets*,
    No. 5:10- CV-1251, 2012 U.S. Dist. LEXIS 141280, 2012 WL 4491106
    (N.D.N.Y. Sept. 28, 2012)…………………………………………………….. 7

v

Plaintiff hereby replies to the defendants' opposition ("Opp.") to her motion for preliminary injunction.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I. STATEMENT OF FACTS AND DEFENDANTS' MISREPRESENTATION OF FACTUAL HISTORY AND PLAINTIFF'S TIMING SUPPORTS A THEORY OF INCREDIBLE FEAR OF IMMINENT DANGER AND IRREPARABLE INJURY AND THE MOTION IS NOT UNTIMELY**

Plaintiff adopts her recitation of events in her declaration filed in support of this reply. Put simply, that recitation of events establishes that the Plaintiff acted as quickly as possible (within a day or three days) because "[p]arties facing the threat of immediate and irreparable harm generally seek a restraining order as quickly as possible." *Lee v. Haj*, No. 16-CV-00008-DAD-SAB, 2016 WL 8738428, at \*2 (E.D. Cal. Feb. 22, 2016). As a preliminary point, *Lee* is about *ex parte* motions for temporary restraining orders, not noticed preliminary injunction motions. And this Court denied the Plaintiff's motion for temporary restraining order as untimely without prejudice to filing a noticed motion for preliminary injunction. As such, that 'untimeliness' argument *Lee* addresses does not address this noticed motion. Defendants cite *Oakland Tribune* and *Garcia* as the only Ninth Circuit cases for their untimeliness argument. "In *Oakland Tribune*, the agreements that the plaintiffs complained of had been in effect for 'a **number of years**.' *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (emphasis added). "[D]elay in seeking a preliminary injunction is **a factor** to be considered in weighing the propriety of relief. . . . **We would be loath to withhold relief solely on that ground**, but we do give that fact consideration in measuring the claim of urgency." *Gilder*, 936 F.2d at 423 (emphasis added). *Garcia* mostly *ipse dixit* cited *Oakland Tribune* for this proposition. Important, however, is that in *Garcia*, the plaintiff therein "did not seek emergency relief[,]" *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015). The Plainitff herein did so by way of her

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

temporary restraining order application both in this case and in *Doe v. Smith, et al.*, no. 5:25-cv-03490-PCP (N.D. Cal) (*Doe I*). Indeed, as this Court recognized, someone who files as many "flurry of filings," *see* ECF No. 82 at 1: 17-18, and who has tried to expedite briefing on this motion three or four times is clearly someone who is attempting to address an urgent and irreparable harm. The purported "delay" herein is also not "'unexplained'" *Gurdit Singh v. Chestnut*, No. 1:26-cv-00273-WBS-DMC, 2026 U.S. Dist. LEXIS 8453, at *2 (E.D. Cal. Jan. 15, 2026), citing *Lee*. The remaining issues—the purported "self-inflicted" injury point and Defendant Shaw's fraudulent concealment—has been established in the Plainitff's declaration.

## II. ARGUMENT

### A. Even Assuming *Arguendo* that the Plaintiff Is Seeking Mandatory Injunction, It Is Precisely in Situations Like This That a Mandatory Injunction is Proper and *Wild Rockies* Standard Also Applies to Mandatory Injunctions

Opposition alleges that the Plaintiff is seeking mandatory injunction from this Court. Not much of an analysis is provided for this position, other than merely quoting the Plainitff's verbiage. *See* Opp. At 8: 21-26. But whether or not a plaintiff's requested injunction uses "prohibitory **language**" or not is simply irrelevant to this inquiry. *Sifuentes v. Nautilus, Inc.*, No. C21-5613JLR, 2022 U.S. Dist. LEXIS 80140, at *6 (W.D. Wash. May 3, 2022), citing *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (emphasis added). The Plaintiff simply asks this Court to "maintain[] the status quo during the litigation[.]" *Sifieuntes, ibid*. And status quo herein is *status quo ante litem.* Astonishingly, defendants quote the part of *Garcia* where this is exactly what the Ninth Circuit noted. "The status quo means the last, uncontested status which **preceded the pending controversy**." *Garcia*, 786 F.3d at 740 n.4, citing *N.D. ex rel. Parents v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (emphasis added). *Status quo ante litem* is what is enjoined in a prohibitory injunction and that enjoining is done *pendente lite*. Defendants confuse

2

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

"ante litem" (before controversy) with "pendente lite" (during controversy) perhaps because of a lack of Latin knowledge.

