JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual,<br><br>                    Plaintiff,<br><br>    *v.*<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*,<br><br>                    Defendants. | Case No.: 5:26-cv-03809-BLF<br><br>**REPLY ON THE MOTION TO DISQUALIFY COUNSEL**<br><br>Before the Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**

I.  INTRODUCTION…………………………………………………………………..1

II. LEGAL ARGUMENTS

    a.  Defense Counsel Misconstrues the Appropriate Standard……………………………1

    b.  By Not Addressing 90% of the Factual Allegations of the Initial Motion, Defense Counsels Conceded the Truthfulness of Those Allegations and If the Court Does Not Find that Concessions Occurred, It Should Order Defense Counsels In Question for Appearance at the Hearing on this Motion So They Can be Directly Questioned by this Court or Allow Oral Testimony in the Hearing and Allow the Plainitff to Move this Court via a *Praecipe* for Issuance of Subpoenas *Ad Testificandum* or Permit Depositions to be Taken…………………………………………………………..2

    c.  An *Ipse Dixit* Citation of the Plaintiff's Citation of Caselaw Does Not Establish Bad Faith and At Any Event There Is None…………………………………………….. 3

    d.  The Palatability of the Language of the Plaintiff's Motion to Defense Counsels is Irrelevant to the Merits of It……………………………………………………….3

    e.  Defense Counsels' Continued Belief that They Are Not anti-Semitic Is a Red Herring because Hating Judaism, Jewishness, and Jews Is Not a Proper Ground for Disqualification and the Motion Did Not Argue As Such……………………………..4

    f.  Defense Counsels' Remaining 'Legal' Arguments Are 'Unhinged' and Meritless……4

III. FACTUAL ARGUMENTS

    a.  Defense Counsels Already Conceded Their Misconduct……………………………... 5

        1. Ms. McGarry Conceded Her Breach of Duty of Candor……………………… 5

        2. Ms. McGarry Conceded Attempting to Subvert this Court's Jurisdiction for Her Heresy Trial……………………………………………………………….. 5

        3. Although Defense Counsel Is Right about the Service Dispute in *this* Case, Ms. McGarry Conceded Threatening and Taking Adverse Action Against Servers of Process and Filing Frivolous Motions to Quash Proof of Service………………6

        4. Ms. McGarry Conceded Being Defendant Shaw's Co-Conspirator……………..6

        5. Ms. McGarry Conceded the Following.…………………………………………6

        6. At This Point, By Not Submitting a Declaration under the Penalty of Perjury Affirming that She Did Not Change the Plaintiff's IP Address and Once Again Resorting to the "How to Hide my IP Address" Advertisement Gambit Rejected By Judge Pitts, Ms. Kinser Conceded Evidence Tampering…………………….6

    b.  Defense Counsels' Meanderings About What Constitutes anti-Semitism Are 'Unhinged' and It Is Beyond Debate that Ms. McGarry Targeted the Plaintiff with Anti-Semitic Vitriol and Stereotypes……………………………………………. 6

IV. CONCLUSION………………………………………………………………… 7

**TABLE OF AUTHORITIES**

**Caselaw:**

*Avila v. Ford Motor Co.*,
        No. 22-cv-00542-PCP, 2026 U.S. Dist. LEXIS 95866 (N.D. Cal. Apr. 30, 2026)…… ..……5
*Bronston v. United States*,
        409 U.S. 352 (1973)………………………………………………………………....…1
*Kroeger v. Vertex Aero*. LLC,
        2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020)………………………………………2
*Department of Commerce v. New York*,
        588 U. S. 752 (2019)………………………………………………………………………7
*Mullin v. Doe*,
        Nos. 25-1083, 25-1084, 2026 U.S. LEXIS 2719 (June 25, 2026)……………………………7
*Callais v. Louisiana*,
        224 L. Ed. 2d 700 (2026)…………………………………………………………………..7
*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
        760 F.2d 1045 (9th Cir. 1985)…………………………………………………………….. 3

**Rule:**

Federal Rules of Civil Procedure
        Rule 11…………………………………………………………………………………… 1

**Code:**

18 United States Code
        Section 1621………………………………………………………………………………1

**Miscellaneous**

Benjamin Franklin, *Poor Richard's Almanack*, (1980 Peter Pauper Press Ed)…………………………1

Plaintiff hereby submits this reply on the defendants' opposition ("Opp.") motion to disqualify ("Mot.").

