JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812


Plaintiff, In Propria Persona


**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| JANE DOE, an individual,<br><br>                    Plaintiff,<br><br>    v.<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*,<br><br>                    Defendants. | Case No.: 5:26-cv-03809-BLF<br><br>**OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Before the Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………………………..1

II.  BRIEF SUMMARY OF THE NARROW ISSUES BEFORE THIS COURT AFTER GOOD-FAITH MEET AND CONFER EFFORTS WITH DEFENDANT MORGAN-HERMAN'S COUNSEL……………………………………………………………..1

III. LEGAL STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO PLEAD ADEQUATE FACTS UPON WHICH RELIEF COULD BE GRANTED………………2

IV.  ARGUMENT…………………………………………………………………………..4

   A.  PRELIMINARY MATTERS…………………………………………………………..4

      1. Although Suing Defendant Morgan-Herman In Her Official Capacity Does Not Transform this Action into an *Ex Parte Young* Action, Defense Counsel Is Right about the Distinction between Personal-Capacity and Official-Capacity Suits *Kentucky* Addressed but Because There Is No Indication in the Complaint that the Plaintiff is Seeking Damages Against Defendant Morgan-Herman, the Official-Capacity Suit Should Not be Dismissed (As Suggested in *Kentucky*'s Eight Footnote)……………………………………………………….……4

   B.  FEDERAL-LAW CLAIMS AGAINST DEFENDANT MORGAN-HERMAN………6

      1. The Question Here Is Not About Pleading Standards After *Iqbal* and *Twombly* But Is Rather About the Integral Participant Doctrine As Developed by the Ninth Circuit and Whether Defendant Morgan-Herman's *Own Conduct* Would Satisfy that Test…………………………………………………………………..6

      2. Whether the Ninth Circuit's Integral Participant Doctrine Violates the Provisions of *Iqbal* and *Twombly* Is A Question that the Ninth Circuit Repeatedly Addressed (and the Supreme Court Recently Denied *Certiorari* Relief on this Question Based Again on the Petitioner's Claim that the Doctrine Violated *Iqbal* and *Twombly* Plausibility Standard) and Cannot Properly Be Before This Court because this Court Is Bound by Ninth Circuit Precedent………………………..7

      3. Although Defense Counsel and the Plaintiff Are In Agreement That *Peck* Is Instructive Herein (Indeed, the Plaintiff Brought Up *Peck*), *Peck* Is Not Dispositive as Minimum Involvement for a Party to Be Deemed an Integral Participant Is Still an Unsettled Question of Law in This Circuit……………….8

      4. Although *Peck* Is Instructive, *Peck* Is Only Limited to Fourth Amendment Claims, Not First and Fourteenth and the Ninth Circuit Is Yet to Address the Integral Participant Doctrine As It Relates to First and Fourteenth Amendment Claims………………………………………………………………..10

      5. As Far as the Plaintiff Is Aware, the Ninth Circuit Never Addressed the Integral-Participant Doctrine as It Relates to 42 U.S.C. § 1985(3) Claims and Supreme Court Precedent Has Held a Nominally Involved Party Responsible for a 42 U.S.C. § 1985(3) Violation in the Past, Especially in *Griffin*…………………..12

      6. Whether Defendant Morgan-Herman Is Entitled to Qualified Immunity As a Matter of Law is a More Complicated Question than Defense Counsel Makes it

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

Out to Be, and Although *Filarsky* Is Instructive Herein, It Is Not Dispositive……………………………………………………………………………..13

C. STATE-LAW CLAIMS AGAINST DEFENDANT MORGAN-HERMAN

    1. The Claims Are Not Barred by Government Claims Act because There Is No Indication in the Complaint that the Plaintiff Is Seeking Monetary Damages against Defendant Morgan-Herman…………………………………………14

    2. Even If Assuming *Arguendo* the Plaintiff Was Seeking Monetary Damages against Defendant Morgan-Herman, Any Dismissal Should be Without Prejudice as Statute of Limitations for Filing a Claim with the County Has Not Ran Out as They Were Tolled……………………………………………………………….15

    3. Defense Counsel Has to Separately Address Minimum Involvement Required For Each Tort or Contract Claim……………………………………………..16

    4. Plaintiff Concedes that Some of Defendant Morgan-Herman's Conduct, As Alleged in this Complaint, Does Not Meet the Threshold for the *Thing* Test But Leaves this Question to the Sound Discretion of this Court but the Dismissal Should be Without Prejudice As Discovery Could Reveal Further Involvement by Defendant Morgan-Herman……………………………………………………………………17

    5. The Minimum Involvement Required for Bane Act, Unruh Civil Rights Act, Interference with a Contract Claims…………………………………………21

D. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE…………………….....22

E. CONCLUSION………………………………………………………………….23

## TABLE OF AUTHORITIES

### Caselaw:

*Abelar v. Cty. of L.A.*,
    No. 2:23-cv-01606-RGK-MRW, 2024 LX 177427 (C.D. Cal. Feb. 6, 2024)……………… 10

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004)……………………………………………………………….3

*Agnew v. Parks*,
    172 Cal.App.2d 756 (1959)………………………………………………………………..21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ……………………………………………………………*passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)……………………………………………………..…………*passim*

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (2007)………………………………………………………………….. 9

*Boyd v. Benton County*,
    374 F.3d 773 (9th Cir. 2004)………………………………………………………..9

*Bracken v. Okura*,
    869 F.3d 771 (9th Cir. 2017)………………………………………………………13

*Brandon v. Holt*,

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

469 U.S. 464 (1985)……………………………………………………………… 5

*Bravo v. City of Santa Maria*,
665 F.3d 1076 (9th Cir. 2011)…………………………………………………………7, 9

*Brazil v. U.S. Dep't of the Navy*,
66 F.3d 193 (9th Cir. 1995)……………………………………………..……16

*Brennock v. Newberg Sch. Dist.*,
No. 3:23-cv-1931-JR, 2024 WL 3330782 (D. Or. May 28, 2024)……………………………7

*Brewer v. Teano*,
40 Cal.App.4th 1024 (1995)……………………………………………………19

*Christensen v. Superior Court*,
54 Cal. 3d 868 (1991). …………………………………………………………20

*Corales v. Bennett*,
567 F.3d. 554 (9th Cir. 2009)……………………………………………… ..18

*DeFrancesco v. Robbins*,
136 F.4th 933 (9th Cir. 2025)…………………………………………..……10, 11

*Diamond v. Collinson*,
Nos. 25-2393, 25-2561, 2026 U.S. App. LEXIS 17995 (9th Cir. June 22, 2026)……………10

*Engstrom v. Denby*,
146 S. Ct. 609 (2025)…………………………………………………………8

*Engstrom v. Denby*,
case no. 24-1310 (June 16, 2025), 2025 U.S. S. Ct. Briefs LEXIS 1990…………………..8

