JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al*.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 5:26-cv-03809-BLF<br><br>**[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Before the Honorable Beth Labson Freeman |

i

Provided that the Court grants the Plaintiff leave to file the [proposed] sur-reply herein, the Plaintiff hereby submits the following for disposition on the defendants' reply brief, docketed at ECF No. 171.

## I. INTRODUCTION

Because this is a sur-reply and sur-replies are, by their nature, quite limited and short, the Plaintiff only addresses legal arguments that were raised **for the first time** in the defendants' reply brief. Any omission here should not be construed as conceding the merits of defendants' remaining arguments that were also present in their initial motion brief—those have been addressed in the Plaintiff's opposition brief and there is no need to rehash them herein.

## II. ARGUMENT

### A. As a General Matter, To Address the New Legal Argument Brought on Reply Brief, the Complaint Is Not the Appropriate Procedural Vehicle to 'Plead' Legal Theories

Although this is technically not a new 'argument,' defendants have **extended the scope** of their previous argument, thereby abandoning their previous limited argument and launching themselves into a new scene. Simply put, a complaint is not a place to allege or develop legal theories; it is a place to plead facts. The legal theory part comes in *briefing*. There are too many examples of this, but to briefly enumerate: "without further explanation or reference to the SAC[,]" *see* Reply at 2:14 (going on to allege that because the Plaintiff did not cite *Marsh* in her complaint, she forfeited invoking it later on); "which the SAC does not allege [a government nexus theory][,]" *see* Reply at 2:28; "joint action is the theory adopted in the SAC[,]" *see* Reply at 4: 20. Simply put, this is wrong as a matter of law. A complaint does not "adopt theories"; it pleads facts that may support theories that will come during briefing.

"[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (Rule 8(a)(2)

1

"generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument"); *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) ("a complaint need not specify legal theories"); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016); *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("complaints need not cite authority or set out a line of legal argument"); *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013); *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) ("well-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint"); *see McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (" 'failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim' "); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) (same).

Likewise, a claim for relief may be supported by multiple legal theories: The plaintiffs "have a single claim for relief; **multiple legal theories in support of that claim differ from multiple claims that must be separately pleaded**." *ACF 2006 Corp,* 826 F.3d at 981. (**"[m]aking legal arguments in support of one's claim <u>comes after the pleadings</u>"**) (emphasis added); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

Likewise, a plaintiff is "not required to use any precise or magical words" in their pleading. *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 418 (4th Cir. 2014) (plaintiff not required to use phrase "bystander liability" in claim); *Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 210 (5th Cir. 2025) (plaintiff's allegation he "worked for" defendant and held various positions adequately alleged employment; plaintiff not required to "allege the specific words 'employed by' or 'an employee of' or else doom his complaint"); *see Paymentech, L.L.C. v. Landry's Inc.*, 60 F.4th 918, 931 (5th Cir. 2023) ("[w]e evaluate pleadings based on substance, not labels"); *Williams v. Kincaid*,

[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

45 F.4th 759, 771 (4th Cir. 2022) ("plaintiff need not plead any "specific words" to defeat a motion to dismiss"); *Agredano v. State Farm Lloyds*, 975 F.3d 504, 506 (5th Cir. 2020) ("*Twombly/Iqbal* 'plausibility' standard does not require magic words or detailed facts in most cases"); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("Courts may look to—they must look to—the substance of a complaint's allegations … . Otherwise, [statutory] enforcement would [be] reduce[d] to a formalistic search through the pages of the complaint for magic words … ."); *United States v. Davis*, 261 F.3d 1, 45 n. 40 (1st Cir. 2001) ("[Plaintiff] need not have used the magic word 'declaratory judgment' in its pleading to put the defendants on notice that its claims could be resolved with a grant of declaratory relief").

