JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| JANE DOE, an individual, | Case No.: 5:26-cv-03809-BLF |
| Plaintiff, | **MOTION TO STRIKE ECF NO. 117-1 AT ¶ 5 FOR LITIGATION ABUSE IN THE FORM OF IMPROPER VITUPERATION** |
| v. | |
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*, | Before the Honorable Beth Labson Freeman |
| Defendants. | RE: ECF No. 117-1 |

i

"The American legal system has long been regarded as a place to resolve disputes in a **dignified and civil manner**[.] […] It is not a place for **vulgar barroom talk**."

*Olympus Spa v. Armstrong*, 169 F.4th 817, 844-45 (9th Cir. 2025) (McKeown, J., statement respecting the denial of petition for rehearing en banc) (emphasis added).

## I. AS THIS COURT APTLY OBSERVED, STRIKING INFLAMMATORY AND VULGAR LANGUAGE IS A PROPER FUNCTION OF THIS COURT'S INHERENT STRIKING-OF-PLEADINGS-AUTHORITY

Indeed, as this Court has recognized, "the Court has inherent authority to strike inflammatory and vulgar language from its filings and to enforce a baseline level of decorum." Dkt. No. 115 at 2. And such a striking-of-pleadings jurisdiction clearly extends to striking "immaterial [and] inflammatory language[.]" *Ibid.*

"All persons involved in the judicial process— judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647 (1985). "[P]arties to litigation should refrain from employing *ad hominem* rhetoric." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 2020 U.S. App. LEXIS 35366, 2020 WL 6578223, *17 (9th Cir. 2020) "'Courts of justice are universally acknowledged to be vested, by their very creation, with the power to impose silence, **respect, and decorum**'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) (emphasis added). "It should go without saying that no participant in a judicial proceeding **may address another participant with profanity-laced vitriol**." *Ariz. Bd. of Regents v. Doe*, No. CV-20-01638-PHX-DWL, 2020 U.S. Dist. LEXIS 155651, at *2 (D. Ariz. Aug. 27, 2020) (emphasis added). "[A]ll litigants must demonstrate a level of civility in pleadings and proceedings that displays a basic understanding of and respect for the courts and the rule of law in this nation." *Kyler v. Everson*, 442 F.3d 1251, 1253-54 (10th Cir. 2006). *See Doe v. Smith, et al.*, no. 5:25-cv-03490-PCP (N.D. Cal 2025) (*Doe I*), Dkt. No. 162 (quoting the same **with respect to the very**

1

**same behavior exhibited by defense counsel herein**); *see also ibid*, Dkt. No. 173 at 5-6 (quoting the same **with respect to the very same behavior exhibited by defense counsel herein**).

## II. A MOTION WITHOUT A HEARING IS IN ORDER GIVEN THE PURELY PROCEDURAL NATURE OF THE MOTION

Although this motion is "not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge" (because the Plaintiff is not seeking a striking order under Federal Rules of Civil Procedure 12), the Plaintiff is bringing this motion as a stand-alone motion, not an administrative motion because apparently defendants have an issue with the Plaintiff invoking her right to petition the government for a redress of grievances in the form of administrative motions. The Plaintiff is not reserving a hearing date given the purely procedural nature of this motion and the fact that a hearing will not add much to the merits of the motion. Defendants previously moved the Court in such a way, *see* ECF No. 114, and since the Court granted that motion, the Plaintiff presumes that the Court considers such a procedural maneuver proper (*i.e.* an unnoticed motion that is not an administrative motion under Civil L.R. 7-11, although it is unclear to the undersigned which statute or rule of court authorizes such motion practice—put differently, defendants *actually* brought an *ex parte* motion that is otherwise prohibited by the local rules of this judicial district but stylized their *ex parte* motion without the *ex parte* label, even though it was, *nom propre*, *ex parte*).

## III. LEGAL STANDARD FOR STRIKING AND EXCLUDING

### A. Legal Standard for Striking Exhibits and Pleadings For Litigation Abuse under this Court's Inherent Jurisdiction

A "District Court ha[s] jurisdiction to grant [a] motion to strike pursuant to its inherent powers." *Ready Transp., Inc. v. AAR Mfg.*, 627 F.3d 402, 404 (9th Cir. 2010). The inherent powers —which exists independently of any statute or rule—are mechanisms for "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition

2

of cases." *Ready Transp,* 627 F.3d at 404, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "It is well established that'[d]istrict courts have inherent power to control their docket.' " *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998)). Indeed, "this includes the power to strike items from the docket as a sanction for litigation conduct." *Ibid*. And this includes the ability of a district court to strike documents submitted as exhibits to a motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 586-87, 588 (9th Cir. 2008). *See also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,* 397 F.3d 1217, 1224-26 (9th Cir. 2005). And most importantly, this includes the inherent power to strike briefs, pleadings, moving papers "as either scandalous, impertinent, scurrilous, and/or without relevancy." *Carrigan v. Cal. State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959). Again, this inherent power exists **independently** and does not depend on or is it limited by Federal Rules of Civil Procedure 12. This Court also retains complete **plenary** powers over the documents on its own docket. *Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015) (collecting cases). Litigation abuse, as it appears in *Ready Transp*, means any conduct not permitted by the applicable legal regime.

