UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE,

Plaintiff,

v.

BOARD OF TRUSTEES OF LELAND
STANFORD JUNIOR UNIVERSITY, et al.,

Defendants.

Case No.  5:26-cv-03809-BLF

ORDER GRANTING MOTIONS TO
DISMISS SECOND AMENDED
COMPLAINT; DENYING MOTION
FOR PRELIMINARY INJUNCTION

[Re:  ECF Nos. 62, 113, 167, 193]

Pro se Plaintiff, proceeding anonymously, is a former undergraduate student at Leland Stanford Junior University ("Stanford"), who initiated this action against various administrators and staff at Stanford (the "Stanford Defendants") as well as one records technician employed by the County of Santa Clara ("County").[1]  After the Court screened and dismissed Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915, *see* ECF No. 31 ("Order"), Plaintiff filed the second amended complaint, ECF No. 33 ("SAC"), and the Court ordered service in this case.  ECF No. 39.

Before the Court are three motions.  The Stanford Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  ECF No. 113 ("Mot."); ECF No. 170 ("Reply").  Plaintiff opposes the motion.  ECF No. 139 ("Opp.").  The County moves to dismiss all claims against Lydia Morgan-Herman.  ECF No. 163 ("County Mot."); ECF No. 191 ("County Reply").  Plaintiff opposes the motion.  ECF No. 165 ("Opp. to County").  Plaintiff moves for a preliminary injunction requiring the Stanford Defendants to reinstate her admission

---

[1] "Stanford Defendants" refers to all defendants in this action except Lydia Morgan-Herman, i.e., Stanford, Jason Barnes, Jen Casebeer-Blum, Michael Devlin, Shirley J. Everett, Jon Hernandez, James R. Jacobs, Richard Harding Shaw, Jr, Jason A. Smith, Stanford University Department of Public Safety, Laura L. Wilson, Parinaz Zartoshty, and Debra L. Zumwalt.

status to Stanford.  ECF No. 62 ("P.I. Mot."); ECF No. 146 ("P.I. Reply").  The Stanford Defendants oppose Plaintiff's preliminary injunction motion.  ECF No. 134 ("P.I. Opp.").

The Court VACATES the hearings set for October 22, 2026, and October 29, 2026, because the matters are suitable for decision without oral argument.  Civ. L.R. 7-1(b); *see also* ECF No. 193 (Plaintiff's request to submit motions without argument).  For the following reasons, the Court GRANTS the Stanford Defendants' motion to dismiss, GRANTS Ms. Morgan-Herman's motion to dismiss, and DENIES Plaintiff's preliminary injunction motion.

**I.    BACKGROUND**

This action arises from Plaintiff's expulsion from Stanford.  Plaintiff alleges that she was expelled on August 21, 2025, in retaliation for filing an April 21, 2025, federal complaint in this judicial district against certain Stanford Defendants, and for other protected petitioning activity.  SAC ¶¶ 1, 184; *see also Doe v. Smith*, No. 25-cv-03490-PCP (filed April 21, 2025) ("*Doe I*").[2]  Plaintiff asserts claims against (1) Stanford; (2) Stanford University Department of Public Safety ("SDPS"); (3) SDPS police officers Laura Wilson and Jason Smith; (4) Stanford Dean of Undergraduate Admissions Richard Shaw, Jr., Associate Dean of Undergraduate Admissions Michael Devlin, and Assistant Dean of Admission Jen Casebeer-Blum; (5) Stanford Vice President and General Counsel Debra Zumwalt; (6) Stanford Assistant Vice Provosts Parinaz Zartoshty, Shirley Everett, and James Jacobs; and (7) Lydia Morgan-Herman, a records technician employed by the County.

Plaintiff filed the original complaint in *Doe I* against Mr. Smith and SPDS, alleging that Mr. Smith (acting on behalf of SPDS) deprived her of her constitutional rights while investigating Plaintiff's alleged impersonation of another party in state court.  SAC ¶ 71; *see also Doe I* at ECF No. 1 ¶¶ 9–55.  Plaintiff alleges that after (and in retaliation for) her filing the complaint in *Doe I*,

---

[2] The existence and content of opinions and pleadings are matters capable of accurate and ready determination by resort to official court files that cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b)(2).  The Court may accordingly take judicial notice of Plaintiff's prior suit against Defendants and the pleadings in that action.  *See, e.g.*, *Burbank–Glendale–Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).  That said, the Court limits its judicial notice to the existence and contents of such pleadings without accepting as true the facts found or alleged therein.  *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1159 (C.D. Cal. 2011).

United States District Court
Northern District of California

various Stanford Defendants began to investigate her application for admission to Stanford and thereafter expelled her.  SAC ¶¶ 89–96.

SDPS "acquired its policing authority from a memorandum of understanding ["MOU"] with the County."  SAC ¶ 4.  "The Plaintiff hereby incorporates by reference this Memorandum of Understanding," *id.* ¶ 4 n.4 ("MOU").[3]  The MOU provides that:

> In order to provide for the assignment of certain specific police functions to qualified members of the Stanford University Department of Public Safety, and in compliance with the request of the University, the Sheriff of the County of Santa Clara will deputize Reserve Deputy Sheriffs (under Section 830.6 of the Penal Code) under conditions herewith set forth, Persons so deputized pursuant to this memorandum will be referred to as Santa Clara County Reserve Deputy Sheriffs at Stanford, hereinafter "Stanford Reserves." . . .
> The "Specific Assignments" . . . are General law enforcement duties or the primary purposes of deterring and preventing violations of, and enforcing the laws of, the United States of America, the State of California and the ordinances of the County of Santa Clara. . . .
> The Stanford Reserves shall have the authority of Santa Clara County Reserve Deputy Sheriffs and shall act as Reserve Deputy Sheriffs only when they are on duty with the Stanford University Department of Public Safety performing the Specific Assignments as herein authorized.

MOU at 1–4.  The SAC alleges as follows.

In February 2024, Plaintiff contacted SDPS about a dispute with another undergraduate student ("S.P."), against whom she subsequently sought a restraining order in state court.  SAC ¶¶ 22–26.  Plaintiff later requested a copy of the police report regarding the February 2024 incident from SDPS and, as part of that request, attached a copy of her ID card.  *Id.* ¶¶ 50–54.  Ms. Morgan-Herman "confirmed receipt of [Plaintiff's ID Card]" and later "indicate[d] [via email] that the report was ready and that the Plaintiff c[ould] obtain it."  *Id.* ¶¶ 55–56.  On April 20, 2025, SDPS officers (including Mr. Smith) investigated Plaintiff for allegedly impersonating S.P. to the state court presiding over an action between S.P. and Plaintiff.  *Id.* ¶¶ 63, 71–75; *Doe I* at ECF No. 1 ¶¶ 9–55.  Plaintiff filed the *Doe I* complaint the next day, on April 20, 2025.  SAC ¶ 75; *see also Doe I* at ECF No. 1.

