JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>*v.*<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*,<br><br>Defendants. | Case No.: 5:26-cv-03809-BLF<br><br>**NOTICE OF MOTION AND MOTION FOR STAY OF 'ORDER' OF 'VEXATIOUSNESS CLASSIFICATION' PENDING APPEAL**<br><br>Before Judge Freeman |

PLEASE TAKE NOTICE that the Plaintiff Jane Doe hereby moves this Court for the entry of an order staying this Court's "order" of "vexatiousness" classification.

The Plaintiff was not able to reserve a motion hearing date at the time of filing this motion with the Court's courtroom deputy, but, provided that the Court prefers to set a hearing on this motion, Plaintiff shall re-notice the motion upon being instructed so.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the Complaint, the concurrently filed Request for Judicial Notice and all exhibits attached thereto, and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

DATED: August 13, 2026.

*/s/ Jane Doe*

JANE DOE
*In Propria Persona*

## I. INTRODUCTION AND PROCEDURAL HISTORY

As the late Circuit Judge Reinhardt put it aptly under similar circumstances, "Such[,]" as here, an overtly *ultra vires* "assumption of power by **one individual** **is not acceptable** **in our judicial system**." *Townley v. Miller*, 693 F.3d 1041, 1045 (9th Cir. 2012) (Reinhardt, J., concurring) (emphasis and annotation added)[1]. Because this Court mistakenly assumed that it had the authority to enter an order that it lacked jurisdiction to enter, and because it took an "unacceptable" position of the law that is irreconcilable with the solemnity of its Article III jurisdiction and power, a *Nken* stay pending appeal is proper herein on this Court's "order" at Dkt No. 208.

## II.LEGAL STANDARD

"Federal Rule of Civil Procedure 62(d) authorizes a district court to stay its order pending appeal. Federal Rule of Appellate Procedure 8(a)(1) requires a party to move the district court for a stay pending appeal before moving the Court of Appeals for a stay." *Immigr. Ctr. for Women v.*

---

[1] As Judge Reinhardt also aptly concluded, in similar circumstances, "numerous and substantial delays caused by the district judge" despite "efforts […] to expedite consideration of the matter" and the court's robbing of the Plaintiff of her inalienable constitutional rights ***because*** she moved this Court for an expeditious adjudication over this matter (which resulted in the issuance of a **2.5-pages**, much-waited-for state-action 'legal' 'analysis' that did not even abide by 40 years' worth of Supreme Court and Circuit precedent more than a month after the matter was submitted for disposition) "can only be explained" by such an "unacceptable" misuse of judicial "power." *See Townley*, 693 F.3d at 1041-5. One must assume herein, like *Townley*, that the court wished to render this matter technically moot by having the Plaintiff be deported and to ensure that appellate review does not take place before then—yet the court's ***Herculean efforts*** in that direction seems to have failed.

*Kristi,* No. 2:25-cv-09848-AB-AS, 2026 LX 364085, at *3 (C.D. Cal. July 27, 2026). When deciding a motion for a stay pending appeal, a court considers four factors: "(1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (citation modified). A stay pending appeal "simply suspends judicial alteration of the status quo." *See id*. at 429 (citation modified).

Stay here is warranted because the Plaintiff's motion satisfies all four *Nken* prongs, especially given the strong likelihood that this Court's void order depriving the Plaintiff of her inalienable constitutional liberties without proper notice and procedure will likely be reversed on appeal.

## III.ARGUMENT

### a. First *Nken* Prong Favors a Stay

The first *Nken* prong asks whether the stay applicant has made a strong showing that they are likely to succeed on the merits. The Plaintiff-Appellant shall make such a showing *infra.*

#### 1. The Court's Order is Void *Ab Initio* for Lack of Proper Notice and Process

Before the entry of such a putative order for putative vexatiousness classification, a court must provide the purportedly vexatious party "**adequate notice** and a chance to be heard before the order [is] filed[.]" *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (emphasis added). Because the court herein did not do so, the Plaintiff will likely succeed on appeal. *See ibid* (remanding to the district court to provide proper notice to the appellant).

