JANE DOE
c/o Secretary of State, Safe at Home
P.O. Box 1198
Sacramento, CA 95812

Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>*v.*<br><br>BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, *et al.*,<br><br>Defendants. | Case No.: 5:26-cv-03809-BLF<br><br>**PLAINTIFF JANE DOE'S MOTION TO RECUSE THE HONORABLE BETH LABSON FREEMAN UNDER 28 U.S.C. § 144 AND 28 U.S.C. § 455**<br><br>[AFFIDAVIT IN SUPPORT UNDER 28 U.S.C. § 144 IS FILED SEPARATELY BUT CONCURRENTLY] |

## I. INTRODUCTION

"Disputes arousing **deep passions** [as here] often come to the courtroom, and justice may appear imperfect to parties and their supporters disappointed by the outcome. This we cannot change. **We can, however, enforce society's <u>legitimate expectation</u> that judges maintain, in fact and appearance, the conviction and <u>discipline</u> to resolve those disputes with <u>*detachment*</u>** and impartiality." *Liteky v. United States*, 510 U.S. 540, 564, 114 S. Ct. 1147, 1162 (1994) (KENNEDY, J., concurring) (emphasis added). "Justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 99 L. Ed. 11, 75 S. Ct. 11 (1954). "**Justice should not only be done, but should manifestly and undoubtedly be seen to be done**. […] Nothing is to be done which creates

even a suspicion that there has been an improper interference with the course of justice." *Ex parte McCarthy*, [1924] 1 K. B. 256, 259 (1923) (opinion of LORD HEWART, C.J., writing for a unanimous King's Bench) (emphasis added). The goal herein is to avoid "even the appearance of" impropriety. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988). Maintaining society's very legitimate and reasonable expectation that judges not become bullies that (verbally or otherwise) harass those that appear before them because of their subjective palatability preferences over the *kind* of people that appear before them mandates the recusal of the bench officer presiding over this matter.

**II.PROCEDURAL POSTURE**

This action is currently closed as judgement of dismissal was issued. An appeal on, *inter alia,* the said dismissal is pending before the Ninth Circuit. *See* ECF No. 216. The Appellant has requested the Ninth Circuit panel to reassign this case in the case of reversal and remand to this Court under the Ninth Circuit's inherent power, driven from 28 U.S.C. § 2106, to maintain the appearance of justice. *See generally United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) (delineating the standard). *See Doe v. Board of Trustees of Leland Stanford Junior University, et* al., no. 26-4997 (9th. Cir __), Document Entries 10, 24.

Plaintiff is filing this motion at this juncture to ensure that her motion is timely in the case that the Ninth Circuit remands this case to this court but denies her request for reassignment upon remand. Because the standard the Ninth Circuit employs for reassignment under its inherent power

driven from 28 U.S.C. § 2106 is **<u>slightly different</u>**[1] than the standard for recusal for a motion invoking 28 U.S.C. § 144 and 28 U.S.C. § 455, the Plaintiff is filing this motion now, which is the earliest practical opportunity, to ensure that the motion is timely filed in this Court, as its untimely filing is a basis for denial of the motion.

As argued *infra*, to the extent that a third-party judicial officer[2] denies this motion after referral, Plaintiff respectfully requests that the order of denial be stayed so that the Plaintiff can seek *mandamus* remedy from the Ninth Circuit. Ninth Circuit's possible denial of the Plaintiff's request for reassignment upon remand would not foreclose its review of the denial of this motion on a writ petition, as, again, the two matters call forth slightly different criteria. Of course, the assigned judicial officer may also wish to hold the disposition of this motion in abeyance pending Ninth

---

[1] Conversely, for instance, the substance of a judge's rulings *can be* a factor the Ninth Circuit employs while adjudicating a request for reassignment upon remand. *See, e.g., Nat'l Council of La Raza, Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1046 (9th Cir. 2015) ["The errors made by the district judge may suggest to a reasonable outside observer that reassignment 'to maintain the appearance of justice' is necessary."]. The substance of a judge's legal errors and rulings can never be a proper basis for recusal, as the corrective method therein is to establish error on appeal, not move to recuse a bench officer. If such were the law, every party dissatisfied with the administration of justice would move to have a judge be recused and the judicial machinery would come to a halt.