Even if assuming, *arguendo,* that the Plainitff was seeking a mandatory injunction, the Plaintiff is likely entitled to one. "Mandatory injunctions are most likely to be appropriate **when** the **status quo […] is exactly what will inflict** the irreparable injury upon complainant." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (cleaned up) (emphasis added). The Plainitff simply wishes to "maintain[] the status quo [p]endente lite" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1980). At any rate, even if assuming, *arguendo*, what is asked is a mandatory injunction because, as will be argued *infra*, "extreme or very serious damage will result" in this case, a mandatory injunction—in addition to a prohibitory injunction—is required. *Id*. at 1115. Indeed, **precisely because that defendants know this is why they have engaged in multiple frauds**—*see* ECF No.s. 127, 88.

Finally, defendants argue that the 'serious question' standard in *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) does not apply to mandatory injunctions. *See* Mot. at 23: 19-20. Defendants have not cited any case in support of this proposition—and the Plaintiff cannot find any. Indeed, because *Wild Rockies* represents just another extreme of a single continuum rather than **two separate tests**, *see Immigrant Assistant Project of Los Angeles County Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002), this argument is meritless.

**B. Plaintiff Has Met Her Burden of Proof and Her Reasonable Fears of Persecution by Opposing Counsel because She Is Likely Defendant Shaw's Co-Conspirator and that She Has Been Prevented From Providing Proof to This Court Is Defendants' Doing (As Defense Counsel Admits, They Likely Transmitted the Fraudulent Criminal Complaint to the DA's Office to Render the Plaintiff Inadmissible) and At Any Event, Plaintiff Now Provides Proof, Even Though She Is Sure It Will Be Used For Dilatory and Harassing Motive by Defense Counsels**

As averred to this Court earlier, *see* ECF No. 88, defense counsels are likely Defendant

3

Shaw's co-conspirators—and they have retaliated against anyone involved in this suit. *See* ECF No. 75-1. Indeed, they seem to be acknowledging the point that they are also SDPS defendants' co-conspirators as they seem to have attempted to charge the plaintiff with a felony simply to prevent her from being admitted into the United States again. *See* Opp. At 18. Because of these issues, the Plaintiff was hesitant to provide information to this Court without it being for *in camera* review that would have revealed the Plaintiff's particular locations. But, at this juncture, given the Plaintiff's urgent need for an injunction from this Court, the Plaintiff has to provide more information to this Court (and has to provide them to counsel since the Court enjoined the Plaintiff from filing requests for *in camera* review of documents), but she is sure that these documents will be used for dilatory motive. There is no "constantly shifting deadline" for the deportation. *Opp.* At 19. Indeed, suspensions of judgement have been adequately documented to this Court and is consistent. It appears that the Plaintiff was right, however, that the defendants' belated appearance in this action was to be able to make this very point as an opposition to the preliminary injunction motion

### C. Plaintiff Will Succeed on the Merits
#### 1. SDPS and Stanford Are State Actors and the Inquiry Need Not Reach the Acting-under-the-Color-of-Law Prong for the Plaintiff to Succeed on her 42 U.S.C. § 1983 Claims

This argument has the same issue with defendants' motion to dismiss, *see* ECF No. 113 at 10: 21-23. That a *natural person* ("SDPS officers"—Opp. at 13:1) acts under the color of law is a different test than whether a "SDPS" is "a government actor." *Id.*, at 13: 3. Plaintiff identified this difference in her motion for preliminary injunction, *see* ECF No. 62 at 5, fn. 2, but defendants have not addressed this point at all, **conceding its merits.** See, e.g., *Kroeger v. Vertex Aero. LLC*, 2020 U.S. Dist. LEXIS 117323, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases holding that party conceded argument by failing to address it in opposition brief).