## I. INTRODUCTION

Sometimes the defense against an offense is worse than the initial offense. Surely, this is such a case. To retort with yet another "religious-philosophic[al][1][,]" *see* Dkt. No. 117 at 1: 20-21, "musing:" "Tricks and treachery are the practice of fools that have not wit enough to be honest." Benjamin Franklin, *Poor Richard's Almanack*, (1980 Peter Pauper Press Ed). To retort with yet another purported "vituperation": Once a liar, always a liar. Counsels' profession *lies* in that—not law or anything remotely close to the "law"—of which they know so little, understand so little, appreciate so little, are respectful of so little, admire so little…

## II. LEGAL ARGUMENTS
### a. Defense Counsel Misconstrues the Appropriate Standard

The standard here in not Federal Rules of Civil Procedure 11, nor is it 18 U.S.C. § 1621, nor is the question one about "literal truthfulness," *see Bronston v. United States,* 409 U.S. 352, 355 (1973); it is whether ethical standards that apply to all attorneys that practice law in this Court have been breached—and that includes an attorney's duty of candor: The duty to provide a full, accurate picture to a court and not attempt to commandeer it in a misleading direction by confusing a court with spins on facts (for instance, when multiple disqualification affidavits are filed, their "denial" are challenged by writ petitions, one writ is granted, and thus the writ petition challenging previous challenges become moot and the Court of Appeal denies such writs *as moot* and indicates as such on the face of its dismissal order—and conveying that like that to the Court and not 'hiding'[2] the

---

[1] Defense counsel probably meant to say "philosophical" (resembling the *quality* of philosophy) instead of "philosophic" (belonging to the academic discipline of philosophy).

[2] No, the Plaintiff is fully aware of the number of disqualification challenges she filed (three), which were all meritorious (and were all on different grounds and thus were not 'repetitive') and actually succeeded by that one writ petition being granted. That others writ petitions were denied as moot therefore does not change this analysis.

1

granted writ petition in that verbiage)—or argue that a *granted* writ petition was 'unmeritorious.' Defense counsels already conceded doing *just* that.

> **b. By Not Addressing 90% of the Factual Allegations of the Initial Motion, Defense Counsels Conceded the Truthfulness of Those Allegations and If the Court Does Not Find that Concessions Occurred, It Should Order Defense Counsels In Question for Appearance at the Hearing on this Motion So They Can be Directly Questioned by this Court or Allow Oral Testimony in the Hearing and Allow the Plainitff to Move this Court via a *Praecipe* for Issuance of Subpoenas *Ad Testificandum* or Permit Depositions to be Taken**

Defendants proffer, "Responding to all this would be a monumental [*sic*] waste of effort and the Court's time, so we will address only the claims that would be most serious if they were true." *Opp*. At 1: 14-16. But this bare assertion—that their time is not worth opposing motions filed in this Court or their time is not worth attending to the matters this Court is addressing—is not enough to preserve an opposition to it. Indeed, the Plaintiff has been burdened with addressing the defendants' *ad nauseam* and absurd *ad hominem* attacks every since this action was filed—and their pages and pages' long vituperation because the Plaintiff is unpalatable to defense counsel—all because she followed the law and not defense counsel's Church meanderings about, *inter alia*, showing the 'proverbial little guy' grace[3]. As such, any factual allegation not explicitly refuted is a concession. *See, e.g., Kroeger v. Vertex Aero*. LLC, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases holding that party conceded argument by failing to address it in opposition brief). And, doubtlessly, they have not addressed "most serious" allegations of the Plaintiff. There is a reason for this: No opposition can save the defendants. These include, *inter alia*, that defense counsel retaliated against anyone else involved in this suit, including process servers, that they are Defendants' co-conspirators in the civil wrongs against which redress is sought, that they

---

[3] For abundance of clarity, the Plaintiff does not have a problem with this. She has a problem with Ms. McGarry **corrupting a secular government institution to attempt to force her beliefs on the Plaintiff and mandate that she follows them**—and that she attempts to get a judicial fiat therefor.

REPLY ON THE MOTION TO DISQUALIFY COUNSEL

5:26-cv-03809-BLF

misrepresented the law to the Plainitff in their dealings with her to gain unfair advantage—including the obtaining a dismissal in waiver of "costs" that they were entitled to "as a matter of law."

If the Court finds that no concession occurred, the Court should weigh in its discretion to order both Ms. Kinser and Ms. McGarry to appear at the hearing on this motion so they can be queried by this Court. If the Court prefers that the Plaintiff moves for leave to be relieved from Civil L.R. 7-6 and move the Clerk of this Court for issuance of subpoenas *ad testificandum* via a *praecipe,* the Plaintiff will move the Court therefor. If the Court prefers that no oral testimony be heard in the motion hearing, the Plaintiff urges this Court to allow the Plaintiff to take depositions on non-privileged material in support of this motion. Preserving the trust in the judicial process requires as much. Indeed, defense counsels usually submit a thousand pages of exhibits in support of their motions and oppositions**, but, in this case, they changed course**—obviously because filing declarations denying these allegations would constitute perjury.