*Est. of Chivrell v. City of Arcata*,
No. 22-cv-00019-HSG, 2025 LX 370672 (N.D. Cal. Aug. 4, 2025)…………………………10

*Ex parte Young*,
209 U.S. 123 (1908)……………………………………………………………5

*Eyre v. City of Fairbanks*, No. 4:19-cv-00038-SLG, 2023 LX 155719 (D. Alaska Feb. 23, 2023),
*aff'd on integral-participant grounds as stated in Eyre v. City of Fairbanks*, No. 23-35206,
2024 U.S. App. LEXIS 19770 (9th Cir. Aug. 7, 2024)…………………………………..10

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011)…………………………………………………3

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
30 Cal.4th 1037 (2003)……...…………………………………………………18

*Fisher v. Fisher*,
118 Cal. App. 5th 899 (2026)………………………………………17, 18, 19, 20

*Garcia v. City of Phx.*,
738 F. Supp. 3d 1164 (D. Ariz. 2024)…………………………………………..10

*Griffin v. Breckenridge*,
403 U.S. 88, 91 S. Ct. 1790 (1971)…………………………………………..12

*Hanlon v. Atencio*,
583 U.S. 931, 138 S. Ct. 356 (2017)………………………………..……7, 8

*Hanlon v. Atencio*,
case no. 16-1474 (June 5, 2017), 2017 U.S. S. Ct. Briefs LEXIS 2056…………..……7, 8

*Hart v. Alameda Cty.*,

iv

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

76 Cal. App. 4th 766, 90 Cal. Rptr. 2d 386 (1999)………………………..……….15

*Helm v. K.O.G. Alarm Co.*,
4 Cal.App.4th 194 (1992)…………………………………………………………….19

*Hopkins v. Bonvicino*,
573 F.3d 752 (9th Cir. 2009)…………………………………………………………..7

*IIG Wireless, Inc. v. Yi*,
22 Cal.App.5th 630 (2018)……………………………………………………………16

*Jensen v. Lane Cty.*,
222 F.3d 570 (9th Cir. 2000)………………………………………………………..13, 14

*K.J. v. Arcadia Unified Sch. Dist.*,
172 Cal. App. 4th 1229, 92 Cal. Rptr. 3d 1 (2009)………………………………………..16

*Kentucky v. Graham*,
473 U.S. 159, 105 S. Ct. 3099 (1985) ……………………………………………….4, 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ………………………………………………………3

*Marlene F. v. Affiliated Psychiatric Med. Clinic*,
48 Cal. 3d 583, 257 Cal. Rptr. 98, 770 P.2d 278 (1989)…………………………………. 20

*McKeever v. Block*,
932 F.2d 795 (9th Cir. 1991)………………………………………………………16

*Mendiola v. Shultz*,
No. EDCV 19-2335 JGB (SHKx), 2020 U.S. Dist. LEXIS 78947 (C.D. Cal. Feb. 20, 2020)………………………………………………………………………15

*Modisette v. Apple Inc.*,
30 Cal.App.5th 136 (2018)……………………………………………………………19

*Mohsin v. Cal. Dep't of Water Res.*,
52 F. Supp. 3d 1006 (E.D. Cal. 2014) ……………………………………………….15

*Molien v. Kaiser Found. Hosps.*,
27 Cal. 3d 916, 167 Cal. Rptr. 831, 616 P.2d 813 (1980)………………………………….20

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658 (1978)…………………………………………………….……….4, 5, 7, 22

*Mullins v. Cty. of Fresno*,
No. 1:21-cv-00405-KES-SAB, 2025 U.S. Dist. LEXIS 144112 (E.D. Cal. July 26, 2025)…10

*Munoz v. California*,
33 Cal.App.4th 1767, 39 Cal. Rptr. 2d 860 (1995)……………………………………..14

*Nodine v. Ellis*,
No. 2:25-cv-1191 CSK P, 2025 U.S. Dist. LEXIS 185988 (E.D. Cal. Sep. 22, 2025)………15

*Novak v. Continental Tire North America*,
22 Cal.App.5th 189 (2018) …………………………………………………………..17

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)………………………………………3, 4, 6, 20, 21, 23

*Pauu v. Cty. of San Diego*,
No. 23-CV-961 TWR (SBC), 2024 LX 203520 (S.D. Cal. June 13, 2024)…………………10

*Peck v. Montoya*,

v

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

    51 F.4th 877 (9th Cir. 2022) ...............................................................*passim*

*Pfaendler v. Town of Sahuarita,*
    656 F. Supp. 3d 912 (D. Ariz. 2023)...............................................................14

*Pina v. Est. of Dominguez,*
    145 S. Ct. 527 (2025)...............................................................8

*Potter v. Firestone Tire & Rubber Co.,*
    6 Cal. 4th 965, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (1993).............................20

*PPG Industries, Inc. v. Transamerica Ins. Co.,*
    20 Cal.4th 310 (1999)...............................................................19

*Pruitt v. Cheney,*
    963 F.2d 1160 (9th Cir. 1991)...............................................................17

*Qwest Commc'ns Corp. v. City of Berkeley,*
    146 F. Supp. 2d 1081 (N.D. Cal. 2001) .........................................15

*Reynada Hernandez v. Skinner,*
    969 F.3d 930 (9th Cir. 2020)...............................................................7, 9, 10

*Richardson v. McKnight,*
    521 U.S. 399, 138 L. Ed. 2d 540, 117 S. Ct. 2100 (1997)......................... 13

*Santos v. Los Angeles Unified Sch. Dist.,*
    17 Cal. App. 5th 1065, 226 Cal. Rptr. 3d 171 (Cal. Ct. App. 2017) ..................15

*Shih v. Starbucks Corp.,*
    53 Cal.App.5th 1063 (2020)...............................................................16,17

*Singleton v. Bail Hotline Bail Bonds, Inc.,*
    No. 8:22-cv-01826-MRA-KES, 2025 WL 3480997 (C.D. Cal. July 25, 2025).................9

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)...............................................................4

*State Dept. of State Hospitals v. Superior Court,*
    61 Cal.4th 339 (2015)...............................................................16, 18

*Tate v. Canonica,*
    180 Cal.App.2d 898 (1960)...............................................................19

*Tekle v. United States,*
    511 F.3d 839 (9th Cir. 2007)...............................................................18

*Thing v. La Chusa,*
    48 Cal. 3d 644, 257 Cal. Rptr. 865, 771 P.2d 814 (1989)......................... 17, 18

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott,*
    463 U.S. 825, 103 S. Ct. 3352 (1983)...............................................................12

*W. Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981)............................................................... 3

*Watkins v. Westin,*
    No. 1:21-CV-01348-JLT, 2022 U.S. Dist. LEXIS 180204 (E.D. Cal. Sep. 30, 2022) .........14

*West Virginia v. B. P. J.,*
    No. 24-43, 609 U. S. ___ (2026)...............................................................7

*Wyatt v. Cole,*
    504 U.S. 158, 118 L. Ed. 2d 504, 112 S. Ct. 1827 (1992)...............................13

vi

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

**Code**:

California Government Code,
sections 810, *et seq*.,………………………………………………………………14
section 905…………………………………………………………………………14

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Plaintiff hereby opposes the Motion to Dismiss ("Mot.") filed by Defendant Lydia Brice Morgan-Herman, docketed at ECF No. 163.