### B. Defendants' New Corruption of the Plaintiff's Verbiage is As Meritless As Their Previous Corruption

Although defense counsel seems to have abandoned her previous corruption of the Plaintiff's verbiage, she has absconded to new avenues: Apparently, the Plaintiff already conceded to Stanford being a private party for Constitutional purposes and apparently she conceded that Defendant Shaw had no discriminatory animus against the Plaintiff. ***The Plaintiff did no such thing.*** Quoting the First Amended Complaint at ¶ 87, defense counsel proffers "Plaintiff herself has admitted" that Stanford cannot be a state actor. *See* Reply at 2: 19. The Plaintiff did no such thing, however. Plaintiff *merely* noted that Stanford calls itself "private" or that it classified itself as a private corporation as a **corporate entity. This is *irrelevant* to whether it is private for a constitutional claim.** As Judge Higginbotham's genius (and wit) put it while addressing another purportedly 'private' university playing **fast and loose with the Judiciary and thinking that they can get away with unconstitutional conduct by mere word-play**, Stanford "can never be charged with having a little mind, **but its adroit and nimble legal maneuvering has finally caught up**

3

with it." *Isaacs v. Board of Trustees of Temple University*, 385 F. Supp. 473, 475 (E.D. Pa. 1974) (holding Temple University a state actor even though it is a 'private' corporation) (emphasis added), *accord, Yan v. Penn State Univ.*, 529 Fed. Appx. 167, 173 (3d Cir. 2013) (holding PSU a state actor because its academic officials "report[ed] defendant Ho to the **PSU Police**"). Indeed, "the character of a legal entity [for constitutional violation purposes] is **determined neither by its expressly private characterization in statutory law [like California Corporations Code, as here]**, **nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies."** *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 931 (2001) (emphasis added; annotation added), citing *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374, 130 L. Ed. 2d 902, 115 S. Ct. 961 (1995) (holding Amtrak "the Government for constitutional purposes, **regardless of its congressional designation as private**"—*Brentwood*, 531 U.S. at 296 (emphasis added).).

*Second*, defense counsel proffers that Defendant Smith is "**one of the few people** at Stanford who would consistently misgender [the Plaintiff][,]" and this, thereby, means that Defendant Shaw had no discriminatory animus against the Plaintiff based on her transgender status. *Reply* at 7: 21-22 (emphasis added). **Yes, one of the few—not the only one**. **Another member of the group of "one of the few" being Defendant Shaw.** *See* SAC ¶ 133. *See also* Opposition at 6 (delineating Defendant Shaw's persistent deadnaming of the Plaintiff after being told repeatedly not to do so in the incorporated-therein material). This is enough to make a case for *per se* discriminatory animus in this Circuit. *See, e.g., Prescott v. Rady Children's Hospital San Diego*, 265 F. Supp. 3d 1090, 1098– 1100 (SD Cal. 2017). **Simply put, if, while 'investigating' a Black student, had Defendant Shaw called such a student the N-word, the discriminatory animus would have been *per se***

[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

**established**. **So is here.** That verbal abuse of transgender people is **normalized in public culture** does not make Defendant Shaw's **discriminatory animus any less discriminatory**—nor is defense counsel's views on transgender people, and how they should be addressed, relevant herein. *See, e.g., McGinest v. GTE Service Corp.* 360 F.3d 1103, 1115 (9th Cir. 2004). *See* SAC at 15, n. 14.

### C. Defendant Shaw's Declaration Supports the Plaintiff's Allegations

Defense counsel proffers that because the Plaintiff incorporated Defendant Shaw's declaration to ***show to this Court that he perjured himself*** to cover his tracks, that defeats this entire action. It does not. "Despite Defendant Shaw's declaration being facially perjurious, that he made the decision *to start the investigate* [or purportedly write the decision letter himself] does not mean that there were no meeting of minds before, during, after that purported 'decision' in support of that purported 'decision.'" *Opposition* at 7: 16-19 (annotation added in the brackets).