### III. DEFENDANTS' CONSISTENT VERBAL TRANSPHOBIC HARASSMENT AGAINST THE PLAINTIFF HAS NO PLACE IN OUR JUDICIARY

**A. Defendants Have Been Consistently Put On Notice About the Inappropriateness of Such Language in *Doe I* but By the Plaintiff and the Judicial Officer Presiding Thereto**

As alluded *supra*, defendants and defense counsel have both been put on **consistent and numerous** notice about the inappropriateness of the behavior they just exhibited before this Court— both by the Plaintiff and the judicial officer presiding over the *Doe* I matter. Yet **defendants persist in their verbal abuse and harassment of the Plaintiff in their court filings.** The Plaintiff explained to the defense counsels—numerous times—that "address[ing] [the Plaintiff] with

3

profanity-laced vitriol[,]" *see* Dkt. No. 173 in *Doe I* at 5: 23, in the form of "'refer[ing] to […] transgender women by their former male names [Citations.][,]" was **patently improper**. *Ibid*, citing *Hecox v. Little*, 479 F. Supp. 3d 930, 956-57 (D. Idaho 2020), *affirm'd sub. nom Hecox v. Little,* 104 F.4th 1061, 1079 (9th Cir. 2024) (en banc). The Plaintiff explained to the defense counsel, **numerous times,** that such inflammatory and abusive conduct is "not just the stab of present insult, but the stinging barbs of history, which catch and tear at the psyche the way thorns tear at the skin." *See* Dkt. No. 162 at 5, citing *Bailey v. S.F. Dist. Attorney's Office*, 16 Cal. 5th 611, 631 (2024), which cited *McGinest v. GTE Service Corp*. 360 F.3d 1103, 1116 (9th Cir. 2004).

Indeed, when defense counsel made the argument that the Plaintiff purportedly 'faked' her own suicide because defendants purportedly and allegedly looked out for the Plaintiff by her "former male name," the judicial officer presiding over the *Doe I* matter also alluded to the improper nature of such vitriol. *See* ECF No. 119 in this case at p. vii-viii.

Indeed, defendants **have acknowledged themselves** that they are aware that the Plaintiff is no longer using her birth name. *See* Dkt. No. 106 at 5 (acknowledging that "[Doe] now uses a different name entirely." Indeed, there is no reason to target the Plaintiff with this kind of abusive and mentally devastating language in court filings.

**Yet defendants persist.** It is time to put a stop to defendants' ceaseless desire to corrupt this Court's docket for their *ad hominem* attacks.

### B. Courts in this Circuit and Across the Nation Routinely Strike Such Inflammatory and Abusive Language

Simply put, district courts in this Circuit and other circuits are **universally** in agreement that such language is improper—most of them have stricken such language from their docket, and one court even went on to consider whether it should deny a state intervenor's motion to intervene

**unless they stopped using the very language that the defendants are using herein.**

*See, e.g., Hecox v. Little*, 479 F. Supp. 3d 930, 956-57 (D. Idaho 2020) (indicating that the "Court is concerned by this conduct" of referring to the Plaintiff "using masculine pronouns and refers to other transgender women by their former male names" and calling transgender women "biological males" and admonishing counsel thereto). Indeed, in *Hecox*, that court seriously considered denied the motion to intervene on this ground and only granted the motion on the basis that counsel will stop using such abusive language. "Although immaterial to this ruling, the Court would be derelict if it failed to note the defendants' careless disrespect for the plaintiff's transgender identity […] The Court cautions counsel against maintaining a similar tone in future filings." *Canada v. Hall*, 2019 WL 1294660, at *1 n. 1 (N.D. Ill. March 21, 2019).