"At some point, SDPS, Smith, Barnes, Morgan-Hermann, and [anonymous defendants] fraudulently crop[ped] the ID card the Plaintiff provided to SDPS . . . to obtain a police report . . .

---

[3] The SAC includes a permalink (https://perma.cc/Y8WF-8ZYB) that links to the MOU.

and share[d] it with Defendant Shaw with the explicit intent and instructions that Defendant Shaw start[] investing [her] admissions application." SAC at 17 (capitalization altered). Specifically, SDPS provided Plaintiff's ID to Mr. Shaw with the "clear instruction" to start investigating Plaintiff's admissions application to Stanford after she filed the complaint in *Doe I*. *Id.* ¶ 89.

Plaintiff's ID card showed that Plaintiff had a street address in Houston, Texas, which turned out to be a dorm at William Marsh Rice University ("Rice"). ECF No. 12-3 ("Shaw Decl.").[4] On July 21, 2025, Mr. Shaw sent Plaintiff an email containing the following statement:

> I am reviewing certain matters that have come to Stanford's attention in connection with your application for admission to the University for the Class of 2027. Concerns have been raised that you may have misrepresented information in your application to Stanford. I was recently made aware that prior to entering Stanford in Fall 2023 you may have been enrolled at Rice University. Nowhere in your application, did you indicate enrollment at another degree granting institution when you applied in December of 2022.

SAC Ex. E at 5; *see also* SAC ¶¶ 102–03.

During Mr. Shaw's investigation, Mr. Shaw and Ms. Zumwalt requested that Plaintiff "sign a FERPA release allowing Rice" to turn over certain educational records to Stanford. SAC ¶ 109 (quoting Shaw Decl. ¶ 16). Plaintiff refused to do so, notifying Mr. Shaw that his conduct "is really not nice and exceeds the bounds of acceptable professional conduct." *Id.* ¶ 110 (quoting SAC Ex. E at 134). Plaintiff subsequently reached out to Mr. Jacobs (the Director of Stanford Student Health Center), who was unable to provide her with sufficient mental health services while she was traveling internationally; "[i]n late July, unable to cope with the stress Defendant Shaw's conduct brought [her], and unable to reach out to any mental health crisis resources, [Plaintiff] attempted to commit suicide by taking . . . around 250 pills of various medication." *Id.* ¶ 129.

Mr. Shaw expelled Plaintiff on August 21, 2025, without "hold[ing] a hearing." SAC ¶¶ 139, 158. Following Plaintiff's expulsion, Ms. Zartoshty (director of Stanford's International

---

[4] Mr. Shaw's declaration was filed in *Doe I*. *See Doe I* at ECF No. 109-2. Consideration of this document is proper because Plaintiff herself filed that declaration in this action at ECF No. 12-3 and incorporated it by reference in the SAC. *See* SAC ¶ 86 n.18 ("The Plaintiff also incorporates this pleading by reference herein as if fully set herein because the Complaint necessarily relies on this declaration and the defendants cannot dispute the originality of a declaration they submitted to the Court in *Doe I*.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Student Center) revoked Plaintiff's Student and Exchange Visitor Program ("SEVP") enrollment (thereby "effectively annulling" her student visa), and Ms. Everett (head of Stanford student housing) cancelled Plaintiff's rental contract for on-campus housing. *Id.* ¶¶ 160–62.

The SAC alleges nineteen causes of action. Claims 1–6 allege violations of Plaintiff's federal and state constitutional rights: Claims 1, 2, 3, and 4 are asserted against all Defendants (except Mr. Jacobs) for deprivation of federal constitutional rights under 42 U.S.C. § 1983, claim 5 is asserted against all Defendants for conspiracy to interfere with federal constitutional rights under 42 U.S.C. § 1985, claim 6 is asserted against all Defendants for violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, and claim 7 is asserted against all Defendants for violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51. *See* SAC ¶¶ 181–216.

Claims 8–9, 14, 16–18 allege common law tort actions: Claim 8 is asserted against SDPS, Mr. Smith, Mr. Barnes, Mr. Hernandez, Mr. Shaw, Mr. Devlin, Ms. Casebeer-Blum, and Ms. Zumwalt for intrusion upon seclusion, claim 9 is asserted against Mr. Shaw for defamation, claim 14 is asserted against SDPS, Mr. Smith, Mr. Barnes, Mr. Hernandez, Mr. Shaw, Mr. Devlin, Ms. Casebeer-Blum, Ms. Zumwalt, and Ms. Morgan-Herman for tortious interference with contract, claim 16 is asserted against Mr. Shaw and Ms. Zumwalt for fraud, claim 17 is asserted against Mr. Shaw, Mr. Devlin, Ms. Casebeer-Blum, and Mr. Jacobs for negligence, and claim 18 is asserted against all Defendants for negligent and intentional infliction of emotional distress. *See* SAC ¶¶ 217–33, 258–62, 269–93.

Claims 10–13, and 15 allege common law contract and contract-adjacent claims: Claim 10 is asserted against Stanford for breach of contract, claim 11 is asserted against Stanford and Ms. Zartoshty for breach of implied-in-fact contract, claim 12 is asserted against Stanford for implied-in-law contract (or quantum meruit), claim 13 is asserted against Stanford for breach of implied covenant of good faith and fair dealing, and claim 15 is asserted against Stanford for promissory estoppel. *See* SAC ¶¶ 234–57, 263–68.

Claim 19 is styled as a claim for "respondeat superior on common law claims" against Ms. Zumwalt, Ms. Wilson, and Mr. Shaw. *See* SAC ¶¶ 294–98.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A defendant may move to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In ruling upon a motion to dismiss, the Court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

### B.   Rule 15(a)

A court has discretion to allow leave to amend the complaint pursuant to Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*.  The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See* 316 F.3d at 1052.

### C.   Rule 65(a)

A party seeking injunctive relief must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctive relief is also "appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips *sharply* in the plaintiff's favor," provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

## III.   DISCUSSION

As a preliminary matter, Plaintiff has waived many of her claims by failing to address the Stanford Defendants' arguments for dismissal within the first twenty-five pages of her opposition brief. As Plaintiff is aware and has repeatedly been instructed, *see, e.g.*, ECF Nos. 49, 61, 115, twenty-five pages is the limit for such briefs under both the local rules and the Court's Standing Order. *See* Civ. L.R. 7-4(b); Standing Order re Civil Cases § IV.A.1. Based on the enormous inflow of rapid, noncompliant filings in this action and repeated admonitions from the Court, the Court advised the Parties on June 18, 2026, that "the Court will disregard any pages of text in excess of the page limits set forth in the Court's Standing Order and/or the local rules." ECF No. 121.