As conveyed to the court earlier, while this notice and opportunity to be heard requirement could be satisfied by motion practice, adequate notice herein would entail that the Plainitff is

provided an opportunity to explain that their litigation history was not vexatious. There has not been an adequate notice in the instant because the defendants' motion merely rehashed *what* the Plaintiff did in various other courts (for instance, she moved another court via a Rule 60(b) motion after purportedly agreeing to a purported stipulated for putative dismissal; she properly moved for the entry of clerk's default at 12:01 am, which made that trial court to be apparently 'perturbed' because apparently the law is perturbing to that trial court), the motion did not explain why those actions, under the applicable standard, would be considered vexatious.

As such, because the initial motion did not provide the Plaintiff the opportunity to rebut the point that such litigation activities could and, indeed, are vexatious, the Plaintiff was not provided a proper opportunity to rebut the vexatiousness allegation.

Notice, within the meaning of due process, "must be reasonably calculated, under all the circumstances" to reach the person whose rights are affected. *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). While what constitutes sufficient notice may vary, "if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." *Walker v. City of Hutchinson, Kan*., 352 U.S. 112, 115, 77 S. Ct. 200, 1 L. Ed. 2d 178 (1956). Notice is not a technicality. As such, this fatal lack of process renders the order more likely than not void *ab initio*. *See, e.g., Mullane, supra, ibid*; *McDonald v. Mabee*, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608. (1917) (lack of process renders an order void *ab initio*).

**2. The Court's Order is Void *Ab Initio* to the Extent that It Issued an Advisory Opinion because It Lacked Article III Jurisdiction Thereof**

Another issue with the Court's notice is that it seems to have imposed sanctions based on material that were *not* present in the defendants' initial motion—*i.e.*, they were either presented for

the first time on the reply brief[2] or the Court looked at the record itself to compile materials *sua sponte* without providing additional notice to the Plaintiff to oppose the entry of a purported vexatiousness order based on *sua sponte* brought materials. Because such *sua sponte* advisory-opinion adjudications are not confined within this Court's Article III jurisdiction, the order, as is, is likely void *ab initio* for lack of subject-matter jurisdiction. *See, e.g.,*. "Courts resolve live disputes between the parties; they do not issue advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). *See also Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969) (noting that Article III of the United States Constitution prohibits federal courts from issuing advisory opinions).

For instance, the initial motion did not provide any notice that a putative vexatiousness order can be entered against the Plaintiff because of the Plainitff's criticism of a judicial order. *See* Dkt. No. 208 at 26: 22.[3] At the very least, when the Court wished to consider such *sua sponte* materials,

---

[2] Among many other arguments, defendants for the first time on reply argued that the Plaintiff is vexatious because, *inter alia*, she filed a 6-page reply brief instead of 5 pages once.

[3] Contrary to this Court's apparent musings and subjectively enunciated beliefs, the Plaintiff did not indicate that Judge Pitts was biased against the Plaintiff. Rather, she indicated that the Court's treatment of defendants' inflammatory pleadings where they attacked the Plaintiff because of her gender identity, and the Court not striking those pleadings, created the appearance that the Court is not using its inherent jurisdiction fairly and in a truly distributive manner. At any event, criticizing judicial orders is not "vexatious." This Court's misuse of its Article III jurisdiction with the same arbitrariness of a Solzhenitsyn-ian gulag prison administrator in Stalin's Politburo—and the fact that the Court is depriving the Plaintiff of her First Amendment right because it does not find the criticism pretty to its ears—is nauseating.

it should have issued an order to show cause so that the Plaintiff could have explained why this Court's *sua sponte* musings would *also* not warrant vexatiousness classification.

**3. The Court's Order is Structurally Void *Ab Initio* for Depriving the Plaintiff of a Liberty Interest without an Adversarial Hearing**

Although sanctions orders can be issued without a hearing and with written briefing only (and, for instance, when vexatiousness orders are imposed on attorneys for litigation abuse as sanctions), *see Molski v. Evergreen Dynasty Corp*., 500 F.3d 1047, 1059 (9th Cir. 2007), because the Court herein is interfering with a protected liberty interest of a natural person (instead of enjoining an attorney representing someone else's petition to the government for redress of grievances), it had to provide the Plaintiff with a hearing. Liberty interests "may arise **from the Constitution itself**, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (emphasis added). The right to petition is "one of the most **precious of the liberties** safeguarded by the Bill of Rights." *BE & K Const. Co. v. NLRB,* 536 U.S. 516, 524-25, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002) (emphasis added). The right to petition is also "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U. S. 702, 721, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997). Because this is a structural defect not subject to a *de minimis* analysis, *see Goss v. Lopez,* 419 U.S. 565 (1975), the order, as is, is void. Although there likely is no "liberty interest in unrestricted access to a courthouse[,]" the liberty interest to petition the government without substantial burden is beyond doubt. *Schultz v. San Joaquin Cty. Sheriff's Dep't*, No. 2:19-cv-02468-DAD-KJN, 2024 U.S. Dist. LEXIS 1484, at *18 (E.D. Cal. Jan. 2, 2024) (collecting cases).