[2] Because the affidavit under 28 U.S.C. § 144 is **facially sufficient,** Judge Freeman is mandated to not adjudicate this motion. *See* Civil Local Rule 3-14. *See also Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387-88 (9th Cir. 1988) (delineating the standard). To the extent that Judge Freeman will once again abuse her discretion to adjudicate the merits of this facially sufficient motion, *mandamus* would lie to rectify abuse of her discretion. *See Bauman v. United States District Court,* 557 F.2d 650 (9th Cir. 1977) (delineating the appropriate test to grant extraordinary writ remedy). Although a denial of a disqualification motion is usually an unappealable interlocutory order, it might end up being an appealable post-judgement appealable order in this instant case. The Plaintiff assumes that Judge Freeman will not recuse herself voluntarily, although she should. *See, e.g., Williams v. United States*, No. 3:23-cv-05196-BHS, 2023 U.S. Dist. LEXIS 80215 (W.D. Wash. May 8, 2023) (refusing to recuse voluntarily after reviewing a motion for recusal and referring the motion to the Chief Judge of the judicial district). Further, because this motion will not be heard by Judge Freeman, her standing order setting a shorter page limit for non-dispositive motions is inapplicable to this motion.

Circuit's order as to whether it will reassign upon a possible remand, which will render this motion moot.

**III.STANDARD FOR RECUSAL OF A BENCH OFFICER**

A party may move a district court to recuse the assigned bench officer under two different statutes. A party may allege bias of a district court judge pursuant to 28 U.S.C. § 144 and seek to have a neutral district court judge determine whether such bias exists. Further, a party may move to have a district court judge recused pursuant to 28 U.S.C. § 455, by establishing that the judge's impartiality might reasonably be questioned. Here, the Plaintiff moves to recuse the Honorable Beth Labson Freeman ("Judge Freeman") pursuant to both statutes. Nevertheless, the standard for recusal under both statutes is almost identical. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986). The question is **whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned**. *Id*. (quoting *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984)). This standard is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quoting *Clemens v. U.S. Dist. Ct*., 428 F.3d 1175, 1178 (9th Cir. 2005)). Of course, "[t]he reasonable person in this context means a **well-informed, thoughtful observer**, as opposed to a hypersensitive or unduly suspicious person." *Clemens, ibid.* But it is also important to "bear in mind that **these outside observers <u>are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be</u>**." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008), citing *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005) (emphasis added). As such, the reasonable person here is, though well-informed, a ***<u>judicial outsider</u>*****.** "The Court [should] ask[] **not whether the judge is actually,**

**subjectively biased**, but whether the average judge in [their] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881 (2009). Thus, on review, a court does not have to conclude that actual bias exists, but rather that a judge's impartiality might reasonably be questioned. This standard is similar—though not identical—to that which the Ninth Circuit applies when considering whether to order that a case be reassigned upon remand on the motion of an appellate party. For reassignment, the relevant question is whether circumstances establish that "to a reasonable outside observer . . . reassignment 'to maintain the appearance of justice' is necessary." *Nat.l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045-46 (9th Cir. 2015) (quoting *United States v. Kyle*, 734 F.3d 956, 966–67 (9th Cir. 2013).[3] Although recusal **generally** requires extrajudicial evidence (known as the "extrajudicial evidence doctrine"), a party can **still** establish a proper basis for recusal without such evidence where **on-the-record statements demonstrate a "deep-seated . .. antagonism** that would make fair judgment impossible." *Liteky,* 510 U.S. at 554-55 (emphasis added).

Judge Freeman's deep-seated antagonism and her "feelings against [the Plaintiff] are both well-established and **inappropriately strong**." *Cegavske*, 800 F.3d at 1045 (emphasis added). Judge Freeman "harbored animus toward the [Plaintiff]" and that "the judge's [animus] **[is] a matter of public record**." *United States v. Estate of Hage*, 810 F.3d 712, 722 (9th Cir. 2017) (emphasis added).