Put simply, SDPS cannot have "enforcement activity[.]"—or any other kind of "activity" or "function." Opp. at 13: 4. The defendants seem to apply the acting-under-the-color-of-law standard to the state-actor test. This is wrong as a matter of law. The test for determining whether a purportedly private corporation is a governmental instrumentality is found in, historically, *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982). Indeed, "[a]lthough the state-action and under-color-of-state-law requirements are 'separate areas of inquiry,' *Flagg Brothers* did not hold nor suggest **that state action, if present, might not satisfy the § 1983 requirement of conduct under color of state law**." *Id.* at 922 (emphasis added). Put differently, in *Lugar*, the Supreme Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also **action under color of state law and will support a suit under § 1983**." *Id*. at 935 (emphasis added). *See, accord, Rendell-Baker v.* Kohn, 457 U.S. 830, 838 (1982). See also *United States v. Price*, 383 U.S. 787, 794, n. 7 (1966). The question for SDPS is whether the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S. Ct. 961 (1995) is a good case herein. Again, if SDPS is a government actor, one can halt one's analysis herein and do not reach to the acting-under-the-color-of-law theory. SDPS satisfies the structural analysis test as found *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996). SDPS is a state actor. The Court need not reach further for an acting-under-the-color-of-law theory to find that the Plaintiff can prevail on her 42 U.S.C. § 1983 claims.

Of course, that SDPS is a separate entity amenable to suit under the *Hervey* test does not mean that it is a **separate entity by corporate structure**. Defendants maintain that SDPS is only a "department" of the University. *See* ECF No. 113 at 25: 1. If that is the case, then the University is a

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

state actor as well. This is a classic *Burton* situation. "*Burton* teaches that substantial coordination and integration between the private entity and the government are the essence of a symbiotic relationship. Often significant financial integration indicates a symbiotic relationship." *Brunette v. Humane Soc'y,* 294 F.3d 1205, 1213 (9th. Cir. 2002). SDPS and Stanford admissions office, by the virtue of being controlled by the same Board of Trustees, are "financially integrated[.]" *Brunette,* 294 F.3d at 1214. Indeed, crediting Defendants' assertions, if they are just different *departments* of the same institution, they are, by **their virtue of existence** in a "position of interdependence[,]" *Id* at 1210, and they are "inextricably intertwined" *Id*. at 1211. Indeed, "the peculiar facts or circumstances," herein are exactly as the ones that *Burton* recognized. *Id.* at 725-26. Put differently, if the Plaintiff had provided that ID card to, *say,* Palo Alto Police Department, but not the SDPS, then Defendant Shaw would have never been able to acquire that ID card because Palo Alto Police Department is not 'interdependent' and 'inextricably intertwined' with Defendant Shaw.

This is also similar to the context addressed by the Supreme Court in *Marsh v. Alabama*, 326 U.S. 501 (1946). Indeed, precisely, Stanford is a private company town. "People living in company-owned towns are free citizens of their State and country[.]" *Marsh[1]* at 502.

### 2. Judicial Estoppel Applies

Judicial estoppel is an equitable doctrine that is invoked out of "**regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts**.'" *Hamilton v. State Farm Fire & Cas*. Co., 270 F.3d 778, 782 (emphasis added). "The application of judicial estoppel […] is also appropriate to bar litigants from **making incompatible statements in**

---

[1] This was cited in the Plaintiff's original motion. The defendants did not address this point at all. They conceded to the merits of this argument and that they are a government actor as a company town.

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

**two different cases**." *Hamilton*, 270 F.3d at 782 (emphasis added). Because SDPS' government actor status does not depend on its functions and defendants admitted in a previous litigation that SDPS is a government actor, judicial estoppel prevents the defendants from playing fast and loose with the Judiciary.

### 3. SDPS and University Officials Also Acted under the Color of Law and Outside-Circuit Cases Are Neither Helpful or Instructive

To err on the side of caution, let us continue with the acting-under-the-color-of-law test, even though we need not reach there. Preliminarily, the opposition's reliance on *Robinson v. Davis*, 447 F.2d 753, 755-59 (4th Cir. 1971) and *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 347-53 (N.D.N.Y. 2014) are misplaced. Those cases are, of course, not binding on this Court—but neither are their instructive or even remotely helpful. And, perhaps needless to note, they have been cherry-picked. The Plaintiff could also provide a list of cases where 'private' university have been held to be a government actor because of their police force but that would defeat the point: This inquiry is incredibly fact-bound. Indeed, as *Colgate* recognized, for instance, in *Yuan v. Tops Markets*, No. 5:10- CV-1251, 2012 U.S. Dist. LEXIS 141280, 2012 WL 4491106, at *3 (N.D.N.Y. Sept. 28, 2012), "the court found … that the Cornell University Police act under color of state law because Cornell University police officers are 'special deputy sheriffs' under New York State law. *Id*. (citing N.Y. Educ. Law § 5709(1))." *Colgate*, 64 F.Supp. 3d at 350. As such, because the *underlying* state law is also relevant to this inquiry—*i.e.* California Penal Code granting deputization—relying on those outside-California cases are erroneous. Defendants have not also in any viable way explained why sharing the Plaintiff's ID card they obtained **during a police investigation** and one that was provided to them **2 years ago** to obtain a **police report** would not be for "general law enforcement" purposes. And the Plaintiff cannot think of any viable theory to argue this. As such, because this