### c. An *Ipse Dixit* Citation of the Plaintiff's Citation of Caselaw Does Not Establish Bad Faith and At Any Event There Is None

Opposition merely *ipse dixit* quotes Plaintiff's invocation of *Optyl Eyewear Fashion Int'l Corp. v. Style Cos*., 760 F.2d 1045, 1050 (9th Cir. 1985) to suggest that the motion is "strategic" and is in "bad faith." But the mere fact that *most* disqualification motions are presented for dilatory purposes does not establish that *this* motion is. Opposition concedes that Plaintiff has been intent on filing this motion ever since the breach of duty of candor occurred; it is unclear how this concession is compatible and reconcilable with the defendants' dilatory-motive argument. At any point, because *ipse dixit* citations are not enough to preserve a point, this point is, once again, waived.

### d. The Palatability of the Language of the Plaintiff's Motion to Defense Counsels is Irrelevant to the Merits of It

Whether or not a motion's language is palatable to defense counsel is irrelevant to the motion's merits. If the Plaintiff ignored every motion that was written in unpalatable-to-her

3

language, then none of the motions of the defendants would receive a proper opposition.

### e. Defense Counsels' Continued Belief that They Are Not anti-Semitic Is a Red Herring because Hating Judaism, Jewishness, and Jews Is Not a Proper Ground for Disqualification and the Motion Did Not Argue As Such

Defense counsels' extended argument as to whether their conduct in this case suborned and reduplicated and redeployed anti-Semitic stereotypes and vitriol (it did) is a red herring. Nowhere in the motion did the Plaintiff argue that counsel should be disqualified **for**, *inter alia*, exhibiting anti-Semitic behavior (it just *in passing*, yet in passionate speech, mentioned its "disgusting and raging"[4] anti-Semitic qualities). Indeed, the Plaintiff is unsure if this would even constitute a viable basis to disqualify counsel. Certainly, a defendant's "counsel of choice" should not be hindered by (as here) whatever obnoxious social views their counsel of choice has. Certainly, defense counsels (and defendants) are free to hate Jews, Jewishness, and Judaism (and find Judaism and Jews morally repugnant) as much as they like to—and it would not be this Court's or the Plaintiff's prerogative to meddle into the *thoughts* of defense counsels. **"Thought crimes"—like heresy trials—are foreign to our Constitution.** Rather, the Plaintiff indicated that attempting to subvert this Court's jurisdiction and use it for a heresy trial would warrant disqualification to keep the Public's trust in the Judiciary and for the orderly administration of justice in this case. Defense counsel does not address this point, so it—that they want to corrupt and have corrupted this Court's jurisdiction to conduct a heresy trial—is conceded.

### f. Defense Counsels' Remaining 'Legal' Arguments Are 'Unhinged' and Meritless

It appears that defense counsel has gotten it wrong: "Common law" is not what he thinks it is. Although this point could be made by various citations to William Blackstone and Edward Cooke —put more succinctly: The "common" there does not mean that a judicial officer in a common law

---

[4] Plaintiff stands by her verbiage that defense counsels' anti-Semitic attacks are, indeed, disgusting and raging—they are also enraging.

4

REPLY ON THE MOTION TO DISQUALIFY COUNSEL

5:26-cv-03809-BLF

jurisdiction *loses* their discretion because their colleague in the next chamber interprets or applies the law differently. "Common" therein means common *boundaries* of law—common precedent— not common application. Indeed, this is the **hallmark** of a common law legal system. The "common boundaries" are…that a violation of a Rule of Professional Conduct is a proper basis to disqualify counsel. And this is the finding that all of those cases cited by the Plaintiff found. That those courts found, **later**, that *the counsel in that case* should not be disqualified does not change this analysis. And judicial officers in this judicial district **routinely take various measures** against counsel in one case because of that counsel's misconduct in another case. *See, e.g., Avila v. Ford Motor Co.*, No. 22-cv-00542-PCP, 2026 U.S. Dist. LEXIS 95866, at *4 (N.D. Cal. Apr. 30, 2026).

### III. FACTUAL ARGUMENTS
#### a.  Defense Counsels Already Conceded Their Misconduct
##### 1. Ms. McGarry Conceded Her Breach of Duty of Candor

Ironically, defense counsels do not even claim that they did not breach their duty of candor to this District Court before. But analyzing defense counsels' pleadings *before* the Plaintiff filed the motion for disqualification and their pleadings *after* the motion and observing the metamorphosis thereof unquestioningly establishes that defense counsels **concede** that their prior conduct violated their duty of candor. That is because…defendants started including information that does not support their point—ones they excluded from their previous moving papers—*after* the Plaintiff filed the disqualification motion. **If defense counsels did not think that their previous moving papers were filed in breach of their duty of candor, they would not have changed their moving papers on the same subject-matter**. A brief table will make this point clear. *See* Appendix A.