## I. INTRODUCTION

What kind of relationship exists between defendant Stanford University Department of Public Safety ("SDPS") and the County of Santa Clara ("County") is difficult to ascertain from materials available in the Public Record. Other than a brief memorandum of understanding ("MOU") signed between Leland Stanford Junior University ("the University") and the County stipulating to the creation of SDPS, their *de facto*, day-to-day operations and cooperation are quite impossible to know without responsive discovery. So is how Defendant Lydia Brice Morgan-Herman fits into this picture. This opposition, then, attempts to work through a myriad of legal issues with barebones information that has been made available to the Plaintiff and attempts to see how the Ninth Circuit precedent would address this kind of a situation.

## II. BRIEF SUMMARY OF THE NARROW ISSUES BEFORE THIS COURT AFTER GOOD-FAITH MEET AND CONFER EFFORTS WITH DEFENDANT MORGAN-HERMAN'S COUNSEL

Although not part of the four corners of the Operative Complaint, because counsel for Defendant Morgan-Herman included such information, the Plaintiff will follow his lead and provide a brief background as to how the Plaintiff and the counsel for Defendant Morgan-Herman met and conferred in good faith to identify to this Court the issues on which parties agree and "narrow down the issues that [parties] can resolve informally so that [parties] [brought] briefing on a motion to dismiss to the Court that only identifies [parties'] good-faith disagreements about the applicable law and legal standard[.]" *See* Exh. A at 13.

On June 1, 2026, counsel for Defendant Morgan-Herman emailed the undersigned plaintiff with a request to meet and confer about the presently operative complaint and to seek stipulation for

1

extension of time to answer or otherwise respond to the complaint. Exh. A. at 2. The parties stipulated to an extension of time to allow the parties more time to meet and confer in good faith. *See* Exh. A at 3-4. Parties then met via Microsoft Teams on June 3, 2026, to meet and confer in good faith about the operative complaint. During the Teams meeting, the Plaintiff indicated that she was unsure if Defendant Morgan-Herman was the only records technician employed jointly by SDPS and the County and because the Plaintiff is unsure if one of the SDPS Does who improperly and in violation of the Memorandum of Understanding shared the Plaintiff's identification card with a non-sworn officer like Defendant Shaw to instruct him to investigate the Plaintiff's then-four-year-old admissions application, and because the Plaintiff was unsure if one of the SDPS Does is actually Defendant Morgan-Herman, she was unsure as to how to proceed in the matter. *See also* Exh. A at 3.

Counsel for Defendant Morgan-Herman indicated his belief that the Operative Complaint does not plausibly allege any causes of action under the *Iqbal* and *Twombly* pleading standard. Plaintiff indicated that the problem is not necessarily about the pleading and plausibility standard but, rather, the minimum level of involvement required to bring Defendant Morgan-Herman to this complaint as an integral participant. After the Teams meeting, the Plaintiff suggested that *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) might be instructive to answer this question. *See* Exh. A at 8. Plaintiff indicated, however, that *Peck* is not dispositive because this is not a Fourth Amendment claim. Because the Ninth Circuit seems to have never addressed the integral-participant doctrine on a 42 U.S.C. § 1983 claim premised upon the First and Fourteenth Amendments of the federal constitution, parties were unable to agree to dismiss Defendant Morgan-Herman from the complaint. This motion comes thereafter.

### III. LEGAL STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO PLEAD ADEQUATE FACTS UPON WHICH RELIEF COULD BE GRANTED

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (emphasis added). Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); accord *lqbal*, 556 U.S. at 663-4.

Put yet in another way, the allegations of a complaint must cross "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. A plaintiff can allege facts **"suggestive"** of an agreement to engage in "illegal conduct." *Twombly*, 550 U.S. at 564 n.8 (emphasis added). The Plaintiff can also **"nudge [her] claim[.]"** *Iqbal,* 556 U.S. at 680 (emphasis added). "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief **where the facts are peculiarly within the possession and control of the defendant** or where the belief is based on factual information that makes the inference of culpability plausible."

*Park v. Thompson*, 851 F.3d 910, 942 (9th Cir. 2017) (emphasis added). **"[W]e relax pleading requirements where the relevant facts are known only to the defendant."** *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995[1]) (emphasis added). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### IV. ARGUMENT
#### A. PRELIMINARY MATTERS

**1. Although Suing Defendant Morgan-Herman In Her Official Capacity Does Not Transform this Action into an *Ex Parte Young* Action, Defense Counsel Is Right about the Distinction between Personal-Capacity and Official-Capacity Suits *Kentucky* Addressed but Because There Is No Indication in the Complaint that the Plaintiff is Seeking Damages Against Defendant Morgan-Herman, the Official-Capacity Suit Should Not be Dismissed (As Suggested in *Kentucky*'s Eight Footnote)**

Defendant Morgan-Herman's counsel is quite right that in *Kentucky v. Graham*, the Supreme Court clarified that the "proper application of this principle **in damages actions** against public officials requires careful adherence to the distinction between personal- and official-capacity suits. Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal- and official-capacity actions." 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (emphasis added). And defense counsel is right that "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky*, 473 U.S. at 165, quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). But as counsel will be aware, and as the emphasis above

---

[1] *Park* affirmed that this is still good precedent after *Twombly* and *Iqbal* by citing it *ipse dixit*.

4

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

makes clear, the Supreme Court therein was addressing the situation of an "award of damages[,]" *see Kentucky*, 473 U.S. at 166, and it only addressed the distinction between personal-capacity and official-capacity suits in the context of monetary damages so that such suits do not "lead to [the] imposition of **fee liability** upon the governmental entity." Indeed, *Kentucky*, itself, distinguishes its opinion when addressing its difference in an "injunction," *Kentucky*, 473 U.S. at 164, n.8 (citing also *Pulliam v. Allen*, 466 U.S. 522, 543-544 (1984) at page 165).

Although, of course, "there is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra*, local government units can be sued directly for damages and injunctive or declaratory relief[,]" *Kentucky*, 473 U.S. at 167 n.14, there is *nothing* that *prevents* the Plaintiff from initiating suit against Defendant Morgan-Herman in her official capacities for an injunctive and declaratory relief. And although the County is not the State, and there is, thus, no functional equivalent of initiating suit against the state official—like in *Ex parte Young*, 209 U.S. 123 (1908)—Plaintiff's *stylistic* choice in seeking injunctive and declaratory relief against Defendant Morgan-Herman in her official capacity is not *fatal* or is it a proper basis for dismissal—although, perhaps, it is not the common way of pleading.