### D. Defendants' New and Shifted Arguments on the 42 U.S.C. § 1985(3) Cause of Action With Respect to State Action Requirement Are Equally (if Not More) Meritless—and Defendants Misread *Scott*

Having realized that their 42 U.S.C. § 1985(3) ("Section 1985(3)") arguments are meritless, defendants have launched themselves into a new arena: They now argue that because the Plaintiff is trying to vindicate her rights secured under the First and Fourteenth Amendments of our federal constitution, she cannot do so through the *vehicle* of Section 1985(3). **Nowhere—nowhere—did the defendants make this argument in their actual motion.** Lucky for the Plaintiff, however, it is as non-meritorious as their previous arguments on the Section 1985(3) cause of action. In *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, the Supreme Court "conclude[d] that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) **unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State.**" 463 U.S. 825, 830, 103 S. Ct. 3352, 3357 (1983) (emphasis added). Or, as

5

JUSTICE BLACKMUN summarized the majority opinion, "**The Court does not require that the conspirators be state officials or act under color of state law**. Instead, the requirement is that the conspiracy **intend to cause** the State **or** a person acting under color of state law to deprive the victims of the conspiracy of their constitutional rights." *Scott*, 463 U.S. at 840, n.2 (BLACKMUN, J., dissenting)[1] (emphasis added).

The question, thus, is not whether Defendant Shaw acted under the color of law. It is not whether Defendant Smith did so. It is not whether Defendant Morgan-Herman did so. It is not even whether the SDPS Does did so. And it is not a question about whether Stanford (as a university) is a private actor for constitutional purposes. It is not even whether SDPS is so. It is whether the defendants **intended to cause** a state actor or someone acting under the color of law deprive the Plaintiff of a right secured from a different legal instrument, such as the U.S. constitution. Because defendants do not proffer that they did not **intend**[2] to infringe upon the Plaintiff's Fourteenth and First Amendment rights, the Plaintiff's Section 1985(3) cause of action survives. It does not even require that they *caused* a constitutional injury, although they have. At any event, there is at least *one* state actor here involved (Defendant Smith in his policing capacity—as conceded by the defendants) and there is actual constitutional injury.

---

[1] Justice Blackmun also aptly recognizes the "Court's subtle confusion of statutory construction with constitutional interpretation." *Scott* at note 3. Unfortunately, Justice Blackmun's correct legal analysis is not binding on this Court and this Court is unfortunately mandated to follow Justice White's faulty legal reasoning.

[2] Some Ninth Circuit cases get this wrong. *See, e.g., Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126 (9th Cir. 1989). Supreme Court precedent overrides those cases.

6

**E. Sex Discrimination Is Within the Categories of Class-Based Animus that 42 U.S.C. § 1985(3) Condemns, It Is Clear that this Class-Based Animus Class Is Not Limited to Its Historical Context in this Circuit, and *Bostock*'s "Because of Sex" Reasoning Is Pertinent, and Defendants' New Argument on Class of One Is Equally Meritless**

Again, **"sex discrimination [is] within the categories of animus condemned by section 1985(3)."** *Novotny v. Great Am. Fed. Sav. & Loan Assn.*, 584 F.2d 1235, 1243-44 (3d Cir. 1978) (emphasis added). The Supreme Court left **this holding** of the Third Circuit undisturbed in *American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979). In this Circuit, it also is. "While § 1985(3) **has been liberated from the now anachronistic historical circumstances of reconstruction America**, we may not uproot § 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights [by being declared to be members of suspect or quasi-suspect classes]." *De Santis v. Pac. Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir. 1979) (emphasis added). *See also Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) (sex and gender—being women—is a protected category under Section 1985(3)). In *Reichardt*, "this court held that **plaintiffs alleging a conspiracy to deprive women of equal rights could invoke § 1985 (3).**" *De Santis,* 608 F.2d at 333 (emphasis added) (summarizing *Reichardt*'s holding).