### C. Not Striking the Abusive and Harassing Language Will Condone the Defendants' Conduct and Would Curtail the Plaintiff's Right to Access Courts without Being Harassed because of Her Gender Identity

As the Court in *Hecox*'s collected caselaw indicates, courts across this Nation are universally in agreement that such vitriolic language is abusive and inflicts serious mental damage on litigants belonging to the same group as the undersigned. "The Court is concerned by this conduct [of misgendering and deadnaming transgender people], as other courts have denounced such misgendering as **degrading, mean, and potentially mentally devastating to transgender individuals**." *Hecox*, 479 F. Supp. 3d at 957 (emphasis added). *See, e.g., T.B., Jr. ex rel. T.B. v. Prince George's Cty. Bd. of Educ.*, 897 F.3d 566, 577 (4th Cir. 2018) (describing student's harassment of transgender female teacher by referring to her with male gender pronouns as "pure meanness."); *Hampton v. Baldwin*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *2 (S.D. Ill. Nov. 7, 2018) (referencing expert testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating.").

5

Indeed, as one of the very first cases in this Nation involving a woman of transgender experience, that court understood the importance of this issue: Ulane "was fired **as Karen Frances Ulane** in 1981." *Ulane v. E. Airlines*, 742 F.2d 1081, 1082 (7th Cir. 1984) (emphasis added). Indeed, that "bec[oming] [of] female" is, as defendants concede, have occurred, and it is improper for the Plaintiff to be constantly reminded of a past self that she has moved on from. Reminding the Plaintiff of that priority—constantly, in every pleading, consistently—is abusive. Condoing this practice would prevent plaintiffs in the plaintiff's shoes from seeking a redress in the Judiciary, if they cannot invoke its powers and jurisdiction, without being harassed and mentally devastated **with every single filing by their opponents.**

As the Court in *Hecox* aptly recognized, whatever point counsel intended to make could be made without using such hurtful and vitriolic and abusive language. "Such 'accuracy,' however, is **not compromised** by simply referring to Lindsay and other transgender females as 'transgender women[]'" *Hecox*, 479 F. Supp. 3d at 957. There are other ways to "make[] counsel's point **without doing so in an inflammatory and potentially harmful manner**." *Ibid*.

At the end of the day, the court in *Hecox* was right, "Personal preferences or beliefs and organizational perceptions or positions notwithstanding, the Court expects courtesy between all parties in this litigation. In an ever contentious social and political world, **the Courts will remain a haven for fairness, civility, and respect—even in disagreement**." *Ibid*. (emphasis added). Simply put, "it [is not] necessary to invoke such crude and vitriolic language. Decorum and collegiality demand more." *Olympus*, 169 F.4th at 845. Using such language as defense counsel did "ignores ordinary principles of dignity and civility, and demeans this court." *Ibid*.

//
//

MOTION TO STRIKE ECF NO. 117-1 AT ¶ 5 FOR LITIGATION ABUSE IN THE FORM OF IMPROPER VITUPERATION

5:26-cv-03809-BLF

### D. Plaintiff Does Not Seek Striking over Discoverable Material

Plaintiff is not seeking striking over any discoverable material defendants have submitted with the Plaintiff's deadname[1] because that could prejudice the defendants. Plaintiff simply seeks striking over the **defense counsel's own usage** of vitriolic language.

As a corollary point, the Plaintiff "legal name" as defense counsel appears to believe is not her deadname in any California-issued identification document, so that "legal name" point is mistaken and unnecessary. Indeed, it is unclear why defense counsel—and her clients—would not refer to the Plaintiff with her legally-recognized name while operating an establishment in California.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully seeks an order striking ECF No. 117-1 at ¶ 5.

"One's name or the pronoun that represents that name is the most personal expression of one's self. To not call one by the name one prefers or the pronoun one prefers, is simply rude, insulting, and cruel."

*Taking Offense v. State of Cal.*, 66 Cal. App. 5th 696, 732, 281 Cal. Rptr. 3d 298, 329 (2021) (opn. of Robie, J.), overruled on other grounds as stated in *Taking Offense v. State of Cal.*, 18 Cal. 5th 891, 338 Cal. Rptr. 3d 326, 578 P.3d 409 (2025).

[Signature block follows next page]

---

[1] "Deadnaming 'is the act of referring to a transgender person by a name they used prior to 'transitioning,' such as their birth name.' *Id*. So, for example, referring to a transgender man named John Doe with his birth name Jane Doe would both deadname and misgender him. For people who are transgender, these practices can be deeply offensive, disrespectful, and […] discriminatory."

*Gays Against Groomers [sic] v. Garcia*, 169 F.4th 981, 986 (10th Cir. 2026)

7

Respectfully submitted,

DATED: July 9, 2026.

/s/ Jane Doe

JANE DOE
*In Propria Persona*

MOTION TO STRIKE ECF NO. 117-1 AT ¶ 5 FOR LITIGATION ABUSE IN THE FORM OF IMPROPER VITUPERATION

5:26-cv-03809-BLF