Plaintiff chose to disregard this instruction by filing a thirty-two-page opposition brief after the notice. Expressly acknowledging that "[g]iven page limitations, the Plaintiff needs to proceed more quickly," Opp. at 25, Plaintiff chose to relegate most of her claims to the last seven pages of her brief so she could make space for her meandering, irrelevant musings about the state of the law and her anger with the Stanford Defendants. *See, e.g.*, *id.* at 1 ("Ever since the Supreme Court made the mistake of overruling *Conley v. Gibson*, 355 U.S. 41 (1957)[,] and thereby shutting the doors of the Judiciary to those who have been wronged but cannot know how precisely they have been wronged because invidious conduct often carries itself under a clandestine banner, it has become the easiest ever to write a quasi-meritorious motion to dismiss in a whim and with minimal effort. Yet defendants still managed to do what the Plaintiff thought was quite

impossible:  Write a completely frivolous motion to dismiss.  For reasons set forth *infra*, the motion should be denied *in toto*.").

The claims Plaintiffs has failed to present within twenty-five pages of her opposition briefs are abandoned and accordingly subject to dismissal.  *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that a plaintiff "effectively abandon[s]" a claim by failing to respond to arguments in motion to dismiss); *see also Montgomery v. Specialized Loan Servicing, LLC*, 772 Fed. App'x 476, 477 (9th Cir. 2019) (nonprecedential) ("The district court properly dismissed plaintiffs' remaining claims because plaintiffs failed to respond to the arguments raised in defendants' motion to dismiss these claims.").  For the avoidance of doubt, each of the waived claims fails on the merits due to fundamental legal defects that cannot be remedied, *see infra*.

**A.  Civil Rights Claims Against Stanford Defendants**

**1.  Section 1983 (Claims 1, 2, 3, 4)**

To state a section 1983 claim, a plaintiff must allege that (1) a person violated a right secured by the Constitution or laws of the United States and (2) said person acted under the color of state law when they committed the alleged violation.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).  It is well established that a private individual does not act under color of state law, an essential element of a § 1983 action. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Private conduct, no matter how wrongful, is not covered under § 1983.  *See Van Ort v. Estaste of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974).

The SAC's first, second, third, and fourth claims are for deprivation of Plaintiff's First Amendment Petition rights, First Amendment speech rights, Fourteenth Amendment due process rights, and Fourteenth Amendment due process rights.  SAC ¶¶ 181–201.  As to her First Amendment claims, Plaintiff alleges that "[a]ll of the acts complained of herein were retaliatory and directed toward the Plaintiff because of her initial complaint" in *Doe I*.  *Id.* ¶ 184; *see also id.* ¶ 189.  As to her procedural due process claim, Plaintiff alleges that she was deprived of her property interest in her college education and liberty interest in her continued SEVIS record

United States District Court
Northern District of California

without notice and an opportunity to be heard. *Id.* ¶¶ 193–95. As to her substantive due process claim, Plaintiff alleges that "the following substantive due process rights were violated during the defendants civil wrongs: (1) Equal Protection of the Law Regardless of the Plaintiff's Sex and Its Attributes, (2) Substantive Due Process Right to Acquire Useful Knowledge, (3) Substantive Due Process Right to Pursue Occupation, (4) Substantive Due Process Right to Personal Autonomy." *Id.* ¶ 200.

The Court previously dismissed the FAC's section 1983 claims because the "vague assertions regarding SPDS do not satisfy the state action requirement." Order at 5. The Court explained that the allegations failed to "plausibly suggest[] that any Defendant purported to act under authority of state law with respect to the underlying alleged constitutional violations, which are based on the termination of [Plaintiff's] status as an undergraduate student of Stanford." *Id.* The Stanford Defendants argue that the SAC fails to cure this defect because "it fails to draw any connection between Plaintiff's expulsion and any law enforcement activity." Mot. at 8.

According to the Stanford Defendants, "it is only for purposes of 'general law enforcement' that SDPS officers act as Reserve Deputy Sheriffs" (and arguably as state actors), and each of Plaintiff's constitutional claims is based on Stanford's decision as a private university to terminate her admission "on grounds that her application for admission had been incomplete and misleading." *Id.* Plaintiff does not squarely address this point, instead appearing to argue that "SDPS is an entity amenable to a [section 1983] claim as a separate and distinct legal entity and it is a government instrumentality," that the Stanford Defendants "are barred by judicial estoppel in claiming otherwise because they previously conceded that SDPS is a local instrumentality and a government actor," that Stanford is a company-town analogous to the situation addressed by the Supreme Court in *Marsh v. Alabama*, 326 U.S. 501 (1946), and that the alleged information sharing between Stanford and SPDS transforms Stanford into a state actor for the purpose of alleging a section 1983 claim. Opp. at 8–16.

The SAC still fails to allege that the Stanford Defendants deprived Plaintiff of her constitutional rights under color of law. As was the case with the FAC, each of Plaintiff's alleged constitutional deprivations in the SAC is predicated on her expulsion from Stanford, which was

9

carried out by Mr. Shaw in his private capacity as Stanford's dean of undergraduate admissions. Taking all the factual allegations in the SAC as true (as the Court must) the allegations establish at most that Mr. Shaw began his investigation into Plaintiff's admission to Stanford after reviewing SPDS's report regarding Plaintiff's apparent impersonation of S.P. and the information contained in her ID card.  Plaintiff's assertions to the contrary do not change this conclusion.

First, while Plaintiff repeatedly asserts that the Stanford Defendants have conceded that either Stanford or SDPS is a state actor within the meaning of section 1983, she fails to identify any such representation by the Stanford Defendants to the Court.  To the extent Plaintiff argues that the Stanford Defendants are collaterally estopped from challenging the sufficiency of the SAC's allegations regarding the state action requirement, she fails to identify (and the Court cannot locate) any prior judicial determination resolving this issue against them, in *Doe I* or any other proceeding.

Second, to the extent that Plaintiff argues that the MOU establishes that SDPS (and by extension, Stanford) is a state actor, this still does not resolve the threshold issue of whether any of the allegations allege an injury caused by SDPS's actions as a putative state actor.  Nothing in the MOU suggests that SDPS had any role in undergraduate admissions at Stanford or plausibly establishes a nexus between SDPS's general law enforcement functions and the alleged constitutional deprivations stemming from Plaintiff's expulsion.  The MOU makes clear that the purpose of the agreement between the County and Stanford is to assign general law enforcement functions to SPDS, which are simply not implicated by Plaintiff's section 1983 claims.  The Court accordingly need not reach Plaintiff's lengthy, inapposite discussion concerning "[w]hether SDPS could bear suit in a [different] Section 1983 . . . claim as a separate party."  Opp. at 8.  Even assuming SPDS could be a state actor under some circumstances, that is not the case as alleged here.  *See George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) ("An entity may be a state actor for some purposes but not for others."); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 814 (9th Cir. 2010) ("[A] private entity may be designated a state actor for some purposes but still function as a private actor in other respects.").