//

### 4. The Court's Order is Void *Ab Initio* because It Entered an Order in Equity that Exceeds the Bounds of Federal Equity Power

"[C]ircuit precedent, authoritative at the time that it issued, can be effectively overruled by subsequent Supreme Court decisions that 'are closely on point,' even though those decisions do not expressly overrule the prior circuit precedent." *Miller v. Gammie,* 335 F.3d 889, 899 (9th Cir. 2003) (*en banc*). The Ninth Circuit found that the auxiliary-writ statute could provide a district court with jurisdiction to issue a vexatiousness injunction in *Moy v. United States,* 906 F.2d 467, 469 (9th Cir. 1990). Although the auxiliary writ statute could be employed by a district court to issue injunctions in equity in aid of its jurisdiction, *see United States v. New York Telephone Co*., 434 U.S. 159 (1977), such equitable injunctions are only cognizable within the boundaries of the federal equity jurisdiction, driven from the Judiciary Act of 1789, when such injunctions are similar to ones issued by historical English courts of chancery. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527* U.S. 308 (1999). Because *Moy* was issued before *Grupo Mexicano* and *Grupo Mexicano* practically curtailed the kind of injunction in equity *Moy* imagines, *Grupo Mexicano* and *Moy* are 'closely on point.' Because the Lord High Chancellor never seems to have issued such an injunction, as the principal common law commentaries concur[4], the injunction issued by this Court cannot be said to be the kind of "historic aid" the All Writs Act authorizes. *Adams v. United States*, 317 U.S. 269, 63 S. Ct. 236, *reh'g denied*, 317 U.S. 713, 87 L. Ed. 568 (1943). Indeed, this is the "type of relief that has been specifically disclaimed by longstanding judicial precedent[.]" *Grupo Mexicano*, 527 U.S. at 311.

[4] Although more research needs to be done, "the great common-law authorities—Bracton, Coke, Hale, and Blackstone" simply indicate the absence of such an injunction. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 217, 142 S. Ct. 2228, 2236 (2022). Justice Story's equity treatises also support the position.

### 5. The Court's Order is Void *Ab Initio* to the Extent that It Granted a Motion from a Party without Standing as It Lacked Article III Jurisdiction Thereof

Without Article III standing by a movant, a court is without subject-matter jurisdiction to entertain—let alone grant—such a motion. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992). Because, absent only one action, the purported 'list' of purportedly 'vexatious' litigation was not directed at the defendants herein (but to independent parties who happened to attend defendants' purportedly educational institution) and because they lacked a redressable injury, the motion could not have been entertained by this court. Although the Ninth Circuit has occasionally ruled that universities may have standing to assert redressable injuries on the side of their students, *see Washington v. Trump* 847 F.3d 1151, 1160 (9th Cir. 2017), none of the provisions of *FDA v. All. for Hippocratic Med*., 602 U.S. 367, 398 (2024) were met here. (And they were not "Stanford personnel" as this Court apparently believes based on its haphazard and shallow glossing.).

### 6. The Court's Order is Void because the Motion Was Barred by Estoppel

District courts usually do not entertain successive motions brought against the same party by the same party on the same subject matter, asking the same remedy, because the movant has acquired a more sympathetic[5] forum since the failure of their motion. Such forum-shopping ping-

---

[5] As far as the undersigned did the math correctly, and as far as the LexisNexis data is correct herein, this Court issued 76.7% of all pre-filing orders entered in this judicial district in the past 5 years. Judge Pitts issued no such order. After this Court, Judge Lin takes the lead as issuing 2.6 % of such orders in the past half a decade. The gap between the second and first place in this ranking should be **daunting** to anyone concerned with "an imperial Judiciary[,]" *Trump v. CASA, Inc.*, 606 U.S. 831, 858, 145 S. Ct. 2540, 2561 (2025) (Barrett, J., writing for the majority), dictated by the whims of radical outliers.