---

[3] As argued *supra,* the Ninth Circuit, in addition to the recusal statutes, has another basis to consider. "A federal court of appeal's ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances.'" *Liteky*, 510 U.S. at 554 (quoting 28 U.S.C. § 2106). As recounted *supra*, Plaintiff has already requested the Ninth Circuit to reassign this case to a different bench officer upon remand.

## IV. THE MOTION TO RECUSE IS WELL-SUPPORTED BY AFFIDAVIT AND AN ESTABLISHED PUBLIC RECORD AND IT IS TIMELY FILED

A distinction between 28 U.S.C § 144 and 28 U.S.C. § 455(a) can be found in certain prerequisites imposed by section 144. Section 144 requires that the motion be supported by a "sufficient affidavit" and provides for a neutral judge's review of a recusal motion and the allegations of bias.

### a. Affidavit is Sufficient

An affidavit is considered "sufficient" when the affidavit "specifically alleges facts that **fairly** support the contention that the judge exhibits bias or prejudice directed toward a party." *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980) (citations omitted) (emphasis added)[4]. "Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" are insufficient to warrant recusal. *Clemens*, 428 F.3d at 1178. The affidavit filed concurrently herein is facially sufficient because, on its face, it alleges facts that create, at the very least, **the inference of appearance of partiality**.

### b. The Motion is Timely

[4] Although the *Sibla* court included a requirement that the bias or prejudice "[stem] from an extrajudicial source," *id*., the Supreme Court has subsequently clarified that this is not always the case, *Liteky*, 510 U.S. at 554-55. Where on-the-record statements demonstrate a "deep-seated . . . antagonism that would make fair judgment impossible," recusal is appropriate. *Id*. at 555. *Liteky* specifically holds **that the absence of an extrajudicial source does not necessarily preclude recusal**, and that what had been considered **the "extrajudicial source doctrine," is better considered as a significant "factor," rather than an unbending requirement**. *Id*. at 554-55. The Supreme Court stated that, although judicial rulings alone almost never constitute a valid basis for recusal, comments or opinions expressed by a judge are a different matter. *Id*. at 555. Although such judicial remarks ordinarily do not support a bias challenge, they will do so if they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. As an example, that court cites an instance where a judge noted that it would be very difficult not to be prejudiced against particular type of people. *Id*. (describing a World War I espionage case in which the judge disparaged German Americans).

When analyzing the "timeliness" component of the analysis, the Ninth Circuit has imposed no strict timeframe[5] within which a recusal motion must be filed. *Preston v. United States*, 923 F.2d 731, 732-33 (9th Cir. 1991). At the center of the analysis, the court must give consideration to whether the motion would result in a waste of judicial resources and whether the motion is a result of a party merely seeking some strategic gain. *Id*. at 733. Much of the conduct that foregrounds this motion was exhibited on July 31, 2026. The motion is being filed within a period of a month and half. Obviously, the motion is timely, especially given that the Plaintiff had to work on motion practice and the filing of the opening brief in the Ninth Circuit, which were more time sensitive matters than this motion in this closed action.

## V. JUDGE FREEMAN'S ABYSMAL, UNDIGNIFIED, AND BELLIGERENT CONDUCT IN THIS CASE WARRANTS AND MANDATES HER RECUSAL UNDER BOTH STATUTES

### a. Judge Freeman's Deep-Seated Antagonism and Inappropriately Strong Feelings Against the Plaintiff Are Matters of Public Record

As argued *supra* and as the Supreme Court made clear in *Liteky*, the question, when a recusal motion turns on the statements made by a judicial officer intrajudicially, is whether there is appearance of some "deep-seated . . . antagonism that would make fair judgment impossible[.]" *Liteky*, at 554-55. Of course, "when intrajudicial behavior is at issue, manifestations of animosity must be **much more than [the] subtle** to establish bias." *Liteky*, 510 U.S. at 556, n.3 (finding that a judge refusing to call a Christian minister "Father" once as an honorific too subtle and insufficient to establish deep-seated antagonism under this test) (emphasis added).