7

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

point is waived in defendants' pages long explanation, defendants' argument collapse. Given the all-encompassing phrase in question, this point is meritless: *general* law enforcement. Indeed, this is in line with the *only* case that addresses SDPS' MOU: *United States v. Mangi*, No. 18-cr-00260-EJD-1, 2022 U.S. Dist. LEXIS 96813, at *16 (N.D. Cal. May 31, 2022).

### 4. Because Record-Keeping Actions Are Actions Under the Color of Law, as the MOU Admits, Defendants' Remaining Points Factually Do Not Find Support in the Record before this Court and Even If Assuming *Arguendo* It Did, the Defendants Fail as a Matter of Law

The Defendants have also, in their selective quoting of the MOU, omit one very important aspect of the MOU:

> Primary responsibility for managing criminal records generated by Stanford Reserves will rest with a Santa Clara County Sheriff's Office Records Clerk ("Stanford Records Clerk.") The Chief, or his/her designee, will participate in the interview process with the Sheriffs Office for the selection of the Stanford Records Clerk.

MOU at 8-9.

The pertinent function here—if assuming *arguendo* it does not fall under the gambit of 'general law enforcement'—the keeping and sharing of the ID card falls under the ambit of a *plain* government actor, employed by Santa Clara County Sheriff's Office Records Clerk.  Assuming, *arguendo*, however, that was not the case, the proposition that the SDPS actors who have been granted deputization under the Penal Code simply *halt* being—*in toto*—actors acting under the color of law simply by declaring themselves to be performing administrative functions…that reasoning has been eviscerated by the reasoning of *Lindke v. Freed*, 601 U.S. 187, 204, 144 S. Ct. 756, 218 L. Ed. 2d 121 (2024). Although *Lindke*'s context was, of course, different, a colleague of this Court applied it to the specific Penal Code deputization context: *United States v. Lankford,* No. 8:24-CR-00077-WLH, 2025 U.S. Dist. LEXIS 234897, at *4-5 (C.D. Cal. Nov. 21, 2025).

### 5. Although the Plaintiff Need Not Satisfy These Tests, She Satisfies the Government Nexus, Joint Action, or Symbiotic Relationship Tests with Respect to Admissions Officers

Defendants' only response to the Plaintiff's Government Nexus, Joint Action, or Symbiotic

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

Relationship Tests is that these are "buzzwords" and these theories are "simply implausible" and that it is a "leap of fantasy." *See* Opp. 14-15. Bare assertions do not preserve claims and these conclusory arguments are waived. At any event, it is utterly unclear why SDPS defendants would share "an ID" card "which SDPS had collected from Plaintiff in 2024" (Opp. at 14: 23-24) **two years afterwards** and **a month after they were sued in federal court** if there was not some sort of **<u>deep cooperation, symbiotic relationship, overt encouragement to expel the Plaintiff as soon as possible for suing SDPS for wrongful seizure</u>**. These claims are not "delusional" but suggests a **<u>deeply-interviewed conspiracy</u>** to expel the Plaintiff as promptly as possible. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (providing a list of 'delusional' clams). Indeed, the record before this Court supports these purportedly 'delusional' events. Indeed, Defendant Shaw[2] perjured himself just to lay these elaborate schemes he participated in. *See* ECF No. 139 at 7, n. 3 (delineating Defendant Shaw's perjury to this District Court before).