##### 2. Ms. McGarry Conceded Attempting to Subvert this Court's Jurisdiction for Her Heresy Trial

Defense counsels' unhinged arguments about anti-Semitism and their attempt to commandeer a corrupted definition of it thereto are to be addressed *infra* and has been addressed

5

*supra*. At any event, a brief table, appended as Appendix A, comparing Ms. McGarry's verbiage on the same subject-matter before and after the disqualification motion can elucidate the concession that defense counsel wanted to commander this Court's jurisdiction to conduct her heresy trial.

**3. Although Defense Counsel Is Right about the Service Dispute in *this* Case, Ms. McGarry Conceded Threatening and Taking Adverse Action Against Servers of Process and Filing Frivolous Motions to Quash Proof of Service**

Although the Opposition is right that Ms. McGarry did not lie about the service date *in this action* (the motion was filed before the U.S. Marshal's service actual proofs of service were filed in the docket), Ms. McGarry does not address that (1) she retaliated against a process server before and (2) she intentionally filed motions to quash proof of service that she later withdrew to extend her time to answer or otherwise oppose.

**4. Ms. McGarry Conceded Being Defendant Shaw's Co-Conspirator**

By not addressing the Plaintiff's allegations about Ms. McGarry being Defendants' co-conspirator, an implied concession occurred. This type of representation—an attorney representing a defendant whose civil wrong they participated—is **patently improper.**

**5. Ms. McGarry Conceded the Following**

Ms. McGarry also conceded any of the allegations she did not explicitly refute.

**6. At This Point, By Not Submitting a Declaration under the Penalty of Perjury Affirming that She Did Not Change the Plaintiff's IP Address and Once Again Resorting to the "How to Hide my IP Address" <u>Advertisement</u> Gambit Rejected By Judge Pitts, Ms. Kinser Conceded Evidence Tampering**

By not filing a simple declaration under the penalty of perjury declaring that she did not change the Plaintiff's IP address and resorting to the same "How to Hide my IP Address advertisement gambit that Judge Pitts already rejected, Ms. Kinser should be assumed to have conceded to evidence tampering.

**b. Defense Counsels' Meanderings About What Constitutes anti-Semitism Are 'Unhinged' and It Is Beyond Debate that Ms. McGarry Targeted the Plaintiff with Anti-Semitic Vitriol and Stereotypes**

Judges are "not required to exhibit a naiveté from which ordinary citizens are free[.]"

6

*Department of Commerce v. New York*, 588 U. S. 752, 786 (2019). *See also Mullin v. Doe*, Nos. 25-1083, 25-1084, 2026 U.S. LEXIS 2719, at \*55 (June 25, 2026) (KAGAN, J., dissenting) (quoting the same with respect to the President's remarks about Haitian and other Black immigrants). Defendants wish this Court to exhibit a sort of naiveté that it is not obligated to exhibit. Indeed, as explained in ECF No. 123, the anti-Semitic nature of these *ad hominem* attacks is so abundantly clear to anyone who has the most basic *scintilla* of knowledge about stereotypes with which Jews are targeted—it is as well-known as targeting the Plaintiff because of, say, the size of her nose (which, indeed, is quite stereotypically large). And, again, the Plaintiff's Talmudic/Halachic hermeneutic practice is the ***but-for cause*** of these attacks.

### IV. CONCLUSION

While their clients were harassing the Plaintiff for being transgender and for merely *speaking*, counsels have been harassing the Plaintiff from within the Judiciary for yet another *form* of being. Rather than attempt to *be* and finally *become* proper and civil members of civil society and correct their wrongs, they have the audacity to double down. "It is the" opposition's "rhetoric that lacks" hinges. *Callais v. Louisiana*, 224 L. Ed. 2d 700, 701 (Alito, J., concurring with the order issuing judgement forthwith). Preserving the public trust in the Judiciary mandates measures to be taken against this Court being transformed into a 13th century inquisition where defense counsels' whims become the law. What those measures are…that must be addressed by this Court's inherent jurisdiction and equitable power.

Respectfully submitted,
DATED: July 1, 2026.

*/s/ Jane Doe*
_____

JANE DOE
*In Propria Persona*

REPLY ON THE MOTION TO DISQUALIFY COUNSEL
5:26-cv-03809-BLF

REPLY ON THE MOTION TO DISQUALIFY COUNSEL

5:26-cv-03809-BLF