There is no indication in the complaint—none—that suggests that the Plaintiff seeks monetary damages against Defendant Morgan-Herman in her official capacity. And although in such cases where the face of the complaint does not show against whom monetary damages is sought, "[t]he course of proceedings" will determine against whom damages should and could be levied, *Brandon v. Holt*, 469 U.S. 464, 469 (1985), the proper procedural vehicle is to *deny* damages against Defendant Morgan-Herman in her official capacity *if* Plaintiff prays that the Court does, not *dismiss* the suit against her in her official capacity.

5

## B. FEDERAL-LAW CLAIMS AGAINST DEFENDANT MORGAN-HERMAN
### 1. The Question Here Is Not About Pleading Standards After *Iqbal* and *Twombly* But Is Rather About the Integral Participant Doctrine As Developed by the Ninth Circuit and Whether Defendant Morgan-Herman's *Own Conduct* Would Satisfy that Test

Put simply, the question herein is not whether the Plaintiff adequately pleaded facts to bring Defendant Morgan-Herman into the scope of this complaint. The Plainitff "nudge[d her] claim" that Defendant Morgan-Herman was *involved* in the events of the complaint. *Iqbal,* 556 U.S. at 680. Indeed, "**when the entire sequence of events in the complaint is considered in context**, what might otherwise appear to have been coincidental parallel conduct on its own becomes 'suggestive of illegal conduct' and is **thus sufficient to survive a motion to dismiss."** *Park v. Thompson*, 851 F.3d 910, 928, n.22 (9th Cir. 2017) (emphasis added) (Reinhardt, J., writing for the majority of the Court and responding to the principal dissent), quoting *Twombly*, 550 U.S. at 564 n.8.  The question herein, as explained to Defendant Morgan-Herman's counsel, is whether the complaint alleged enough facts to render Defendant Morgan-Herman as *an integral participant*. As such, the question is not one about plausibility, nor is it about 'speculativeness' of Defendant Morgan-Herman's involvement. The question, rather, is one that requires this Court to determine *what* the minimum level of conduct required that would hold a party an integral participant in cases like the Plaintiff's is. Put differently, as will be argued *infra*, if *Peck* is to be limited to Fourth Amendment cases, and if the but-for cause test for integral participant is still sufficient in the Ninth Circuit to bring a party into a case as an integral participant, then Defendant Morgan-Herman satisfies this test because *if not* for her obtaining the Plaintiff's ID card to receive a copy of a police report where the Plaintiff was a victim and *if not* for her docketing that ID card into SDPS' system that is apparently used for improper purposes (information-sharing in violation of MOU), then Defendant Shaw would have never been able to obtain the ID card and start his discriminatory crusade against the Plaintiff

6

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

because of her gender *and* speech and "expel [a] transgender student[] because they are transgender." *West Virginia v. B. P. J.*, No. 24-43, 609 U. S. ___ (2026), slip. op. at 32 (Sotomayor, J., dissenting in part and concurring in part).

**2. Whether the Ninth Circuit's Integral Participant Doctrine Violates the Provisions of *Iqbal* and *Twombly* Is A Question that the Ninth Circuit Repeatedly Addressed (and the Supreme Court Recently Denied *Certiorari* Relief on this Question Based Again on the Petitioner's Claim that the Doctrine Violated *Iqbal* and *Twombly* Plausibility Standard) and Cannot Properly Be Before This Court because this Court Is Bound by Ninth Circuit Precedent**

As things stand, the Complaint only alleges what Defendant Morgan-Herman did by "[her] own individual actions." *Iqbal*, 556 U.S. at 663. Defendant Morgan-Herman insists, by and through counsel, however, that such a mode of pleading and bringing her to the complaint violates the provisions of *Iqbal* and *Twombly*. It very well might be. But, as things stand, the Ninth Circuit repeatedly addressed the question as to whether its integral-participant doctrine violates the Supreme Court precedent in *Iqbal* and *Twombly*, and it ruled that it does not. *See, e.g., Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011); *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *Reynada Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020); *see, e.g, Brennock v. Newberg Sch. Dist.*, No. 3:23-cv-1931-JR, 2024 WL 3330782, at *3 (D. Or. May 28, 2024) (addressing this tension between *Iqbal* and *Hopkins*). And, as things stand, the Supreme Court denied a petition for a writ of certiorari making this exact same argument **multiple times**. *See* Pet. for Writ of Certiorari, *Hanlon v. Atencio*, case no. 16-1474 (June 5, 2017), 2017 U.S. S. Ct. Briefs LEXIS 2056 at * 7 ["Whether the Ninth Circuit's 'integral participant' doctrine improperly holds officials vicariously liable for unforeseeable acts of excessive force by other defendants, in contravention of 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)."]. *See also* 2017 U.S. S. Ct. Briefs LEXIS 2056 at * 18 [arguing that "[a]bsent vicarious liability, a

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

plaintiff must demonstrate that each defendant acted with the requisite degree of culpability, and that the defendant's individual action proximately caused the constitutional injury" and thereby concluding that the Ninth Circuit's integral-participant doctrine violates the provisions of *Iqbal*.]. The Supreme Court denied this petition, however. See *Hanlon v. Atencio,* 583 U.S. 931, 138 S. Ct. 356 (2017). And similar petitions have also been denied **repeatedly**. *See, e.g., Engstrom v. Denby*, 146 S. Ct. 609 (2025). *See* Pet. for Writ of Certiorari, *Engstrom v. Denby*, case no. 24-1310 (June 16, 2025), 2025 U.S. S. Ct. Briefs LEXIS 1990 at * 5 [querying "[i]f [that] [c]ourt recognizes the theor[y] of integral participation"]. Indeed, just a couple of months ago, the Supreme Court denied a petition for writ of certiorari that **would have addressed *Peck directly*.** JUSTICES ALITO and THOMAS dissented from the order denying the petition, specifically addressing *Peck. See Pina v. Est. of Dominguez*, 145 S. Ct. 527, 527 (2025).