And this is where *Bostock v. Clayton County,* 590 U.S. 644 (2020)'s reasoning comes in. We are trying to determine if the Plaintiff was discriminated against "because of [her] sex."—the exact issue in *Bostock*. The question therein was that because the statutory scheme required discrimination to be "because of sex," the Supreme Court had to determine what is "because of sex"—what it means. Similarly here, we have identified that being discriminated against "because of sex" is enough to render a class protected under Section 1985(3). We must now determine whether the

7

Plaintiff was, like *Bostock* with respect to Title VIII, discriminated against "because of [her] sex." "A holding […] **can extend through its logic beyond the specific facts of the particular case.** It does so here." *L.A. Cty. v. Humphries*, 562 U.S. 29, 38, 131 S. Ct. 447, 453 (2010) (emphasis added).

It is unclear how more clear this could be put without sounding crude, but, so that the defense counsel finally understands this: Plaintiff was singled out "because of [her] sex." If the Plaintiff was born without—what Defendant Smith calls—a "thing[,]" *see* SAC at ¶ 33, she would not have been singled out. And she would not have been singled out if she was not a "biological male" (***literally* referring to sex**) who "sounded female." Put differently, if the Plaintiff was a 'biological' woman, or if she was socially perceived to be a man, none of the conduct herein would have happened. That means—everything here happened "because of sex"—including First Amendment retaliation. Under Ninth Circuit precedent, "[§] 1985(3) is extended beyond race 'only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights.'" *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)). This means that "the courts have designated the class in **question a suspect or quasi-suspect classification** requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id*. (quoting *Schultz*, 759 F.2d at 718) (emphasis added). As argued in the initial motion (and undisputed by the defendants), transgender status is a suspect class in this Circuit.

"[T]he term [of class] unquestionably connotes something more than a **group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors[.]**" *Bray v.*

[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

*Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S. Ct. 753, 759 (1993) (emphasis added). In *Bray*, this was women who wanted to go against the defendants' "opposition to abortion." *Bray*, 506 U.S. at 269. But here the Plaintiff is simply vindicating her claims under the "under the Equal Protection Clause" through the *vehicle* of Section 1985(3), falling under the gambit of *Village of Willowbrook. See Reply* at 7.

**F.  Defendants' New Argument that SDPS Does Not Satisfy the *Hervey* Test Is Meritless**

After not having raised an objection in *Doe I* for a year when SDPS was sued as a "**local governmental entity**[,]" *see, e.g.,* Dkt. No. 1 at 1 (cover page) **(of course, because it helped their qualified immunity defense)**, and after not having disputed that in their opposition to the motion for preliminary injunction, nor raise that objection in their motion to dismiss (why did they not argue that SDPS cannot be sued separately?), defendants now change course, holding out on a bare thread that will untangle itself so easily. Now they argue that SDPS will not satisfy the *Hervey* test. They are mistaken. Police departments are regularly sued as individual entities, even though they are "departments" of counties or municipalities. Although there was some controversy on this question before, it has settled recently in *Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023) (finding that "police departments are 'persons' amenable to suit under § 1983"), citing *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) (concluding that it is still good precedent).

**G. Defendants' New Argument that SDPS Is Not a Government Actor is Meritless as Policing is the Exclusive and Historical Prerogative of the State and Its Functions Cannot be Parted As Defendants Seem to Argue**

We learned from the highest court of this Nation in *Brentwood* that we could apply *Lebron* to schools and educational institutions. Our test, adopting *Lebron*, is *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919 (9th Cir. 1996). Apparently defendants have an issue with the structural analysis test