Third, nothing in the SAC plausibly suggests that Stanford itself has acted in a state

United States District Court
Northern District of California

capacity with respect to the alleged constitutional deprivations.  Apart from conclusorily labeling Stanford a company-town in her opposition brief, the SAC does not allege facts suggesting that Stanford exercises a degree of authority over students comparable to the state.  *Cf. Marsh*, 326 U.S. at 504 (comparing a "ruling by those appointed by [a] corporation to manage a company-town" to "arrest[] for violating a municipal ordinance").  Even assuming that SDPS is a state actor, there is no plausible nexus between SDPS's conduct and the other Stanford Defendants as to Plaintiff's expulsion from Stanford.  Because the SAC fails to allege that SDPS was involved at any stage of the deliberative process in rescinding Plaintiff's admission, the claims fail to plead state action and are subject to dismissal.  *See, e.g.*, *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023).

### 2.  Section 1985 (Claim 5)

Section 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting 42 U.S.C. § 1985(3)).  "The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *accord Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (per curiam).

In her fifth claim for civil conspiracy under section 1985, Plaintiff alleges that "Defendants acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) retaliate against the Plaintiff for invoking her constitutional right to petition the government for redress of grievances, (2) retaliate against the Plaintiff for invoking her constitutional right to speak freely, (3) to enjoy procedural due process, (4) to enjoy substantive due process."  SAC ¶ 204.  The Stanford Defendants argue that the section 1985 claim is subject to dismissal for the same reasons as the section 1983 claims and in any case fails to allege discriminatory intent or class-based animus.  Mot. at 11.  Plaintiff responds that the SAC sufficiently alleges that the Stanford Defendants singled her out and targeted her based on her

United States District Court
Northern District of California

transgender identity.  Opp. at 24.

The claim is fatally deficient because it fails to plead facts plausibly establishing "that the conspiracy must be motivated by 'some racial or perhaps otherwise-class based, invidious discriminatory animus behind the conspirator's actions.'" *Harris v. Clearlake Police Dep't*, No. 12-cv-0864-YGR, 2012 WL 3042942, at *9 (N.D. Cal. July 25, 2012) (quoting *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983)).  The only mention of this element in the complaint is the conclusory allegation that "none of the defendants herein would have conspired with Defendants Shaw, Casebeer-Blum, Devlin and Zartoshty to deprive the Plaintiff of her liberty and property interests without due process of the law absent the class of one created because of the Plaintiff's protected speech and petition, and because of the Plaintiff's membership in the class of transgender women (i.e. 'biological men' who 'sound female')."  SAC ¶ 211.  A "[s]ection 1985(3) claim cannot be based on a 'class of one' theory," and Plaintiff's theory of discrimination based on her transgender identity is not (and cannot) be adequately alleged.  *Cox v. Mariposa Cnty.*, No. 19-cv-01105-AWI-BAM, 2022 WL 4664129, at *11 (E.D. Cal. Sept. 30, 2022); *see also Bennett v. Cnty. of Shasta*, No. 15-cv-01764-MCE-CMK, 2016 WL 3743151, at *9 (E.D. Cal. July 13, 2016).

Plaintiff's suggestion that the investigation into her admissions decision was initiated because of her transgender identity is plainly inconsistent with the thrust of her complaint, which instead is predicated on her being expelled in retaliation for filing the complaint in *Doe I.  See, e.g.*, SAC ¶¶ 3, 143, 184, 204, 226, 257.  There are no allegations plausibly suggesting that the Stanford Defendants each even knew of Plaintiff's transgender identity, let alone that her identity was the but-for cause of the alleged retaliation.  *Heyward v. Cal. Highway Patrol*, No. 14-cv-03583-DMR, 2014 WL 4771567, at *2 (N.D. Cal. Sept. 24, 2014) (dismissing § 1985 claim where complaint failed to "specify[] what conduct was motivated by that animus and any further detail about that animus").  Plaintiff accordingly fails to plead that the challenged conduct was motivated by discriminatory animus.

The claim fails for the additional reason that, for all its sprawling allegations concerning the allegedly interconnected nature of the Stanford Defendants' conduct, Plaintiff does not and

12

cannot plead that any of these disparate events formed part of the same conspiracy. *See, e.g.*, *Heyward*, 2014 WL 4771567, at *2. Indeed, it is facially implausible that, without any sort of coordinated communication between the SDPS and senior Stanford admissions officials that the Stanford Defendants would coordinate among themselves to systematically exclude Plaintiff from Stanford's campus, terminate her housing contract, and terminate her SEVIS status based on her transgender identity. *Ortega Soco-Unocal 76 v. City of Calexico*, No. 08-cv-01952-JAH-PCL, 2010 WL 11684693, at *5 (S.D. Cal. Feb. 2, 2010) (dismissing § 1985 claim for failure to allege conspiracy or agreement).

### 3. Bane Act (Claim 6)

The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal Civ. Code § 52.1(a). To state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

In her sixth claim for violation of the Bane Act, Plaintiff alleges that the Stanford Defendants deprived her of her First Amendment and Fourteenth Amendment rights in addition to certain rights guaranteed by the California Constitution, alleging that "each act and/or violation of rights done by each Defendant to Plaintiff was done by way of threats, intimidation, and/or coercion beyond that inherent in each act and/or violation of rights itself." SAC ¶ 208. The Court previously dismissed Plaintiff's Bane Act claim "because it does not plead threats, intimidation, or coercion." Order at 7. The Stanford Defendants argue that the defect has not been remedied here. Mot. at 12. Plaintiff does not respond to this argument, instead arguing that "[b]ecause defendants chose to ignore the parts of the complaint that they did not like . . . and did not establish why those allegations would not suffice for a Bane Act claim, their dismissal arguments are waived and forfeited." Opp. at 32.

United States District Court
Northern District of California

Plaintiff has waived the claim by failing to respond within the first twenty-five pages of the opposition brief. In any event, the claim fails because Plaintiff does not allege facts supporting allegations of threats or coercion beyond her conclusory assertion that each act "was done by way of threats, intimidation, and/or coercion beyond that inherent in each act," an assertion of law that need not be credited at the pleadings stage. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of 'entitle[ment]' to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[] . . . ." (second alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))). The SAC not only fails to plausibly allege threats or coercion but, to the contrary, pleads that Plaintiff was expelled from Stanford following the university's administrative process to investigate and vet undergraduate students' admissions decisions upon disclosure of new information.