ping-pong games are considered by many—but apparently not this Court—to be improper abuses of the judicial machinery. *See, e.g., Z.A. v. Lucile Salter Packard Child.'s Hosp. at Stanford*, No. 26-cv-04998-PCP, 2026 LX 341156, at *13 n.27 (N.D. Cal. June 6, 2026). The same motion that this Court granted was presented to Judge Pitts and denied by him thereto. Defendants were estopped from re-litigating this issue, but this Court for some reason permitted the defendants to do so, perhaps because the Court is also aware it is a more sympathetic forum for this kind of a motion, given its past excessive jubilance in granting such motions when no other reasonable judicial officer would have done so. Indeed, the Court refused to address the estoppel point litigated by the parties, perhaps aware that either direct or collateral estoppel barred the motion.

**7. Plaintiff Will Succeed on Appeal because the Court Did Not Follow the Mandates of Binding Circuit Precedent, Including *Ringgold-Lockhart***

Defendants brought the instant motion because "her losses, which greatly outnumber her wins[,]" *see* Reply at 1, and that because Doe filed "filed at least ten actions and twenty appellate proceedings" *Reply* at 1. Beyond the "case count" being widely exaggerated, the Ninth Circuit repeatedly "reemphasize[d] that the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as 'vexatious.'" *Molski*, 500 F.3d at 1061, citing *De Long*, 912 F.2d at 1147. And "[l]itigiousness alone is not enough, either." *Ringgold-Lockhart*, 761 F.3d at 1060. And losing a case, as it happens, does not establish vexatiousness. 'The plaintiff's claims must not only be numerous, but also be patently without merit.'" *Molski*, 500 F.3d at 1059 (quoting *Moy*, 906 F.2d at 470). Here, neither the defendants nor the Court's *sua sponte* musings establish the required, substantive determination that the actions were "patently without merit."

On the point of putative "abusiveness,", courts must "be careful not to conclude that

particular types of actions filed repetitiously are harassing," and must "[i]nstead . . . 'discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court.'" *De Long* at 1148 n.3. The Court did not do so. Unpalatable speech is not what "harassing" or "abusive" mean here. "[H]arassing" here means filing a complaint barred by *res judicata*. *See, e.g., Afifi v. Chiang*, No. 25-cv-08263-JST, 2026 U.S. Dist. LEXIS 159525, at *1 (N.D. Cal. July 17, 2026).

Beyond this, this Court's, for instance, *ua sponte* bringing of the Plaintiff's administrative motions as "abusive" also lacked the required substantive determination of frivolousness. This Court did not offer any analysis most of the time, and when it did, it missed the mark. Examples can illustrate: The Court notes that "Plaintiff file[d] 'administrative motion [to] replace the complaint[.]'" Dkt. No. 208 at 18. Although the Court seems to make fun of the Plaintiff by its use of quotation marks and seems to belligerently assume that the Plaintiff did not know that she could "amend as of right" under Fed R Civ P 15, the Plaintiff was not seeking an amendment; rather, she was seeking to remove an improvidently filed document on ECF. *See, e.g., CBS, Inc. v. United States Dist. Court for the Cent. Dist. of Cal.,* 765 F.2d 823, 825-26 (9th Cir. 1985). And although the Court once again mocks the Plaintiff for filing a motion "purporting to compel the Court to adjudicate her IFP application," *see ibid*., the Court once again misses the legal nuance. The Court could not have ruled on the Plaintiff's TRO application without first ruling on the IFP application because without the leave to file granted from the IFP application, the complaint would not have been deemed 'filed' and one cannot seek TRO relief on an unfiled complaint. In sum, it is not the Plaintiff who is vexatious, but it is the Court who misconstrues the filings and failed to observe the legal nuances at issue—and its obvious legal errors being corrected by the Plaintiff apparently

offended the Court because apparently it hubristically thinks it—with its astonishing and general lack of judicial humility and temperament— is beyond error. Put differently, the Court made a legal error in adjudicating the TRO application without adjudicating the IFP application first.