### a. Judge Freeman Openly Indicated Her Belief that Transgender Women are Felons *Ipso Facto* for Purportedly Impersonating

[5] "The 10-day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts. See 28 U.S.C. § 138." *Liteky*, 510 U.S. at 560 (KENNEDY, J., concurring).

**Cisgender Women By Merely Existing even When They Are Not Convicted as Felons for Being Transgender**

Plainly put, Judge Freeman is of the apparent belief that transgender women, by virtue of mere existence and *ipso facto,* are felons and that they commit the said purported felony by "sounding female" as purported "biological male"s by purporting committing a purported crime under California Penal Code, section 529. Certainly, that is why Judge Freeman agrees with Defendant Smith that the Plaintiff purportedly committed, in Judge Freeman's words,"**apparent**"[6] (not alleged) "impersonation" by "sounding female" as a purported "biological male." *See*. Dkt. No. 209 at 10: 4. *See* Affidavit In Support.

As is, Judge Freeman's "manifestations of animosity [against a group of people that includes the Plaintiff]" are unequivocally "much more than [the] subtle." *Liteky*, 510 U.S. at 556, n.3. An "average judge in [Judge Freeman's] position[,]" who believes that being transgender is a purported felony, and that the Plaintiff is a felon without being convicted as such, "is [not] 'likely' to be neutral[,]'" *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881 (2009) (annotation in the brackets), especially when the purported nature of such a 'crime' (and whether the Plaintiff actually committed it) is **such a central tenant of this action and controversy.** Judge Freeman's commentary is precisely the type of rhetoric that depends on and **is rooted in irrational stereotypes** where an "an intent to disfavor that class can readily be presumed" because being purported 'biological males' who sound like 'females' is a type of 'activity' that "happen[s] to be

---

[6] Without doubt, the Plaintiff has a right of dignity to be assumed to be not guilty of a crime unless the State is able to prove otherwise…even in an unrelated civil proceeding. The Ninth Circuit has extended the right to be assumed to be not guilty of a crime in a civil-law setting as a right of dignity. At any event, *Younger* abstention would have prevented Judge Freeman from adjudicating the Plaintiff's purportedly apparent guilt of being a purported felon by the virtue of being transgender apparently according to Judge Freeman's whims because the State of California has a legitimate state interest in prosecuting the apparent crime of existing as a transgender woman.

engaged in exclusively or predominantly by a particular class of people[.]"[7] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

Because Judge Freeman's whimsical commentary is "tending to excite odium, ill will [and is] likely to give offense; esp[ecially], unjustly and irritatingly discriminating[ly][,]" *see Bray*, 506 U.S. at 274, her conduct "reveal[s] […] a high degree of […] antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. Judge Freeman's belief that the Plaintiff is a felon for sounding female also **establishes that she has been prejudged in this matter** *ab initio* because no criminal court actually convicted the Plaintiff as a felon (…for being transgender).

"The Rule of Law, which is the bedrock of our legal system, [and with which Judge Freeman has been entrusted to uphold] **promises** that all individuals will be afforded **the full protection of our legal system** and the rights guaranteed by our Constitution. This is so whether the individual seeking that protection is [B]lack, white, male, female, gay, straight, or, as in this case, transgender." *Edmo v. Corizon, Inc.*, 949 F.3d 489, 505 (9th Cir. 2020) (BUMATAY, J., dissental), quoting *Edmo v. Idaho Dep't of Corr.*, 358 F. Supp. 3d 1103, 1109 (D. Idaho 2018), *order clarified*, No. 1:17-CV-00151-BLW, 2019 WL 2319527 (D. Idaho May 31, 2019) (emphasis added).