> **6. Defendants Misconstrue the Information-Sharing Exception in *O'Handley* (and *Mathis*) And *Mathis'* Fourth Footnote Is Instructive and Maybe Even Dispositive**

Defendants' remaining arguments cite *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023) for the proposition that information sharing would not constitute joint action. The Plaintiff expected this argument to be brought. *See* ECF No. 46-1 at 11. But *Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996)—which *O'Handley* cites *ipse dixit*—would support the Plaintiff's claim herein because in the instant case, Defendant Shaw *directly relied on* SDPS' support in making his decision to exclude the Plaintiff. Indeed, if not for the SDPS' conspiracy to provide that

---

[2] Defendant Shaw's declaration does not support the points defense counsel thinks it does. *See* ECF No. 139 at 7. At any event, this Court cannot reasonably rely on Defendant Shaw's declaration when it has been established to be **perjurious on its face.**

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

1.5-year-old ID card to Defendant Shaw, and his reliance thereof, Defendant Shaw *could not* have started his investigation. Put differently, Defendant Shaw and SDPS were "inextricably intertwined" *Mathis*, at p. 1211; *see also Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (terming it as "cooperation"). *Mathis* also carved out an important distinction at footnote 4. **That is what one might call the 'alter ego' exception to the information- sharing exception**. Since SDPS and the University are the same corporation as defendants concede, then SDPS is another *name* for University's actions. Indeed, *Mathis'* information sharing was between PG&E and NRC—not as intricately intertwined corporations, let alone just *one* department of a corporation acting with another. As such, *Mathis* would find that admissions officers acted under the color of law herein. At any event, this exception only applies to the **joint action test only.**

### 7. Defendants Erroneously Assume that the Plaintiff Cannot Vindicate Her Constitutional Claims Through the Vehicle of Section 1985(3), Which Does Not Require State Action or Those that Acted under the Color of Law

Defendants erroneously assume that a **state actor is required** for the Plaintiff to be able to prevail on her Fourteenth Amendment due process claims. Defendants are mistaken. Defendants confuse a 42 U.S.C. § 1983 conspiracy claim with that of a 42 U.S.C. § 1985. *See Park v. Thompson*, 851 F.3d 910, 918 n. 7 (9th Cir. 2017). Plainitff's 42 U.S.C. § 1983 and § 1985(3) claims focus on the violation of the *same constitutional liberties.* Defendants' only point is that the Plainitff will fail on her 42 U.S.C. § 1983 claim because of the state action requirement. Even if assuming, *arguendo*, the Plaintiff did fail to establish state action herein, she will prevail on her Fourteenth Amendment claims **by way of 42 U.S.C. §1985(3).** In *Griffin v. Breckenridge*, 403 U.S. 88, 96-101 (1971), the Supreme Court made it abundantly clear that a Section 1985(3) claim **does not require a state actor at all and can be plead as a conspiracy among private parties.**

**8. Plaintiff Succeeds on Her Due Process Claims and Because Defendants Concede that the Plaintiff Has a Liberty Interest in Her Continued Education, It Is Not Necessary to Address the Defendants' Misreading of *Dudley***

Plaintiff identified in her initial motion that she has *both* a *liberty* interest and a *property* interest in her education. *See* ECF 62 at 13. Defendants only addressed the property interest prong of this analysis, conceding that the Plaintiff has a liberty interest. As such, because a liberty interest is enough for Fourteenth Amendment protections to be called forth, *see Wisconsin v. Constantineau*, 400 U. S. 433 (1971), the Plaintiff need not explain the defendants' absurd reading of *Dudley v. Boise State Univ.*, 152 F.4th 981 (9th Cir. 2025).

**9. Fair Procedure Standards Do Not Apply Here Because this is Not a Common Law Due Process Claim Like that of a Writ of Administrative Mandate and Lack of Hearing Is a Structural Defect Not Subject to Harmless Error Analysis**

Defendants argue, for two or so pages, at 15 and 16, that they do not have to abide by procedural due process secured under the Fourteenth Amendment and highlight the "public" part in those cases every single time. That Defendants come under a 42 U.S.C. § 1983 claim as a state actor makes them "public." And that they engaged in a private conspiracy under 42 U.S.C. § 1985(3) is a proper basis from which the Plaintiff could vindicate her Fourteenth Amendment due process claims. As such, defendants' extended argument about fair hearing standards the California Supreme Court established via common law fair procedure standards are inapplicable herein. Indeed, this action could proceed as is while the state writ petition is pending disposition *precisely* because of this difference. *See* ECF No. 13 (citing *Boermeester* also). When [the Fourteenth Amendment's protection of life, liberty, or property is] implicated, **the right to some kind of prior hearing is paramount**." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972) (emphasis added). Defendants do not dispute that they provided no hearing *at all*. This is dispositive herein as lack of

11

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

hearing is a structural defect not subject to a harmless error analysis when subjecting someone to a deprivation of a liberty interest.