Although defendant Morgan-Herman's plea is not non-meritorious, **its audience is either the Ninth Circuit or the Supreme Court**. This Court cannot *not follow* the Ninth Circuit's integral-participant doctrine, which is binding on this Court, even if, indeed, the Ninth Circuit erred in constructing it (similar objections are often made against the felony-murder rule but the rule, as things stand, it stands). **The question before this Court is whether Defendant Morgan-Herman satisfies the integral participant doctrine, as delineated by the Ninth Circuit.**

### 3. Although Defense Counsel and the Plaintiff Are In Agreement That *Peck* Is Instructive Herein (Indeed, the Plaintiff Brought Up *Peck*), *Peck* Is Not Dispositive as Minimum Involvement for a Party to Be Deemed an Integral Participant Is Still an Unsettled Question of Law in This Circuit

Plaintiff and defense counsel are in agreement that *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) is relevant and instructive herein. But the disagreement stems from the fact that ***Peck* is *not* dispositive herein.** The Ninth Circuit has **"yet to define the minimum level of involvement for**

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**liability under the integral-participant doctrine.** *Blankenhorn* [*v. City of Orange*, 485 F.3d 463, 481 n.12] suggests that we require only but-for cause, as there was no indication that the officer who was an integral participant knew that the other officer would use hobble restraints." *Reynada Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (emphasis added) (annotation added in brackets to clarify citation). "We have not clarified whether we import both proximate cause and but-for cause into our integral-participant doctrine." *Id*. at 942. And this is true even after *Peck*. *See*, *e.g.*, *Singleton v. Bail Hotline Bail Bonds, Inc*., No. 8:22-cv-01826-MRA-KES, 2025 WL 3480997 (C.D. Cal. July 25, 2025) (citing *Peck* yet concluding that the Ninth Circuit still has not defined the minimum level of involvement for liability under the integral-participant doctrine). **In general, the official's individual actions need not "themselves rise to the level of a constitutional violation[.]"** *Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004) (emphasis added). And, of course, an integral participant "must be more than a 'mere bystander.'" *Reynada Hernandez*, 969 F.3d at 941, quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011). Under the Ninth Circuit precedent, an official whose "individual actions" do "not themselves rise to the level of a constitutional violation" may be held liable under section 1983 only if the official is an "integral participant" in the unlawful act. *Ibid*. Yet again, generally, the common integral-participant liability is *generally* available in two circumstances: "(1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury[.]'" *Peck*, 51 F.4th at 889.

//

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
5:26-cv-03809-BLF

**4. Although *Peck* Is Instructive, *Peck* Is Only Limited to Fourth Amendment Claims, Not First and Fourteenth and the Ninth Circuit Is Yet to Address the Integral Participant Doctrine As It Relates to First and Fourteenth Amendment Claims**

Although *Peck* seems to have overruled *Reynada Hernandez* to the extent that *mere* but-for cause is *not* enough to hold a nominally-involved party an integral participant, *Peck* is about excessive force and Fourth Amendment violations—so is every case it discussed. And *Peck* has been **exclusively** cited, thus far, on excessive force and Fourth Amendment claims. *See Est. of Chivrell v. City of Arcata*, No. 22-cv-00019-HSG, 2025 LX 370672 at * 4 (N.D. Cal. Aug. 4, 2025) ("fatal shooting"); *Mullins v. Cty. of Fresno,* No. 1:21-cv-00405-KES-SAB, 2025 U.S. Dist. LEXIS 144112, at *36 n.15 (E.D. Cal. July 26, 2025) (distinguishing *Peck* from the most liberal construction of the complaint in yet another fatal shooting case); *Garcia v. City of Phx.*, 738 F. Supp. 3d 1164 (D. Ariz. 2024) (fatal shooting again); *Pauu v. Cty. of San Diego*, No. 23-CV-961 TWR (SBC), 2024 LX 203520 (S.D. Cal. June 13, 2024) (excessive force in the form of shooting); *Abelar v. Cty. of L.A.*, No. 2:23-cv-01606-RGK-MRW, 2024 LX 177427 (C.D. Cal. Feb. 6, 2024) (same); *Eyre v. City of Fairbanks*, No. 4:19-cv-00038-SLG, 2023 LX 155719 (D. Alaska Feb. 23, 2023) (same), *aff'd on integral-participant grounds as stated in Eyre v. City of Fairbanks*, No. 23-35206, 2024 U.S. App. LEXIS 19770 (9th Cir. Aug. 7, 2024), *Diamond v. Collinson*, Nos. 25-2393, 25-2561, 2026 U.S. App. LEXIS 17995, at *7 (9th Cir. June 22, 2026) (fatal shooting).

The only case that the undersigned was able to find where *Peck* was cited in a non-excessive-force context is *DeFrancesco v. Robbins*, 136 F.4th 933, 952 (9th Cir. 2025). Perhaps similar to the context of the complaint, *DeFranceso* was about "university administrators who are aware of [First Amendment] retaliation and do nothing to stop it[,]" *id*. at 952, or, "[a]lternatively, the allegations in the complaint demonstrate that Robbins 'set in motion a series of acts' that he knew or should have

10

known would cause injury to DeFrancesco[.]" *Id*. at 952. And in *DeFrancesco*, "DeFrancesco allege[d], on information and belief" that the integral participant was told that the retaliated-against party in the First Amendment claim was "vocal and firm advocate" for another colleague. *Id*. at 952. If the Court finds that the *Peck* analysis applies to this First and Fourteenth Amendment claim, there is, of course, no indication that the Defendant Morgan-Herman "kn[ew] about and acquiesce[d] in the constitutionally defective conduct" *Peck*, 51 F.4th at 889. *But* Defendant Morgan-Herman did "**set in motion a series of acts by others** […] [which] inflict[ed] the constitutional injury." *Ibid*. The question, then, is, if *Peck* is to apply fully, whether "the defendant knew or reasonably should have known would cause others to" inflict the constitutional injury. *Ibid*. Defendant Morgan-Herman seems to be one of the few— and perhaps is the only—records technicians working jointly with SDPS and the County. Since it appears that SDPS (like here) routinely violates the MOU to share information with non-sworn officers for improper purposes, it is reasonable to expect that Defendant Morgan-Herman *should have known* that docketing[2] the Plaintiff's ID card into the SDPS system could be used against her to inflict injury. If *Peck* applies (and that is a big *if*), there is no reason to *not hold* Defendant Morgan-Herman as an integral participant. And Defendant Morgan-Herman is not *simply* "911 dispatcher[,]" Mot. at 8. A 911 dispatcher sends police officers to an address.   Defendant Morgan-Herman's situation would have been analogous *if only she simply sent the plaintiff the police report she requested*. But she did more: She saved the Plaintiff's

---

[2] If the ID card was not obtained through the SDPS system by way of Defendant Morgan-Herman's docketing of it, then she plainly emailed the Plaintiff's email to her to Defendant Shaw, thereby being *more actively involved* in the conspiracy,.

11

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

ID card when the Plaintiff did not ask her to. And if not for her doing that, the entire set of actions would not have been set in motion.