9

provided by *Hall* because, apparently…well, the reason is not clear (other than some word-play—yes, it is not Defendant Wilson who 'appoints' officers but it is the Santa Clara County Sheriff, who is a government employee—or rather he 'approves' but does not 'appoint'—looking for "magic words" again). But private activity also becomes a "public function" and thus such an organization becomes a state actor when the allegedly private corporation's action has been "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn,* 457 U.S. 830, 842 (1982) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974)). "Clearly, the detention of individuals charged with committing crimes is an exclusively governmental function. Only the government has the authority to imprison a person and the exclusive governmental nature of that function is not altered by the fact that, occasionally, the government may contract to have criminal defendants incarcerated at privately-operated institutions." *Bromfield v. McBurney*, No. C07-5226RBL-KLS, 2008 U.S. Dist. LEXIS 55095, at *24 (W.D. Wash. July 3, 2008). "The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state. This is a **truly unique function and has been traditionally and exclusively reserved to the** state." *Bromfield, ibid*; accord, *Lee v. Katz*, 276 F.3d 550, 557 (9th Cir. 2002) (emphasis added).

As such, SDPS is a state actor as it, in addition to satisfying the *Lebron* test, operates functions that are within the exclusive and historical prerogative of the state (indeed, this is why *Marsh* reached the result it did—that the company town police could arrest or detain the there-petitioner for her speech).

**H. Defendants' New Arguments with Respect to *George* and *Caviness* Are Meritless**

Having established that SDPS is a state actor, we must address defendants' insistence that

10

they can employ this 'public-private' distinction as their own ping-pong ball, throwing it away, like Temple University, when it does not serve them, and holding it firmly at their palms when it does serve their interests (*i.e.* qualified immunity). Defendants maintain that SDPS could be the government when it announces itself so, and not be one when it does not.

Defendants argue, citing *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) and *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010), that a government entity could be parsed and parted into pieces. But both in *George* and in *Caviness*, the "state action claim [rested] almost **solely on the public function approach**" *George,* 91 F.3d at 1230 (emphasis added). This is not such a case. A local governmental instrumentality such as a police department cannot be parted into its functions. But even on the public function approach, defendants fail.

### I. Defendants' New Arguments With Respect to *Mangi*, *Lankford*, and the MOU Are Meritless and SDPS Officers Were Acting under the Color of Law and SDPS Was an Extension of the Government *In Toto* and At All Times

We have already rejected the claim that SDPS as a governmental instrumentality that can be parted into pieces. We must then address the defendants' insistence on the **new** 'functions' argument and how that would result in SDPS not being a state actor. As a preliminary point, counsel, once again, *spins* facts.

Defendants shared the **police report** with Defendant Shaw (recall: Defendant Shaw declared **under the penalty of perjury** that the ID card "came" from the "criminal file"—*i.e.* the police report), which had the ID card the Plaintiff gave to Defendant Morgan-Herman 1.5 years ago. That **police report** that Defendant Shaw received is "confidential law enforcement information" within the meaning of MOU, *see Reply* at 5, and that "function" is at the exclusive prerogative of a government employee. The ID card docketed on SDPS record clerk's internal system would also be

11

for the purposes of "record-keeping" that the MOU identifies as one that is managed by a government employee. As such, "[t]he relevant inquiry is 'whether [the defendant's] *role as an employer* was state action' in [the plaintiff's] case," and that question, under the public function approach, must be answered in the affirmative. *See Reply*, at 3: 15-16, citing *George*.

But assuming, *arguendo*, that it was not, "[c]ourts **do not ordinarily pause to consider whether §1983 applies** to the actions of **police officers**, public schools, or prison official" or question if police officers can ever act in *private* capacities in the scope of their employment. *Lindke v. Freed*, 601 U.S. 187, 195, 144 S. Ct. 756, 765 (2024) (collecting cases) (emphasis added). The Penal Code deputization gave, clearly, **every deputized employee** of SDPS "possessed […] state authority and purport[ed] to act under that authority[.] […] It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law. *Griffin v. Maryland*, 378 U.S. 130, 135, 84 S. Ct. 1770, 1773 (1964), *accord*, *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250 (1988).

**J.  Having Not Addressed the Alter Ego Exception to the Information Sharing Exception to Joint Action Test, Defendants Concede the Merits of the Argument**

Again, *Mathis* carved out an alter-ego exception to its information sharing bar. SDPS is Stanford University's alter ego, and, thus, this 'exception' does not apply.