### 4. Unruh Act (Claim 7)

The Unruh Act creates a civil cause of action for a plaintiff who is "denied the right" to "full and equal accommodations, advantages, facilities, privileges, or services" by a "business establishment" because of a protected characteristic. Cal. Civ. Code § 51.

In her seventh claim for violation of the Unruh Act, Plaintiff alleges that "[b]ecause the Plaintiff was treated differently based on her sex and its attributes and would not have been denied full access herein if not for her sex, and because the Plaintiff's sex was the only motivating factor for the discrepancy in enjoying equality and liberty, Plaintiff is entitled to damages under the Unruh Civil Rights Act." SAC ¶ 215. The Stanford Defendants argue that, like her section 1985 claim, Plaintiff fails to plausibly allege that her transgender identity was a motivating factor in her expulsion from Stanford. Mot. at 13. Plaintiff responds that Defendants fail to "establish[] why pleading discriminatory intent needs to comply with the *Iqbal* pleading standard for an Unruh Act cause of action." Opp. at 32.

Plaintiff has waived the claim by failing to raise an argument in its support in the first twenty-five pages of the brief. As was the case with the section 1985 claim, the SAC fails to plausibly allege that Plaintiff's transgender identity played any role at all in her expulsion. On the contrary, the SAC on its face pleads that Plaintiff was expelled for failing to disclose her prior

14

admission to Rice and refusal to comply with requests for clarification from the admissions department. *Cf. Gayer v. Polk Gulch, Inc.*, 231 Cal. App. 3d 515, 523 (1991) (explaining that the Unruh Act does not prohibit a business establishment from excluding an individual patron due to their conduct or otherwise promulgating reasonable deportment regulations that are rationally related to the services performed and the facilities provided). Plaintiff is also mistaken as to the pleading standard governing her claims—by choosing to litigate this action in federal court, Plaintiff has subjected herself to the *Iqbal* pleading standard.

### B. Tort Claims Against Stanford Defendants

#### 1. Intrusion Upon Seclusion (Claim 8)

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) the intrusion 'occurred in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Intern. Tracking Litig*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (alterations omitted)).

Plaintiff's eighth cause of action is based on two alleged intrusions: (1) that SDPS shared Plaintiff's ID card with Mr. Shaw; and (2) that Ms. Zumwalt and Mr. Shaw obtained "Plaintiff's student record information from [Rice] by invoking the statutory exemption for consent . . . as codified in 34 CFR § 99.31(a)(2) by fraudulent conduct." SAC ¶¶ 218–19. The Stanford Defendants argue that neither alleged intrusion is actionable, since Plaintiff has no reasonable expectation of privacy in her ID card and fails to allege fraud. Mot. at 15. Plaintiff responds that she states a claim because "the ID card was 'improperly' shared [and] [t]hus-fore [sic], the Plaintiff had a reasonable expectation of privacy over it," and the Stanford Defendants' "bare assertions" do not support dismissal. Opp. at 28–29.

Plaintiff has waived the claim by failing to respond within the first twenty-five pages of the opposition brief. A claim based on either alleged intrusion would in any case not survive the Stanford Defendants' motion. The first claim fails because Plaintiff fails to allege that she had an objectively reasonable expectation of privacy in her ID card, which by its nature is meant to

15

identify her to third parties. *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (explaining that a plaintiff must "ha[ve] an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source"). The second claim fails because Plaintiff fails to allege with particularity how Ms. Zumwalt and Mr. Shaw fraudulently invoked section 99.31(a)(2), which by its plain terms authorizes the transfer of a student's education records from one postsecondary institution to another "where the student seeks or intends to enroll, or where the student is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer." 34 C.F.R. § 99.31(a)(2). Moreoever, any fraud would not even be actionable because Rice—not Plaintiff—was the party that relied on the Stanford Defendants' misrepresentation.

### 2. Defamation (Claim 9)

To state a claim for defamation, a plaintiff must allege facts sufficient to show "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). A plaintiff can bring a claim for either libel per se or libel per quod. *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1226 (2017). A statement is considered libel per se when it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a. "But if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then . . . the libel . . . will be libel per quod." *Bartholomew*, 17 Cal. App. 5th at 1226–27 (citation omitted).

Plaintiff's defamation claim is based on Mr. Shaw asserting "as fact" in his August 21, 2025, letter rescinding her admission that "Plaintiff was not honest in her admissions application to Stanford." SAC ¶ 229. The Stanford Defendants argue that the claim fails to allege publication, pointing out that while the SAC alleges that Mr. Shaw "concedes" that the letter was "communicated[] . . . to [a] high number of third-party individuals," no such concession is clear from the face of the SAC. *Id.* ¶ 228. The Stanford Defendants urge that to the extent that Plaintiff

16

alleges that the "concession" is based on the content of the attached letter itself, the letter only states that the outcome of his investigation (i.e., rescission of admission) was communicated to Stanford's offices to effectuate that decision, not the allegedly defamatory statement. Mot. at 16. Plaintiff responds that this is a factual challenge inappropriate for the Rule 12(b)(6) context. Opp. at 29.

The claim is waived for failure to present argument in the first twenty-five pages of the brief. On the merits, the face of the alleged defamatory statement shows that it was not published to anybody other than Plaintiff. *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000); *see also Meggette v. Cal. Dep't of Soc. Servs.*, No. 25-cv-04722-DMR, 2025 WL 2684402, at *4 (N.D. Cal. July 23, 2025) ("Plaintiff's defamation claim fails because there are no allegations that the ostensibly defamatory statements were published or disclosed to anyone other than Plaintiff."). Where, as here, a document is incorporated by reference into a complaint, it becomes a part of the pleading, and its contents are treated as true for the purposes of a Rule 12(b)(6) motion. *See, e.g.*, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). It is simply not plausible to infer unlawful publication from the content of the letter.

### 3. Fraud (Claim 16)

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)).

In her sixteenth claim for fraud, Plaintiff alleges that "Defendant Shaw had a duty to disclose the operative record before him during disciplinary proceeding to be able to give the Plaintiff a sufficient ability to dispute the purported evidence relied on" and "[b]ased on his misrepresentations and fraudulent concealments, Defendant Shaw attempted to fraud [sic] the Plaintiff into signing a release form for him." SAC ¶¶ 271–72. Plaintiff also alleges that Mr. Shaw fraudulently obtained information from Rice and that Stanford concealed that information. *Id.* ¶¶ 277–84. The Stanford Defendants argue that Plaintiff fails to allege reliance

17

because she concedes she did not sign the form.  Mot. at 17.  Plaintiff responds that "Defendants have not cited any authority for the position that 'representations made to Plaintiff' is a requirement for a fraud claim and, thus, this point is forfeited."  Opp. at 30.