**8. Plaintiff Will Succeed on Appeal because Federalism Mandated this Court to Not Replace Its Subjective Beliefs with State Court Judgements, and *Ringgold-Lockhart* is Distinguishable to that Extent**

Although *Ringgold-Lockhart* did find that the district court also considered Ringgold's pattern of state court litigation [and that] [i]t was entitled to do so[,]" *see Ringgold-Lockhart,* 761 F.3d at 1065, the petitioner therein was "held [to be] a vexatious litigant" by the "California Court of Appeal." *Id*. at 1064. The Plaintiff herein was not declared so, however. As such, this Court substituted its subjective beliefs with state court judgements—and federalism and comity would have cautioned against such a conclusion. Thought the Court notes that "Plaintiff has been repeatedly told that her claims are not viable and barred[,]" *see* Dkt. No. 208 at 30, the Court cannot point *any locus* in the record where such an adjudication was adjudged by a state court judicial officer.

**9. Plaintiff Will Succeed on Appeal because the Order is Overbroad and Does Not Actually Address the Purported and Putative Offense**

Pre-filing orders "must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski*, 500 F.3d at 1061. "In *Molski*, we approved the scope of an order because it prevented the plaintiff from filing 'only **the type of claims Molski had been filing vexatiously**,' and 'because it will not deny Molski access to courts on any . . . claim that is not frivolous.'" *Ringgold-Lockhart*, 761 F.3d at 1066. Here, the pre-filing order is both over broad and does nothing to actually stop the purported practice this Court purportedly found disturbing. Beyond not narrowly tailoring its injunction to the "type of claims" and granting a *carte blanche* holding the defendants above the law and the Plaintiff below it, the pre-filing order does nothing to stop the Plaintiff from writing

pleadings in a language unpalatable to the subjective ears of this Court, as, after obtaining leave, the Plaintiff could easily file such pleadings. Because the pre-filing order is not narrowly tailored to the claims purportedly without merit (since all the individual actions herein have arisen from different claims) and because it does not offer a remedy to the purported litigation abuse, the pre-filing order does not follow the bidding mandates of this Circuit. In granting immunity to the defendants because they are palatable to this Court, the Court's pre-filing order is unquestionably issued in excess of its jurisdiction.

**b. Second *Nken* Prong Favors a Stay Because Being Robbed of Constitutional Liberties is Irreparable Harm**

The Plaintiff will suffer irreparable injury herein because her constitutional rights have been robbed by this Court's whimsical "order." "[I]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)).

**c. Third *Nken* Prong Favors a Stay Because Preventing the Exercise of Constitutional Liberties is Not Injury, Let Alone Irreparable Injury**

Because a party "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations[,]" *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (emphasis added), there is no injury to the defendants.

**d. Fourth *Nken* Prong Favors a Stay Because All Citizens Have an Interest in Ensuring that Constitutional Liberties Are Not Encroached Upon by Naked Abuses of Judicial Power**

It is "always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022). Because the Court flagrantly violated the undersigned's constitutional liberties—in a, *yes*, *Dred Scott-esque* fashion, and reduced her to the position of a sub-human undeserving of natural rights, public interest favors a stay.

## IV.CONCLUSION

The Court **abdicated** its obligation to the rule of law to its passions while adjudicating the underlying motion—because apparently, requesting timely and proper adjudication over a dispute and not wanting to wait for two months for 2.5 pages of state action 'analysis,' is, to this Court, putatively "obsessive." At the very least, the Court should now show mere ***modicum of respect*** to its obligation to the rule of law and to the people of this Nation on whose sovereignty it gained its Article III jurisdiction and stay the execution of its legally unsound and void order.[6] The Court's inability to control its explosive anger and show judicial temperament, as it swore to the do so, defames the sanctity of the judicial office in the public imagination and demeans the image of courts of law as places of *reasoned* and *civil* adjudication of disputes. This Court's behavior throughout this case is heartbreaking to anyone who cares a *scintilla* about the image of the judicial robe—which includes many but apparently not this Court.

In sadness of having observed this Court's naked abuse of its judicial power and that the Court did not know better than that—so submitted,

DATED: August 13, 2026.

*/s/ Jane Doe*

JANE DOE
*In Propria Persona*

[6] Of course, to sustain judicial resources, the Court could also make an indicative ruling *sua sponte*, indicating its intent to vacate its unsound and, simply put, illegal 'order.'