**b. Judge Freeman Openly Indicated Her Belief that the Plaintiff is an 'Obsessive' 'Schizophrenic'**

Judge Freeman has also exhibited "feelings against [the Plaintiff] [that] are both well-established and inappropriately strong." *Cegavske*, 800 F.3d at 1045. Judge Freeman's antagonism and inappropriately strong feelings usually stem from Doe's motion practice when Doe pointed out

[7] Indeed, this is precisely the "extrajudicial" and "personal" bias that 28 U.S.C. § 144 seeks to address. That Judge Freeman's extrajudicial and personal bias **became known through her language in court filings** because she could not stop herself from being vicious and vile certainly does not preclude relief under 28 U.S.C. § 144.

where Judge Freeman made clear legal errors or misunderstood her motions because she does not care about her role on the bench enough to read the Plaintiff's pleadings with necessary care.

Simply put, Judge Freeman is, to borrow her favorite phrase, "obsessive" about the Plaintiff correcting her clear errors and her animosity against the Plaintiff for doing so is simply too strong to be compatible with the seriousness and the solemnity of the judicial bench—and it is a proper ground for recusal because Judge Freeman's prejudgement against the Plaintiff has now become a part of the public record because of her "obsessiveness" of attacking the Plaintiff's, *inter alia*, person, character, and mental health on the record.

Judge Freeman's obsession began when the Plaintiff corrected her simple and clear error: Judge Freeman adjudicated a temporary restraining order application before adjudicating a motion for leave to proceed *in forma pauperis*. Because, without the leave to file a complaint *in forma pauperis,* the complaint would not be deemed filed, and because a complaint is needed on whose facts to seek temporary relief, Plaintiff pointed out that Judge Freeman should have first adjudicated the motion for leave to proceed *in forma pauperis*. Rather than simply rule on the merits of this motion, Judge Freeman's obsession began—and every order after that was substantially *not* about Judge Freeman addressing the legal merits of other legal matters pending before her but it was her pages-and-pages long *ad hominem* attack on the Plainitff for correcting her errors. *See, e.g.,* ECF No. 71, 132 at 2.

Judge Freeman admits her antagonism toward the Plainitff: She thinks the Plaintiff is mentally sick—that she is "obsessive[,]" *see* ECF No. 208 at 31, and that she is "untethered from reality." ECF No. 209 at 28. These have nothing to do with the legal matters that required adjudication before Judge Freeman; rather, it is her "inappropriately strong[,]" *Cegavske*, 800 F.3d

at 1045, feelings against the Plaintiff, and such feelings exhibit "deep-seated . .. antagonism." *Liteky,* 510 U.S. at 554-55

**c. Judge Freeman's Deep-Seated Antagonism Affects her Dealing with Substantive Issues in this Matter**

One common formulation used by the Ninth Circuit in assessing whether recusal is in order to keep the appearance of justice intact is to query whether "the district court's **expressions of frustration** with an attorney or party **somehow appeared to affect** his or her handling of the substantive issues in the case." *State of Cal. v. Montrose Chemical Corp. of California*, 104 F.3d 1507, 1521 (9th Cir. 1997) (emphasis added). Judge Freeman's obsessive attacks on the Plaintiff's person and her mental health and her "expressions of frustration" because of the Plaintiff's purported obsessiveness affects her substantive dealings with legal merits of this action. The *in forma pauperis* order was one, and there are simply too many places where, instead of adjudicating the law, Judge Freeman attacks the Plaintiff for requesting proper administrative remedies from the Judiciary. One example is ECF No. 132 at 2, where Judge Freeman does not even, because of her antagonism, seem to have read the Plainitff's moving papers. The Plaintiff had argued that financial need for appointment of counsel is dispositively decided when a court grants leave to proceed *in forma pauperis*. *See* ECF No. 131 at 5-6. Rather than address that legal dispute between the parties, Judge Freeman once again decided to launch pages-long vituperation on the Plaintiff's person. Or take ECF No. 224: Judge Freeman simply refused to address the law because she finds the Plaintiff's criticism of her administration of justice—"[o]ne of the prerogatives of American citizenship" *Baumgartner v. United States*, 322 U. S. 665, 673-674 (1944)—unpalatable to her ears. Once again, Judge Freeman's "**expressions of frustration** with an attorney or party **somehow appeared to affect his or her handling of the substantive issues in the case**." *Montrose, ibid.*