**10.It Is Not Necessary To Solve the Issue of Continued Enrollment as Issuing an Injunction Will Make that Point Moot**

Although defendants are mistaken in their 'continued enrollment' argument, *see* Opp. at 16: 1-14, there is no need to address this point for reasons explained in ECF No. 62 at 14: 15-20.

**D. Plaintiff Has Adequately Shown Irreparable Injury**
**1. "Sufficient Connection" Is Not What Defendants Make It Out To Be Although There Is A Sufficient Connection as Defendants Themselves Expelled the Plaintiff from the United States**

It is true that a plaintiff must show a "sufficient causal connection between irreparable harm[,]" *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 982 (9th Cir. 2011) and the requested injunction, but this is so that "the injunction, if issued, would **in fact prevent the harm.**" *Cruz Uitz v. Noem*, No. CV 25-06420-MWF (AJRx), 2025 U.S. Dist. LEXIS 211772, at *31 (C.D. Cal. Sep. 23, 2025) (emphasis added). Because the injunction herein would prevent the harm (deportation, homelessness, discontinued education), the Plaintiff satisfied the sufficient causal connection standard. At any event, **it is entirely defendants' doing that the Plaintiff has been stranded in a legal limbo abroad for many months because the defendants cancelled her SEVIS record while they were aware that the Plainitff was abroad.** Indeed, as argued *supra*, this seems to be precisely what they tried to achieve by expelling the plaintiff during the summer break, in violation of their **own policy** of,

> "not send[ing] out formal notifications to students about new concerns during the week before finals, the week of finals, or **during term breaks** to ensure that students' academic work is not unduly impacted by the notification, and **that they have access to on campus support resources if needed**."[3] (emphasis added).

---

[3] Plainitff hereby seeks judicial notice over a web-page from the defendants' own website. *See* https://perma.cc/N7GJ-Z5AW .

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

And, indeed, that defendants "cancelled her return flight to the United States" is precisely *why* the Plaintiff is at this posture. *Opp.* at 4.

**2. There Is No Contradicting Evidence and There Is Sufficient Evidence in the Record to Find Irreparable Injury and because Judge Pitts Disposed of this Factual Issue, Crediting the Plaintiff's Version of the Events, Issue Preclusion Prevents the Defendants From Arguing Issues Already Disposed of by Judge Pitts**

Plaintiff has a lot to say about these matters—and in very colorful terms. But, this simply relitigates the same issues already litigated and disposed of by the Honorable P. Casey Pitts in *Doe v. Smith, et al.*, no. 5:25-cv-03490-PCP (N.D. Cal). Put briefly, the Plaintiff informed that court of certain worry that the defendants might have changed her IP address. *See* ECF No.s. 121-2 and 135 (General Declaration of Jane Doe) in *Doe I*. And "[i]n response, [opposing counsel] has the audacity to lie to this Court under the penalty of perjury. To attempt to confuse him with her artful spins on the facts." ECF No. 139 in *Doe I* at 2: 12-13. The principle of issue preclusion, by definition, precludes "relitigation of the issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 99 L. Ed. 1122, 75 S. Ct. 865 (1955). Defendants submitted the same exhibits they submitted herein to Judge Pitts. *Compare* ECF No. 134-1 through 134-11 **in this case** with ECF No. 133-1 through 133-8 in ***Doe I.*** Judge Pitts disposed of these issues and credited the Plaintiff's account of events. Indeed, that Judge Pitts found sealing appropriate to "protect Doe from gender-identity-based persecution in the country of her birth **in the likely event of her deportation from her current country of residence**[,]" *see* ECF No. 186 at 5: 15-18 (emphasis added), means that he found the Plaintiff's account of events credible—*i.e.* that the Plaintiff is not in her home country as defendants fraudulently claim, not already deported as defendants fraudulently claim, and is in her country of current residence, and that her deportation is imminent and not speculative.

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

**3. Defense Counsel's Utter Inability to Understand Immigration Law (Foreign and U.S.) Even When She Was Explained In Detail Why She Is Utterly Mistaken, or the Mere *Concept* of Transgender People, Are Simply Not Enough To Deny the Plaintiff this Life-Saving Relief, of Which Judge Pitts Also Made Factual Findings in addition to Judge Moody**

Judge Pitts already disposed of this very issue and found that Doe's "fears of persecution" as a "transgender woman [as] to her would-be persecutors in the country of her birth" is credible. *See* ECF No. 186 in *Doe I* at 5. This finding was made after defense counsel made the same asinine points and Plaintiff responded to them. This kind of re-litigation is improper. The remaining 'arguments' of the defendants have been explained in the Plainitff's declaration.