**5. As Far as the Plaintiff Is Aware, the Ninth Circuit Never Addressed the Integral-Participant Doctrine as It Relates to 42 U.S.C. § 1985(3) Claims and Supreme Court Precedent Has Held a Nominally Involved Party Responsible for a 42 U.S.C. § 1985(3) Violation in the Past, Especially in *Griffin***

Defense counsel rehashes his integral-participant doctrine argument for the 42 U.S.C. § 1985(3) ("Section 1985) cause of action and suggests that there is no pleaded fact that Defendant Morgan-Herman "was part of any conspiracy[.]" Mot. at 10. Defense counsel does not cite *Peck* for this proposition, *sub silentio* conceding that the Ninth Circuit did not address 42 U.S.C. § 1985(3) claims in *Peck* or most (if not all) of its integral-participant doctrine caselaw. Indeed, the undersigned has not been able to find any caselaw suggesting that the Ninth Circuit ever addressed the integral-participant doctrine in the context of a 42 U.S.C. § 1985(3) claim. And in Section 1985 claims, even nominally involved parties can be brought into its scope. For instance, in *Griffin v. Breckenridge*, "defendants drove their truck into the path of Grady's automobile and blocked its passage over the public road." 403 U.S. 88, 90, 91 S. Ct. 1790, 1792 (1971). Although one of those defendants simply drove the truck and had nothing to do with "clubb[ing] Grady with a blackjack, pipe or other kind of club by pointing firearms at said plaintiffs and uttering threats to kill and injure them if defendants' orders were not obeyed, thereby terrorizing them[,]" he was still (successfully) brought as a defendant in *Griffin* under a Section 1985 claim. Or take "the Sabine Area Building and Trades Council, 25 local unions and various individuals were named as defendants." *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828, 103 S. Ct. 3352, 3356 (1983). Certainly, not all of them were involved in the "assault[ing] and beat[ing] [of] Cross employees, and burn[ing] and destroy[ing] construction equipment." *Ibid*.

12

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

**6. Whether Defendant Morgan-Herman Is Entitled to Qualified Immunity As a Matter of Law is a More Complicated Question than Defense Counsel Makes it Out to Be, and Although *Filarsky* Is Instructive Herein, It Is Not Dispositive**

In his qualified immunity claim, defense counsel misses an important step: Whether Defendant Morgan-Herman is entitled to *any qualified immunity at all*. There is no dispute that Defendant Morgan-Herman acted under the color of state law. "State action for § 1983 purposes is not necessarily co-extensive with state action for which qualified immunity is available[.]" *Bracken v. Okura*, 869 F.3d 771, 775 (9th Cir. 2017). "[A] finding of 'state action' on the part of Dr. Robbins does not require this court to find that he is entitled to qualified immunity." *Jensen v. Lane Cty*., 222 F.3d 570, 576 (9th Cir. 2000), citing *Richardson v. McKnight*, 521 U.S. 399, 138 L. Ed. 2d 540, 117 S. Ct. 2100 (1997); *Wyatt v. Cole*, 504 U.S. 158, 168, 118 L. Ed. 2d 504, 112 S. Ct. 1827 (1992). "**First, we must determine whether qualified immunity is categorically available**. This requires an evaluation of the appropriateness of qualified immunity given its historical availability and the policy considerations underpinning the doctrine." *Jensen*, 222 F.3d at 576 (emphasis added), citing *Richardson*, 521 U.S. at 399. In *Richardson*, the Supreme Court held that qualified immunity was not available to privately employed prison guards because the Court was unable to identify a "firmly rooted" tradition of such immunity. 521 U.S. at 404. Although government-employed prison guards had enjoyed qualified immunity growing out of their employment status, the Court cited extensive history of private institutions involved in providing prison services and cases allowing the imposition of liability on private jailors. The Court therefore concluded that no firmly rooted tradition of immunity existed. *See id.* at 404-07. The Court left open the question whether some private actors closely related to governmental function might have some kind of qualified immunity in contexts unrelated to prisons. "Limited information has been presented on the historical

13

availability of immunity" awarded to records technicians when they are sued for their actions working in a police precinct designed to protected private university (again, that the University and SDPS are state actors for a Section 1983 does not make the University and SDPS as state actors for the purposes of qualified immunity). *Jensen, ibid*. And although Defendant Morgan Herman seems to be working in "part time" for SDPS and part time for the County, *see Filarsky v. Delia*, 566 U.S. 377, 387, 132 S. Ct. 1657, 1664 (2012), counsel has not addressed the categorical availability of qualified immunity to Defendant Morgan Herman at all. As such, Defendant Morgan-Herman's qualified immunity claim is waived. "An argument not properly argued or explained is waived." *Pfaendler v. Town of Sahuarita*, 656 F. Supp. 3d 912, 923 (D. Ariz. 2023).

### C. STATE-LAW CLAIMS AGAINST DEFENDANT MORGAN-HERMAN
#### 1. The Claims Are Not Barred by Government Claims Act because There Is No Indication in the Complaint that the Plaintiff Is Seeking Monetary Damages against Defendant Morgan-Herman

"Under California's Government Claims Act ('CGCA'), set forth in California Government Code sections 810 *et seq*., a plaintiff may not bring a suit for **monetary damages** against a public employee or entity unless the plaintiff first presented the claim to the proper entity and the entity either acted on the claim or the time for doing so expired." *Watkins v. Westin*, No. 1:21-CV-01348-JLT, 2022 U.S. Dist. LEXIS 180204, at *14 (E.D. Cal. Sep. 30, 2022) (emphasis added), citing *Munoz v. California*, 33 Cal.App.4th 1767, 1776, 39 Cal. Rptr. 2d 860 (1995) (emphasis added) ["The Tort Claims Act requires that any civil complaint for **money or damages** first be presented to and rejected by the pertinent public entity."]. "Plaintiff, however, **does not seek any monetary damages against Defendant Hadden**. […] Accordingly, **the Government Claims Act does not apply to Plaintiff's claims against Defendant Hadden**. *See* Cal. Gov't Code § 905 (the Government Claims Act applies to 'all claims for money or damages against local public entities')"

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

*Mendiola v. Shultz*, No. EDCV 19-2335 JGB (SHKx), 2020 U.S. Dist. LEXIS 78947, at *7 (C.D. Cal. Feb. 20, 2020) (emphasis added). *See also Hart v. Alameda Cty.*, 76 Cal. App. 4th 766, 782, 90 Cal. Rptr. 2d 386 (1999) (" The Claims Act generally applies only to claims for money or damages, and not to actions for declaratory relief."); *Qwest Commc'ns Corp. v. City of Berkeley*, 146 F. Supp. 2d 1081, 1090 (N.D. Cal. 2001) ("injunctive relief [] is not subject to the procedural requirements of the [Government] Claims Act"). As averred *supra*, there is no indication in the complaint that the Plaintiff is seeking monetary damages against Defendant Morgan-Herman either in her official or personal capacity.

**2. Even If Assuming *Arguendo* the Plaintiff Was Seeking Monetary Damages against Defendant Morgan-Herman, Any Dismissal Should be Without Prejudice as Statute of Limitations for Filing a Claim with the County Has Not Ran Out as They Were Tolled**

Assuming, *arguendo*, that the Plaintiff was seeking monetary damages against Defendant Morgan-Herman (she is not), these claims would be subject to dismissal *without* prejudice to the Plaintiff complying with the Government Claims Act *unless* she could not comply with it as a matter of law. *See, e.g., Nodine v. Ellis*, No. 2:25-cv-1191 CSK P, 2025 U.S. Dist. LEXIS 185988, at *7 (E.D. Cal. Sep. 22, 2025) (dismissing state-law tort claims without prejudice to complying with Government Claims Act and noting that the "Plaintiff may remedy this defect by alleging further facts if plaintiff timely presented his claims.") (collecting cases thereto). *See also Mohsin v. Cal. Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1017 (E.D. Cal. 2014) (same).