**K. Defendants' New Arguments with Respect to *Marsh* and *Burton* Are Meritless**

If private actors govern a town, *Marsh v. Alabama*, 326 U.S. 501, 507-09, 90 L. Ed. 265, 66 S. Ct. 276 (1946), they are state actors. Defendants ring the alarm bells: 'If this Court tells us that we are a company town, then all of our friends who also get rid of problematic (i.e. suing them) transsexuals without sufficient due process process would be under attack!' *See Reply* at 2: 15. "[T]his court does not think it can say that *Marsh* could never be applied to [University of Notre Dame] or any **private university if it can be shown to be operating as a company town, and**

12

**taking actions designed to deter and chill activities protected by the First Amendment**.” *Moss v. Univ. of Notre Dame Du Lac*, No. 3:13 CV 1239, 2016 U.S. Dist. LEXIS 132134, at *13 (N.D. Ind. Sep. 27, 2016) (emphasis added). Some facts herein can aid in our way: Stanford, California **is a census-designated place in Santa Clara county.** This is the definition of a company town; it is what was at issue in *Marsh*: Another census-designated place operated by a private corporation. Unlike defendants' beliefs, this will not “erase any constitutional distinction between public and private universities.” *See Reply* at 2: 17-18. Take Pomona College, for instance, another residential private university that offers “on-campus housing[.]” *Ibid*. It is is located in Claremont, CA. It is not located in, nor does it operate, a census-designated place[3]. **It does not have its <u>own independent, sworn municipal police department</u>** (like Stanford). And, unlike the facts of this Complaint, its police force **did not retaliate against a someone *on their census-designated town* because of their protected speech *that took place on their census-designated town*** (calling the clerk of the court as an extension of the Plaintiff's right to petition—like distributing religious paraphernalia in *Marsh*). **This is exactly the situation *Marsh* addressed**. As such, another Stanford student who was not targeted by Defendant Smith might get a different result from this Court. The Plaintiff is not asking this Court to write on blank slate, nor is she asking this Court, as will be argued *infra*, to declare the defendants a state actor for all purposes,—nor shred the distinction between private and public universities. The Plaintiff simply indicates that *under the circumstances of this complaint* are

---

[3] Because it is a public document published by the federal government whose authenticity cannot be questioned, the Plaintiff hereby requests judicial notice over https://tigerweb.geo.census.gov/ tigerwebmain/Files/bas26/tigerweb_bas26_cdp_ca.html (listing census-designated places in California, including Stanford).

[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

5:26-cv-03809-BLF

they one.

Having established that SDPS is a government police department, we can conclude that its symbiotic relationship with the Stanford Admissions office would be a *Burton* situation.

**L.  Plaintiff, *contra* Defendants' Allegations, Simply Indicated that the University Is a State Actor for the Purposes of this Complaint, with these Facts**

Again, defendants schizophrenically ring alarm bells and argue that the Plaintiff desires *every private university in every context* to be held a public university. The Plaintiff seeks no such remedy: "The Plaintiff could also provide a list of cases where 'private' university have been held to be a government actor because of their police force but that would defeat the point: This inquiry is incredibly fact-bound. Put differently, another student who had been targeted by Defendant Shaw—without SDPS' involvement—**might get a different result from this Court**." *Opp*. at 13 (emphasis added).

**M. At the End of the Day, Many Courts Have Recognized that It Is Premature to Dismiss *Marsh* and *Burton* Claims this Preliminarily**

At the end of the day, defendants' new reply arguments show a chilling pattern: One of **utmost abuse** of procedural vehicles. This is a summary judgement motion masquerading as a motion to dismiss. It is improper. It is *particularly* improper when the Plaintiff is making *Marsh* and *Burton* claims. "It would simply be **premature** to dismiss his complaint without letting [the plaintiff] attempt to prove that UND is a company town." *Moss,* 2016 U.S. Dist. LEXIS 132134, at *13-14 (emphasis added). Because "[d]etermining the threshold of components necessary to constitute a company town under *Marsh* requires a detailed factual analysis," *Illinois Migrant Council v. Campbell Soup Co.*, 574 F.2d 374, 376 (7th Cir. 1978), dismissal here is premature.