Plaintiff's argument on this claim is waived for failure to present this argument in the first twenty-five pages of the brief.  The claim is also subject to dismissal for failure to "state the circumstances constituting the alleged fraud with particularity."  *Doe v. Vaidyaji Priyanka*, 814 F. Supp. 3d 1073, 1083 (N.D. Cal. 2026).

Plaintiff is mistaken as to the requirements of a fraud claim; a false representation is an "indispensable" element of fraud in California.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also, e.g.*, *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir. 1994), *Engalla,* 15 Cal. 4th at 974; *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996); *Conrad v. Bank of Am.,* 45 Cal. App.4th 133, 156 (1996); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 821–22 (N.D. Cal. 2021).

Accordingly, none of the three alleged misrepresentations can form the basis for a fraud claim.  As to Mr. Shaw's alleged "attempt" to defraud Plaintiff into signing the release, Plaintiff cannot allege that she relied on his statements because she alleges that she did *not* sign the release based on his statements.  She "not only fails to allege that [s]he relied on [Mr. Shaw's representations] . . . . [but] alleges that [s]he actively disputed [them] at every step of the way." *Asmus v. United Airlines, Inc.*, No. 26-cv-00962-BLF, 2026 WL 1910138, at *5 (N.D. Cal. July 2, 2026).  As to Mr. Shaw and Ms. Zumwalt's alleged misrepresentation to Rice, the only party that was alleged to rely on that statement was Rice, not Plaintiff.  Finally, as to her claim that her email to Stanford's "designated email address for inspection of records" did not disclose the information sought from Rice, she does not allege that either Mr. Shaw or Ms. Zumwalt controlled that email or that she relied on this representation to her detriment.

Each of these alleged misrepresentations is fundamentally deficient and cannot be cured because "the allegations in the complaint are logically incompatible with a required element of his fraudulent misrepresentation claim, i.e., that [Plaintiff] reasonably relied on [the Stanford

18

Defendants'] alleged misrepresentation." *Asmus*, 2026 WL 1910138, at \*5.

### 4. Negligence (Claim 17)

To state a claim for negligence, a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

In her seventeenth claim for negligence, Plaintiff alleges that "[i]t is not necessary here to establish whether there existed a duty of care because the Defendant Shaw's statement . . . and defendant Jacobs' communication with the Plaintiff thereafter, constituted negligent undertaking, even if assuming, arguendo, no duty of care existed. . . . Because of the defendants' breach of what they negligently undertook, the Plaintiff committed suicide." SAC ¶¶ 286–88. The Stanford Defendants argue that "[p]utting aside the fact that Plaintiff obviously did not 'commit suicide,' a negligent undertaking claim fails as a matter of law." Mot. at 18. Plaintiff responds that "defendants have not addressed the provisions of *Regents of the University of California v. Superior Court of Los Angeles County*, 4 Cal. 5th 607 (2018)[,] for their duty of care." Opp. at 31.

The claim is waived for failure to present argument in the first twenty-five pages of the brief. Plaintiff does not state a claim for a negligent undertaking because she fails to allege facts showing that "either (a) the defendant's failure to exercise reasonable care increased the risk of harm to the plaintiff, or (b) the plaintiff reasonably relied on the undertaking and suffered injury as a result." *Univ. of S. Cal. v. Sup. Ct.*, 30 Cal. App. 5th 429, 448 (2018). Duty of care is a required element of a negligence claim, so the claim is subject to dismissal. *Ileto*, 349 F.3d at 1203. *Regents*, which held that a university owes a duty of care to its students to protect them from foreseeable acts of violence by third parties on its campus, has no applicability here. *See* 4 Cal. 5th 607 at 618–19.

### 5. Intentional Infliction of Emotional Distress (Claim 18)

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts to sufficient to show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

19

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007)).

In her eighteenth claim for intentional infliction of emotional distress, Plaintiff alleges that "[t]aken cumulatively, the defendants' cumulative conduct was so extreme and outrageous; it was taken either with the intention of causing, or reckless disregard of the probability of causing, emotional distress." SAC ¶ 291. The Stanford Defendants argue that the claim is subject to dismissal because the conduct alleged as a matter of law is not extreme and outrageous. Mot. at 19. Plaintiff responds, without support, that the argument "is improper for a dismissal motion." Opp. at 31.

The claim is waived for failure to present argument in the first twenty-five pages of the brief. The claim is subject to dismissal because nothing in the SAC even approaches outrageous conduct as a matter of law. *See Siganporia v. Shreyas*, No. 25-cv-03145-BLF, 2025 WL 2243643, at *5 (N.D. Cal. Aug. 6, 2025).

### C. Contract Claims Against Stanford Defendants

#### 1. Breach of Contract (Claim 10)

Under California law, to plead a claim for breach of contract, a plaintiff must allege facts establishing (1) the existence of a contract; (2) the plaintiff's performance of her duties under that contract or an excuse for nonperformance; (3) the defendant's breach of their contractual duties; and (4) resulting damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). To survive a motion to dismiss, a claim for breach of contract must identify the terms of the contract allegedly be breached.

In her tenth claim for breach of contract, Plaintiff alleges that "[t]here are two written contracts involved here: (1) the Admissions contract as was alleged supra, and (2) the housing contract, as was alleged supra. The Plaintiff finds that incorporated paragraphs plead a breach of written contract sufficiently and cognizantly [sic] and will not repeat them herein [sic]." SAC ¶¶ 235–36. The Stanford Defendants allege that the claim is subject to dismissal for failure to allege the terms of the contract. Mot. at 20–21. Plaintiff responds that "attaching a contract to a

*United States District Court*
*Northern District of California*

complaint is not required." Opp. at 25.

While Plaintiff is correct that she is not required to attach a contract to the complaint to state a claim, it is "absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citation omitted).  She has not done so here.  To the extent that Plaintiff alleges that her application to Stanford created a contract, it did not.  *Cf. Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 823–24 (2007).  To the extent she alleges breach of contract based on the termination of her housing contract, the SAC expressly recognizes that her right to housing under the contract was conditioned on her remaining an active student, so amendment would be futile.  *See* SAC ¶ 165.

### 2.  Breach of Implied-In-Fact Contract (Claim 11)

A "contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (quoting *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773 (1939)).  "In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

In her eleventh claim for breach of implied-in-fact contract, Plaintiff identifies two putative implied contracts that were breached: those concerning (1) "Plaintiff's continued enrollment in a university in which she was admitted and matriculated until her graduation with a bachelor's degree"; and (2) "Plaintiff's continuation of her SEVIS record until her graduation."  SAC ¶ 238. The Stanford Defendants argue that the claims are facially implausible.  *See* Mot. at 22 ("An implied, unconditional promise to Plaintiff that she would continue to be enrolled until her graduation is both inconsistent with Stanford's express, written statements alleged throughout the

21

SAC and unreasonable on its face."). Plaintiff's response is incoherent. *See* Opp. at 26 ("Defendants' points are waived because they only provided mere conclusions and have not explained why these materials they allegedly published . . . would necessarily form an implied-in-facts contract.").