**b. A Reasonable Person Would Question Whether Judge Freeman Would be Impartial if She Continues to Preside Over a Case She Characterized as 'Trivial' Despite Supreme Court Precedent to the Contrary**

A reasonable judicial outsider would also question the appearance of justice and Judge Freeman's ability to impartially and carefully apply the law if Judge Freeman is to continue presiding over a legal matter she has described as "trivial[,]" ECF. No. 208 at 1, despite Supreme Court precedent to the contrary. Though Judge Freeman's subjective whims and feelings while living comfortably on a government-funded life might indicate to the contrary, there is nothing trivial, as binding Supreme Court precedent holds, about being excluded from the educational establishment for more than 10 days, *see Goss v. Lopez,* 419 U.S. 565, 576, 95 S. Ct. 729, 737 (1975), nor is there anything "trivial" about the "depri[]v[ation] of all that makes a free man's life dear." *Pennekamp v. Florida*, 328 U.S. 331, 357, 66 S. Ct. 1029, 1042 (1946). A reasonable judicial outsider would question Judge Freeman's ability to impartially and carefully apply the law in a case where she has admitted she does not care enough to impartially and thoroughly apply the law. Indeed, such a prejudgement about a matter is incompatible about the openminded legal review the judicial bench requires.

**VI. APPEARANCE OF IMPARTIALITY ALSO WARRANTS RECUSAL BECAUSE JUDGE FREEMAN COULD NOT HAVE BEEN 'RANDOMLY ASSIGNED' TO THIS CASE**

As a preliminary matter of law, though "speculation" would not be a viable basis for recusal, *Clemens*, 428 F.3d at 1178, inference, driven from well-declared facts, is obviously a permissible review methodology in a recusal motion. After all, one must allege facts that "**fairly"** (not absolutely) "support" a recusal motion. *Sibla*, 624 F.2d at 868 (emphasis added). As set in the affidavit in support hereof, there are facts that *fairly* show the **appearance of some form of impropriety** in Judge Freeman's assignment to this case. Simply put, as the affidavit in support

indicates, it is impossible for Judge Freeman to have been 'randomly' 'assigned' to this case. To the extent that there is evidence that *fairly* makes the inference possible that Judge Freeman might selectively decided to preside over this case, a reasonable judicial outsider would question why she would take such a grandiose and extraordinary step. Indeed, Judge Freeman has been 'randomly' 'assigned' *to all cases* in this judicial district where Stanford is a defendant. *See*[8] *Keesing v. The Board of Trustees of The Leland J. Stanford University* (5:21-cv-03555), *Guden v. Board of Trustees of the Leland Stanford Junior University* (5:21-cv-03559), *Linda Thompson v. Stanford University* (5:16-cv-06826), *Board of Trustees of Leland Stanford Junior University v. County of Santa Clara* (5:19-cv-00071). Statistically, in a district with a dozen judicial officer, this happening 'randomly' is an anomaly.

## VII. IF A NEUTRAL JUDGE DENIES THIS MOTION, THEY SHOULD STAY THEIR DENIAL SO THAT THE PLAINTIFF CAN SEEK MANDAMUS REMEDY IN THE NINTH CIRCUIT

Provided that the judicial officer assigned to this motion denies it, Plaintiff respectfully requests that the denial be stayed for 30 days so that the Plaintiff can petition the Ninth Circuit via a writ of mandamus. Generally, an appeal to the Ninth Circuit divests the district court of jurisdiction over all aspects of the case that are the subject of the appeal. *United States v. Pitner*, 307 F.3d 1178, 1183 n.5 (9th Cir. 2002). However, this rule does not apply to petitions for a writ of mandamus. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995). A petition for mandamus requests an extraordinary remedy that is only appropriate in exceptional circumstances. *Id*. Since it is only in exceptional circumstances that these petitions are granted, "the Federal Rules of Civil Procedure do not provide for an automatic stay of district court proceedings while a petition for writ of mandamus is pending." *Id*. The "district court does not lose jurisdiction over a case merely because a litigant

---

[8] She was also assigned to *Doe v. Stanford University* (5:16-cv-02228), but she recused herself.

files an interlocutory petition for an extraordinary writ." *Ellis v. U.S. Dist. Court for W. Dist. of Washington (Tacoma),* 360 F.3d 1022, 1023 (9th Cir. 2004). Therefore, it is in the discretion of the district court whether to stay the case pending resolution of the petition for a writ of mandamus. *Woodson*, 57 F.3d at 1416.