**4. Defendants Conceded that Homelessness Is Irreparable Injury Warranting Relief**

Plaintiff argued that homelessness is irreparable injury warranting injunction from this Court. *See* ECF No. 62 at 23. Defendants have not addressed this point at all. They have conceded to the merits of this argument.

**5. Defendants Conceded that Discontinued Education is Irreparable Injury Warranting Relief**

Plaintiff argued that discontinued education is irreparable injury warranting injunction from this Court. *See* ECF No. 62 at 23. Defendants have not addressed this point at all. They have conceded to the merits of this argument.

**E. Balance of Equities and Public Interest Favor Granting Injunction because the Doctrine of Judicial Non-Intervention into Academic Matters Does Not Apply When Bad Faith Is Involved and the Opposition Creates the Inference that Defendant Shaw Might Have Expelled the Plaintiff because of His Displeasure Against Transgender People Who Are Asylum Seekers**

Defendants' objection to the last two factors of *Winter* is based on their belief that the Plainitff has not "established a likelihood of success of the merits on her constitutional claims" *Opp*. at 23.  Having concluded that the Plaintiff will succeed on her constitutional claims, defendants' opposition is meritless. Defendants remaining arguments at 22: 21-28 and at 23: 9-17

14

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

seem to rehash/*hint* the doctrine of judicial non-intervention into the academic matters. There is "an exception to this rule by permitting limited intervention whenever it is alleged that a university or college has acted arbitrarily or in bad faith." *Salinas v. Palo Alto Univ.*, No. 5:15-cv-06336-HRL, 2017 U.S. Dist. LEXIS 156715, at \*26 (N.D. Cal. Sep. 25, 2017). Because unconstitutional conduct is unquestioningly "bad faith" and "arbitrary", this rule against intervention does not apply. Opposition admits, "It is hard to imagine any university not reconsidering its decision to admit a student under these circumstances." *Opp*. At 25. "These circumstances" refer to the Plaintiff being an asylum seeker based on gender-identity based prosecution. It appears that Defendant Shaw's decision was largely premised upon his displeasure for people of the Plainitff's standing— transgender asylees. Because academic decisions that are "result[s] of irrelevant or discriminatory factors[,]" *Salinas,* at \*26-7,  it is Defendant Shaw who has unclean hands and should not enjoy protection of his unconstitutional conduct by this Court.

### F.  Seeking Life-Saving Asylum Is Not "Unclean" As Defense Counsel Astonishingly Believes

"Traditional equitable considerations such as . . . unclean hands may militate against issuing an injunction." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 947 (9th Cir. 2013).  "[E]quity does not demand that its suitors shall have led **blameless lives**," *Loughran v. Loughran* 292 U.S. 216, 229 (1934) (emphasis added). And the doctrine of unclean hands applies "relative to the matter" at hand and before this Court. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Although unclean hands can be implicated by technically legal but bad-faith conduct, there is nothing *morally* wrong about "appl[ying]" to a university "solely to gain admission to the United States." *Opp*. at 25. Defendants have not established why this would be 'unclean' and this asinine point is, as is, waived.

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF

**G. That Defendants Submitted Fake Evidence to this District Court Before, Altered the Plaintiff's IP Address, and Clandestinely Made a Stanford Alumnus Contact the Plaintiff and Lie to Her, Delay the Filing of this Action And Service Thereof By Violating their Ethical Duties, All Put the Defendants' Credibility, Dilatory Motive, and Harassing Nature of their Supposed Factual Verification into Question, And Defendants Should be Denied from Taking Advantage of this Court with the Same Unclean Hands**

Defense counsels' gamesmanship, fraud, deception, deceit has been addressed at length at this Court's docket. Defendants cannot prevent the Plaintiff from receiving equitable remedy from this Court with their dirty, dirty hands.

**III.CONCLUSION**

The motion should be granted, and defendants should be enjoined from making a mockery of our constitutional order and this Court. It would be a travesty to allow defendants to continue as is.

Respectfully submitted,

DATED: June 26, 2026.

/s/ Jane Doe
_____
JANE DOE
*In Propria Persona*

REPLY TO THE DEFENDANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

5:26-cv-03809-BLF