As a corollary matter, however, Defendant Morgan-Herman's involvement in the case (and SDPS' involvement in the admissions matter) was concealed from the Plaintiff for almost a year. *Santos v. Los Angeles Unified Sch. Dist.*, 17 Cal. App. 5th 1065, 226 Cal. Rptr. 3d 171 (Cal. Ct. App. 2017) addressed a similar situation and found  that the public entity was estopped from

asserting noncompliance with claims presentation requirements where there was evidence that agents of that entity had both concealed the entity's involvement and affirmatively misrepresented the requirements to plaintiffs; plaintiffs never filed a claim but could move forward with amended complaint. At any event, here, the Plaintiff could still comply with the Government Claims Act. "The 'delayed discovery' doctrine modifies that rule [under Government Claims Act] and protects a plaintiff by postponing accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action[.]" *K.J. v. Arcadia Unified Sch. Dist.*, 172 Cal. App. 4th 1229, 1241, 92 Cal. Rptr. 3d 1, 10 (2009). Here, the Plaintiff discovered the wrong in late April 2026. The Plaintiff could still present a timely claim to the County. As such, any dismissal at any event should be without prejudice to the plaintiff complying the Government Claims Act.

### 3. Defense Counsel Has to Separately Address Minimum Involvement Required For Each Tort or Contract Claim

Because a "plaintiff must allege a minimum factual and legal basis for each claim" for "each defendant[,]" *see, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991), defense counsel has to separately address each tort and contract claim and address if some minimum factual allegation has been proffered for the complaint to survive the appropriate pleading standard (which, in certain cases, could simply be California's notice pleading requirements—not *Iqbal* or *Twombly*). "**Conspiracy is not a separate tort, but a form of vicarious liability by which one defendant can be held liable for the acts of another**." *IIG Wireless, Inc. v. Yi* 22 Cal.App.5th 630, 652 (2018) (emphasis added).

California courts generally follow the Restatement in analyzing proximate cause and scope of liability. *See, e.g., State Dept. of State Hospitals v. Superior Court*, 61 Cal.4th 339, 352, fn. 12 (2015); *Shih v. Starbucks Corp.*, 53 Cal.App.5th 1063, 1068 (2020). "For scope of liability

16
OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
5:26-cv-03809-BLF

questions, there are three different Restatement provisions of potential relevance here: sections 29, 33, and 46[.]" *Fisher v. Fisher*, 118 Cal. App. 5th 899, 915, 341 Cal. Rptr. 3d 891, 902 (2026). "Restatement section 29 (entitled 'Limitations on Liability for Tortious Conduct') states that '[a]n actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious.'" *Fisher*, 118 Cal. App. 5th at 915. Under this standard, "[a] number of courts have found, as a matter of law, that a defendant is not liable for an injury only distantly connected to defendant's conduct." *Novak v. Continental Tire North America* 22 Cal.App.5th 189, 198 (2018) [connection between defendants' conduct and accident was too attenuated to be within scope of risk]; *see also Shih*, 53 Cal.App.5th at p. 1069 [alleged defect in Starbucks cup was not a legal cause of burns plaintiff sustained applying scope of risk standard].). We must analyze proximate cause and scope of liability of Defendant Morgan-Herman's conduct for each and every tort.

### 4. Plaintiff Concedes that Some of Defendant Morgan-Herman's Conduct, As Alleged in this Complaint, Does Not Meet the Threshold for the *Thing* Test But Leaves this Question to the Sound Discretion of this Court but the Dismissal Should be Without Prejudice As Discovery Could Reveal Further Involvement by Defendant Morgan-Herman

As a preliminary procedural point, defense counsel cannot rely on another motion to dismiss filed in this case in aid of Defendant Morgan-Herman's motion as such a motion is not within the four corners of a complaint. A plaintiff "does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991). The **cause of action** herein is both intentional and negligent infliction of emotional distress. As averred by defense counsel, Plaintiff concedes that some of the conduct alleged in the complaint by the Defendant Morgan-Herman may fail under the test the California Supreme Court elucidated in *Thing v. La Chusa*, 48 Cal. 3d 644, 257 Cal. Rptr. 865, 771 P.2d 814 (1989). Although in *Thing,* the Supreme Court addressed a *bystander plaintiff* and

17

whether they could recover damages thereof, *Thing*'s reasoning has been employed by lower California appellate courts in carving out *against whom* a negligent and intentional infliction of emotional distress claim could be made, although the Plainitff is, of course, the direct victim herein (or, rather, she was the not-available-at-the-scene bystander when Defendant Morgan-Herman logged the Plaintiff's ID card into the SDPS system in responding to her inquiry).

### *Intentional Infliction of Emotional Distress (IIED):*

A plaintiff can recover damages on a "conspiracy to commit IIED or negligence" theory. *Fisher v. Fisher*, 118 Cal. App. 5th 899, 911 n.3, 341 Cal. Rptr. 3d 891, 899 (2026). But, of course, to recover on any infliction of emotional distress claim, there has to be "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) **actual and proximate causation** of the emotional distress by the defendant's outrageous conduct." *Corales v. Bennett*, 567 F.3d. 554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (emphasis added).

We are, then, once again in the realm of whether but-for causation is enough for proximate and actual cause. Proximate cause involves two elements. *Ferguson v. Lieff, Cabraser, Heimann & Bernstein,* 30 Cal.4th 1037, 1045 (2003). The first is cause in fact. A cause in fact is a **necessary antecedent of an event**. (*Ibid*.) "This is sometimes referred **to as 'but for' causation."** *State Dept. of State Hospitals v. Superior Court,* 61 Cal.4th 339, 352 (2015) (emphasis added). Where concurrent independent causes contribute to an injury, **courts apply a substantial factor test for determining cause in fact. (***Id*. at p. 352, fn. 12.) The substantial factor test subsumes traditional "but for" causation. (*Ibid*.)  The second element of proximate cause—sometimes referred to as

---

18
OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

5:26-cv-03809-BLF

"legal cause"—focuses on public policy considerations. *State Hospitals*, 61 Cal.4th at p. 353. Because the purported factual causes of an event may be traced back to the dawn of humanity, the law has imposed additional limitations on liability other than simple causality. (*Ibid*.) "These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy." *PPG Industries, Inc. v. Transamerica Ins. Co*. 20 Cal.4th 310, 316 (1999). "Both Witkin and the Restatement of Torts frame this aspect of proximate cause as 'scope of liability.'" *Modisette v. Apple Inc*. 30 Cal.App.5th 136, 154 (2018).