**N. Although one Integral Participant Need Not *Personally* Have Animus for a 42 U.S.C. § 1985(3) Claim to Survive, or for a Equal Protection Claim under 42 U.S.C. § 1983 Survive, Defendant Shaw's *Per Se* Discriminatory Intent Has Been Plead**

14

We have already established Defendant Shaw's discriminatory animus under the **new arguments presented on reply (shifting from arguing that Defendant Shaw did not know that the Plaintiff was transgender)**. But we did not need to. Again, defendants forfeited the point that Defendant Smith is not an integral participant herein. And so is Defendant Shaw. But defendants look out for **an unconstitutional conduct for every single defendant.** This is wrong as a matter of law both for a Section 1983 claim and a Section 1985 claim. In general, **the official's individual actions need not "themselves rise to the level of a constitutional violation[.]"** *Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004) (emphasis added). And for a Section 1985 claim, "each participant [in the conspiracy] must at least share the **common objective** of the conspiracy[,]" *see United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (emphasis added). The common objective here is the expulsion. That Defendant Smith wanted that expulsion to happen because of the Plaintiff's transgender status——but *perhaps* Defendant Casebeer-Blum (the only non-transphobic defendant, really) did not—does not change this analysis. While **it is not necessary to prove each participant in a conspiracy know the exact parameters of the plan**, they must at least **share a general conspiratorial objective**. *Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126 (9th Cir. 1989) 1126; *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (each participant must at least share the common objective of the conspiracy) (quoting *United Steel Workers*, 865 F.2d at 1541).

**O. Defendants' New Arguments on Contract Law Claims Are Equally Meritless**

Defense counsel has launched into a new area of argumentation to attempt to occlude the fact that the Plaintiff succinctly pointed out that she is attempting to cite *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (2007) for a proposition it does not support. In *Kashmiri,* the state Supreme Court found that **an implied-in-fact contract was created at the moment of**

15

**matriculation.** It did not bar a written contract from taking place between a student and a university, signed before the student's matriculation. For the implied-in-fact and the written contract to be viewed as the same contract herein, as defense counsel's new argument *allude,* they have to "relating to the same matters[.]" *Coons v. Henry,* 186 Cal.App.2d 512, 517, 9 Cal. Rptr. 258 (1960), quoting *Merkeley v. Fisk*, 179 Cal. 748, 754 (1919). The first written contract **is about when the Plaintiff's admission could be rescinded—if any information on it "false."** The second implied-in-fact contract **is not about her admissions application and when it could be rescinded.** Further, two contracts can only be construed together when there is "only one contractual relationship" between the parties. *Marsch v. Williams* 23 Cal.App.4th 250, 256 (1994). Here, as explained, there are two: One as an admittee, and one as an enrolled student. The modification of that written contract **had to follow** California Civil Code, section 1698. Simply put, the parties did not orally agree to change the written contract from "false" information to "honestly-presented" information. Nor was such a "contract in writing [was] modified by a contract in writing." *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 78, 215 Cal. Rptr. 3d 835, 853 (2017). The written contract is the only viable contract governing recession of admissions matters.

### III. CONCLUSION

For the foregoing reasons, the new and novel arguments presented in the reply brief for the first time also fatally fail. The motion to dismiss should be denied *in toto*.

Respectfully submitted,
DATED: July 7, 2026.

/s/ Jane Doe
_____
JANE DOE
*In Propria Persona*

[PROPOSED] SUR-REPLY ON THE STANFORD DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
5:26-cv-03809-BLF