The claim is waived for failure to present argument in the first twenty-five pages of the brief. It is inconceivable that the Parties could have entered an implied-in-fact contract whereby Plaintiff could not be removed for misrepresenting her qualifications for admission, so the claim also fails as a matter of law.

### 3. Breach of Implied-In-Law Contract/Quantum Meruit (Claim 12)

"Quantum meruit permits the recovery of the reasonable value of services rendered. To state a quantum meruit claim, a plaintiff must plausibly allege both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Mapsong PC v. Blue Shield of Cal. Life & Health Ins. Co.*, 780 F. Supp. 3d 939, 946 (C.D. Cal. 2024) (internal quotation marks and citation omitted).

In her twelfth claim for breach of implied-in-law contract, Plaintiff alleges that she "is entitled to the recovery of what she has earned—quantum meruit—the restoration of two-years' of course credit she has earned by hard work and rendering services to Stanford by way of being a student." SAC ¶ 254. The Court previously dismissed the claim for "failure to nonfrivolously allege that Plaintiff rendered services to Stanford or that Stanford benefited from such services." Order at 11. The Stanford Defendants argue that this defect has not been remedied in the SAC. Mot. at 23. Plaintiff responds that "defendants' theories cannot overcome the plaintiff's legal theories at this dismissal stage." Opp. at 27.

The claim is waived for failure to present argument in the first twenty-five pages of the brief. The claim is subject to dismissal for failure to plausibly allege that Plaintiff rendered any services to any of the Stanford Defendants. Because the theory of this claim is that Plaintiff rendered services by attending Stanford as a student, no set of additional factual allegations can cure this threshold deficiency.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.  Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 13)

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal. App. 3d 1371, 1393 (1990)). "The implied covenant may not, however, duplicate a breach of contract claim." *Richards v. Centripetal Networks, Inc.*, 709 F. Supp. 3d 914, 922 (N.D. Cal. 2024).

In her thirteenth claim for breach of implied covenant of good faith and fair dealing, Plaintiff alleges that "[t]aking the incorporated allegations of the Complaint as a whole, the Defendants herein breached the written and implied-in-fact contracts by bad faith, fraud, and unfair dealing by breaching their duty under these contracts by way of, *inter alia*, retaliation against protected speech and petitioning activity." SAC ¶ 257.  The Court previously dismissed the claim because the FAC failed to "identify any contract from which the covenant of good faith and fair dealing could be implied." Order at 11.  The Stanford Defendants argue that "[i]n the SAC, this cause of action is, if anything, even more perfunctory than it was in the FAC." Mot. at 23–24.  Plaintiff's response is that the Stanford Defendants are wrong and as such "no additional legal argument is necessary." Opp. at 27.

The claim is waived for failure to present argument in the first twenty-five pages of the brief.  The claim is subject to dismissal for failure to identify any contract from which the covenant of good faith and fair dealing could be implied.  The claim additionally fails because it is duplicative of the claim for breach of express contract and because there was no implied-in-fact contract.

### 5.  Tortious Interference with Contract (Claim 14)

"To state a viable claim for tortious interference with existing contracts, a plaintiff must plead: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts to induce a breach of the contractual relationship; (4) actual breach of the contractual relationship; and (5) resulting damage." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013).

In her fourteenth cause of action for tortious interference with contract, Plaintiff alleges

23

that "all of the named defendants herein played an individual role in a concerted efforts for the Plaintiff's contracts with Stanford to be breached." SAC ¶ 261. The Stanford Defendants argue that the claim is subject to dismissal because "Plaintiff . . . fails to specify the contracts allegedly interfered with, and in turn that these defendants had knowledge of such contracts." Mot. at 24. Plaintiff appears to take issue with the case the Stanford Defendants cited in their brief. Opp. at 27.

The claim is waived for failure to present argument in the first twenty-five pages of the brief. The claim is also subject to dismissal because the Stanford Defendants could not induce Stanford to breach any contract with Plaintiff. *See Luxul Tech.y Inc. v. NectarLux, LLC*, No. 14-cv-03656-LHK, 2015 WL 4692571, at *8 (N.D. Cal. Aug. 6, 2015) ("[A]gents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.").

### 6. Promissory Estoppel (Claim 15)

Under California law, the elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. 07-cv-02864-JSW, 2007 WL 3232276, at *6 (N.D. Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976)).

In her fifteenth claim for promissory estoppel, Plaintiff alleges that "Stanford made a clear and unambiguous promise to not revoke the Plaintiff's admission unless she provided false information on her application," and that she relied on this promise to her detriment. SAC ¶ 264. The Stanford Defendants argue that the claim is subject to dismissal because "the SAC does not contain any factual allegations showing that Stanford made such a promise to Plaintiff." Mot. at 25. Plaintiff responds that "Defendants have not identified any caselaw suggesting the permissibility of a clear promise being able to be vacated ex post facto, and there is none." Opp. at 28.

The claim is waived for failure to present argument in the first twenty-five pages of the

24

brief.  Plaintiff misstates the Stanford Defendants' argument, which is that the SAC fails to allege the existence of such a promise in the first place.  The Court agrees that no such facts are plausibly alleged.

### D.  Respondeat Superior (Claim 19)

In her nineteenth cause of action, Plaintiff alleges that "[f]or any conduct of SDPS officers and administrative staff, Defendant Wilson is vicariously liable under the theory of respondeat superior."  SAC ¶ 296.  That is not an independent cause of action.  Since none of the claims against the Stanford Defendants survives dismissal, this last claim is also dismissed.

The Stanford Defendants' motion to dismiss is GRANTED.

### E.  Claims Against Ms. Morgan-Herman

The County argues that claims against Ms. Morgan-Herman—claims 1, 2, 4, 5, 6, 7, 14, and 18—must be dismissed because "the only allegations specific to Defendant Morgan-Herman appear in paragraphs 55 and 56, which state merely that she received an email requesting a police report and replied that the report was ready for pickup.  These allegations reflect nothing more than Defendant Morgan-Herman performing her routine duties as a records technician."  Mot. at 1. Plaintiff responds that "[p]ut simply, the question herein is not whether the Plaintiff adequately pleaded facts to bring Defendant Morgan-Herman into the scope of this complaint."  Opp. at 6. Rather, Plaintiff argues that Ms. Morgan-Herman is an "integral participant" in this action "because *if not* for her obtaining the Plaintiff's ID card to receive a copy of a police report where the Plaintiff was a victim and *if not* for her docketing that ID card into SDPS' system that is apparently used for improper purposes (information-sharing in violation of MOU), then Defendant Shaw would have never been able to obtain the ID card and start his discriminatory crusade." Opp. at 6.

Plaintiff's response all but concedes that the SAC contains no factual allegations of wrongdoing against Ms. Morgan-Herman.  Ms. Morgan-Herman is entitled to fair notice of Plaintiff's claims against her and the grounds upon which they rest.  *See, e.g.*, *In re Sagent Technology, Inc.*, 278 F. Supp. 2d 1079, 1094–95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen 'individual defendants,' where only three of the individuals was alleged to have

United States District Court
Northern District of California

been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants."). Because the SAC fails to allege any action by Ms. Morgan-Herman apart from performing her ministerial duties as a County employee, the claims against her are subject to dismissal.

Amendment would be futile because the claims are barred as a matter of law. As to the federal claims, Ms. Morgan-Herman is entitled to qualified immunity. As to the state claims, Plaintiff has not complied with the Government Claims Act.

Qualified immunity protects public officials from damages unless the plaintiff pleads facts showing that the official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Courts apply a two-pronged inquiry: (1) whether the evidence establishes a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the challenged conduct. *Id.* at 232. A right is "clearly established" only if it was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The clearly established inquiry must be particularized to the facts confronting the official. *Ashcroft v. alKidd*, 563 U.S. 731, 742 (2011). And "the Ninth Circuit is unequivocal that the burden is on the *plaintiff* to point to case law indicating that the right allegedly violated was clearly established." *Parenti v. Cnty. of Monterey*, No. 14-cv-05481-BLF, 2018 WL 1697110, at *12 (N.D. Cal. April 6, 2018).

Here, Plaintiff cannot define the asserted right as a generalized right to free speech, petitioning, or due process. The relevant question here is whether clearly established law would have put a reasonable records employee on notice that processing a records request violated the First Amendment, substantive due process, or conspiracy laws. On that score, Plaintiff failed to "point to prior case law that articulates a constitutional rule specific enough to alert *th*[*is*] [defendant] *in this case* that [*her*] *particular conduct* was unlawful" by citing "controlling" precedent "from the Ninth Circuit or Supreme Court." *Sharp v. Cnty of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). Plaintiff has failed to identify any law or precedent to that effect here. No clearly established precedent would have informed a reasonable public records employee that

26

responding to a standard records request would have violated the Constitution, and Ms. Morgan-Herman is accordingly entitled to qualified immunity.

Separately, in regard to the state law claims, Plaintiff does not allege compliance with the Government Claims Act, which requires any claim against a public entity or its employees "for injury to person" to be presented to the public entity within six months of the injury. Cal. Gov't Code § 911.2(a). Her state law claims are accordingly subject to dismissal. *State of California v. Sup. Court*, 32 Cal. 4th 1234, 1240 (2004) ("California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are . . . *elements of the plaintiff's cause of action* and conditions precedent to the maintenance of the action." (internal citation omitted)); *Miller v. Adonis*, No. 12-cv-00353, 2019 WL 4076441, at *18 (E.D. Cal Aug. 29, 2019).

Plaintiff concedes that she did not present a claim to the County before filing this action, instead arguing that there is "no indication" that she seeks damages against Ms. Morgan-Herman and that she "could still comply" with the Government Claims Act. Opp. to County at 14–16.

Plaintiff's assertion that she does not seek damages against Ms. Morgan-Herman is contrary to nature of the claims she asserts. Her claims for violation of the Bane Act and the Unruh Act, intentional interference with contract, and intentional infliction of emotional distress seek redress for alleged injury and, in this case, would only entitle her to damages if she was successful. Plaintiff cannot assert claims seeking recovery for alleged injury and then avoid the Government Claims Act by stating in opposition that she does not seek money or damages from Ms. Morgan-Herman. Prospective injunctive relief against Ms. Morgan-Herman would not even be possible; Ms. Morgan-Herman has no authority over Stanford admissions or any other matter for which Plaintiff seeks relief.

Plaintiff is incorrect in her assertion that she could still comply with the Government Claims Act because a claim relating to personal injury generally must be presented within six months after accrual, and an application to present a late claim generally must be submitted no later than one year after accrual. Cal. Gov't Code §§ 911.2, 911.4. The alleged conduct here occurred three years ago.

United States District Court
Northern District of California

Ms. Morgan-Herman's motion to dismiss is GRANTED.

## F. Preliminary Injunction Motion

Plaintiff seeks an order that would require the Stanford Defendants to take the following actions: "The reinstatement of the Plaintiff's earned credits from her two years of schooling, the reinstatement of the Plaintiff as an active student with her financial aid package that was renewed in May 2025 for the 2025-2026 academic year, the activation of her Student and Exchange Visitor Information System (SEVIS) record, the reinstatement of the on-campus housing unit the defendants were contracted to provide to the Plaintiff in April 2025 for the 2025-2026 academic year, the reinstatement of the flight ticket that was purchased for her as part of her financial aid package in August 2025, and the reinstatement of the Plaintiff's Stanford student account so that she could be ready to sign up for classes." P.I. Mot. at 2.

Likelihood of success on the merits is a threshold issue; if a plaintiff fails to show a likelihood of success, the Court need not consider the remaining *Winter* elements. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Here, Plaintiff cannot show a likelihood of success on the merits because, as previously *supra*, all her claims fail as a matter of law. Plaintiff accordingly cannot meet the elements required for preliminary injunction. *See Winter*, 555 U.S. at 20.

Plaintiff's preliminary injunction motion is DENIED.

## G. Leave to Amend

Each of the *Foman* factors weighs against granting leave to amend. Plaintiff has unduly attempted to delay proceedings by filing more than a dozen frivolous administrative motions, including attempting to delay disposition of this motion until she could "conduct jurisdictional discovery" or have counsel appointed for her. *See* ECF Nos. 160, 98. Plaintiff's bad faith is well documented and need not be set forth here. Plaintiff was given the opportunity to cure the deficiencies in the FAC and came up with a SAC that was even more lacking and untethered from reality. Forcing the Stanford Defendants and Ms. Morgan-Herman to continue litigating these frivolous claims would amount to undue prejudice. Amendment would self-evidently be futile.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Stanford Defendants' motion to dismiss is GRANTED as to all claims.

(2) Ms. Morgan-Herman's motion to dismiss is GRANTED as to all claims.

(3) Plaintiff's motion for preliminary injunction is DENIED.

(4) All claims are DISMISSED WITH PREJUDICE.

(5) This order terminates ECF Nos. 62, 113, 167, 193.


Dated:  July 31, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

29