## VIII.CONCLUSION

As a federal judge is presumed to be impartial, a **substantial and heavy burden** is imposed on the party claiming bias or prejudice to show that this is not the case. *United States v. Zagari*, 419 F. Supp. 494, 501 (N.D. Cal. 1976). Given the disheartening attitude exhibited through Judge Freeman's, *inter alia,* (hermeneutical) violence in this case, that substantial burden has been carried by Doe herein.

To speak like Judge Freeman as Judge Freeman speaks and has been speaking to the Plaintiff, with the hope that use of such rhetoric will hopefully and **finally** make her understand the vileness of hers: Because allowing Judge Freeman to turn a United States District Court into her own "barroom[,]" *see Olympus Spa v. Armstrong*, 169 F.4th 817, 844-45 (9th Cir. 2025) (MCKEOWN, J., statement respecting the denial of petition for rehearing en banc) (or a Judge-Judy-esque entertainment show), where **she is permitted to harass** anyone she wants because of her subjective palatability tastes on what constitutes a viable human being <u>**deserving of dignity and respect**</u> and whims creates an image of the judicial office in the public imagination where the judicial office is *not* a place of temperament, impartiality, and reasoned civility, Judge Freeman must be recused to keep the appearance of justice intact.

Judge Freeman misses the point altogether: Having had the rare <u>*fortune*</u> of being consented to being a member of the Judicial Branch by the representative of the people of this Nation does not allow her to invoke a certain superiority over that very people that put her in that esteemed position

and harass them. Although Judge Freeman vowed that she would abide by the well-established premise that "judges **must** possess appropriate judicial temperament in order to insure [*sic*] the fair administration of justice [...] [which] [...] includes **courtesy, patience,** hard work, fairness and decisiveness"[9], she does not appear to have kept that vow at all.[10]

This was a ***modest*** case that simply asked Judge Freeman to apply well-established state-action tests and adjudicate over well-established and ***simple*** Fourteenth Amendment and First Amendment claims. Rather than expediently[11], especially because the Plaintiff's literal safety was on the line, and carefully do that as justice so requires, she decided to launch *ad hominem* attacks on the Plaintiff's character and person and her mental health (another archaic stereotype with which transgender people are targeted) and issued wide-ranging, unnecessary, unwarranted, malicious,

---

[9] *See* https://perma.cc/MUC7-S8DR (Written Responses of Beth Labson Freeman) (emphasis added).

[10] Judge Freeman's lack of temperament and her retaliatory and abusive moves toward litigants when she "gets angry" **is a well-known fact by the Public and is a matter of public knowledge.** Judge Freeman should not have a freewheel on the judicial bench and use the judicial office as her **personal vendetta machine**. *See, e.g.,* https://www.si.com/golf/news/judge-loses-temper-in-liv-golf-vs-pga-tour-hearing-postpones-trial-date (reporting that Judge Freeman "lost her temper[,]" *ibid*., started yelling at counsel for 15 minutes for asking a simple scheduling question, *sua sponte* vacated the trial date that had been set for a year, and threatened the counsel with resetting it in three years as retaliation for 'making her angry'). Litigants who have the misfortune of appearing before Judge Freeman "don't have to put up with this kind of tyranny[.]" *Molski v. Evergreen Dynasty Corp*., 521 F.3d 1215, 1221-22 (9th Cir. 2008) (KOZINSKI, J., dissental). Simply put, a judge is not someone that can "lose their temper" and start lashing out to people while acting in their official capacity as a judge.

[11] This quality of the law is one of the pillars of the common law. As JUSTICE BURGER put it aptly, "A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society: that people come to believe that inefficiency and delay will drain even a just judgment of its value." WARREN BURGER, *What's Wrong With the Courts: The Chief Justice Speaks Out (address to ABA meeting, Aug. 10, 1970),* U.S. NEWS & WORLD REPORT. Vol. 69, no. 8. pp. 68, 71 (emphasis added).

superfluous, sweeping advisory opinions on the purported criminality[12] of the *per* se existence of an **entire** social group. Rather than **simply** adjudicate the law, she spent two pages on it while spending 25 or so pages of tax-payer funds to demean the Plaintiff's character because of her alleged mental health issues. Because allowing Judge Freeman to use the judicial bench as her extralegal bullying tool defames the character of the law and judicial bench, recusal is required so that this matter can be heard by a judge, if it is to continue, who will abide by long-established principles of judicial temperament and impartiality.

Judge Freeman's inappropriately strong feelings—whatever their psychoanalytic source[13]—is not, and cannot be, the law and judicial adjudication. Like **everyone else** in this Nation, Plaintiff is entitled to and **deserves** a solemn and **patient** adjudication over her legal claims—an adjudication that Judge Freeman appears incapable to provide—although she vowed and swore to do so, tricking the people of this Nation—and 90% of the Senate—who believed (in) her.

"Our mythic Justice, represented by a **blindfolded** figure **wielding a balance** and a sword" required Judge Freeman to impartially apply the law, "giving no preference" to her passions—not reducing the undersigned to the position of a sub-human oddity undeserving of dignity and respect, because of her subjective palatability-of-people-to-her-whims preferences. *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (emphasis added). She has failed and will continue to fail—radically and obsessively—to do so. Because a reasonable person would be horrified by Judge

---

[12] This is yet another archaic stereotype. *See United States v. Skrmetti*, 605 U.S. 495, 601, 145 S. Ct. 1816, 1881 (2025) (SOTOMAYOR, J., dissenting) (discussing historical criminal statutes that made being transgender a crime).

[13] *See, e.g.,* SIGMUND FREUD, TWO CASE STORIES: 'LITTLE HANS' AND THE 'RAT MAN,' THE COMPLETE PSYCHOLOGICAL WORKS OF SIGMUND FREUD (Vintage, 2001 ed.) (originally published as *Notes Upon a Case of Obsessional Neurosis*).

Freeman's abuse of the Plaintiff on the record, she must be recused to keep the appearance of justice intact.

Let one leave Judge Freeman with a lesson she never quite grasped, apparently, then: "[When acting as a judge,] **do not act as an advocate**. When [those] litigants stand before you, **regard them [both] as guilty[14]**. And when they leave you, **regard them as [both] meritorious**." PIRKEI AVOT, 1:8 (Plaintiff's translation; emphasis added).

Being a judicial officer does not provide one an all-commandeering license to abuse, attack, and psychologically torture—*torture*—people with vindictive vitriol—let alone litigants appearing (and having to appear) before a bench officer for justice, nor is it a place to voice one's socially regressive and archaic political positions under the concocted guise of 'science'[15] or 'psychology' when that speech becomes the Judiciary's, not one individual's. *See, e.g., Rust v. Sullivan*, 500 U.S. 173 (1991). Judge Freeman's "deprecatory and [persistently] antagonistic attitude toward [a party] [,]" *United States v. Dellinger,* 472 F.2d 340, 386 (7th Cir. 1972) (emphasis added), has no place in the judiciary.

So submitted,

DATED: September 16, 2026.

*/s/ Jane Doe*

JANE DOE
*In Propria Persona*

[14] Of course, this is a *bon mot.* Judge Freeman must not regard them as guilty in the legal sense. The *bon mon* is to judge without depriving the people of their human dignity while doing the judging.

[15] *See, e.g., In re Charges of Judicial Misconduct*, 413 U.S. App. D.C. 1, 769 F.3d 762 (2014) (vocalizing, *inter alia,* that 'scientifically' Black and Hispanic Americans are 'more prone' to committing crimes.)