Proximate cause is ordinarily a **question of fact which cannot be decided as a matter of law.** *State Hospitals*, 61 Cal.4th at p. 353  It may nevertheless be resolved as a question of law if the facts are such that the **only reasonable conclusion is an absence of causation**. (*Ibid*.). For **intentional infliction** of emotional distress cause of action, "Restatement section 33 (entitled 'Scope of Liability for Intentional and Reckless Tortfeasors') sets forth a different scope of liability standard for intentional torts." *Fisher,* 118 Cal.App. 5th at 916. Like the Restatement, California courts have recognized that scope of liability **is broader for intentional torts than for negligence**. *See, e.g., Brewer v. Teano,* 40 Cal.App.4th 1024, 1036 (1995) ["'The modern tendency is to impose broader liability for consequences where the defendant was guilty of an intentional wrong than where his conduct was merely negligent.'"]; *Helm v. K.O.G. Alarm Co*., 4 Cal.App.4th 194, 202 (1992) ["the definition of 'cause' in cases involving intentional torts appears much broader"]; *Tate v. Canonica,* 180 Cal.App.2d 898, 904 (1960) ["The law has for a long time recognized a distinction between intentional and negligent torts … and been more inclined to find that defendant's conduct was the legal cause of the harm complained of, where the tort is intentional."].) "The California Supreme Court has explained that the defendant's moral blame is an important factor behind this

19

distinction." *Fisher*, 118 Cal.App. 5th at 917, citing *Thing*, 48 Cal.3d at 652–653.  Importantly, "**foreseeability of [a] suicide [is] not a factor in determining scope of liability for IIED."**  *Tate*, 180 Cal.App.2d at 908 (emphasis added).

Of course, "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct *directed at the plaintiff*, or occur in the presence of a plaintiff of whom the defendant is aware." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1002, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (1993) (emphasis in original) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903, 2 Cal. Rptr. 2d 79, 820 P.2d 181 (1991). Although Defendant Morgan-Herman's conduct fails this test —and she did not necessarily do anything outrageous—because the complaint is attempting to hold her vicariously and/or comparatively liable in a conspiracy to commit intentional infliction of emotional distress, the Plaintiff submits the determination of this matter to the sound discretion of this court, although, as explained *infra*, any dismissal of this claim should be without prejudice.

***Negligent Infliction of Emotional Distress (NIED):***

Under limited circumstances, one may recover for emotional distress suffered as a result of the negligent conduct of another. *Molien v. Kaiser Found. Hosps*. 27 Cal. 3d 916, 924–931, 167 Cal. Rptr. 831, 616 P.2d 813 (1980). The traditional elements of negligence apply to actions for negligent infliction of emotional distress, that is, duty, breach, causation, and damages. *Marlene F. v. Affiliated Psychiatric Med. Clinic* 48 Cal. 3d 583, 588, 257 Cal. Rptr. 98, 770 P.2d 278 (1989). Whether or not a duty exists depends on the foreseeability of the risk and on a weighing of policy considerations for and against imposition of liability. *Ibid*. There are policy considerations warranting Defendant Morgan-Herman to be brought within the scope of this complaint: Simply put, she—as one of the only few, if not the only, record technician at SDPS—could not *not have*

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

*been* aware that the SDPS database is used for improper and illegal information-sharing. It is always in the public interest to deter unlawful conduct. Of course, counsel will object that Defendant Morgan-Herman cannot have foreseen that her logging the Plaintiff's ID card into the SDPS system would have caused an attempted suicide—but this is not what this inquiry addresses. *See Tate, supra,* 180 Cal.App.2d at p. 908.

### 5. The Minimum Involvement Required for Bane Act, Unruh Civil Rights Act, Interference with a Contract Claims

Again, conspiracy provides a **remedial measure** for affixing liability to all who have "agreed to a **common design** to commit a wrong" when damage to the plaintiff results. *Agnew v. Parks* 172 Cal.App.2d 756, 762 (1959) (emphasis added). As argued *supra*, since it appears that SDPS (like here) routinely violates the MOU to share information with non-sworn officers for improper purposes, it is reasonable to expect that Defendant Morgan-Herman *should have known* that docketing the Plaintiff's ID card into the SDPS system could be used against her to inflict injury (or, worse, she directly sent the Plaintiff's ID card to Defendant Shaw). This is a "common design" that was used to perpetuate a conspiracy against the Plaintiff—and it is enough to hold Defendant Morgan-Herman (albeit nominally) liable. That the liability is nominal (as here) does not mean that there is *no* liability—nor does it mean that such nominal liability is sufficient for dismissal. The appropriate course of conduct here to not award any damages against Defendant Morgan-Herman, (and, for instance, not award her qualified immunity [that she may not categorically have anyways] but consider her good-faith defense [if she brings it in the future]) not dismiss her from the complaint at this preliminary stage *in toto.*

//

//

21

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

**D. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE**

The opposition's insistence for a dismissal with prejudice is misplaced—both as a matter of law and of facts. As a preliminary matter, this Court did not issue "two screening orders"; it issued only one. *See* Mot. at 16: 3. And although this is the "Second Amended Complaint," the first amendment was merely to correct a typographical error regarding this Court's diversity jurisdiction. And *only* the Second Amended Complaint named Defendant Morgan-Herman as a party for the first time. As such, this is the first opportunity the Plaintiff had to plead *anything* against Defendant Morgan-Herman. As such, there is no "repeated failure to cure deficiencies by amendments previously allowed." Mot. at 16: 7-8. Opposition proffers that that, "[I]f Plaintiff's only actual allegation against Defendant Morgan-Herman is the lone fact that she processed a records request as alleged in paragraphs 55 and 56," *see* Mot. at 16: 11-12—but this is a misconstruction. Defendant Morgan-Herman was *directly* and *personally* involved in SDPS' conspiracy with Defendant Shaw. As such, the allegation herein is not the "lone fact that she processed a records request." But the Plaintiff *cannot* know *how* the ID card was shared without discovery. **"[W]e relax pleading requirements where the relevant facts are known only to the defendant."** *Concha*, 62 F.3d at 1503; accord, *Park,* 851 F.3d at 942. The dismissal with prejudice would be a severe remedy at this juncture, especially since, as defense counsel concedes, the official-capacity suit against Defendant Morgan-Herman brings the County into this Complaint, and dismissing Defendant Morgan-Herman *with prejudice*, might be able to foreclose any future possibility of a *Monell* or *Canton* claim in the future where more facts develop and the plaintiff can observe if the County actually does have a *de facto* policy of conspiracy or whether it adequately failed to train, *inter alios,* Defendant Morgan-Herman.

//

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

**E. CONCLUSION**

Plaintiff submits the foregoing for disposition. Plaintiff maintains that, at a bare minimum, any dismissal should be without prejudice because "the [relevant] facts are peculiarly within the [sole] possession and control of the defendant." *Park*, 851 F.3d at 942.

Respectfully submitted,
DATED: July 3, 2026.

/s/ Jane Doe
_____

JANE DOE
*In Propria Persona*

OPPOSITION TO DEFENDANT MORGAN-HERMAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF